1  C. Brandon Wisoff (State Bar No. 121930)
   bwisoff@fbm.com
2  Deepak Gupta (State Bar No. 226991)
   dgupta@fbm.com
3  Rebecca H. Stephens (State Bar No. 299234)
   rstephens@fbm.com
4  Jeffrey G. Lau (State Bar No. 281629)
   jlau@fbm.com
5  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
6  San Francisco, California 94104
   Telephone: (415) 954-4400
7  Facsimile: (415) 954-4480

8  Laurence H. Tribe* (State Bar No. 39441)
   Carl M. Loeb University Professor and
9  Professor of Constitutional Law
   Harvard Law School
10 1575 Massachusetts Avenue
   Cambridge, Massachusetts 02138
11 Telephone: (617) 495-1767
   *Pro hac vice pending*

12
   Attorneys for Plaintiff hiQ Labs, Inc.
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16 hiQ Labs, Inc.,                    | Case No.

17         Plaintiff,                 | **COMPLAINT FOR DECLARATORY**
                                      | **JUDGMENT UNDER 22 U.S.C. § 2201**
18     vs.                            | **THAT PLAINTIFF HAS NOT**
                                      | **VIOLATED: (1) THE COMPUTER**
19 LinkedIn Corp.,                    | **FRAUD AND ABUSE ACT (18 U.S.C. §**
                                      | **1030); (2) THE DIGITAL MILLENNIUM**
20         Defendant.                 | **COPYRIGHT ACT (17 U.S.C. §1201);(3)**
                                      | **COMMON LAW TRESPASS TO**
21                                    | **CHATTELS; OR (4) CAL. PENAL CODE**
                                      | **§ 502(c);**
22                                    | **INJUNCTIVE RELIEF TO ENJOIN: (1)**
                                      | **INTENTIONAL INTERFERENCE WITH**
23                                    | **CONTRACT AND PROSPECTIVE**
                                      | **ECONOMIC ADVANTAGE; (2) UNFAIR**
24                                    | **COMPETITION (CAL. BUS. & PROF.**
                                      | **CODE § 17200); (3) PROMISSORY**
25                                    | **ESTOPPEL; AND (4) VIOLATION OF**
                                      | **CALIFORNIA FREE SPEECH LAW;**
26                                    | **AND RELATED MONETARY RELIEF**
27

28        Plaintiff hiQ Labs, Inc. ("hiQ"), by its undersigned counsel, hereby brings this action

COMPLAINT FOR DECLARATORY AND          *Affiliation noted for identification purposes only.*
INJUNCTIVE RELIEF                                                    34556\6002784.1

against Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") and alleges as follows:

**INTRODUCTION**

1.       This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and for injunctive relief under California law.  hiQ seeks a declaration from the Court that hiQ has not violated and will not violate federal or state law by accessing and copying wholly public information from LinkedIn's website.  hiQ further seeks injunctive relief preventing LinkedIn from misusing the law to destroy hiQ's business, and give itself a competitive advantage through unlawful and unfair business practices and suppression of California Constitutional free speech fair guarantees.  hiQ also seeks damages to the extent applicable.

2.       hiQ is a tech startup which collects and analyzes public profile information on LinkedIn in order to provide its clients – mostly large companies – with insights about their employees, such as which employees are likely to be poached by a competitor or which skills its employees have.  hiQ does not analyze the private sections of LinkedIn, such as profile information that is only visible when you are signed-in as a member, or member private data that is visible only when you are "connected" to a member.  Rather, the information that is at issue here is wholly public information visible to anyone with an internet connection.

3.       LinkedIn is the world's largest professional network, with over 500 million members.  LinkedIn has abruptly, unlawfully and without cause denied hiQ access to the portion of the LinkedIn website containing wholly public member profiles.  hiQ relies on that public data, available nowhere but LinkedIn, for its data analytics business that serves clients including eBay, Capital One, and GoDaddy.

4.       On May 23, 2017, LinkedIn sent hiQ a cease-and-desist letter ordering hiQ to stop accessing LinkedIn and stating that hiQ's continued access to the website would violate the Computer Fraud and Abuse Act, Digital Millennium Copyright Act, and California Penal Code § 502(c) and constitute common law trespass to chattels.  This came as a shock to hiQ, as LinkedIn has been aware of hiQ's activities for several years and never once objected to hiQ's use of this public information.

5.       LinkedIn asserts as pretext that it needs to protect LinkedIn member data even

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

2

34556\6002784.1

1   though LinkedIn members have expressly made that information public and LinkedIn has

2   identified no harm to itself or its members.  LinkedIn publicly acknowledges on its own website

3   that the public profile data belongs to LinkedIn members, not to LinkedIn, and that each member

4   is free to choose the level of public disclosure allowed for his or her own information.  LinkedIn

5   members can choose to (1) keep their profile information private; (2) share only with their direct

6   connections; (3) share with connections within three degrees of separation; (4) allow access only

7   to other signed-in LinkedIn members, or (5) allow access to everyone, even members of the

8   general public who may have no LinkedIn account and who can access the information without

9   signing in or using any password.  It is only this fifth category of information – wholly public

10  profiles – that is at issue here:  hiQ only accesses the profiles that LinkedIn members have made

11  available to the general public.

