JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
NICHOLAS D. FRAM (State Bar No. 288293)
nicholas.fram@mto.com
ELIA HERRERA (State Bar No. 293278)
elia.herrera@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for LinkedIn Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Craigslist, Inc., et al.,<br><br>      Plaintiffs,<br><br>  vs.<br><br>3taps, Inc., et al.<br><br>      Defendants. | Case No. 12-cv-03816-CRB<br>(also filed in 17-cv-03301-EMC<br>with courtesy copy to 18-cv-00855-NC)<br><br>**LINKEDIN CORPORATION'S OPPOSITION TO 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED AND MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>Judge:   Hon. Charles R. Breyer<br>(on the motion)<br><br>Trial Date:    None Set |

12-cv-03816-CRB

LINKEDIN CORP.'S OPPOSITION TO 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED AND MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

## I. PRELIMINARY STATEMENT

LinkedIn files this statement in opposition to 3taps, Inc.'s ("3taps") motion to relate this case to *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-cv-03301-EMC, and in support of its motion pursuant to Civil Local Rules 3-12 and 7-11 to relate this case to *Craigslist, Inc. v. 3taps, Inc.*, No. 12-cv-03816-CRB. *hiQ* involves different circumstances and a different offending party. In contrast to the single claim for declaratory relief in 3taps' complaint, *hiQ* involves seven affirmative state law tort, statutory, and constitutional claims, and requests for declaratory relief under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and California statutory and tort law. Indeed, the principal legal question upon which Judge Chen premised the preliminary injunction hiQ received—whether LinkedIn acted in an anticompetitive manner *toward hiQ* and in doing so violated California's Unfair Competition Law ("UCL")—is wholly absent from 3taps' complaint.[1]

3taps is correct that this case is related to another, lower numbered case: *Craigslist*. In *Craigslist*, Judge Breyer thoroughly examined the text and structure of the CFAA and held that Craigslist could revoke 3taps' authorization under the CFAA after 3taps had engaged in mass extraction (or "scraping") of data from Craigslist's website to sell to others. Here, 3taps seeks a declaration that LinkedIn cannot invoke exactly the same statute to revoke access in exactly the same manner to exactly the same party who seeks to scrape data for essentially the same reason. Failure to relate this case to *Craigslist* would result in unduly burdensome duplication of labor and could lead to conflicting outcomes, resulting in 3taps being permitted to profit from scraping LinkedIn but not Craigslist. The Court should relate this case to *Craigslist*, and not relate it to *hiQ*.[2]

## II. FACTUAL AND PROCEDURAL HISTORY

### A. *Craigslist v. 3taps*

Craigslist sued 3taps in 2012, alleging violations of the CFAA and related statutes. Craigslist alleged that 3taps had "mass copie[d] tens of millions of posting from craigslist in 'real time'" from its website through automated data scraping, and then provided that data to "all manner

---

[1] *hiQ* is currently stayed for all purposes and Judge Chen's preliminary injunction is on appeal, with oral argument set for March 15, 2018.

[2] In the alternative, the Court should decline to relate this case to either lower numbered case. 3taps requested and received a judicial assignment in the San Jose Division. LinkedIn is puzzled why 3taps would now seek to relate this case to a stayed case in the San Francisco division.

of for-profit entities to copy, repurpose, redisplay, redistribute, surround with advertisements . . . and otherwise exploit commercially." *Craigslist*, ECF No. 35 ¶ 3. The central issue became whether Craigslist could impose CFAA liability on 3taps for accessing its website and servers "without authorization" after Craigslist had affirmatively withdrawn 3taps' authorization through targeted cease and desist letters and the imposition of technological measures.

Judge Breyer analyzed this central question extensively. In denying 3taps' original motion to dismiss the CFAA count, the Court concluded that 3taps access to "Craigslist after the clear statements regarding authorization in the cease and desist letters and the technological measures to block them constitutes unauthorized access under the [CFAA]." 942 F. Supp. 2d 962, 969-70 (N.D. Cal. 2013) ("*Craigslist I*"). 3taps then requested that it be able to renew its motion to dismiss and brief the same issue presented here: whether the CFAA applied to "public information on public websites." *Craigslist*, ECF No. 78 at 9. Judge Breyer granted that request, and Craigslist and *amici curiae* all submitted briefs. In a detailed and thorough opinion, Judge Breyer denied 3taps' renewed motion and held that nothing in the text of the CFAA prevented Craigslist from revoking authorization to access its website, even though its website was generally accessible to the public. *Craigslist Inc. v. 3taps Inc.*, 964 F. Supp. 2d 1178, 1182-83 (N.D. Cal. 2013) ("*Craigslist II*").

