THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone: (415) 659-1805
Facsimile:  (415) 659-1950

Attorney for Non-Party
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| hiQ Labs, Inc., | CASE No.:  17-cv-03301-EMC |
| Plaintiff, | **NON-PARTY 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER N.D. CAL. CIVIL LOCAL RULE 3-12** |
| v. | |
| LinkedIn, Corp., | |
| Defendant. | **DECLARATION OF THOMAS V. CHRISTOPHER [filed under separate cover)** |
| | **[PROPOSED] ORDER [filed under separate cover]** |
| | **Date:    No hearing requested**<br>**Time:    No hearing requested**<br>**Ctrm:    No hearing requested**<br>**Judge:   Hon. Edward M. Chen** |
| | **Trial date:  None Set.** |

3taps, Inc. ("3taps") respectfully submits this Administrative Motion to Consider Whether Cases Should Be Related under N.D. Cal. Civil Local Rule 3-12.  As explained in more detail below, the matter of <u>3taps, Inc. v. LinkedIn Corp.</u>, No. 4:18-cv-00855-NC, filed February 8, 2018 ("LinkedIn II"), is related to a matter pending before this Court: <u>hiQ Labs v. LinkedIn Corp.</u>, (N.D. Cal. Case No. 3:17-cv-03301-EMC) ("LinkedIn I"), under the criteria set forth in Local Rule 3-12.  Indeed, the failure to relate these matters would likely lead to a significant waste of the parties' and court's resources and would raise the possibility of inconsistent and unworkable outcomes since the plaintiffs in LinkedIn I and II seek essentially the same declaratory relief on the very same issue of law against the same defendant related to the same activity by that defendant.

## I.    BACKGROUND ON THE TWO RELATED ACTIONS

LinkedIn II, currently assigned to the Honorable Nathanael Cousins of this court, is an action for declaratory relief against LinkedIn Corporation ("LinkedIn").  <u>See</u> Christopher Decl. Ex. A at ₱23.  The plaintiff in LinkedIn II seeks a declaration that it will not violate the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030 (the "CFAA"), if it uses automated means to access and use publicly-available data from LinkedIn's website. <u>See</u> Christopher Decl. Ex. A at ₱23.  Thus, the plaintiff in LinkedIn II is seeking the same declaratory relief on the same issue of law against the same defendant as is being currently sought by the plaintiff in LinkedIn I.  <u>See</u> Christopher Decl. Ex. B at ₱35.

Moreover, the background facts leading to the filing of LinkedIn I are essentially identical to the background facts leading to the filing of LinkedIn II.  The plaintiff in LinkedIn II is engaged in the business of using automated means to access and use publicly-available content from the internet.  Christopher Decl. Ex. A at ₱10.  The plaintiff in LinkedIn II received a "cease and desist" letter from LinkedIn asserting that the accessing and using by it of publicly-available information on LinkedIn's website would violate the CFAA.  <u>See</u> Christopher Decl. Ex. A at ₱18.  As the Court may recall, this same threat by LinkedIn making the same claim under the CFAA resulted in the filing of LinkedIn I.  <u>See</u> Christopher Decl. Ex. B at ₱₱ 25, 34.

## II.  LINKEDIN I SHOULD BE RELATED TO LINKEDIN II UNDER CIVIL LOCAL RULE 3-12.

3taps respectfully submits that LinkedIn II clearly meets the criteria for relation to LinkedIn I under the Local Rules of this Court governing the relation of cases.  Cases are deemed related under Civil Local Rule 3-12 where:

> 3-12.  Related Cases
>> (a) **Definition of Related Cases.  An action is related to another when:**
>>> (1)  The actions concern substantially the same parties, property, transaction or event; and
>>> (2)  It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

See Civil L.R. 3-12.

### LinkedIn I and II Involve Substantially the Same Parties

LinkedIn I and II involve substantially the same parties.  The defendant in each case is identical: LinkedIn Corporation.  With respect to the named plaintiffs, case law interpreting Local Rule 3-12 holds that the plaintiffs need not be identical, so long as the matter involves the same defendant.  Financial Fusion, Inc. v. Ablaise Ltd., No. C-06-2451 PVT, 2006 WL 4734292, at *3 (N.D. Cal. Dec. 18, 2006) (finding that relation under Civil Local Rule 3-12 is proper even if the plaintiffs in the two actions are not the same where both suits involved the identical defendant); Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-0715-SC, 2012 WL 3757486, at * 4, n.10 (N.D. Cal. July 5, 2012) (holding that the second prong of the relation test is the most critical and that relation is proper even if the parties are not identical).[1]

Thus, the first criteria under Civil Local Rule 3-12 regarding substantially the same

---

[1] Despite the fact that there is no legal requirement that the plaintiffs be the same in the two actions sought to be related, it is worth noting that, in this case, even though the plaintiffs are not "identical", they are also not completely unrelated.  As noted in 3taps' complaint against LinkedIn, 3taps and hiQ have common partial owners.  Christopher Decl. Ex. A at ⁋2.

parties is met here.

**The Two Actions Concern The Same "Property"**

LinkedIn I and II also concern the same "property" (*e.g.,* the facts and information that are publicly-available on LinkedIn's webpage, which LinkedIn claims are its property). In both cases, the plaintiffs seek to access and use the facts and information that are made publicly-available by LinkedIn on its webpage, and in each case, LinkedIn has asserted that a federal statute (*e.g,.* the CFAA) would be violated if the plaintiffs were to access those materials.  Compare Christopher Decl. Ex. A at ₱23, and Exhibit B at ₱35.

**Assignment of LinkedIn I and II to Separate Judges Would Waste Judicial Resources And Create A Danger of Inconsistent and Unworkable Rulings.**

The assignment of LinkedIn I and II to different judges of this court would not only waste the parties' and court's resources, it would create a danger of inconsistent and unworkable declaratory judgments on the same issue of law against the same defendant related to the same subject matter.

The plaintiffs in LinkedIn I and II have both received "cease and desist" letters from LinkedIn claiming that accessing the facts and information that LinkedIn makes publicly available on its website would violate the CFAA.  In response, both plaintiffs are now seeking a declaratory judgment on the same issue of law against LinkedIn, specifically:

- In LinkedIn II, 3taps "seeks a declaration that it will not be in violation of the CFAA if it proceeds to access and use publicly-available facts and information from LinkedIn's webpage."  Christopher Decl. Ex. A at ₱23.

- In LinkedIn I, hiQ "seeks a declaration that it has not and will not be in violation of the CFAA by continuing to access and copy data from the public member profile sections of LinkedIn . . .."  Christopher Decl. Ex. B at ₱35.

3taps respectfully submits that given the essentially identical nature of the declaratory judgments sought by the plaintiffs in LinkedIn I and II against the same defendant, having these matters decided by separate judges of this court raises a serious risk of inconsistent and unworkable rulings.  What if one judge rules that LinkedIn can use the

CFAA to prohibit third parties from accessing and using publicly-available facts from LinkedIn's website, and another judge rules that LinkedIn is within its rights to do so? What if one judge rules that LinkedIn is prohibited from employing technical measures to prevent third party "scrapers" from accessing its website and another judge permits LinkedIn to do so?  Such inconsistent rulings regarding LinkedIn's rights and obligations in protecting the publicly-available data on its webpage from third parties would not only create an unseemly conflict between the rulings, it would put LinkedIn in the impossible position of being under separate and irreconcilable court orders regarding the technical protections it is permitted to use to block third party access to its webpage.

The potential for inconsistent and irreconcilable declaratory judgments related to the same conduct is simply unworkable, but easily avoided by relating these matters.  Case law supports relation in these circumstances.  Where, as here, different plaintiffs seek similar declaratory relief on a similar issue from the same defendant, relation under Local Rule 3-12 is proper.  <u>Our Children's Earth Foundation v. National Marine Fisheries Service</u>, No. 14-4365 SC, 2015 WL 4452136, at * 12 (N.D. Cal. July 20, 2015) (relating actions seeking similar declaratory relief against defendant even though plaintiffs were not identical where cases involved overlapping and related issue of law).

Moreover, since the CFAA is a *criminal* statute as well as a civil one, the possibility of inconsistent rulings raises the very serious concern of having one plaintiff potentially subject to criminal prosecution for the same activity on Linkedin's webpage that another judge of this court may hold are lawful and not in violation of the CFAA.  3taps respectfully submits that the possibility of inconsistent declaratory judgments on the same issue of law involving the same defendant and the same "property" and conduct by that defendant should be avoided where the underlying declaratory judgements relate to the interpretation of a criminal statute.

### III. <u>LINKEDIN'S CONTENTION THAT THIS CASE SHOULD BE "RELATED" TO A CASE IN WHICH FINAL JUDGMENT WAS ENTERED ALMOST THREE YEARS AGO IS MERITLESS.</u>

Prior to filing this Motion, 3taps' counsel asked LinkedIn's counsel if they would

1  stipulate to relating LinkedIn II to LinkedIn I.  In response, LinkedIn's counsel refused to

2  so stipulate and asserted that LinkedIn II should instead be related to another action ***that did***

3  ***not involve LinkedIn and in which final judgment was entered against 3taps almost three***

4  ***years ago and never appealed.***  Specifically, LinkedIn took the remarkable position that

5  this matter is related to <u>Craigslist, Inc. v. 3taps, Inc., *et. al.,*</u> (3:12-cv-03816-CRB) (the

6  "Craigslist Matter").  <u>See</u> Christopher Decl. ₱4.

