| | |
|---|---|
| COREY WORCESTER (*pro hac vice*) | DONALD B. VERRILLI, JR. (*pro hac vice*) |
| coreyworcester@quinnemanuel.com | donald.verrilli@mto.com |
| RENITA SHARMA (*pro hac vice*) | MUNGER, TOLLES & OLSON LLP |
| renitasharma@quinnemanuel.com | 1155 F Street, NW |
| QUINN EMANUEL URQUHART AND SULLIVAN LLP | Washington, D.C. 20004 |
| 51 Madison Avenue, 22nd Floor | Telephone: (202) 220-1100 |
| New York, NY 10010 | Facsimile: (202) 220-2300 |
| Telephone: (212) 849-7000 | |
| Facsimile: (212) 849-7100 | JONATHAN H. BLAVIN (SBN 230269) |
| | jonathan.blavin@mto.com |
| | ROSEMARIE T. RING (SBN 220769) |
| TERRY L. WIT (SBN 233473) | rose.ring@mto.com |
| terrywit@quinnemanuel.com | NICHOLAS D. FRAM (SBN 288293) |
| QUINN EMANUEL URQUHART AND SULLIVAN LLP | nicholas.fram@mto.com |
| 50 California Street, 22nd Floor | MARIANNA MAO (SBN 318070) |
| San Francisco, CA 94111 | marianna.mao@mto.com |
| Telephone: (415) 875-6600 | MUNGER, TOLLES & OLSON LLP |
| Facsimile: (415) 875-6700 | 560 Mission Street, 27th Floor |
| | San Francisco, California 94105 |
| | Telephone: (415) 512-4000 |
| | Facsimile: (415) 512-4077 |
| Attorneys for Plaintiff hiQ Labs, Inc. | |
| | Attorneys for Defendant LinkedIn Corporation |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| hiQ Labs, Inc., | Case No. 3:17-cv-03301-EMC |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | The Hon. Edward M. Chen |
| LinkedIn Corp., | Hearing Date: August 20, 2020 |
| Defendant. | Time: 1:30 p.m. |
| | Trial Date: None Set |

Plaintiff hiQ Labs, Inc. ("hiQ") and Defendant LinkedIn Corporation ("LinkedIn") jointly submit this Joint Case Management Statement pursuant to the Standing Order for All Judges of the Northern District of California dated November 1, 2018 and Civil Local Rule 16-9.

### 1. Jurisdiction and Service

The parties agree that the Court has federal question jurisdiction over hiQ's declaratory judgment claims of no liability under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) ("CFAA") and the Digital Millennium Copyright Act (17 U.S.C. § 1201), because both are federal statutes, as well as hiQ's federal claims under the Sherman Act, 15 U.S.C. §§ 1, 2. The Court has supplemental jurisdiction over hiQ's state law claims for (1) a declaration of no liability under the doctrine of trespass to chattels, (2) a declaration of no liability under California Penal Code §502(c); (3) intentional interference with contract; (4) intentional interference with prospective economic advantage; (5) unfair competition in violation of Cal. Bus. Prof. Code § 17200, *et seq.*, (6) unlawful competition in violation of Cal. Bus. Prof. Code § 17200, *et seq.*; and (7) fraudulent competition in violation of Cal. Bus. Prof. Code § 17200, *et seq.*, as all of these claims arise out of the same common nucleus of operative facts as hiQ's federal claims.

The parties agree that personal jurisdiction and venue are proper in the Northern District of California.

No parties remain to be served.

### 2. Facts

#### *(a)   hiQ's Statement*

The gravamen of this dispute is whether LinkedIn, the world's largest and most recognizable social networking platform, may lawfully prohibit hiQ, a tech startup that develops "people analytics" products that compete with LinkedIn's products, from accessing LinkedIn members' publicly available profile data—data to which LinkedIn permits its *non-competitors* unfettered access.