12      6.      hiQ uses that information for data analytics that LinkedIn members' employers in

13  turn use to retain employees and to create better career and internal mobility paths for such

14  employees.  Thus, far from harming LinkedIn members, hiQ's access promotes precisely the type

15  of professional and employment opportunities that lead LinkedIn members to make their profiles

16  public in the first place.  Yet, LinkedIn is now threatening hiQ with legal action based on the

17  above described theories if hiQ accesses this information which is otherwise publicly available to

18  everyone else on the planet with an internet connection.

19      7.      The Court should enjoin LinkedIn from denying hiQ access to its website because

20  LinkedIn's real motivation is obviously anticompetitive:  to prevent anyone but LinkedIn from

21  being able to use public information for data analytics.  LinkedIn for years has known about hiQ

22  and its business, has attended data analytics conferences at hiQ and has even accepted awards

23  from hiQ at these conferences.  But LinkedIn has now made some public statements about

24  entering the data analytics business, and has abruptly (as of May 24, 2017) decided to terminate

25  hiQ's access.

26      8.      LinkedIn's entire stated complaint is that hiQ "copies" the data its members have

27  made public, but LinkedIn has asserted no copyright or other exclusive propriety interest in the

28  data and it clearly has none.  Moreover, hiQ does not collect all (or even a substantial proportion)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

3

34556\6002784.1

of the member profiles on LinkedIn, nor does it compete with LinkedIn by creating a substitute social network or job posting forum. Rather, hiQ pulls data for a limited subset of users – usually its client's employees – and uses scientific methodology to analyze the information. hiQ then provides its clients with this new data that it produced in a form that is by necessity very different from the public profile pages on LinkedIn.

9. Because LinkedIn has no legitimate copyright claim, it has instead threatened to sue hiQ under federal and state laws pertaining to hacking and unauthorized computer and network access in order to intimidate hiQ and force it to stop accessing these public profiles. But LinkedIn cannot use those laws for an improper purpose to obtain exclusive proprietary control over wholly public data in which it otherwise has no exclusive interest and which hiQ, and anyone else, can freely access on the world wide web with no log-in credentials or password. Indeed, LinkedIn would not have that data on its website in the first place but for its promise to LinkedIn members that they can publicly disclose that information on LinkedIn for all the world to see and use.

## **THE PARTIES**

10. Plaintiff hiQ is a Delaware corporation with its principal place of business in San Francisco, California.

11. On information and belief, Defendant LinkedIn is a Delaware corporation with its principal place of business in Sunnyvale, California.

## **JURISDICTION AND VENUE**

12. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's first and second claims for relief seek a declaratory judgment under 28 U.S.C. § 2201 and 2202 that Plaintiff has not violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Digital Millennium Copyright Act, 17 U.S.C § 1201.

13. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's third through eleventh claims for relief because they arise out of the same common set of facts and conduct as Plaintiff's federal claims for relief.

14. This Court has personal jurisdiction over Defendant LinkedIn in this action

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

4

34556\6002784.1

1  because, on information and belief, LinkedIn's corporate headquarters and principal place of

2  business is within this judicial district, and LinkedIn has engaged in substantial business within

3  this district.

4       15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because

5  Defendant LinkedIn conducts substantial business within this District and a substantial part of the

6  acts or omissions giving rise to Plaintiff's claims occurred in this District. Venue is further proper

7  in this District pursuant to 28 U.S.C. § 1400(a) because this action relates to copyrights and

8  Defendant LinkedIn resides in this District.

9  **INTRADISTRICT ASSIGNMENT**

10       16.    Pursuant to N.D. Cal. Civil Local Rule 3-2(c), this case is an intellectual property

11  action appropriate for assignment on a district-wide basis.

12  **FACTUAL ALLEGATIONS**

13  **About hiQ Labs and its Services**

14       17.    hiQ was formed in July 2012 and has raised $14.5 million in two rounds of

15  funding. It presently has 24 employees, the majority of whom are in its San Francisco office, and

16  11 of whom have advanced degrees, including several PhDs. hiQ sells Fortune 500 clients

17  "people analytics" – i.e. insights to their workforce – that it deduces by performing computerized

18  analyses of the public profile information available on LinkedIn. hiQ provides its customers two

19  specific analytics services: (a) "Keeper," which tells employers which of their employees are at

20  the greatest risk of being recruited away, and (b) "Skill Mapper," a summary of the breadth and

21  depth of aggregate or individual skills possessed.

22       18.    hiQ uses the public profile section of the LinkedIn website as raw data for its

23  analysis and has historically used a variety of software and manual means to gather this

24  information. hiQ does not analyze the private sections of LinkedIn, such as profile information

25  that is only visible when you are signed-in as a member, or member private data that is visible

26  only when you are "connected" to a member. hiQ does not republish the information it collects

27  from LinkedIn, but instead applies analytics to create new business intelligence for its clients.

28  hiQ's services thus do not impair or impede the value of the LinkedIn social network. Rather they

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

5

34556\6002784.1

1  make it more valuable to have such a profile – an employer using the "Keeper" product might give

2  an employee a "stay bonus" or a career development or internal mobility opportunity, or

3  SkillMapper may demonstrate that its workforce lacks depth in a particular skill area, which could

4  lead the employer to offer its employees free training to make up for that deficit.

5  **The LinkedIn Professional Network and The Public Member Profile Portion of the Website.**

6      19.     The core of LinkedIn's business is a professional network that aggregates the

7  profile information of about half a billion professionals, their interrelationships, their posts, and

8  their cross-endorsements.  LinkedIn states that the purpose of the service is to "promote economic

9  opportunity" and provide a place for professionals "to meet, exchange, ideas, learn and find

10  opportunities…." *See* Exhibit 1 (LinkedIn User Agreement).