After several more years of vigorous litigation and hundreds of docket entries, the case concluded with a stipulated permanent injunction enjoining 3taps as well as its CEO, Greg Kidd,[3] from, *inter alia*, accessing, copying or downloading any content from the Craigslist website and circumventing technological measures that regulated access to the site. *Craigslist*, ECF No. 272. Judge Breyer retained and has continuing jurisdiction in order to enforce the terms of the injunction.

### B.     *hiQ v. LinkedIn*

*hiQ* involves different conduct and many different legal issues. hiQ alleges that LinkedIn violated the UCL, the free speech provision of California's Constitution, and engaged in unlawful acts of intentional interference with contract and prospective business relations and promissory estoppel when it requested that hiQ stop accessing LinkedIn's website. hiQ alleges that it accessed

---

[3] LinkedIn was surprised to learn that Greg Kidd and his alter ego, Hard Yaka, are investors in hiQ. This information was never disclosed until two months after 3taps filed an *amicus* brief in support of hiQ in the pending Ninth Circuit appeal in that case (No. 17-16783, ECF No. 64).

LinkedIn's website in order to copy information from the LinkedIn profiles of its clients' employees in order "to create new business intelligence for its clients." *hiQ* ECF No. 1 ¶ 18. hiQ alleges that LinkedIn had known about hiQ's activities for an extended period, and that LinkedIn's decision to revoke hiQ's access under the CFAA and other laws was animated by LinkedIn's desire to compete with hiQ. *Id.* ¶¶ 24, 30-31. LinkedIn strongly denies these allegations.

hiQ moved for and Judge Chen granted a preliminary injunction premised on its state law causes of action. In granting the preliminary injunction, Judge Chen held that "hiQ has raised serious questions with respect to its claim that LinkedIn is unfairly leveraging its power in the professional networking market for an anticompetitive purpose." *hiQ Labs, Inc. v. LinkedIn Corp.*, 2017 WL 3473663 at *11 (N.D. Cal. 2017). Judge Chen opined on the CFAA, but only in the context of LinkedIn raising it as a defense to hiQ's motion, and did not reach any final ruling on hiQ's declaratory judgment claim. *Id.* at *4-9. LinkedIn promptly appealed the grant of the preliminary injunction to the Ninth Circuit, and all activities in the District Court are stayed.

### C. 3taps' Letter to LinkedIn and Subsequent Lawsuit

On January 16, 2018, counsel for LinkedIn received a letter from counsel for 3taps, informing LinkedIn that "3taps intends to begin scraping publicly-available data from LinkedIn.com in the coming weeks" through automated means, citing Judge Chen's opinion in *hiQ* as well as a recent Ninth Circuit decision, *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948 (9th Cir. 2018). Blavin Decl., Ex. A. LinkedIn replied, revoking any authorization for 3taps to access LinkedIn's website and servers and disputing 3taps' interpretation of *hiQ* and *Rimini Street*. Blavin Decl., Ex. B. LinkedIn also pointed out that 3taps was well aware from *Craigslist II* "that website operators could invoke the CFAA to prohibit bad actors from visiting their publicly available websites." *Id.* LinkedIn received no response to its letter. Blavin Decl. ¶ 4.

3taps then brought this single-count complaint against LinkedIn, seeking a declaratory judgment that its decision to scrape LinkedIn does not violate the CFAA. *3taps* ECF No. 1. Citing *hiQ*, 3taps candidly explains that it is "determined to begin using automated means to access and use publicly available facts and information on LinkedIn's webpage." *Id.* ¶ 16. 3taps does not allege that it competes with LinkedIn or that LinkedIn has any plans to compete with it.

### III. ANALYSIS

Local Rule 3-12(a) provides that one case is related to another when "(1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." These criteria are not met as to *hiQ*, but are as to *Craigslist*.