7         3taps respectfully submits that this matter should not be related to the Craigslist

8  Matter for at least three reasons.  For one, as noted above, the court entered final judgment

9  against 3taps in the Craigslist Matter almost 3 years ago, in June of 2015, and that judgment

10  was never appealed or contested.  <u>See</u> Christopher Decl. Ex. C at 1.  Moreover, the plaintiff

11  in the Craigslist Matter is not involved in any way in LinkedIn II, the defendant in LinkedIn

12  I and II was not a party to the Craigslist Matter.  Indeed, it appears from Linkedin's

13  counsel's email that the basis for contending that LinkedIn II should be related to the

14  Craigslist Matter is the demonstrably wrong contention that Judge Breyer retained

15  "ongoing jurisdiction" over the legal issue at issue in LinkedIn II.  <u>Id.</u>  In fact, Judge Breyer

16  retained jurisdiction over the Craigslist Matter only for two narrow purposes, neither of

17  which are even remotely relevant here: (i) for purposes of enforcing claims of violation of

18  his order in the Craigslist Matter, and (ii) for "disputes arising in connection with the

19  Settlement Agreement entered by the parties hereto."  <u>Id.</u> at Ex. C at 5.  Since the action

20  and final judgment in the Craigslist Matter pertained ***solely*** to activities as between

21  Craigslist and 3taps (LinkedIn was not a party), it is inconceivable how this routine and

22  limited retention of jurisdiction supports relating LinkedIn II to the Craigslist Matter.

23  DATED: February 14, 2018

                        THE LAW OFFICES OF THOMAS V.
                        CHRISTOPHER

                        By: <u>/s/ Thomas Christopher</u>
                            THOMAS CHRISTOPHER
                            thomas@thomaschristopherlaw.com
                            Attorney for Non-Party
                            3TAPS, INC.

THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone: (415) 659-1805
Facsimile:  (415) 659-1950

Attorney for Non-Party
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| hiQ Labs, Inc., | ) | CASE No.:  17-cv-03301-EMC |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF THOMAS V.** |
| | ) | **CHRISTOPHER IN SUPPORT OF NON-** |
| v. | ) | **PARTY 3TAPS, INC.'S** |
| | ) | **ADMINISTRATIVE MOTION TO** |
| LinkedIn Corp, | ) | **CONSIDER WHETHER CASES** |
| | ) | **SHOULD BE RELATED UNDER N.D.** |
| Defendant. | ) | **CAL CIVIL .LOCAL RULE 3-12** |
| | ) | |
| | ) | |
| | ) | **Date:    No hearing requested** |
| | ) | **Time:    No hearing requested** |
| | ) | **Ctrm:    No hearing requested** |
| | ) | **Judge:  Hon. Edward M. Chen** |
| | ) | |
| | ) | **Trial date:  None Set.** |
| | ) | |

I, Thomas V. Christopher, declare as follows:

1. I am an attorney licensed to practice law in California and before this Court.  I am counsel of record to 3taps, Inc. ("3taps"), in the matter of 3taps, Inc. v. LinkedIn Corp., No. 4:18-cv-00855-NC, filed February 8, 2018.  That matter is referred to as "LinkedIn II" in the accompanying Administrative Motion to Consider Whether Cases Should Be Related Under N.D. Cal. Civil Local Rule 3-12 (the "Motion").

2. Attached hereto as Exhibit A is a true and correct copy of 3taps' Complaint For Declaratory Judgment Against LinkedIn Corporation in LinkedIn I.

3. Attached hereto as Exhbit B is a true and correct copy of the Complaint For Declaratory Judgment in the matter of hiQ Labs v. LinkedIn Corp., (N.D. Cal. Case No. 3:17-cv-03301-EMC).  This matter is referred to as "LinkedIn I" in the accompanying Motion.

4. Prior to filing this Motion, counsel for 3taps attempted to obtain a stipulation to the relief sought here.  In response, LinkedIn's counsel refused to so stipulate and contended that this matter was related to Craigslist, Inc. v. 3taps, Inc. et. al., (3:12-cv-03816-CRB (the "Craigslist Matter").  Linkedin's counsel appeared to contend that the judge in the Craigslist Matter had retained "ongoing jurisdiction" of the legal issue at issue in LinkedIn II under the Final Judgment And Permanent Injunction referenced in Paragraph 5 below.

5. Attached hereto as Exhibit C is a true and correct copy of the Final Judgement and Permanent Injunction Againt: 3taps, Inc., Hard Yaka, Inc., and Robert G. Kidd in the Craigslist Matter.

I declare under penalty of perjury of the laws of the United States that the forgoing is true and correct.  Executed on this 14th of February in San Francisco, California.

_Thomas Christopher_

Thomas V. Christopher.

**EXHIBIT A**

THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone: (415) 659-1805
Facsimile:  (415) 659-1950

Attorney for Plaintiff
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3TAPS, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>LINKEDIN CORPORATION, a Delaware Corporation,<br><br>                    Defendant. | CASE NO.: _____<br><br>**3TAPS, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT AGAINST LINKEDIN CORPORATION UNDER 22 U.S.C. SECTION 2201 THAT PLAINTIFF'S ACTIONS WILL NOT VIOLATE THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. 1030)** |

Complaint of 3taps, Inc.                                    Case No. _____

1    Plaintiff 3taps, Inc. ("3taps" or "Plaintiff"), by and through its attorneys, brings this
2    Complaint against LinkedIn Corporation ("LinkedIn" or "Defendant") and alleges as
3    follows:

### NATURE OF THE ACTION

5    1.      On August 14, 2017, the Honorable Edward M. Chen of this court issued a
6    decision in the matter of hiQ Labs v. LinkedIn Corp., ___ F. Supp. 3d ___, 2017 WL
7    3473663 (N.D. Cal. Aug. 14, 2017), holding that hiQ Labs ("hiQ") was entitled to a
8    preliminary injunction on its claims against LinkedIn, and specifically holding that
9    LinkedIn's assertion that the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030 (the
10   "CFAA"), permitted LinkedIn to prohibit the collection and use by hiQ of publicly-
11   available materials from LinkedIn's webpage was contrary to law. Id. at * 4-8.
12   Consequently, Judge Chen held that LinkedIn's defense that the CFAA prohibited the use
13   and collection of materials from its website without LinkedIn's consent was meritless.  Id.
14   The matter remains pending before Judge Chen and the decision referenced above is on
15   appeal.

16   2.      One of hiQ's investors is Hard Yaka, Inc. ("Hard Yaka").  Hard Yaka is also
17   an investor in the Plaintiff herein, 3taps.  Relying on Judge Chen's August 14, 2017
18   decision in favor of hiQ, on January 16, 2018, 3taps directed a letter to LinkedIn's counsel
19   informing LinkedIn of 3taps' position that Judge Chen's decision in hiQ Labs v. LinkedIn
20   Corp applied to 3taps, and that, as a result, 3taps intended to begin collecting and using
21   publicly-available data from LinkedIn's website as hiQ had been doing.

22   3.      By letter dated January 24, 2018, Jonathan Blavin, an attorney for LinkedIn,
23   responded to the January 16 letter and asserted that 3taps' reliance on Judge Chen's
24   decision was misplaced and that the CFAA prohibited 3taps from collecting and using data
25   from LinkedIn's publicly-available webpage.  This statement by Mr. Blavin was
26   completely inconsistent with Judge Chen's August 14, 2017, order and was designed to
27   prevent 3taps from taking advantage of that order.

28

4.     By this action 3taps seeks against LinkedIn essentially the same declaratory judgment that hiQ is seeking against LinkedIn in N.D. Cal. Case No. 3:17-cv-03301-EMC, and specifically a declaration under the Declaratory Judgment Act, 28 U.S.C. Sections 2101 and 2202, that 3taps will not violate the CFAA by accessing and using publicly-available information from LinkedIn's webpage.

## THE PARTIES

5.     Plaintiff 3taps is a Delaware Corporation with its principal place of business in San Francisco, California.  One of 3taps' investors is Hard Yaka, which is also an investor in hiQ, the plaintiff in hiQ Labs v. LinkedIn Corp, N.D. Cal. Case No. 3:17-cv-03301-EMC.

6.     Defendant LinkedIn is a Delaware Corporation with its principal place of business in Sunnyvale, California.  Defendant LinkedIn is also the defendant in the matter of hiQ Labs v. LinkedIn Corp, N.D. Cal. Case No. 3:17-cv-03301-EMC.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction under 28 U.S.C. Section 1331 because Plaintiff's First Cause of Action seeks a declaratory judgment under 28 U.S.C. Sections 2201 and 2202 that Plaintiff's proposed actions will not violate a federal statute, in particular, the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030.

8.     Venue is proper in this District because LinkedIn maintains its corporate headquarters within this District.

## INTRADISTRICT ASSIGNMENT

9.     This action primarily arose out of LinkedIn's actions in Santa Clara County, California, and should therefore be assigned to the San Jose division of this Court pursuant to Civil Local Rule 3-2(c).

## FACTUAL ALLEGATIONS

### The Parties

10.     3taps is engaged in the business of using automated means to access and use publicly-available facts from the internet and using, or providing to others for use, those

1  publicly-available facts in innovative and creative ways primarily designed to enhance user

2  experiences and safety. One of 3taps' investors is Hard Yaka, which is also an investor in

3  hiQ. hiQ is the plaintiff in a related action seeking declaratory relief against LinkedIn on

4  the same grounds asserted in this action: hiQ Labs v. LinkedIn Corp, N.D. Cal. Case No.

5  3:17-cv-03301-EMC.

6     11.   Defendant LinkedIn claims to be the world's largest online professional

7  network, with more than 546 million users worldwide.

8     **The Dispute Leading to This Action**

9     12.   On May 23, 2017, LinkedIn sent a "cease and desist" letter to hiQ demanding

10 that hiQ "cease and desist" from collecting and using facts and information from

11 LinkedIn's website. The letter stated LinkedIn's position that, by collecting and using facts

12 and information from LinkedIn.com, hiQ was violating the CFAA and other laws.

13    13.   On May 31, 2017, hiQ's counsel responded to LinkedIn's cease and desist

14 letter by stating that LinkedIn's actions were threatening hiQ's business and efforts to

15 obtain financing.