These questions first arose on May 23, 2017, when LinkedIn sent hiQ the first in a series of cease-and-desist letters, ordering hiQ to stop accessing LinkedIn members' public profiles and

1  asserting that hiQ's continued access to LinkedIn's website violated a litany of laws, including the
2  Computer Fraud and Abuse Act ("CFAA"), the Digital Millennium Copyright Act, and California
3  Penal Code § 502(c), and constituted common law trespass to chattels.  LinkedIn's letter further
4  indicated that it was protecting its members from hiQ's "copying" of their information.  LinkedIn
5  then altered its website to block hiQ's access to users' public profiles.
6  　　　　In its cease and desist letters, and also in this litigation, LinkedIn attempts to frame this
7  dispute as one regarding internet privacy.  But LinkedIn members *chose* to post this information
8  publicly.  Indeed, the public portion of LinkedIn users' profiles has long been one of the network's
9  primary selling points, and LinkedIn's website and user agreement have long stated that the
10 information users chose to make public remained theirs to provide to whomever viewed it online.
11 　　　　LinkedIn's conduct makes clear that LinkedIn is not attempting to protect its users'
12 privacy, but its own market power.  LinkedIn's cease-and-desist campaign, and its shutdown of
13 hiQ's access to its website, began only when LinkedIn developed people analytics products that
14 were a direct competitor of hiQ's products.  And LinkedIn has not attempted to block third-party
15 *non-competitors* (such as Google or Bing) from accessing its members' public data.  LinkedIn's
16 appeals to privacy concerns appear to be a convenient smokescreen to shield its anticompetitive
17 conduct.  LinkedIn's cease-and-desist letters, and its willingness to cut off hiQ's raw data supply
18 for anticompetitive purposes, effectively eviscerated hiQ's business.  hiQ lost 75% of its
19 employees, watched its business valuation plummet, and lost investors and business opportunities,
20 including major clients who specifically noted that they could no longer do business with hiQ
21 because of LinkedIn's conduct.
22 　　　　hiQ seeks to recover the damages it suffered as a result of LinkedIn's anticompetitive and
23 otherwise unlawful conduct, as well as to obtain a declaration from the Court that hiQ has not
24 violated and will not violate federal or state law by accessing and copying wholly public
25 information from LinkedIn's website.  hiQ further seeks injunctive relief preventing LinkedIn
26 from misusing the law to complete its attempted destruction of hiQ's business, and preventing
27 LinkedIn from continuing to strangle competition by giving itself an unfair competitive advantage
28

through unlawful and unfair business practices.

### *(b)     LinkedIn's Statement*

LinkedIn's mission is to connect the world's professionals to make them more productive and successful. Through its platform, LinkedIn allows its members to create, manage and post their professional histories and interests online. At the heart of LinkedIn's platform are its members, whose LinkedIn profiles serve as their professional online identities. Since its founding in 2002, LinkedIn has invested significant time, labor, skill, and resources (in the billions of dollars) developing its platform, which is available for free and provides value to hundreds of millions of users around the world.

hiQ's automated software—known as "bots"—access LinkedIn's computers to scrape information from them, and then sell that data to hiQ's corporate clients who wish to monitor their employees. According to hiQ's complaint, it originally used other data for its analytics (something its competitors still do), but over time decided that it was easier to take data from LinkedIn. hiQ does not notify users when it takes their data, and unlike LinkedIn, makes no enforceable commitment in a privacy policy or otherwise to LinkedIn's members regarding what it will or will not do with their data once it is scraped or to whom it may sell or transfer it. Nor is there any way for LinkedIn members to "opt out" of hiQ's processing and selling of their data. Prior to the Court's preliminary injunction order (which required LinkedIn to whitelist hiQ's access to its servers), hiQ did not identify itself when it deployed bots to scrape LinkedIn's computers and circumvented technical barriers that LinkedIn erected to prevent such scraping and automated access. These technical measures blocks tens of millions of automated requests to LinkedIn's computers each day.

Since hiQ filed its suit, privacy online has taken on even clearer importance in the wake of scandals including Clearview AI, a company that scrapes billions of pictures from social media and other websites without permission to fuel a facial recognition tool sold to law enforcement and others, and Cambridge Analytica, a company that harvested and misused user data from Facebook.

hiQ's scraping of member data and product offerings interfere with and undermine the

privacy choices that LinkedIn provides its members.  Members make their profiles *visible* to the public *on LinkedIn*, where they can alter or remove it, but that does not mean they consent to any and all companies harvesting their data, storing it in databases, and using it for any purpose.  On May 23, 2017, LinkedIn asked hiQ to stop scraping member data from its servers without permission, and explicitly prohibited hiQ's access to LinkedIn's servers under the CFAA.  hiQ responded by suing LinkedIn, claiming that it has an unfettered right to access LinkedIn's computers and gather data without member consent.  With its amended complaint, hiQ now alleges that this is not just a suit about the letter that LinkedIn sent in 2017, but about some nebulous plan to monopolize an entire ill-defined market.  hiQ's unauthorized access to LinkedIn's computers is not supported or privileged under the competition laws or any other source of law, and LinkedIn plans to vigorously defend its responsible actions in protecting the security of its members' information.