11      20.     LinkedIn member profiles contain resume information such as education, skills,

12  publications, certifications, and employment history.  Members can connect their LinkedIn

13  profiles to those of colleagues around the world.  LinkedIn's collection of profiles is a one-of-a-

14  kind resource.  It is the single largest, most up-to-date and authoritative repository about the

15  world's professional community.  There is no comparable data source anywhere else in the world.

16      21.     LinkedIn admittedly does not own the data that its members decide to share

17  publicly on LinkedIn's website.  LinkedIn explains to members that "you own the content and

18  information that you submit." *See* Exhibit 1 (LinkedIn User Agreement) at 3.1.  LinkedIn is

19  unequivocal that members control their profiles:  "You control the visibility and reach of your

20  LinkedIn profile." *See* Exhibit 2 (Public & Private Profiles | LinkedIn Help).  LinkedIn gives

21  members the ability and right to specify which portions of their profiles will be visible to their

22  direct connections, their network (those within three degrees of separation), all LinkedIn members,

23  and the "public."  The "public" setting (which is at issue here) gives access to *"[a]ll LinkedIn*

24  *members as well as others who find you through search engines (e.g. Google, Bing) or other*

25  *services."*  Exhibit 3 (showing public profile settings).  Public profiles may be reached via third-

26  party services (e.g. Google and Bing) and directly via a web address (URL) that LinkedIn creates

27  for its members.  Thus, LinkedIn acknowledges that a public setting will permit access for anyone

28  in the world with an internet connection.  The User Agreement explains that "Members and/or

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                     6                                     34556\6002784.1

1   Visitors may access and share your content and information, consistent with your settings and

2   degree of connection with them."  Exhibit 1 (LinkedIn User Agreement).

3         22.    LinkedIn has effectively become a public forum where professionals can meet and

4   exchange ideas, information, and news articles.  LinkedIn describes itself as a "community" and

5   users are able to post publicly, share other members' posts, and comment on other members'

6   posts.  As discussed more fully herein in the Eleventh Claim for Relief, LinkedIn cannot –

7   consistent with the free speech clause of the California Constitution – selectively exclude hiQ

8   from this "public" forum, even if LinkedIn's servers are considered "private" property.  The

9   California Supreme Court has definitively interpreted these constitutionally guaranteed free speech

10  rights as precluding an owner of private property from prohibiting such access when the property

11  has been opened to the public and constitutes a public forum.  The United States Supreme Court

12  has in turn upheld this California constitutional right as against a challenge that it amounts to a

13  "taking" of private property under the United States Constitution.  LinkedIn cannot have it both

14  ways even on its own web servers:  promising a public forum and public access on the one hand,

15  and then selectively excluding members of the public on the other.

16        23.    Since its founding in 2002, LinkedIn has created numerous successful revenue

17  streams, including selling services to corporations that help with their recruiting and sales

18  processes.  As of hiQ's launch in 2012, LinkedIn's annual revenues were on the order of nearly $1

19  billion, a number that had nearly quadrupled by the end of 2016.  In late 2016, LinkedIn was

20  purchased by Microsoft Corporation.

21  **LinkedIn's Surprising Cease and Desist Letter To hiQ**

22        24.    LinkedIn has known of hiQ since at least 2015 when it started participating in

23  hiQ's annual Elevate conference.  The hiQ Elevate conference was designed to build a community

24  around the emerging field of people analytics and has provided a regular forum for participants to

25  share insights and disseminate best practices.  LinkedIn has sent representatives to each iteration

26  of that conference since hiQ's founding.  hiQ has spoken freely about its public data collection

27  from LinkedIn at Elevate, so LinkedIn has always understood what hiQ does.  Over the years,

28  LinkedIn has itself participated regularly in hiQ Elevate events.  At a 2016 Elevate conference,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND                    7                          34556\6002784.1
INJUNCTIVE RELIEF

1    LinkedIn employee Lorenzo Canlas received special recognition and accepted the hiQ Elevate

2    "Impact Award."

3         25.     Given LinkedIn's awareness of hiQ over the years and its seeming support of the

4    business, hiQ was surprised when on May 23, 2017, without any forewarning, LinkedIn's legal

5    counsel emailed a letter to hiQ, stating that hiQ was improperly "access[ing] and copy[ing]"

6    LinkedIn public profile information.  The letter demanded that hiQ "[c]ease and desist accessing

7    or attempting to access or use LinkedIn's website, computers, computer systems, computer

8    network, computer programs, and data stored therein."  *See* Exhibit 4 (Cease-and-Desist Letter) at

9    2.  LinkedIn's letter stated that hiQ was in violation of the LinkedIn User Agreement, state

10   trespass law, the Computer Fraud and Abuse Act, California Penal Code 502, and the Digital

11   Millennium Copyright Act.  *Id*.  The letter also stated that any further access to the site would be

12   "without permission" and "without authorization."  Further, LinkedIn stated it has implemented

13   "technical measures" to block hiQ from the site.  *Id*.

14        26.     The LinkedIn User Agreement does not even apply to members of the general

15   public who access LinkedIn's website without an account or sign-in credentials.  Moreover,

16   LinkedIn itself ignores many of its own user terms, selectively allowing access and copying when

17   it wants and purporting to enforce terms only when it is advantageous to LinkedIn.  Thus,

18   LinkedIn user terms tell members that they control who can see and use their public profiles, but

19   LinkedIn is here deciding that hiQ is excluded from that otherwise public access.  In addition,

20   other for-profit companies, including Google and Bing, by necessity copy and index large portions

21   of the public portions or LinkedIn's website and display that information in their search engine

22   results for all the world to see.