#### A. This Case Is Not Related to *hiQ*

None of the reasons 3taps advances for relating this case to *hiQ* have merit. *First*, 3taps argues that the "issue of law" and "background facts" of its lawsuit are "essentially identical" to those in *hiQ*. This is incorrect. hiQ alleges that Linked revoked its access so that LinkedIn could develop a competing product. 3taps makes no such factual allegation, and does not even allege that it competes or seeks to compete with LinkedIn. It is clear from the *Craigslist* case why 3taps wants unfettered access to LinkedIn's data: so that it can sell the data wholesale to other parties. Further, there are many more and different legal issues in *hiQ*, including the issue of whether LinkedIn's conduct toward hiQ was anticompetitive and in violation of the UCL.

*Second*, 3taps argues that failure to relate could lead to unworkable results because of its concern that "LinkedIn would be put in the impossible position of being under separate and irreconcilable court orders regarding the technical protections it is permitted to use" to block scrapers like 3taps. Mot. at 4:7-9. This argument rests on a fundamental misunderstanding of the CFAA. 3taps' suit concerns whether LinkedIn can employ the CFAA, a legal measure, to revoke 3taps' access—it will have no bearing on the kinds of technical self-help that LinkedIn can employ to regulate access to its website. Judge Chen's preliminary injunction prohibiting LinkedIn from using technical measures to block hiQ's access is based on hiQ's claim under the UCL; it is not based on the CFAA. That LinkedIn can provide access to hiQ while maintaining its technical defenses against others itself contradicts 3taps' position.

#### B. This Case Is Related to *Craigslist*

By contrast, all of the main criteria in Rule 3-12(a) are met as to *Craigslist*. *First*, the party whose conduct is at issue—3taps—and the conduct in which it wishes to engage—mass scraping of website data so that it can resell that information—is exactly the same in both cases. Courts

frequently relate cases where the offending conduct and the offender are the same, even though the victims of that conduct may be different.  *See, e.g., McGee v. Ross Stores, Inc.*, 2007 WL 2900507 at *2 (N.D. Cal. Oct. 1, 2007) (Breyer, J.) (relating cases with same offender but different victims where "separate assignment raises the possibility of inconsistent rulings"); *Fin. Fusion, Inc. v. Ablaise Ltd.*, 2006 WL 3734292, at *3 (N.D. Cal. Dec. 18, 2006) (involving "same accused infringer").  Though LinkedIn and Craigslist are different targets of 3taps, they are similarly situated in that they both operate websites containing content that 3taps wants to scrape.  That this case and *hiQ* involve the "same defendant" is not relevant given that both are declaratory relief cases.

   *Second*, Judge Breyer already extensively considered the sole legal issue 3taps raises here in in *Craigslist I* and *Craigslist II*, and assigning the case to him will promote judicial efficiency and reduce unduly burdensome labor.  LinkedIn plans to raise the same arguments that Craigslist made as to why LinkedIn can revoke 3taps' authorization under the CFAA: that the text, structure, legislative history, and judicial interpretation of the CFAA endow LinkedIn with this right.

   *Third*, failure to relate this case to *Craigslist* could lead to inconsistent results.  3taps seeks to scrape LinkedIn for the same reason that it sought to scrape Craigslist: to sell LinkedIn's members' data without restriction.  This is the same conduct that 3taps is permanently enjoined from doing to Craigslist.  It is exactly this kind of gamesmanship—doing the same thing but trying for a different result—that Rule 3-12 is designed to prevent.  3taps offers no explanation as to why it should be permitted to scrape LinkedIn and sell LinkedIn data, but cannot do so for Craigslist.

   *Finally*, the fact that judgment against 3taps was entered in *Craigslist* in 2015 is immaterial.  Civil Local Rule 3-12(b) specifically contemplates relation of future cases to previously filed cases, even closed ones, in that it permits relation "to an action which is or *was* pending in this District." (emphasis added).  The rule is flexible, permitting courts to relate cases whenever the criteria in Rule 3-12(a) are met.  Although 3taps is no longer an active litigant in *Craigslist*, the case remains open and Judge Breyer maintains continuing jurisdiction over the terms of the permanent injunction that prohibits 3taps from scraping Craigslist—the very activity it now wants to direct at LinkedIn.

## IV. CONCLUSION

   The Court should relate this case to *Craigslist*, and decline to relate this case to *hiQ*.

| | | |
|---|---|---|
| 1 | DATED:  February 15, 2018 | Respectfully submitted, |
| 2 | | MUNGER, TOLLES & OLSON LLP |

By:  */s/ Jonathan H. Blavin*
         JONATHAN H. BLAVIN

Attorneys for LinkedIn Corporation