16    14.   When LinkedIn failed to respond to that letter, on June 7, 2017, hiQ filed an

17 action against LinkedIn in the United States District Court for the Northern District of

18 California: hiQ Labs v. LinkedIn Corp., (N.D. Cal. Case No. 3:17-cv-03301 EMC). That

19 action sought, among other things, a declaration from the Court that hiQ would not violate

20 the CFAA by accessing and using publicly-available facts and information on LinkedIn's

21 website.

22    15.   In connection with a subsequent motion for a preliminary injunction by hiQ,

23 Judge Chen held that LinkedIn's assertion that hiQ would violate the CFAA by accessing

24 and using publicly-available facts and information from LinkedIn's webpage was without

25 merit and contrary to law.  hiQ Labs v. LinkedIn Corp., ___ F. Supp. 3d ___, 2017 WL

26 3473663, at *4-8. Specifically, Judge Chen broadly ruled that the CFAA did not permit

27 LinkedIn to prohibit the access and use by hiQ of materials that were publicly-available on

28

1 | LinkedIn's webpage. <u>Id.</u> The case remains pending before Judge Chen while the order on
2 | the preliminary injunction is on appeal to the Ninth Circuit Court of Appeals.

3 |     16.    Sometime in early 2018, in reliance on Judge Chen's decision against
4 | LinkedIn, 3taps determined to begin using automated means to access and use publicly-
5 | available facts and information on LinkedIn's webpage just as hiQ had been doing.

6 |     17.    Expressly relying on Judge Chen's holding that LinkedIn could not use the
7 | CFAA to block hiQ from accessing and using LinkedIn's publicly-available facts and
8 | information, and in the interest of being open and transparent about its intentions, on
9 | January 16, 2018, 3taps informed LinkedIn's counsel of its position that Judge Chen's
10 | decision in hiQ Labs v. LinkedIn Corp would apply to 3taps and that, as a result, 3taps
11 | intended to begin collecting and using publicly-available data from LinkedIn's website.

12 |     18.    On January 24, 2018, LinkedIn's attorney responded to the January 16 letter
13 | and asserted that 3taps' basis for relying on Judge Chen's decision was misplaced and that
14 | the CFAA prohibited 3taps from collecting and using data from LinkedIn's publicly-
15 | available webpage. This contention by LinkedIn appeared to directly contradict the
16 | substance of Judge Chen's prior ruling against LinkedIn on this very same issue.

17 |     19.    3taps thereafter determined to initiate this action to seek clarification
18 | regarding the issue of whether the CFAA prohibits 3taps from accessing and using
19 | publicly-available information on LinkedIn's webpage.

20 |
21 | **FIRST CAUSE OF ACTION**

22 | **(Declaratory Judgment That 3taps Will Not Violate the CFAA, 18 U.S.C.**
23 | **Section 1030, By Accessing and Using Publicly-Available Data on LinkedIn's**
    **Website)**
24 |

25 |     20.    3taps hereby incorporates by reference the allegations of the preceding
26 | paragraphs as though fully set forth herein.

27 |     21.    The Declaratory Judgment Act, 22 U.S.C. Section 2201, permits courts to
28 | declare the rights of parties where there exists an actual case or controversy between them.

1   22.   An actual case or controversy exists between 3taps and Linkedin. 3taps has

2 given notice to LinkedIn that it intends to begin accessing and using publicly-available

3 facts and information on LinkedIn's webpage and LinkedIn has responded by claiming that

4 any such activity by 3taps would violate a federal statute, and specifically, the CFAA, 18

5 U.S.C. Section 1030.

6   23.   3taps seeks a declaration that it will not be in violation of the CFAA if it

7 proceeds to access and use publicly-available facts and information from LinkedIn's

8 webpage.

9                          **PRAYER FOR RELIEF**

10   Wherefore, 3taps prays for judgment against Defendant LinkedIn as follows:

11   A.   For a declaratory judgment that 3taps will not be in violation of the CFAA if

12        it proceeds to access and use publicly-available facts and information from

13        LinkedIn's webpage.

14   B.   For 3taps' costs and attorney's fees, if permitted by law;

15   C.   For such other relief as the Court determines just and proper;

16

17 DATED: February 8, 2018

18                          THE LAW OFFICES OF THOMAS V.
                           CHRISTOPHER

19

20                          By: /s/ Thomas Christopher

21                               THOMAS CHRISTOPHER
                                thomas@thomaschristopherlaw.com
22                               Attorney for Plaintiff
                                3TAPS, INC.

23

24

25

26

27

28

Complaint of 3taps, Inc.                 5                    Case No. _____

**EXHIBIT B**

1   C. Brandon Wisoff (State Bar No. 121930)
    bwisoff@fbm.com
2   Deepak Gupta (State Bar No. 226991)
    dgupta@fbm.com
3   Rebecca H. Stephens (State Bar No. 299234)
    rstephens@fbm.com
4   Jeffrey G. Lau (State Bar No. 281629)
    jlau@fbm.com
5   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
6   San Francisco, California 94104
    Telephone: (415) 954-4400
7   Facsimile: (415) 954-4480

8   Laurence H. Tribe* (State Bar No. 39441)
    Carl M. Loeb University Professor and
9   Professor of Constitutional Law
    Harvard Law School
10  1575 Massachusetts Avenue
    Cambridge, Massachusetts 02138
11  Telephone: (617) 495-1767
    *Pro hac vice pending*

12
    Attorneys for Plaintiff hiQ Labs, Inc.
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16  hiQ Labs, Inc.,                          Case No.

17              Plaintiff,                   **COMPLAINT FOR DECLARATORY
                                             JUDGMENT UNDER 22 U.S.C. § 2201
18       vs.                                 THAT PLAINTIFF HAS NOT
                                             VIOLATED: (1) THE COMPUTER
19  LinkedIn Corp.,                          FRAUD AND ABUSE ACT (18 U.S.C. §
                                             1030); (2) THE DIGITAL MILLENNIUM
20              Defendant.                    COPYRIGHT ACT (17 U.S.C. §1201);(3)
                                             COMMON LAW TRESPASS TO
21                                           CHATTELS; OR (4) CAL. PENAL CODE
                                             § 502(c);**

22                                           **INJUNCTIVE RELIEF TO ENJOIN: (1)
                                             INTENTIONAL INTERFERENCE WITH
23                                           CONTRACT AND PROSPECTIVE
                                             ECONOMIC ADVANTAGE; (2) UNFAIR
24                                           COMPETITION (CAL. BUS. & PROF.
                                             CODE § 17200); (3) PROMISSORY
25                                           ESTOPPEL; AND (4) VIOLATION OF
                                             CALIFORNIA FREE SPEECH LAW;**

26                                           **AND RELATED MONETARY RELIEF**

27

28          Plaintiff hiQ Labs, Inc. ("hiQ"), by its undersigned counsel, hereby brings this action

COMPLAINT FOR DECLARATORY AND                    *Affiliation noted for identification purposes only.*
INJUNCTIVE RELIEF                                                              34556\6002784.1

against Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") and alleges as follows:

**INTRODUCTION**

1. This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and for injunctive relief under California law. hiQ seeks a declaration from the Court that hiQ has not violated and will not violate federal or state law by accessing and copying wholly public information from LinkedIn's website. hiQ further seeks injunctive relief preventing LinkedIn from misusing the law to destroy hiQ's business, and give itself a competitive advantage through unlawful and unfair business practices and suppression of California Constitutional free speech fair guarantees. hiQ also seeks damages to the extent applicable.

2. hiQ is a tech startup which collects and analyzes public profile information on LinkedIn in order to provide its clients – mostly large companies – with insights about their employees, such as which employees are likely to be poached by a competitor or which skills its employees have. hiQ does not analyze the private sections of LinkedIn, such as profile information that is only visible when you are signed-in as a member, or member private data that is visible only when you are "connected" to a member. Rather, the information that is at issue here is wholly public information visible to anyone with an internet connection.

3. LinkedIn is the world's largest professional network, with over 500 million members. LinkedIn has abruptly, unlawfully and without cause denied hiQ access to the portion of the LinkedIn website containing wholly public member profiles. hiQ relies on that public data, available nowhere but LinkedIn, for its data analytics business that serves clients including eBay, Capital One, and GoDaddy.

4. On May 23, 2017, LinkedIn sent hiQ a cease-and-desist letter ordering hiQ to stop accessing LinkedIn and stating that hiQ's continued access to the website would violate the Computer Fraud and Abuse Act, Digital Millennium Copyright Act, and California Penal Code § 502(c) and constitute common law trespass to chattels. This came as a shock to hiQ, as LinkedIn has been aware of hiQ's activities for several years and never once objected to hiQ's use of this public information.

5. LinkedIn asserts as pretext that it needs to protect LinkedIn member data even

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

2

34556\6002784.1

though LinkedIn members have expressly made that information public and LinkedIn has identified no harm to itself or its members. LinkedIn publicly acknowledges on its own website that the public profile data belongs to LinkedIn members, not to LinkedIn, and that each member is free to choose the level of public disclosure allowed for his or her own information. LinkedIn members can choose to (1) keep their profile information private; (2) share only with their direct connections; (3) share with connections within three degrees of separation; (4) allow access only to other signed-in LinkedIn members, or (5) allow access to everyone, even members of the general public who may have no LinkedIn account and who can access the information without signing in or using any password. It is only this fifth category of information – wholly public profiles – that is at issue here: hiQ only accesses the profiles that LinkedIn members have made available to the general public.

6.      hiQ uses that information for data analytics that LinkedIn members' employers in turn use to retain employees and to create better career and internal mobility paths for such employees. Thus, far from harming LinkedIn members, hiQ's access promotes precisely the type of professional and employment opportunities that lead LinkedIn members to make their profiles public in the first place. Yet, LinkedIn is now threatening hiQ with legal action based on the above described theories if hiQ accesses this information which is otherwise publicly available to everyone else on the planet with an internet connection.