*Principal Factual Issues In Dispute.*

**The parties agree that the following are a few of the principal factual issues in dispute:**

- The markets in which LinkedIn offers its products and services, the market or markets in which hiQ offers its products and services, and the extent of each parties' market power in those markets;
- Whether there was harm to competition within the relevant market on account of LinkedIn's May 23, 2017 cease and desist letter and whether hiQ suffered any injury of the type that the antitrust laws were meant to prevent;

**hiQ believes the following are the principal factual issues in dispute:**

- LinkedIn's knowledge of hiQ's scraping activities prior to its decision to send hiQ the May 23, 2017 cease and desist letter;
- LinkedIn's motivations for sending hiQ the May 23, 2017 cease and desist letter;
- The timeline relating to LinkedIn's decision to create its own people analytics products that would compete with hiQ's products;

- LinkedIn's market share in the relevant market;
- The impact that LinkedIn's cease and desist letter had on hiQ's business development (including its impact on investor interest and commitments);
- The identities of other competitors in the people analytics space who received cease and desist letters similar to LinkedIn's May 23, 2017 letter to hiQ;
- Whether LinkedIn's stated reasons for attempting to preclude hiQ from accessing it's members' public profile data are pre-textual;
- Whether LinkedIn's members with public profiles in fact believe that their publicly-available information is protected from access and use by third-parties;

**LinkedIn believes the following are the principal factual issues in dispute:**

- The methods that hiQ used to gain access to LinkedIn's computers and scrape data of LinkedIn's members, including the use of automated software or "bots," and whether hiQ was aware of or knowingly bypassed LinkedIn's technical measures;
- Whether the LinkedIn members whose data hiQ scrapes are aware that their data are being obtained by hiQ, repackaged, and sold to their employers;
- The extent to which hiQ informed LinkedIn that it was obtaining data from LinkedIn's computers, the methods it used to obtain data from LinkedIn's computers, and its existing and prospective contractual and business relationships;
- Whether LinkedIn entered into any agreements or made any affirmative statements to hiQ authorizing its scraping practices prior to sending its cease-and-desist letter;
- The health of hiQ's business prior to receiving the May 23, 2017 cease and desist letter, the reasons some of its former employees may have departed, and the reasons that hiQ may be having difficulty signing customers or raising money and investments;
- The amount of damages, if any, hiQ has suffered based on hiQ's decision to stop scraping LinkedIn data for a period of two weeks after hiQ received a cease-and-desist letter from LinkedIn; and
- The effects that LinkedIn's decision to prohibit hiQ's access to its website might have on competition in the market in which hiQ offers its products and services.

### 3. **Legal Issues**

The parties dispute a number of legal issues, including:

- Whether hiQ's continued access to LinkedIn's website violates the Computer Fraud and Abuse Act;
- Whether hiQ's continued access to LinkedIn's website violates the Digital Millennium Copyright Act;
- Whether hiQ's continued access to LinkedIn's website constitutes common law trespass to chattels;
- Whether hiQ's damages claims are precluded by the *Noerr-Pennington* doctrine and/or the California litigation privilege.
- Whether the California Penal Code § 502 applies to public profile pages on the LinkedIn website and, if it does apply, whether hiQ's access to such profiles violates the statute;
- Whether hiQ has stated a claim for unfair competition in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;
- Whether hiQ has stated a claim for fraudulent competition in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;
- Whether hiQ has stated a claim for intentional interference with contract;
- Whether hiQ has stated a claim for intentional interference with prospective economic advantage;
- Whether hiQ has stated a claim for monopolization under the Sherman Act, 15 U.S.C.§ 2;
- Whether hiQ has stated a claim for attempted monopolization under the Sherman Act, 15 U.S.C. § 2 and;
- Whether hiQ has stated a claim for violation of the Sherman Act, Section 1, 15 U.S.C §
- Whether any of hiQ's claims are preempted by the CFAA; and
- Whether hiQ breached the LinkedIn User Agreement, which specifically prohibits automated access and scraping;