23        27.     After receiving the cease-and-desist letter, hiQ promptly retained counsel who

24   contacted LinkedIn to explain hiQ's belief that it had a right to access public pages, that its

25   business is synergistic to LinkedIn, that the effect of LinkedIn's letter would devastate hiQ, and to

26   understand whether LinkedIn believed it was being harmed in any way.  LinkedIn's counsel was

27   unable to point to any interference or impairment with LinkedIn's servers from hiQ's accessing

28   the site, and conceded that various other commercial enterprises, including Google and Yahoo! are

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

8

34556\6002784.1

1    permitted to use automated software to access the LinkedIn site.  When hiQ asked counsel for

2    LinkedIn whether LinkedIn is planning to offer services to compete with hiQ's Keeper and Skill

3    Mapper analytics, he stated that he did not know the answer to that question.  When asked what

4    copyright or propriety interest LinkedIn is claiming in the public data displayed by members, he

5    stated clearly that LinkedIn is asserting no copyright claim.

6            28.    LinkedIn is thus improperly using the Computer Fraud and Abuse Act, the Digital

7    Millennium Copyright Act and related state penal code and trespass law, not as a shield – as

8    intended by those laws – to prevent harmful hacking and unauthorized computer access, but as a

9    sword to stifle competition and assert propriety control over data in which it has no exclusive

10   interest.  In other words, LinkedIn recognizes it has no valid propriety or copyright interest, so it

11   claims only that it has a propriety interest to control access to its website, treating that digital

12   realm as though it were physical real property.  Not only is the analogy inapposite, but LinkedIn

13   ignores that the public profile data of members would not reside on its website in the first place

14   but for its express promise that the date would be public for all to see and use.  Thus, while

15   LinkedIn can certainly prevent abusive access to its website, it should not be allowed to  pervert

16   the purpose of the laws at issue by using them to destroy putative competitors, engage in unlawful

17   and unfair business practices and suppress the free speech rights of California citizens and

18   businesses as alleged more fully herein.

19           29.    On May 30, 2017 counsel for hiQ sent a letter, attached as Exhibit 5, to LinkedIn

20   asking that hiQ be permitted to access the public profiles portion of the LinkedIn website, at least

21   in the interim while the parties discussed the possibility of a mutually amicable resolution.  As of

22   this date, LinkedIn has not responded.

23   **Recently Uncovered Evidence Suggests That LinkedIn Is Developing Its Own Analytics**

24   **Offerings Based On Public Profile Data.**

25           30.    In hiQ's investigation in connection with these proceedings, it discovered that

26   LinkedIn has started building its own offerings based on public member profiles. In a February

27   2015 earnings call, several years after hiQ's launch, LinkedIn's CEO announced, "This year, we

28   plan to enter a new category with products allowing companies to utilize LinkedIn in the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND                    9                          34556\6002784.1
INJUNCTIVE RELIEF

1   enterprise by leveraging content and data that members are already sharing publicly." When

2   discussing this "new category" of products, LinkedIn's CEO explained:

3               [T]here's an opportunity for LinkedIn to create value within an

4               enterprise, within an organization *leveraging information that's*

5               *already public*. So by way of example, *our public profile*

                *information*, which particularly at larger organizations, *you see some*

6               *of those companies turning to LinkedIn to look up someone with*

7               *their own company, because of how robust that public profile*

8               *information can prove to be.*

                *So there's examples of content or information that's already*

9               *publicly available, and we're trying to think about ways in which we*

10              *can better leverage that to create value within an organization.*

11  A page on the LinkedIn website states that it is also investing in its own data science projects. *See*

12  <<https://engineering.linkedin.com/data>> (accessed 6/7/17).

13          31.     LinkedIn is aware that its denial of access by hiQ to these public profiles will

14  jeopardize hiQ's existing contracts and prospective economic advantage and threaten hiQ's very

15  survival. hiQ has explicitly made LinkedIn aware of existing contracts with eBay, Capital One,

16  and GoDaddy, and prospective relationships with Bank of New York Mellon, Chevron, Groupon,

17  Honeywell, IBM, Visier, and Jobvite. Exhibit 5 (Response to Cease-and-Desist Letter) at 3. hiQ

18  has also informed LinkedIn of current financing negotiations that are imperiled by its threats. *Id*.

19  LinkedIn has nevertheless refused to revoke its unlawful cease and desist demands and has never

20  identified any actual harm to itself or anyone else from hiQ's continued access to purely public

21  profiles, access that is freely available to this day to anyone else in the world with an internet

22  connection.

23                          **FIRST CLAIM FOR RELIEF**

24  **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate the Computer Fraud**

25              **and Abuse Act 18 U.S.C. § 1030, By Accessing LinkedIn Public Profiles**

26          32.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

27  though fully set forth herein.

28          33.     Under the Declaratory Judgment Act, courts may "declare the rights and other legal

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                          10                          34556\6002784.1

1    relations" of parties "to a case of actual controversy."  28 U.S.C. § 2201.