7.      The Court should enjoin LinkedIn from denying hiQ access to its website because LinkedIn's real motivation is obviously anticompetitive: to prevent anyone but LinkedIn from being able to use public information for data analytics. LinkedIn for years has known about hiQ and its business, has attended data analytics conferences at hiQ and has even accepted awards from hiQ at these conferences. But LinkedIn has now made some public statements about entering the data analytics business, and has abruptly (as of May 24, 2017) decided to terminate hiQ's access.

8.      LinkedIn's entire stated complaint is that hiQ "copies" the data its members have made public, but LinkedIn has asserted no copyright or other exclusive propriety interest in the data and it clearly has none. Moreover, hiQ does not collect all (or even a substantial proportion)

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                                  3                                  34556\6002784.1

of the member profiles on LinkedIn, nor does it compete with LinkedIn by creating a substitute social network or job posting forum. Rather, hiQ pulls data for a limited subset of users – usually its client's employees – and uses scientific methodology to analyze the information. hiQ then provides its clients with this new data that it produced in a form that is by necessity very different from the public profile pages on LinkedIn.

9. Because LinkedIn has no legitimate copyright claim, it has instead threatened to sue hiQ under federal and state laws pertaining to hacking and unauthorized computer and network access in order to intimidate hiQ and force it to stop accessing these public profiles. But LinkedIn cannot use those laws for an improper purpose to obtain exclusive proprietary control over wholly public data in which it otherwise has no exclusive interest and which hiQ, and anyone else, can freely access on the world wide web with no log-in credentials or password. Indeed, LinkedIn would not have that data on its website in the first place but for its promise to LinkedIn members that they can publicly disclose that information on LinkedIn for all the world to see and use.

## **THE PARTIES**

10. Plaintiff hiQ is a Delaware corporation with its principal place of business in San Francisco, California.

11. On information and belief, Defendant LinkedIn is a Delaware corporation with its principal place of business in Sunnyvale, California.

## **JURISDICTION AND VENUE**

12. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's first and second claims for relief seek a declaratory judgment under 28 U.S.C. § 2201 and 2202 that Plaintiff has not violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Digital Millennium Copyright Act, 17 U.S.C § 1201.

13. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's third through eleventh claims for relief because they arise out of the same common set of facts and conduct as Plaintiff's federal claims for relief.

14. This Court has personal jurisdiction over Defendant LinkedIn in this action

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

4

34556\6002784.1

1  because, on information and belief, LinkedIn's corporate headquarters and principal place of

2  business is within this judicial district, and LinkedIn has engaged in substantial business within

3  this district.

4       15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because

5  Defendant LinkedIn conducts substantial business within this District and a substantial part of the

6  acts or omissions giving rise to Plaintiff's claims occurred in this District. Venue is further proper

7  in this District pursuant to 28 U.S.C. § 1400(a) because this action relates to copyrights and

8  Defendant LinkedIn resides in this District.

9  **INTRADISTRICT ASSIGNMENT**

10       16.     Pursuant to N.D. Cal. Civil Local Rule 3-2(c), this case is an intellectual property

11  action appropriate for assignment on a district-wide basis.

12  **FACTUAL ALLEGATIONS**

13  **About hiQ Labs and its Services**

14       17.     hiQ was formed in July 2012 and has raised $14.5 million in two rounds of

15  funding. It presently has 24 employees, the majority of whom are in its San Francisco office, and

16  11 of whom have advanced degrees, including several PhDs. hiQ sells Fortune 500 clients

17  "people analytics" – i.e. insights to their workforce – that it deduces by performing computerized

18  analyses of the public profile information available on LinkedIn. hiQ provides its customers two

19  specific analytics services: (a) "Keeper," which tells employers which of their employees are at

20  the greatest risk of being recruited away, and (b) "Skill Mapper," a summary of the breadth and

21  depth of aggregate or individual skills possessed.

22       18.     hiQ uses the public profile section of the LinkedIn website as raw data for its

23  analysis and has historically used a variety of software and manual means to gather this

24  information. hiQ does not analyze the private sections of LinkedIn, such as profile information

25  that is only visible when you are signed-in as a member, or member private data that is visible

26  only when you are "connected" to a member. hiQ does not republish the information it collects

27  from LinkedIn, but instead applies analytics to create new business intelligence for its clients.

28  hiQ's services thus do not impair or impede the value of the LinkedIn social network. Rather they

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

5

34556\6002784.1

1    make it more valuable to have such a profile – an employer using the "Keeper" product might give

2    an employee a "stay bonus" or a career development or internal mobility opportunity, or

3    SkillMapper may demonstrate that its workforce lacks depth in a particular skill area, which could

4    lead the employer to offer its employees free training to make up for that deficit.

5    **The LinkedIn Professional Network and The Public Member Profile Portion of the Website.**

6         19.     The core of LinkedIn's business is a professional network that aggregates the

7    profile information of about half a billion professionals, their interrelationships, their posts, and

8    their cross-endorsements.  LinkedIn states that the purpose of the service is to "promote economic

9    opportunity" and provide a place for professionals "to meet, exchange, ideas, learn and find

10   opportunities…." *See* Exhibit 1 (LinkedIn User Agreement).

11        20.     LinkedIn member profiles contain resume information such as education, skills,

12   publications, certifications, and employment history.  Members can connect their LinkedIn

13   profiles to those of colleagues around the world.  LinkedIn's collection of profiles is a one-of-a-

14   kind resource.  It is the single largest, most up-to-date and authoritative repository about the

15   world's professional community.  There is no comparable data source anywhere else in the world.

16        21.     LinkedIn admittedly does not own the data that its members decide to share

17   publicly on LinkedIn's website.  LinkedIn explains to members that "you own the content and

18   information that you submit." *See* Exhibit 1 (LinkedIn User Agreement) at 3.1.  LinkedIn is

19   unequivocal that members control their profiles:  "You control the visibility and reach of your

20   LinkedIn profile." *See* Exhibit 2 (Public & Private Profiles | LinkedIn Help).  LinkedIn gives

21   members the ability and right to specify which portions of their profiles will be visible to their

22   direct connections, their network (those within three degrees of separation), all LinkedIn members,

23   and the "public."  The "public" setting (which is at issue here) gives access to *"[a]ll LinkedIn*

24   *members as well as others who find you through search engines (e.g. Google, Bing) or other*

25   *services."*  Exhibit 3 (showing public profile settings).  Public profiles may be reached via third-

26   party services (e.g. Google and Bing) and directly via a web address (URL) that LinkedIn creates

27   for its members.  Thus, LinkedIn acknowledges that a public setting will permit access for anyone

28   in the world with an internet connection.  The User Agreement explains that "Members and/or

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

6

34556\6002784.1

1  Visitors may access and share your content and information, consistent with your settings and

2  degree of connection with them."  Exhibit 1 (LinkedIn User Agreement).

3       22.     LinkedIn has effectively become a public forum where professionals can meet and

4  exchange ideas, information, and news articles.  LinkedIn describes itself as a "community" and

5  users are able to post publicly, share other members' posts, and comment on other members'

6  posts.  As discussed more fully herein in the Eleventh Claim for Relief, LinkedIn cannot –

7  consistent with the free speech clause of the California Constitution – selectively exclude hiQ

8  from this "public" forum, even if LinkedIn's servers are considered "private" property.  The

9  California Supreme Court has definitively interpreted these constitutionally guaranteed free speech

10  rights as precluding an owner of private property from prohibiting such access when the property

11  has been opened to the public and constitutes a public forum.  The United States Supreme Court

12  has in turn upheld this California constitutional right as against a challenge that it amounts to a

13  "taking" of private property under the United States Constitution.  LinkedIn cannot have it both

14  ways even on its own web servers:  promising a public forum and public access on the one hand,

15  and then selectively excluding members of the public on the other.

16       23.     Since its founding in 2002, LinkedIn has created numerous successful revenue

17  streams, including selling services to corporations that help with their recruiting and sales

18  processes.  As of hiQ's launch in 2012, LinkedIn's annual revenues were on the order of nearly $1

19  billion, a number that had nearly quadrupled by the end of 2016.  In late 2016, LinkedIn was

20  purchased by Microsoft Corporation.

21  **LinkedIn's Surprising Cease and Desist Letter To hiQ**

22       24.     LinkedIn has known of hiQ since at least 2015 when it started participating in

23  hiQ's annual Elevate conference.  The hiQ Elevate conference was designed to build a community

24  around the emerging field of people analytics and has provided a regular forum for participants to

25  share insights and disseminate best practices.  LinkedIn has sent representatives to each iteration

26  of that conference since hiQ's founding.  hiQ has spoken freely about its public data collection

27  from LinkedIn at Elevate, so LinkedIn has always understood what hiQ does.  Over the years,

28  LinkedIn has itself participated regularly in hiQ Elevate events.  At a 2016 Elevate conference,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

7

34556\6002784.1

1   LinkedIn employee Lorenzo Canlas received special recognition and accepted the hiQ Elevate

2   "Impact Award."

3       25.    Given LinkedIn's awareness of hiQ over the years and its seeming support of the

4   business, hiQ was surprised when on May 23, 2017, without any forewarning, LinkedIn's legal

5   counsel emailed a letter to hiQ, stating that hiQ was improperly "access[ing] and copy[ing]"

6   LinkedIn public profile information.  The letter demanded that hiQ "[c]ease and desist accessing

7   or attempting to access or use LinkedIn's website, computers, computer systems, computer

8   network, computer programs, and data stored therein."  *See* Exhibit 4 (Cease-and-Desist Letter) at

9   2.  LinkedIn's letter stated that hiQ was in violation of the LinkedIn User Agreement, state

10  trespass law, the Computer Fraud and Abuse Act, California Penal Code 502, and the Digital

11  Millennium Copyright Act.  *Id*.  The letter also stated that any further access to the site would be

12  "without permission" and "without authorization."  Further, LinkedIn stated it has implemented

13  "technical measures" to block hiQ from the site.  *Id*.