### 4. **Motions**

hiQ filed a complaint and motion for a temporary restraining order on June 7, 2017 (ECF

1  Nos. 1, 3).  On June 9, 2017, hiQ withdrew its motion for a temporary restraining order without
2  prejudice to allow discussion among the parties (ECF No. 15); however, those discussions did not
3  prove fruitful, and hiQ renewed its motion on June 22, 2017.  (ECF No. 23).  On June 26, 2017,
4  LinkedIn opposed hiQ's motion (ECF No. 31), and hiQ replied to that opposition on June 27, 2017
5  (ECF No. 33).  The Court held a hearing on July 27, 2017, and on August 14, 2017, the Court
6  granted hiQ's motion for a preliminary injunction.  (ECF No. 63).  The Ninth Circuit affirmed the
7  Court's order granting hiQ a preliminary injunction.  (ECF No. 114).  LinkedIn has filed a petition
8  for a writ of certiorari with the Supreme Court of the United States regarding the Ninth Circuit's
9  holding in its opinion regarding the applicability of the CFAA to the scraping of public (i.e., non-
10 password protected) websites (ECF No. 133).  The Supreme Court ordered hiQ to file a response
11 to LinkedIn's petition, which hiQ did on June 25, 2020.  The petition is now fully briefed and has
12 been distributed for the Supreme Court's September 29, 2020 conference, which means that the
13 beginning of October is the earliest that the Court might rule on the petition.
14         Pursuant to the current Court-ordered scheduling order (ECF No. 129), hiQ filed an
15 amended complaint on February 14, 2020 (ECF No. 131), and LinkedIn moved to dismiss hiQ's
16 new Sherman Act claims and its damages claims (ECF No. 137).  That motion is fully briefed and
17 set for hearing on August 20, 2020.
18         The parties anticipate there may be future discovery and dispositive motions, but do not
19 have any specific motions to report.
20         **5.     Amendment of Pleadings**
21         hiQ filed an Amended Complaint on February 14, 2020.  Pursuant to paragraph 1 of the
22 current Court-ordered scheduling order (ECF No. 129), hiQ no longer can amend its complaint as
23 of right.  hiQ reserves the right to seek to amend the pleadings based on additional information
24 that may be obtained through discovery.
25         **6.     Evidence Preservation**
26         Both hiQ and LinkedIn have reviewed the Guidelines Relating to the Discovery of
27 Electronically Stored Information ("ESI Guidelines"), and met and conferred in September 2017
28

pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### 7. Disclosures

Pursuant to paragraph 5 of the current Court-ordered scheduling order (ECF No. 129), initial disclosures are set to be exchanged either (i) 10 days after the date the Supreme Court issues an order denying LinkedIn's certiorari petition, or (ii) if the Supreme Court grants LinkedIn's certiorari petition, 10 days after the Supreme Court issues an opinion on the merits in the case or otherwise disposes of the petition.

### 8. Discovery

Pursuant to paragraph 3 of the current Court-ordered scheduling order (ECF No. 129), discovery is currently stayed until either (i) 10 days after the date the Supreme Court issues an order denying LinkedIn's certiorari petition, or (ii) if the Supreme Court grants LinkedIn's certiorari petition, 10 days after the Supreme Court issues an opinion on the merits in the case or otherwise disposes of the petition.

The parties agree that the Court should defer entering a scheduling order until after the expiration of the current discovery stay. The parties propose that they submit a proposed scheduling order upon the expiration of the discovery stay. The parties propose that the Court set a further case management conference for a date in November 2020, and will notify the Court if the stay remains in effect and it makes sense to continue that CMC.

### 9. Class Actions

This case is not a class action.

### 10. Related Cases

On February 22, 2018, this Court entered an order to the effect that *3taps, Inc. v. LinkedIn Corp.*, No. 4:18-cv-00855-NC, filed on February 8, 2018, is ordered related to this matter under Civil Local Rule 3-12. (ECF No. 102). The *3taps* case, like this case, raises the question of whether LinkedIn can invoke the CFAA to prevent scraping of its website. The parties are not aware of any other related cases.