2              34.      An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

3    cease-and-desist-letter and threats of litigation, is attempting to use the law for an improper,

4    anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

5    letter alleges that hiQ's continued access of LinkedIn's website would violate  the Computer

6    Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  LinkedIn has also threatened hiQ with

7    litigation if it does not stop accessing LinkedIn's website, and complying with LinkedIn's

8    demands would essentially destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's

9    business by implementing technical measures to prevent hiQ from accessing, and assisting others

10   to access, LinkedIn's site.  hiQ thus has a real and reasonable apprehension that it will be subject

11   to liability if it continues to access LinkedIn's website.  Moreover, this apprehension was caused

12   by LinkedIn's actions—namely, LinkedIn's cease-and-desist letter and its implementation of

13   technology to block hiQ from accessing its site.

14             35.      Plaintiff seeks a declaration that it has not and will not be in violation of the CFAA

15   by continuing to access and copy data from the public member profile sections of LinkedIn and

16   that LinkedIn cannot use the provisions of the CFAA for an improper purpose in a way that leads

17   to independent violations of California law and infringes on Plaintiff's rights.

18             36.      hiQ prays for relief as set forth below.

19                              **SECOND CLAIM FOR RELIEF**

20       **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate the Digital**

21      **Millennium Copyright Act, 17 U.S.C. § 1201, By Accessing LinkedIn Public Profiles**

22             37.      hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

23   though fully set forth herein.

24             38.      An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

25   cease-and-desist-letter and threats of litigation, is attempting to use the law for an improper,

26   anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

27   letter alleges that hiQ's continued access of LinkedIn's website would violate  the Digital

28   Millennium Copyright Act (17 U.S.C. §§ 512, 1201) ("DMCA").  LinkedIn has also threatened

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND           11                          34556\6002784.1
INJUNCTIVE RELIEF

1   hiQ with litigation if it does not stop accessing LinkedIn's website, and complying with

2   LinkedIn's demands would essentially destroy hiQ's business.  Indeed, LinkedIn has already

3   threatened hiQ's business by implementing technical measures to prevent hiQ from accessing, and

4   assisting others to access, LinkedIn's site.  hiQ thus has a real and reasonable apprehension that it

5   will be subject to liability if it continues to access LinkedIn's website.  Moreover, this

6   apprehension was caused by LinkedIn's actions—namely, LinkedIn's cease-and-desist letter and

7   its implementation of technology to block hiQ from accessing its site.

8          39.     Plaintiff seeks a declaration that it has not and will not be in violation of the Digital

9   Millennium Copyright Act by continuing to access and copy data from the public member profile

10  sections of LinkedIn and that LinkedIn cannot use the provisions of the DMCA for an improper

11  purpose in a way that leads to independent violations of California law and infringes on Plaintiff's

12  rights.

13         40.     hiQ prays for relief as set forth below.

## THIRD CLAIM FOR RELIEF

### Declaratory Judgment that hiQ Has Not Committed and Will Not Commit Common Law
### Trespass To Chattels By Accessing LinkedIn Public Profiles

17         41.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

18  though fully set forth herein.

19         42.     An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

20  cease-and desist-letter and threats of litigation, is attempting to use the law for an improper,

21  anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

22  letter alleges that hiQ's continued access of LinkedIn's website would constitute a trespass to

23  chattels under California common law.  LinkedIn has also threatened hiQ with litigation if it does

24  not stop accessing LinkedIn's website, and complying with LinkedIn's demands would essentially

25  destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's business by implementing

26  technical measures to prevent hiQ from accessing, and assisting others to access, LinkedIn's site.

27  hiQ thus has a real and reasonable apprehension that it will be subject to liability if it continues to

28  access LinkedIn's website.  Moreover, this apprehension was caused by LinkedIn's actions—

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                              12                              34556\6002784.1

1  namely, LinkedIn's cease-and-desist letter and its implementation of technology to block hiQ from

2  accessing its site.

3       43.    Plaintiff seeks a declaration that it has not committed and will not commit trespass

4  to chattels by continuing to access and copy data from the public member profile sections of

5  LinkedIn and that LinkedIn cannot use common law protections against trespass to chattels for an

6  improper purpose in a way that leads to independent violations of California law and infringes on

7  Plaintiff's rights.

8       44.    hiQ prays for relief as set forth below.

9  **FOURTH CLAIM FOR RELIEF**

10  **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate California Penal**

11  **Code § 502(c) By Accessing LinkedIn Public Profiles**

12       45.    hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

13  though fully set forth herein.

14       46.    An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

15  cease-and desist-letter and threats of litigation, is attempting to use the law for an improper,

16  anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

17  letter alleges that hiQ's continued access of LinkedIn's website would constitute a violation of

18  California Penal Code § 502(c).  LinkedIn has also threatened hiQ with litigation if it does not

19  stop accessing LinkedIn's website, and complying with LinkedIn's demands would essentially

20  destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's business by implementing

21  technical measures to prevent hiQ from accessing, and assisting others to access, LinkedIn's site.

22  hiQ thus has a real and reasonable apprehension that it will be subject to liability if it continues to

23  access LinkedIn's website.  Moreover, this apprehension was caused by LinkedIn's actions—

24  namely, LinkedIn's cease-and-desist letter and its implementation of technology to block hiQ from

25  accessing its site.

26       47.    Plaintiff seeks a declaration that it has not and will not be in violation of the Cal.

27  Penal Code § 502(c) by continuing to access and copy date from the public member profile

28  sections of LinkedIn and that LinkedIn cannot use the provisions of the California Penal Code for

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

13

34556\6002784.1

1   an improper purpose in a way that leads to independent violations of California law and infringes

2   on Plaintiff's rights.

3       48.     hiQ prays for relief as set forth below.