14      26.    The LinkedIn User Agreement does not even apply to members of the general

15  public who access LinkedIn's website without an account or sign-in credentials.  Moreover,

16  LinkedIn itself ignores many of its own user terms, selectively allowing access and copying when

17  it wants and purporting to enforce terms only when it is advantageous to LinkedIn.  Thus,

18  LinkedIn user terms tell members that they control who can see and use their public profiles, but

19  LinkedIn is here deciding that hiQ is excluded from that otherwise public access.  In addition,

20  other for-profit companies, including Google and Bing, by necessity copy and index large portions

21  of the public portions or LinkedIn's website and display that information in their search engine

22  results for all the world to see.

23      27.    After receiving the cease-and-desist letter, hiQ promptly retained counsel who

24  contacted LinkedIn to explain hiQ's belief that it had a right to access public pages, that its

25  business is synergistic to LinkedIn, that the effect of LinkedIn's letter would devastate hiQ, and to

26  understand whether LinkedIn believed it was being harmed in any way.  LinkedIn's counsel was

27  unable to point to any interference or impairment with LinkedIn's servers from hiQ's accessing

28  the site, and conceded that various other commercial enterprises, including Google and Yahoo! are

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND          8          34556\6002784.1
INJUNCTIVE RELIEF

1   permitted to use automated software to access the LinkedIn site.  When hiQ asked counsel for

2   LinkedIn whether LinkedIn is planning to offer services to compete with hiQ's Keeper and Skill

3   Mapper analytics, he stated that he did not know the answer to that question.  When asked what

4   copyright or propriety interest LinkedIn is claiming in the public data displayed by members, he

5   stated clearly that LinkedIn is asserting no copyright claim.

6        28.     LinkedIn is thus improperly using the Computer Fraud and Abuse Act, the Digital

7   Millennium Copyright Act and related state penal code and trespass law, not as a shield – as

8   intended by those laws – to prevent harmful hacking and unauthorized computer access, but as a

9   sword to stifle competition and assert propriety control over data in which it has no exclusive

10  interest.  In other words, LinkedIn recognizes it has no valid propriety or copyright interest, so it

11  claims only that it has a propriety interest to control access to its website, treating that digital

12  realm as though it were physical real property.  Not only is the analogy inapposite, but LinkedIn

13  ignores that the public profile data of members would not reside on its website in the first place

14  but for its express promise that the date would be public for all to see and use.  Thus, while

15  LinkedIn can certainly prevent abusive access to its website, it should not be allowed to  pervert

16  the purpose of the laws at issue by using them to destroy putative competitors, engage in unlawful

17  and unfair business practices and suppress the free speech rights of California citizens and

18  businesses as alleged more fully herein.

19       29.     On May 30, 2017 counsel for hiQ sent a letter, attached as Exhibit 5, to LinkedIn

20  asking that hiQ be permitted to access the public profiles portion of the LinkedIn website, at least

21  in the interim while the parties discussed the possibility of a mutually amicable resolution.  As of

22  this date, LinkedIn has not responded.

23  **Recently Uncovered Evidence Suggests That LinkedIn Is Developing Its Own Analytics**

24  **Offerings Based On Public Profile Data.**

25       30.     In hiQ's investigation in connection with these proceedings, it discovered that

26  LinkedIn has started building its own offerings based on public member profiles. In a February

27  2015 earnings call, several years after hiQ's launch, LinkedIn's CEO announced, "This year, we

28  plan to enter a new category with products allowing companies to utilize LinkedIn in the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

9

34556\6002784.1

1  enterprise by leveraging content and data that members are already sharing publicly." When

2  discussing this "new category" of products, LinkedIn's CEO explained:

3          [T]here's an opportunity for LinkedIn to create value within an

4          enterprise, within an organization *leveraging information that's*

5          *already public*. So by way of example, *our public profile*

6          *information*, which particularly at larger organizations, *you see some*

7          *of those companies turning to LinkedIn to look up someone with*

8          *their own company, because of how robust that public profile*
        *information can prove to be.*

9          *So there's examples of content or information that's already*
        *publicly available, and we're trying to think about ways in which we*

10          *can better leverage that to create value within an organization.*

11  A page on the LinkedIn website states that it is also investing in its own data science projects. *See*

12  <<https://engineering.linkedin.com/data>> (accessed 6/7/17).

13        31.     LinkedIn is aware that its denial of access by hiQ to these public profiles will

14  jeopardize hiQ's existing contracts and prospective economic advantage and threaten hiQ's very

15  survival. hiQ has explicitly made LinkedIn aware of existing contracts with eBay, Capital One,

16  and GoDaddy, and prospective relationships with Bank of New York Mellon, Chevron, Groupon,

17  Honeywell, IBM, Visier, and Jobvite. Exhibit 5 (Response to Cease-and-Desist Letter) at 3. hiQ

18  has also informed LinkedIn of current financing negotiations that are imperiled by its threats. *Id.*

19  LinkedIn has nevertheless refused to revoke its unlawful cease and desist demands and has never

20  identified any actual harm to itself or anyone else from hiQ's continued access to purely public

21  profiles, access that is freely available to this day to anyone else in the world with an internet

22  connection.

23                            **FIRST CLAIM FOR RELIEF**

24  **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate the Computer Fraud**

25             **and Abuse Act 18 U.S.C. § 1030, By Accessing LinkedIn Public Profiles**

26        32.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

27  though fully set forth herein.

28        33.     Under the Declaratory Judgment Act, courts may "declare the rights and other legal

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

10

34556\6002784.1

1    relations" of parties "to a case of actual controversy."  28 U.S.C. § 2201.

2         34.     An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

3    cease-and-desist-letter and threats of litigation, is attempting to use the law for an improper,

4    anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

5    letter alleges that hiQ's continued access of LinkedIn's website would violate  the Computer

6    Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  LinkedIn has also threatened hiQ with

7    litigation if it does not stop accessing LinkedIn's website, and complying with LinkedIn's

8    demands would essentially destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's

9    business by implementing technical measures to prevent hiQ from accessing, and assisting others

10   to access, LinkedIn's site.  hiQ thus has a real and reasonable apprehension that it will be subject

11   to liability if it continues to access LinkedIn's website.  Moreover, this apprehension was caused

12   by LinkedIn's actions—namely, LinkedIn's cease-and-desist letter and its implementation of

13   technology to block hiQ from accessing its site.

14        35.     Plaintiff seeks a declaration that it has not and will not be in violation of the CFAA

15   by continuing to access and copy data from the public member profile sections of LinkedIn and

16   that LinkedIn cannot use the provisions of the CFAA for an improper purpose in a way that leads

17   to independent violations of California law and infringes on Plaintiff's rights.

18        36.     hiQ prays for relief as set forth below.

19                        **SECOND CLAIM FOR RELIEF**

20        **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate the Digital**

21      **Millennium Copyright Act, 17 U.S.C. § 1201, By Accessing LinkedIn Public Profiles**

22        37.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

23   though fully set forth herein.

24        38.     An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

25   cease-and-desist-letter and threats of litigation, is attempting to use the law for an improper,

26   anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

27   letter alleges that hiQ's continued access of LinkedIn's website would violate  the Digital

28   Millennium Copyright Act (17 U.S.C. §§ 512, 1201) ("DMCA").  LinkedIn has also threatened

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                          11                          34556\6002784.1

1   hiQ with litigation if it does not stop accessing LinkedIn's website, and complying with

2   LinkedIn's demands would essentially destroy hiQ's business.  Indeed, LinkedIn has already

3   threatened hiQ's business by implementing technical measures to prevent hiQ from accessing, and

4   assisting others to access, LinkedIn's site.  hiQ thus has a real and reasonable apprehension that it

5   will be subject to liability if it continues to access LinkedIn's website.  Moreover, this

6   apprehension was caused by LinkedIn's actions—namely, LinkedIn's cease-and-desist letter and

7   its implementation of technology to block hiQ from accessing its site.

8           39.     Plaintiff seeks a declaration that it has not and will not be in violation of the Digital

9   Millennium Copyright Act by continuing to access and copy data from the public member profile

10  sections of LinkedIn and that LinkedIn cannot use the provisions of the DMCA for an improper

11  purpose in a way that leads to independent violations of California law and infringes on Plaintiff's

12  rights.

13          40.     hiQ prays for relief as set forth below.

14                          **THIRD CLAIM FOR RELIEF**

15  **Declaratory Judgment that hiQ Has Not Committed and Will Not Commit Common Law**

16          **Trespass To Chattels By Accessing LinkedIn Public Profiles**

17          41.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

18  though fully set forth herein.

19          42.     An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

20  cease-and desist-letter and threats of litigation, is attempting to use the law for an improper,

21  anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

22  letter alleges that hiQ's continued access of LinkedIn's website would constitute a trespass to

23  chattels under California common law.  LinkedIn has also threatened hiQ with litigation if it does

24  not stop accessing LinkedIn's website, and complying with LinkedIn's demands would essentially

25  destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's business by implementing

26  technical measures to prevent hiQ from accessing, and assisting others to access, LinkedIn's site.

27  hiQ thus has a real and reasonable apprehension that it will be subject to liability if it continues to

28  access LinkedIn's website.  Moreover, this apprehension was caused by LinkedIn's actions—

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                               12                               34556\6002784.1

1  namely, LinkedIn's cease-and-desist letter and its implementation of technology to block hiQ from

2  accessing its site.