### 11. **Relief**

hiQ's Amended Complaint (ECF No. 131) seeks the following relief:

- A declaration that LinkedIn is now and shall remain obligated to continue to permit hiQ to access and use data from public LinkedIn member public profiles;
- A declaratory judgment that hiQ has not violated the DMCA, CFAA, or California Penal Code § 502(c) or committed common law trespass;
- Any direct damages proximately caused by LinkedIn's conduct described therein;
- Any consequential damages proximately caused by LinkedIn's conduct described therein;
- Trebled damages proximately caused by LinkedIn's anticompetitive conduct pursuant to the Amended Complaint's causes of action that permit trebled damages;
- Punitive damages;
- hiQ's attorneys fees and costs incurred in pursuing its claims, as permitted by law;
- Pre-judgment and post-judgment interest; and
- Any such other and further relief as the Court deems just and proper.

LinkedIn denies that hiQ is entitled to any such relief. LinkedIn will set out its claims for relief in its answer and counterclaims. LinkedIn believes that hiQ's damages claims are without merit given that they all arise from protected activity. hiQ sued LinkedIn and has faced no or very minimal technical disruptions since filing this action. LinkedIn strongly denies that it has any monopoly power, much less used any such power in anticompetitive ways.

### 12. **Settlement and ADR**

The parties conducted a settlement conference before a Magistrate Judge Ryu in February 2018. The case did not settle.

### 13. **Consent to Magistrate Judge for All Purposes**

The parties did not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. Currently, there is not a magistrate judge assigned to the matter.

1  **14.     Other References**

2  The parties agree that this case is not suitable for reference to binding arbitration, a special
3  master, or the Judicial Panel on Multidistrict Litigation.

4  **15.     Narrowing of Issues**

5  In LinkedIn's view, its motion to dismiss is the only mechanism through which issues can
6  be narrowed at this time, but reserves the right to suggest additional ways to narrow issues
7  depending on how the case progresses.

8  hiQ does not believe that there are presently any issues that can be narrowed by agreement
9  or by motion, and does not believe there is any need to bifurcate issues, claims, or defenses in this
10 case.

11 The parties will work together in good faith to develop suggestions to expedite the
12 presentation of evidence at trial.

13 **16.     Expedited Trial Procedure**

14 The parties agree that this case is not amenable to expedited trial.

15 **17.     Scheduling**

16 As explained in Section 8 (Discovery) above, the parties agree that they should defer
17 submitting a proposed scheduling order until the expiration of the current stipulated discovery
18 stay.

19 **18.     Trial**

20 hiQ requested a jury trial and has filed a jury demand.  (ECF No. 68.)  Depending on
21 which claims and defenses proceed to trial, LinkedIn estimates that trial could last between seven
22 (7) and twenty days (20), whereas hiQ estimates that trial could last between seven (7) and ten
23 (10) days  LinkedIn asserts that hiQ is not entitled to a jury trial on its claims for injunctive relief.

24 **19.     Disclosure of Non-Party Interested Entities or Persons**

25 The parties have filed their certifications of interested entities or persons.  LinkedIn refers
26 the Court to its certificate of interested entities which it filed on June 28, 2017 (ECF No. 36).  hiQ
27 refers the Court to its amended certificate of interested entities, which it filed on August 13, 2020 (

28

ECF No. _).

### 20. Professional Conduct

The parties certify that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21. Other

None.

Dated: August 13, 2020                                   QUINN EMANUEL URQUHART AND SULLIVAN LLP

By:   /s/ *Corey Worcester*
         Corey Worcester (*pro hac vice*)

         *Attorneys for Plaintiff hiQ Labs, Inc.*

Dated: August 13, 2020                                   MUNGER, TOLLES & OLSON LLP

By:   /s/ *Jonathan H. Blavin*
         Jonathan H. Blavin (SBN 230269)

         *Attorneys for Defendant LinkedIn Corp.*

### N.D. Cal. Civil Local Rule 5-1 Attestation

I, Jonathan H. Blavin, am the ECF user whose credentials were utilized in the electronic filing of this document.  In accordance with N.D. Cal. Civil Local Rule 5-1, I hereby attest that Corey Worcester concurred in the filing of this document.

/s/ *Jonathan H. Blavin*
Jonathan H. Blavin