4                           **FIFTH CLAIM FOR RELIEF**

5                       **Intentional Interference with Contract**

6       49.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

7   though fully set forth herein.

8       50.     hiQ has valid, current service contracts with each of its clients, including without

9   limitation eBay, Capital One, and GoDaddy.

10      51.     LinkedIn has and had knowledge of hiQ's valid customer contracts.  hiQ has

11  informed LinkedIn of its base of clients such that it is aware of these contracts.  hiQ has also

12  provided notice to LinkedIn of a pending financing, as well as potential deals with Bank of New

13  York Mellon, Chevron, Groupon, Honeywell, IBM, Visier and Jobvite.  All of these contracts and

14  prospective economic relationships are endangered by LinkedIn's conduct.

15      52.     LinkedIn was aware of the harm to hiQ that would result from denying hiQ access

16  to its public member pages but chose to proceed anyway.  hiQ gave LinkedIn oral and written

17  notice that its customer relationships stood to be destroyed if its ability to access public profile

18  pages was denied.  In response to LinkedIn's cease and desist letter, hiQ wrote that it has

19  "millions of dollars' worth of business that now hangs in the balance because of LinkedIn's

20  wrongful bait and switch."  hiQ further wrote that it was "presently in the midst of a financing

21  round, which is now endangered because of your letter."

22      53.     LinkedIn's conduct will disrupt or require breach or termination of these contracts.

23  hiQ's entire business is premised on applying data science to information gathered from LinkedIn

24  public profile pages.  Preventing hiQ from accessing this data will necessarily mean that hiQ can

25  no longer perform under the contracts with its clients.

26      54.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

27  suffer damages including but not limited to lost business and potential bankruptcy.  Unless

28  LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND                14
INJUNCTIVE RELIEF

34556\6002784.1

1   irreparable harm in that it will be forced to terminate the contracts with its clients and may be

2   forced out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless

3   the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

4   prevent hiQ's access altogether.

5       55.     hiQ has no adequate remedy at law because monetary damages will not afford

6   adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

7   operating.

8       56.     hiQ prays for relief as set forth below.

9                       **SIXTH CLAIM FOR RELIEF**

10              **Intentional Interference with Prospective Economic Advantage**

11      57.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

12  though fully set forth herein.

13      58.     As detailed in Plaintiff's fifth claim for relief above, LinkedIn intentionally

14  interfered with hiQ's contracts.

15      59.     LinkedIn committed an independently wrongful act when it revoked access to

16  public profiles for three reasons: (1) LinkedIn breached its express promises that members control

17  access to these pages, LinkedIn has only a non-exclusive license, and visitors may access and use

18  these pages; (2) LinkedIn has violated California's Unfair Competition Law as detailed in

19  Plaintiff's seventh through ninth claims for relief; and (3) LinkedIn has impermissibly interfered

20  with California free speech protections.  LinkedIn should not be allowed to intentionally and

21  wrongfully disrupt hiQ's contracts and prospective business dealings by revoking its access to

22  avowedly public material.

23      60.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

24  continue to suffer damages including but not limited to lost business and potential bankruptcy.

25  Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

26  irreparable harm in that it will be forced to terminate the contracts with its clients and may be

27  forced out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless

28  the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND          15                    34556\6002784.1
INJUNCTIVE RELIEF

1   prevent hiQ's access altogether.

2       61.     hiQ has no adequate remedy at law because monetary damages will not afford

3   adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

4   operating.

5       62.     hiQ prays for relief as set forth below.

6                           **SEVENTH CLAIM FOR RELIEF**

7       **Unfair Competition in Violation of Cal. Bus. Prof. Code § 17200,** *et seq.*

8       63.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

9   though fully set forth herein.

10      64.     Absent injunctive relief, hiQ will suffer loss of money or property and an economic

11  injury in fact, specifically being forced to terminate contracts with its customers and likely close

12  its business and lay off its employees, and thus has standing to seek relief under section 17200.

13      65.     LinkedIn's access denial violates the policy or spirit of antitrust law.  LinkedIn is

14  using its dominant presence as the world's largest professional networking platform to assume

15  exclusive proprietary control over data that is owned not by LinkedIn, but by its members, and

16  which those members have explicitly designated as public.  Indeed, LinkedIn promises members

17  the ability to control public access to their profiles precisely to incent members to join LinkedIn.

18  LinkedIn's recent and threatened actions thus suppress competition and violate the core principles

19  and spirit of the antitrust laws.

20      66.     Likewise, antitrust law has long recognized the "essential facilities" doctrine, which

21  precludes a monopolist or attempted monopolist from denying access to a facility it controls that is

22  essential to its competitors.  Such anticompetitive conduct threatens the extension of the

23  monopolist's control from one stage of production to another, or from one market to another.

24      67.     LinkedIn's member public profiles is such an essential facility because there is no

25  viable alternative to LinkedIn's dominant 500 million member database to obtain data relevant in

26  the field of employee data analytics.  Even if it were theoretically possible to create another

27  competing networking platform and database, that is not a reality given LinkedIn's undeniable

28  dominance.  There is no technical barrier or subsequent cost to LinkedIn providing access.  Until

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

1  recently, LinkedIn has been providing access to hiQ without burden or complaint. hiQ seeks non-

2  discriminatory access that others, including Google, Bing, and Yahoo, already enjoy.

3       68.    The impact of LinkedIn's actions on hiQ is obvious and devastating; hiQ's very

4  business model and prospects, as well as its employee relationships, are threatened beyond repair.