3      43.    Plaintiff seeks a declaration that it has not committed and will not commit trespass

4  to chattels by continuing to access and copy data from the public member profile sections of

5  LinkedIn and that LinkedIn cannot use common law protections against trespass to chattels for an

6  improper purpose in a way that leads to independent violations of California law and infringes on

7  Plaintiff's rights.

8      44.    hiQ prays for relief as set forth below.

9  **FOURTH CLAIM FOR RELIEF**

10  **Declaratory Judgment that hiQ Has Not Violated And Will Not Violate California Penal**

11  **Code § 502(c) By Accessing LinkedIn Public Profiles**

12      45.    hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

13  though fully set forth herein.

14      46.    An actual controversy exists between hiQ and LinkedIn.  LinkedIn, through its

15  cease-and desist-letter and threats of litigation, is attempting to use the law for an improper,

16  anticompetitive purpose and to give itself a competitive advantage.  LinkedIn's cease-and-desist

17  letter alleges that hiQ's continued access of LinkedIn's website would constitute a violation of

18  California Penal Code § 502(c).  LinkedIn has also threatened hiQ with litigation if it does not

19  stop accessing LinkedIn's website, and complying with LinkedIn's demands would essentially

20  destroy hiQ's business.  Indeed, LinkedIn has already threatened hiQ's business by implementing

21  technical measures to prevent hiQ from accessing, and assisting others to access, LinkedIn's site.

22  hiQ thus has a real and reasonable apprehension that it will be subject to liability if it continues to

23  access LinkedIn's website.  Moreover, this apprehension was caused by LinkedIn's actions—

24  namely, LinkedIn's cease-and-desist letter and its implementation of technology to block hiQ from

25  accessing its site.

26      47.    Plaintiff seeks a declaration that it has not and will not be in violation of the Cal.

27  Penal Code § 502(c) by continuing to access and copy date from the public member profile

28  sections of LinkedIn and that LinkedIn cannot use the provisions of the California Penal Code for

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF     13      34556\6002784.1

1  an improper purpose in a way that leads to independent violations of California law and infringes

2  on Plaintiff's rights.

3       48.     hiQ prays for relief as set forth below.

4                        **FIFTH CLAIM FOR RELIEF**

5                    **Intentional Interference with Contract**

6       49.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

7  though fully set forth herein.

8       50.     hiQ has valid, current service contracts with each of its clients, including without

9  limitation eBay, Capital One, and GoDaddy.

10      51.     LinkedIn has and had knowledge of hiQ's valid customer contracts.  hiQ has

11  informed LinkedIn of its base of clients such that it is aware of these contracts.  hiQ has also

12  provided notice to LinkedIn of a pending financing, as well as potential deals with Bank of New

13  York Mellon, Chevron, Groupon, Honeywell, IBM, Visier and Jobvite.  All of these contracts and

14  prospective economic relationships are endangered by LinkedIn's conduct.

15      52.     LinkedIn was aware of the harm to hiQ that would result from denying hiQ access

16  to its public member pages but chose to proceed anyway.  hiQ gave LinkedIn oral and written

17  notice that its customer relationships stood to be destroyed if its ability to access public profile

18  pages was denied.  In response to LinkedIn's cease and desist letter, hiQ wrote that it has

19  "millions of dollars' worth of business that now hangs in the balance because of LinkedIn's

20  wrongful bait and switch."  hiQ further wrote that it was "presently in the midst of a financing

21  round, which is now endangered because of your letter."

22      53.     LinkedIn's conduct will disrupt or require breach or termination of these contracts.

23  hiQ's entire business is premised on applying data science to information gathered from LinkedIn

24  public profile pages.  Preventing hiQ from accessing this data will necessarily mean that hiQ can

25  no longer perform under the contracts with its clients.

26      54.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

27  suffer damages including but not limited to lost business and potential bankruptcy.  Unless

28  LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                    14                    34556\6002784.1

1  irreparable harm in that it will be forced to terminate the contracts with its clients and may be

2  forced out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless

3  the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

4  prevent hiQ's access altogether.

5        55.   hiQ has no adequate remedy at law because monetary damages will not afford

6  adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

7  operating.

8        56.   hiQ prays for relief as set forth below.

9  **SIXTH CLAIM FOR RELIEF**

10  **Intentional Interference with Prospective Economic Advantage**

11        57.   hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

12  though fully set forth herein.

13        58.   As detailed in Plaintiff's fifth claim for relief above, LinkedIn intentionally

14  interfered with hiQ's contracts.

15        59.   LinkedIn committed an independently wrongful act when it revoked access to

16  public profiles for three reasons: (1) LinkedIn breached its express promises that members control

17  access to these pages, LinkedIn has only a non-exclusive license, and visitors may access and use

18  these pages; (2) LinkedIn has violated California's Unfair Competition Law as detailed in

19  Plaintiff's seventh through ninth claims for relief; and (3) LinkedIn has impermissibly interfered

20  with California free speech protections.  LinkedIn should not be allowed to intentionally and

21  wrongfully disrupt hiQ's contracts and prospective business dealings by revoking its access to

22  avowedly public material.

23        60.   As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

24  continue to suffer damages including but not limited to lost business and potential bankruptcy.

25  Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

26  irreparable harm in that it will be forced to terminate the contracts with its clients and may be

27  forced out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless

28  the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

15

34556\6002784.1

1    prevent hiQ's access altogether.

2        61.    hiQ has no adequate remedy at law because monetary damages will not afford

3 adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

4 operating.

5        62.    hiQ prays for relief as set forth below.

6                      **SEVENTH CLAIM FOR RELIEF**

7      **Unfair Competition in Violation of Cal. Bus. Prof. Code § 17200,** *et seq.*

8        63.    hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

9 though fully set forth herein.

10       64.    Absent injunctive relief, hiQ will suffer loss of money or property and an economic

11 injury in fact, specifically being forced to terminate contracts with its customers and likely close

12 its business and lay off its employees, and thus has standing to seek relief under section 17200.

13       65.    LinkedIn's access denial violates the policy or spirit of antitrust law.  LinkedIn is

14 using its dominant presence as the world's largest professional networking platform to assume

15 exclusive proprietary control over data that is owned not by LinkedIn, but by its members, and

16 which those members have explicitly designated as public.  Indeed, LinkedIn promises members

17 the ability to control public access to their profiles precisely to incent members to join LinkedIn.

18 LinkedIn's recent and threatened actions thus suppress competition and violate the core principles

19 and spirit of the antitrust laws.

20       66.    Likewise, antitrust law has long recognized the "essential facilities" doctrine, which

21 precludes a monopolist or attempted monopolist from denying access to a facility it controls that is

22 essential to its competitors.  Such anticompetitive conduct threatens the extension of the

23 monopolist's control from one stage of production to another, or from one market to another.

24       67.    LinkedIn's member public profiles is such an essential facility because there is no

25 viable alternative to LinkedIn's dominant 500 million member database to obtain data relevant in

26 the field of employee data analytics.  Even if it were theoretically possible to create another

27 competing networking platform and database, that is not a reality given LinkedIn's undeniable

28 dominance.  There is no technical barrier or subsequent cost to LinkedIn providing access.  Until

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF           16                         34556\6002784.1

recently, LinkedIn has been providing access to hiQ without burden or complaint. hiQ seeks non-discriminatory access that others, including Google, Bing, and Yahoo, already enjoy.

68. The impact of LinkedIn's actions on hiQ is obvious and devastating; hiQ's very business model and prospects, as well as its employee relationships, are threatened beyond repair. LinkedIn's purported justification – protection of member data – is by contrast obviously pretextual as hiQ accesses only data that LinkedIn members have explicitly made public. LinkedIn allows all major search engines to access, copy and display portions of this member public data without complaint. LinkedIn has never hinted at any concrete harm that hiQ's access has caused to LinkedIn or its members. LinkedIn has repeatedly complained about hiQ's "copying" of public data but does not contend that it has any copyright or ownership interest in the data. It simply wants to lock down website access to public data in which it has no independent legal right in order to create propriety control where no could otherwise legally exist.

69. Thus, under any standard LinkedIn's actions constitute actionable violations of the UCL's "unfair" business practices prong.

70. As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will continue to suffer loss of money and property including but not limited to lost business and potential bankruptcy. Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe, irreparable harm in that it will be forced to terminate contracts with its clients and may be forced out of business entirely. hiQ is informed and believes, and on that basis alleges, that unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or prevent hiQ's access altogether.

71. hiQ has no adequate remedy at law because monetary damages will not afford adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue operating.

72. Plaintiff prays for relief as set forth below.

## EIGHTH CLAIM FOR RELIEF

### Unlawful Competition in Violation of Cal. Bus. Prof. Code § 17200, *et seq.*

73. Absent injunctive relief, hiQ will suffer loss of money or property and an economic

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

17

34556\6002784.1

1    injury in fact, specifically being forced to terminate contracts with its customers and likely close

2    its business and lay off its employees, and thus has standing to seek relief under section 17200.

3        74.    LinkedIn's actions establish a claim of unlawful competition on multiple grounds.

4    LinkedIn's tortious interference with hiQ's current and prospective contractual and business

5    relationships, its breach of promissory estoppel, and its violation of California free speech

6    protection all give rise to a claim under the "unlawful" business practices prong of the UCL.

7        75.    As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

8    continue to suffer damages including but not limited to lost business and potential bankruptcy.

9    Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

10   irreparable harm in that it will be forced to terminate contracts with its clients and may be forced

11   out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless the

12   court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

13   prevent hiQ's access altogether.

14       76.    hiQ has no adequate remedy at law because monetary damages will not afford

15   adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

16   operating.

17       77.    hiQ prays for relief as set forth below.

18                      **NINTH CLAIM FOR RELIEF**

19   **Fraudulent Competition in Violation of Cal. Bus. Prof. Code § 17200, *et seq.***

20       78.    Absent injunctive relief, hiQ will suffer loss of money or property and an economic

21   injury in fact, specifically being forced to breach contracts with its customers and likely close its

22   business and lay off its employees, and thus has standing to seek relief under section 17200.