5  LinkedIn's purported justification – protection of member data – is by contrast obviously

6  pretextual as hiQ accesses only data that LinkedIn members have explicitly made public.

7  LinkedIn allows all major search engines to access, copy and display portions of this member

8  public data without complaint. LinkedIn has never hinted at any concrete harm that hiQ's access

9  has caused to LinkedIn or its members. LinkedIn has repeatedly complained about hiQ's

10 "copying" of public data but does not contend that it has any copyright or ownership interest in the

11 data. It simply wants to lock down website access to public data in which it has no independent

12 legal right in order to create propriety control where no could otherwise legally exist.

13      69.    Thus, under any standard LinkedIn's actions constitute actionable violations of the

14 UCL's "unfair" business practices prong.

15      70.    As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

16 continue to suffer loss of money and property including but not limited to lost business and

17 potential bankruptcy. Unless LinkedIn is restrained by a preliminary and permanent injunction,

18 hiQ will suffer severe, irreparable harm in that it will be forced to terminate contracts with its

19 clients and may be forced out of business entirely. hiQ is informed and believes, and on that basis

20 alleges, that unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access

21 to its website or prevent hiQ's access altogether.

22      71.    hiQ has no adequate remedy at law because monetary damages will not afford

23 adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

24 operating.

25      72.    Plaintiff prays for relief as set forth below.

26                              **EIGHTH CLAIM FOR RELIEF**

27        **Unlawful Competition in Violation of Cal. Bus. Prof. Code § 17200, *et seq.***

28      73.    Absent injunctive relief, hiQ will suffer loss of money or property and an economic

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                        17                         34556\6002784.1

1 | injury in fact, specifically being forced to terminate contracts with its customers and likely close

2 | its business and lay off its employees, and thus has standing to seek relief under section 17200.

3 |       74.     LinkedIn's actions establish a claim of unlawful competition on multiple grounds.

4 | LinkedIn's tortious interference with hiQ's current and prospective contractual and business

5 | relationships, its breach of promissory estoppel, and its violation of California free speech

6 | protection all give rise to a claim under the "unlawful" business practices prong of the UCL.

7 |       75.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

8 | continue to suffer damages including but not limited to lost business and potential bankruptcy.

9 | Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

10 | irreparable harm in that it will be forced to terminate contracts with its clients and may be forced

11 | out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless the

12 | court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

13 | prevent hiQ's access altogether.

14 |       76.     hiQ has no adequate remedy at law because monetary damages will not afford

15 | adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

16 | operating.

17 |       77.     hiQ prays for relief as set forth below.

18 | **NINTH CLAIM FOR RELIEF**

19 | **Fraudulent Competition in Violation of Cal. Bus. Prof. Code § 17200, *et seq.***

20 |       78.     Absent injunctive relief, hiQ will suffer loss of money or property and an economic

21 | injury in fact, specifically being forced to breach contracts with its customers and likely close its

22 | business and lay off its employees, and thus has standing to seek relief under section 17200.

23 |       79.     LinkedIn's actions constitute fraudulent competition.  LinkedIn made a clear

24 | promise that members' profile pages would be "public." LinkedIn guarantees members that *the*

25 | *members* "control the visibility and reach of [their] LinkedIn profile."  The User Agreement tells

26 | each member that  "*you* own the content and information that you submit," and "you are granting

27 | LinkedIn [only a] non-exclusive license." It further provides, "Members and/or Visitors *may*

28 | *access and share your content and information, consistent with your settings and degree of*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

18

34556\6002784.1

Case 3:17-cv-03301-EMC Document 1-1 Filed 06/07/17 Page 19 of 23

1   *connection with them*." These statements are likely to deceive the public, as LinkedIn is now

2   taking the position that it has the ability to control who can access member profiles and which

3   information will be public.

4         80.     hiQ reasonably relied to its detriment on LinkedIn's promises of public access and

5   LinkedIn's participation at hiQ conferences in building its business around those public profiles.

6         81.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

7   continue to suffer economic injury including but not limited to lost business and potential

8   bankruptcy. Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will

9   suffer severe, irreparable harm in that it will be forced to terminate contracts with its clients and

10   may be forced out of business entirely. hiQ is informed and believes, and on that basis alleges, that

11   unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its

12   website or prevent hiQ's access altogether.

13         82.     hiQ has no adequate remedy at law because monetary damages will not afford

14   adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

15   operating.

16         83.     hiQ prays for relief as set forth below.

17                             **<u>TENTH CLAIM FOR RELIEF</u>**

18                                 **Promissory Estoppel**

19         84.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

20   though fully set forth herein.

21         85.     As detailed above, LinkedIn, made a clear promise to the public that the members

22   control who will be able to access their profiles and that member profiles will be visible to the

23   general public.

24         86.     Further, LinkedIn's course of dealings towards hiQ led hiQ to believe that LinkedIn

25   would allow it continued access to its member pages and thus created an enforceable promise.

26   LinkedIn was fully aware of hiQ's activities for several years, participated in hiQ's annual

27   conferences, and never once objected. This course of conduct led hiQ to believe that LinkedIn had

28   no complaints about hiQ's access to public profile date.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                19                         34556\6002784.1

87.     hiQ reasonably relied on LinkedIn's promises. hiQ built a data analytics company on the premise that LinkedIn's member profiles were and would remain public.  Other businesses have been built on a similar model, including search engines Altavista, Excite, and Google and data mining and brokerage companies Lexis/Nexis, Intelius, and CoreLogic.  hiQ's reliance was further reasonable because LinkedIn encouraged continued reliance over time by attending hiQ's conferences, where it learned of hiQ's business model, growth, expansion, and continued use of data from its members' profiles.  LinkedIn should reasonably have expected these actions to induce detrimental reliance on the part of hiQ.