23       79.    LinkedIn's actions constitute fraudulent competition.  LinkedIn made a clear

24   promise that members' profile pages would be "public." LinkedIn guarantees members that *the*

25   *members* "control the visibility and reach of [their] LinkedIn profile."  The User Agreement tells

26   each member that  "*you* own the content and information that you submit," and "you are granting

27   LinkedIn [only a] non-exclusive license." It further provides, "Members and/or Visitors *may*

28   *access and share your content and information, consistent with your settings and degree of*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                        18                34556\6002784.1

1  *connection with them.*"  These statements are likely to deceive the public, as LinkedIn is now

2  taking the position that it has the ability to control who can access member profiles and which

3  information will be public.

4        80.    hiQ reasonably relied to its detriment on LinkedIn's promises of public access and

5  LinkedIn's participation at hiQ conferences in building its business around those public profiles.

6        81.    As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

7  continue to suffer economic injury including but not limited to lost business and potential

8  bankruptcy.  Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will

9  suffer severe, irreparable harm in that it will be forced to terminate contracts with its clients and

10  may be forced out of business entirely. hiQ is informed and believes, and on that basis alleges, that

11  unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its

12  website or prevent hiQ's access altogether.

13        82.    hiQ has no adequate remedy at law because monetary damages will not afford

14  adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue

15  operating.

16        83.    hiQ prays for relief as set forth below.

17  **TENTH CLAIM FOR RELIEF**

18  **Promissory Estoppel**

19        84.    hiQ hereby incorporates by reference the allegations of the preceding paragraphs as

20  though fully set forth herein.

21        85.    As detailed above, LinkedIn, made a clear promise to the public that the members

22  control who will be able to access their profiles and that member profiles will be visible to the

23  general public.

24        86.    Further, LinkedIn's course of dealings towards hiQ led hiQ to believe that LinkedIn

25  would allow it continued access to its member pages and thus created an enforceable promise.

26  LinkedIn was fully aware of hiQ's activities for several years, participated in hiQ's annual

27  conferences, and never once objected.  This course of conduct led hiQ to believe that LinkedIn had

28  no complaints about hiQ's access to public profile date.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

19

34556\6002784.1

87.     hiQ reasonably relied on LinkedIn's promises. hiQ built a data analytics company on the premise that LinkedIn's member profiles were and would remain public.  Other businesses have been built on a similar model, including search engines Altavista, Excite, and Google and data mining and brokerage companies Lexis/Nexis, Intelius, and CoreLogic.  hiQ's reliance was further reasonable because LinkedIn encouraged continued reliance over time by attending hiQ's conferences, where it learned of hiQ's business model, growth, expansion, and continued use of data from its members' profiles.  LinkedIn should reasonably have expected these actions to induce detrimental reliance on the part of hiQ.

88.     hiQ's reliance on LinkedIn's promise was to its substantial detriment.  Based on LinkedIn's actions, hiQ spent millions of dollars and thousands of hours developing its technology.  It has over two dozen employees now, numerous customers and many prospects. This was all built on LinkedIn public profile pages and it would be lost if LinkedIn were permitted to suddenly reverse course on its promises.

89.     As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will continue to suffer damages including but not limited to lost business and potential bankruptcy. Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe, irreparable harm in that it will be forced to breach the contracts with its clients and may be forced out of business entirely. hiQ is informed and believes, and on that basis alleges, that unless the court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or prevent hiQ's access altogether.

90.     hiQ has no adequate remedy at law because monetary damages alone will not afford adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to continue operating.

91.     hiQ prays for relief as set forth below.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Right to Free Speech

92.     hiQ hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

20

34556\6002784.1

93.     LinkedIn's selective blockage of hiQ's access to publicly available information on its website violates hiQ's constitutional free speech rights under Article I, Section 2 of the California Constitution, which provides that "*[e]very person may freely speak, write, and publish his or her sentiments on all subjects.*"

94.     The California Constitution (like the U.S. Constitution) protects the functioning of public fora as places for speech to be uttered and *be heard* (not just the former). *See Cal. Newspaper Pub's Asso. v. Burbank*, 51 Cal App 3d 50, 123 (1975) (ban on "newsracks" was unconstitutional; free speech is not just an "in personam" right); *Lamont v. Postmaster General*, 381 U.S. 301, 307-308 (1965)  These rights of access extend to the world of data analysis for commercial purposes.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011).

95.     California's free speech guarantee protects expression even on privately owned property.  *Robins v. PruneYard Shopping Center*, 23 Cal. 3d 899, 592 P.2d 341 (1979).  The California Supreme Court rejected the argument that private property rights trump the interests of free expression, noting the "potential impact of the public forums sought here," a shopping center. In light of "the significance of the growing importance of the shopping center," the Court reasoned that "to prohibit expressive activity in the centers would impinge on constitutional rights."  *Id.* The U.S. Supreme Court affirmed the ruling.  *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83-84 (1980).

96.     Like the *PruneYard* shopping center, LinkedIn's website is effectively a public forum.  *See, e.g., Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (public forum is "traditionally defined as a place that is open to the public where information is freely exchanged… Websites that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions, meet the definition of a public forum" for purposes of the anti-SLAPP statute).  LinkedIn expressly opens the "public" profile pages section of its website to the public.  LinkedIn has a staggering 500 million members and anyone can join.  Further, LinkedIn refers to itself as a "community" and expressly holds itself out as a place "to meet,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

21

34556\6002784.1

1  exchange ideas, [and] learn," making it a modern day equivalent of the town square, a marketplace

2  of ideas of one-time unimaginable scale.  Having promised its members that the public profiles on

3  its site could be viewed by everyone, LinkedIn may not as a constitutional matter selectively

4  exclude hiQ.

5        97.    LinkedIn, through restricting hiQ's access to public information in a public forum,

6  would violate hiQ's right to free speech under the California Constitution.  LinkedIn's conduct

7  amounts to a denial of hiQ's right to access and receive information.  LinkedIn has no compelling

8  interest which would justify excluding hiQ from its public forum.

9        98.    As a direct and proximate result of LinkedIn's conduct, hiQ has suffered and will

10  continue to suffer damages including but not limited to lost business and potential bankruptcy.

11  Unless LinkedIn is restrained by a preliminary and permanent injunction, hiQ will suffer severe,

12  irreparable harm in that it will be forced to terminate contracts with its clients and may be forced

13  out of business entirely.  hiQ is informed and believes, and on that basis alleges, that unless the

14  court grants injunctive relief, LinkedIn will continue to restrict hiQ's access to its website or

15  prevent hiQ's access altogether.

16        99.    LinkedIn's violation of hiQ's rights, as guaranteed by Cal. Const. art. I, § 2, entitles

17  hiQ to receive compensatory damages, attorney's fees pursuant to Code Civ. Proc. § 1021.5, and

18  injunctive relief.

19       100.    hiQ has no adequate remedy at law because monetary damages alone will not

20  afford adequate relief for the loss of hiQ's business relationships, client goodwill, and ability to

21  continue operating.

22       101.    hiQ prays for relief as set forth below.

23                          **PRAYER FOR RELIEF**

24  WHEREFORE, Plaintiff hiQ prays for judgment against Defendant LinkedIn as follows:

25  A.  For preliminary injunctive relief, pursuant to Fed. R. Civ. P. 65, to prevent LinkedIn

26       from curtailing hiQ's access to LinkedIn member public profiles;

27  B.  For a declaration that LinkedIn is now and shall remain obligated to continue to permit

28       hiQ to access and use data from public LinkedIn member public profiles;

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

22

34556\6002784.1

C.  For a declaratory judgment that hiQ has not violated the DMCA, CFAA, or California Penal Code § 502(c) or committed common law trespass;

D.  Any damages proximately caused by the wrongful denial access pursuant to the above causes of action that permit damages;

E.  hiQ's attorneys fees and costs incurred in pursuing these claims as permitted by law; and

F.  For such other and further relief as the Court deems just and proper.

Dated: June 7, 2017                       FARELLA BRAUN + MARTEL LLP


                                          By:      /s/ C. Brandon Wisoff
                                                _____
                                                   C. Brandon Wisoff

                                          Attorneys for Plaintiff hiQ Labs

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF                    23                        34556\6002784.1

**EXHIBIT C**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation, | CASE NO. CV12-03816 CRB |
| Plaintiff, | **FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST:** |
| v. | **(1) 3TAPS, INC.,** |
| 3TAPS, INC., et al., | **(2) HARD YAKA, INC., and** |
| Defendants. | **(3) ROBERT G. KIDD** |
| | |
| | |
| | |
| AND RELATED COUNTERCLAIMS | |

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, pursuant to stipulation of Plaintiff craigslist, Inc. ("craigslist"), on the one hand, and Defendants 3taps, Inc. ("3taps"), Hard Yaka, Inc., Robert G. Kidd (collectively, "Defendants") that:

**I.      Final Judgment**

Judgment is entered in favor of craigslist against Defendants, jointly and severally, in the amount of $1,000,000.00.

**II.      Injunction**

Defendants and their respective current and future officers, agents, servants, employees,

and other persons who are in active concert or participation with them (collectively, the "Prohibited Parties"), are ordered and enjoined as follows:

A.     Within one day (1) day of the entry of this Order, the Prohibited Parties will forever cease access to and/or any use of, including but not limited to reproducing, transmitting, displaying, framing, including, disseminating, publishing, distributing, or giving away ("Access and Use"), any content, including but not limited to user-generated postings, advertisements, information, data, images, messages, or emails, that has been submitted to, posted on, or transmitted via any craigslist website, service, or computer server, including, but not limited to *craigslist.org* ("craigslist Content"). For the avoidance of doubt, this prohibition includes, but is not limited to, craigslist Content that a third party, including without limitation a third party located outside U.S. jurisdiction, has obtained from (i) any craigslist website, service, or computer server, or (ii) any other party, or series of parties, that itself or themselves obtained craigslist Content from any craigslist website, service or computer server.