88.     hiQ's reliance on LinkedIn's promise was to its substantial detriment.  Based on LinkedIn's actions, hiQ spent millions of dollars and thousands of hours developing its technology.  It has over two dozen employees now, numerous customers and many prospects. This was all built on LinkedIn public profile pages and it would be lost if LinkedIn were permitted to suddenly reverse course on its promises.

89.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will continue to suffer damages including but not limited to lost business and potential bankruptcy. Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe, irreparable harm in that it will be forced to breach the contracts with its clients and may be forced out of business entirely. hiQ is informed and believes, and on that basis alleges, that unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or prevent hiQ's access altogether.

90.     hiQ has no adequate remedy at law because monetary damages alone will not afford adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue operating.

91.     hiQ prays for relief as set forth below.

### ELEVENTH CLAIM FOR RELIEF

#### Violation of Right to Free Speech

92.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

93.     LinkedIn's selective blockage of hiQ's access to publicly available information on its website violates hiQ's constitutional free speech rights under Article I, Section 2 of the California Constitution, which provides that "*[e]very person may freely speak, write, and publish his or her sentiments on all subjects.*"

94.     The California Constitution (like the U.S. Constitution) protects the functioning of public fora as places for speech to be uttered and *be heard* (not just the former).  *See Cal. Newspaper Pub's Asso. v. Burbank*, 51 Cal App 3d 50, 123 (1975) (ban on "newsracks" was unconstitutional;  free speech is not just an "in personam" right); *Lamont v. Postmaster General*, 381 U.S. 301, 307-308 (1965)  These rights of access extend to the world of data analysis for commercial purposes.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011).

95.     California's free speech guarantee protects expression even on privately owned property.  *Robins v. PruneYard Shopping Center*, 23 Cal. 3d 899, 592 P.2d 341 (1979).  The California Supreme Court rejected the argument that private property rights trump the interests of free expression, noting the "potential impact of the public forums sought here," a shopping center. In light of "the significance of the growing importance of the shopping center," the Court reasoned that "to prohibit expressive activity in the centers would impinge on constitutional rights."  *Id.* The U.S. Supreme Court affirmed the ruling.  *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83-84 (1980).

96.     Like the *PruneYard* shopping center, LinkedIn's website is effectively a public forum.  *See, e.g., Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (public forum is "traditionally defined as a place that is open to the public where information is freely exchanged… Websites that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions, meet the definition of a public forum" for purposes of the anti-SLAPP statute).  LinkedIn expressly opens the "public" profile pages section of its website to the public.  LinkedIn has a staggering 500 million members and anyone can join.  Further, LinkedIn refers to itself as a "community" and expressly holds itself out as a place "to meet,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                21                              34556\6002784.1

1   exchange ideas, [and] learn," making it a modern day equivalent of the town square, a marketplace

2   of ideas of one-time unimaginable scale. Having promised its members that the public profiles on

3   its site could be viewed by everyone, LinkedIn may not as a constitutional matter selectively

4   exclude hiQ.

5         97.     LinkedIn, through restricting hiQ's access to public information in a public forum,

6   would violate hiQ's right to free speech under the California Constitution. LinkedIn's conduct

7   amounts to a denial of hiQ's right to access and receive information. LinkedIn has no compelling

8   interest which would justify excluding hiQ from its public forum.

9         98.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

10   continue to suffer damages including but not limited to lost business and potential bankruptcy.

11   Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

12   irreparable harm in that it will be forced to terminate contracts with its clients and may be forced

13   out of business entirely. hiQ is informed and believes, and on that basis alleges, that unless the

14   court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

15   prevent hiQ's access altogether.

16         99.     LinkedIn's violation of hiQ's rights, as guaranteed by Cal. Const. art. I, § 2, entitles

17   hiQ to receive compensatory damages, attorney's fees pursuant to Code Civ. Proc. § 1021.5, and

18   injunctive relief.

19         100.    hiQ has no adequate remedy at law because monetary damages alone will not

20   afford adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to

21   continue operating.

22         101.    hiQ prays for relief as set forth below.

23                             **PRAYER FOR RELIEF**

24         WHEREFORE, Plaintiff hiQ prays for judgment against Defendant LinkedIn as follows:

25         A.  For preliminary injunctive relief, pursuant to Fed. R. Civ. P. 65, to prevent LinkedIn

26              from curtailing hiQ's access to LinkedIn member public profiles;

27         B.  For a declaration that LinkedIn is now and shall remain obligated to continue to permit

28              hiQ to access and use data from public LinkedIn member public profiles;

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF             22                               34556\6002784.1

C.  For a declaratory judgment that hiQ has not violated the DMCA, CFAA, or California Penal Code § 502(c) or committed common law trespass;

D.  Any damages proximately caused by the wrongful denial access pursuant to the above causes of action that permit damages;

E.  hiQ's attorneys fees and costs incurred in pursuing these claims as permitted by law; and

F.  For such other and further relief as the Court deems just and proper.

Dated: June 7, 2017                          FARELLA BRAUN + MARTEL LLP


                                             By:  ___/s/ C. Brandon Wisoff___
                                                  C. Brandon Wisoff

                                             Attorneys for Plaintiff hiQ Labs

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                    23                    34556\6002784.1