B.     The prohibition on Access and Use of craigslist Content includes: 1) direct Access and Use by the Prohibited Parties; and 2) indirect Access and Use via a third party, intermediary, or proxy, including but not limited to any search engine or participant in crowd sourcing of craigslist Content. The prohibition covers all Access and Use by the Prohibited Parties and provides no exceptions, including but not limited to a claim of fair use or implied license.

C.     The Prohibited Parties are also permanently prohibited from:

(1)     directly or indirectly downloading, harvesting, obtaining, or copying craigslist Content by any means whatsoever, including but not limited to robots, spiders, scrapers, or crawlers;

(2)     directly or indirectly displaying, framing, including, disseminating, publishing, distributing, selling, giving away, or otherwise presenting or

making available to any person or entity, or facilitating same, any craigslist Content;

(3) representing, on their websites, in their mobile apps, or otherwise, that they are in any way affiliated with craigslist, or that any of their products or services contain or include any craigslist Content;

(4) directly or indirectly circumventing technological measures that control access to any craigslist website or any portions thereof, including but not limited to, measures that: monitor and/or block activity associated with particular IP addresses or provide a set of instructions to any automated technologies visiting the craigslist website that prohibit automated programs (e.g., a robots.txt file), whether through use of multiple IP addresses or any other means;

(5) directly or indirectly infringing any of craigslist's copyrighted materials;

(6) sending or transmitting, or paying, directing, aiding, or conspiring with others to send or transmit (i) any commercial electronic mail or electronic communication to any craigslist email address, user, member or poster, bearing any false, fraudulent, anonymous, inactive, deceptive, or invalid return information, or otherwise using any other artifice, scheme or method of transmission that would prevent the automatic return of undeliverable electronic mail to its original and true point of origin or that would cause the email return address to be that of anyone other than the actual sender or by any other means in violation of the CAN-SPAM Act, 15 U.S.C. § 7701, et seq. or (ii) any commercial electronic mail message to email addresses known to have been acquired or harvested from any craigslist website;

(7) engaging in the purchase, acquisition, collection, harvest, sale, transfer, transmission, distribution, trade, or display of craigslist users' postings, names, locations, addresses, email addresses, phone numbers, contact

information, screen names or other user information, taken from any craigslist website, service, or computer server, including, but not limited to *craigslist.org*, or lists thereof; and

    (8)    directly or indirectly using (other than fair use or nominative fair use, such as for purposes of commentary), any craigslist trademark or trade dress, or applying for, or registering any mark, trade name, trade dress, company name, domain name, website username, or url that contains any craigslist trademark or misspelling of any craigslist trademark, or that is confusingly similar to any craigslist trademark; and from using or acquiring any Twitter handle, email address, avatar, domain name, social media user name, or other asset of any kind that contains or suggests the words "craig," "craigslist," or anything similar.

D.    Within seven (7) days of the entry of this Order, 3taps will assign and otherwise transfer to craigslist all rights, title (including ownership), and interest in and to the craiggers.com domain name.

E.    Within thirty (30) days of the entry of this Order, the Prohibited Parties shall permanently delete or destroy any craigslist Content, regardless of whether obtained directly or indirectly, whether stored in electronic form or otherwise, in their possession, custody, or control.  craigslist may retain a third party digital forensics firm ("Forensics Firm") to certify to the destruction of the craigslist Content from Defendants' computer systems and files.  Defendants will provide the Forensics Firm with all necessary access for such a certification within fifteen (15) days of the entry of this Order.

F.    Notwithstanding the foregoing, any individuals who are Prohibited Parties are permitted to make limited personal, non-commercial use of the craigslist website, in full compliance with the craigslist Terms of Use in effect at that time, for the purchase and sale of goods and services.  This use is limited as follows:

    (i)    no more than ten (10) postings per month per individual; and

1      (ii)     no more than twenty (20) visits to the website per month per individual,

2              with each visit not to exceed one (1) hour.

3     G.     To the extent craigslist has reason to believe that any Defendant has violated any

4            provision herein, craigslist will provide such Defendants notice and fifteen (15)

5            days to cure before seeking to enforce this Injunction.

6  **III.   Monitoring Compliance**

7     It is further ORDERED that the Prohibited Parties shall:

8     A.     Take reasonable steps sufficient to monitor and ensure that all persons within their

9            control or employment (whether as independent contractors, employees, agents,

10           partners or in some other capacity) comply with this Order, including but not

11           limited to providing a copy of this Order to any person within their control or

12           employment and requesting that such person adhere to its terms; and

13    B.     Take all reasonable corrective action with respect to any individual within their

14           control or employment whom any Prohibited Party determines is not in

15           compliance with the terms of this Order, which may include training, disciplining,

16           and/or terminating such individual, and notifying craigslist promptly in writing of

17           the underlying conduct.

18  **IV.   Dismissal of Defendants' Counterclaims With Prejudice**

19     Defendants' counterclaims are dismissed with prejudice.

20  **V.    Retention of Jurisdiction**

21     It is further ORDERED that this Court shall retain jurisdiction of this matter in law and

22  equity for purposes of enforcing and/or adjudicating claims of violations of this Order or of

23  disputes arising in connection with the Settlement Agreement entered by the parties hereto.  Any

24  such matters shall be raised by noticed motion.  The Court finds that the above-referenced

25  stipulation of the Parties includes a waiver of the right to appeal the entry of this Order and a

26  waiver of the right to contest the validity of any clause, term, or provision herein in any

27  subsequent proceeding, and enters the Order on that basis; provided, however, that if for any

28  reason any clause, term, or provision herein is deemed unlawful or invalid, the remaining

1    clauses, terms and provisions shall remain in full force and effect.

2          IT IS SO ORDERED.

3    Dated:  June 30, 2015

4                                              Honorable Charles R. Breyer

THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone:  (415) 659-1805
Facsimile:  (415) 659-1950

Attorney for Non-Party
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>      Plaintiff,<br><br>   v.<br><br>LinkedIn Corp,<br><br>      Defendant. | CASE No.:  17-cv-03301-EMC<br><br>**[PROPOSED] ORDER GRANTING NON-PARTY 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER N.D. CAL. CIVIL LOCAL RULE 3-12**<br><br>**Date: No hearing requested**<br>**Time: No hearing requested**<br>**Ctrm: No hearing requested**<br>**Judge: Hon. Edward M. Chen**<br><br>**Trial date:  None Set.** |

1    The Court, having considered all papers submitted in favor of and opposed to 3taps'

2 Inc.'s Administrative Motion To Consider Whether Cases Should Be Related Under N.D.

3 Cal. Civil Local Rule 3-12 (the "Motion"), and good cause appearing therefore, hereby

4 orders as follows:

5    1. The Motion is <u>granted.</u>

6    2. <u>3taps, Inc. v. LinkedIn Corp.</u>, No. 4:18-cv-00855-NC, filed February 8, 2018, is

7 ordered related to this matter under Civil Local Rule 3-12.  The clerk is directed to reassign

8 that matter to this Court.

9    **IT IS SO ORDERED.**

10    Dated: _____, 2018

11

12    _____

13                              The Honorable Edward M. Chen
                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THOMAS V. CHRISTOPHER (SBN#185928)
Thomas@ThomasChristopherLaw.com
THE LAW OFFICES OF THOMAS V. CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone: (415) 659-1805
Facsimile:  (415) 659-1950

Attorney for Non-Party
3TAPS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| hiQ Labs, Inc., | ) | CASE No.:  17-cv-03301-EMC |
| Plaintiff, | ) | **PROOF OF SERVICE** |
| | ) | |
| v. | ) | |
| | ) | **Date:    No hearing requested** |
| LinkedIn Corp, | ) | **Time:    No hearing requested** |
| | ) | **Ctrm:    No hearing requested** |
| Defendant. | ) | **Judge:   Hon. Edward M. Chen** |
| | ) | |
| | ) | **Trial date:  None Set.** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

PROOF OF SERVICE                                                    Case No. 17-CV-03301-EMC

**PROOF OF SERVICE**

1

2      I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; by business address is as shown on the caption page of this document.  On February 14, 2018, I served the document described as follows:

3

4   **NON-PARTY 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER N.D. CAL. CIVIL LOCAL RULE 3-12;**

5   **DECLARATION OF THOMAS V. CHRISTOPHER IN SUPPORT OF NON-PARTY 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER N.D. CAL. CIVIL LOCAL RULE 3-12 (EXHS. A, B AND C ATTACHED);**

6

7

8   **[PROPOSED] ORDER GRANTING NON-PARTY 3TAPS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER N.D. CAL. CIVIL LOCAL RULE 3-12; and**

9

10  **PROOF OF SERVICE**

11  on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

12  Johathan H. Blavin, Esq.                    Attorneys for
    MUNGER TOLLES & OLSON, LLP                  LinkedIn Corporation
13  560 Mission Street, 27th Floor
    San Francisco, CA 94105
14  Tel:  415.512.4000
    E-Mail:  Jonathan.Blavin@mto.com
15

16  Jeffrey G. Lau, Esq.                        Attorneys for
    Farella Braun & Martel, LLP                 hiQ Labs, Inc.
17  235 Montgomery Street, 17th Floor
    San Francisco, CA 94104
    Tel:  415.954.4400
18  Email:  jlau@fbm.com

19

20  /X/     (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at San Jose, California and placed for collection and overnight delivery following ordinary business practices. (AS NOTED)

21

22

23      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on February 14, 2018 at San Francisco, California.

24

25

26                                              Rosanna Keenan

27

28