Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Renita Sharma (*pro hac vice*)
renitasharma@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6331

*Attorneys for Plaintiff and Counterclaim Defendant hiQ Labs, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| hiQ Labs, Inc., <br><br> *Plaintiff and Counterclaim Defendant*, <br><br> vs. <br><br> LinkedIn Corp., <br><br> *Defendant and Counterclaim Plaintiff.* | Case No. 3:17-cv-03301-EMC <br><br> **PLAINTIFF AND COUNTERCLAIM DEFENDANT HIQ LABS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE IN PART DEFENDANT AND COUNTERCLAIM PLAINTIFF LINKEDIN CORP.'S COUNTERCLAIMS** <br><br> Judge:             Hon. Edward M. Chen <br> Hearing Date:  April 8, 2021 <br> Time:              1:30 p.m. |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................3

I.  LINKEDIN'S CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT
    SHOULD BE DISMISSED ...............................................................................................3

    A.  hiQ Did Not Act Without Authorization And Did Not Access Non-Public
        Information ............................................................................................................4

    B.  hiQ Did Not Exceed Authorization Simply Because LinkedIn Imposed
        Technical Barriers ..................................................................................................7

    C.  LinkedIn's Petition For Certiorari Does Not Warrant Denial of hiQ's
        Motion to Dismiss ..................................................................................................8

II. LINKEDIN'S CLAIM UNDER CALIFORNIA PENAL CODE § 502 SHOULD
    BE DISMISSED ................................................................................................................9

III. HIQ'S MOTION TO STRIKE LINKEDIN'S BREACH OF CONTRACT CLAIM
     SHOULD BE GRANTED ...............................................................................................11

IV. LINKEDIN HAS NOT PLED A CLAIM FOR MISAPPROPRIATION ..........................12

    A.  LinkedIn Cannot State A Claim For Misappropriation Of Data Owned By
        LinkedIn's Members ............................................................................................12

    B.  LinkedIn's Misappropriation Claim Is Preempted By CUTSA ..............................13

V.  LINKEDIN HAS NOT PLED A CLAIM FOR TRESPASS TO CHATTELS ..................14

CONCLUSION ............................................................................................................................15

-i-                           Case No. 3:17-cv-03301-EMC
PLAINTIFF AND COUNTER-DEFENDANT HIQ LABS, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS DEFENDANT LINKEDIN CORP.'S COUNTERCLAIMS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................. 6, 10

*Emp't Div., Dep't of Human Res. of Or. v. Smith*,
   494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ......................................................... 2

*Facebook Inc. v. Power Ventures*,
   844 F.3d 1058 (9th Cir. 2016) ................................................................................................. 5, 6

*Fed. Trade Comm'n v. SPM Thermo-shield, Inc.*,
   2020 WL 6545975 (M.D. Fla. Nov. 6, 2020) ............................................................................ 8

*Gradine v. Biomet, Inc.*,
   2006 WL 1049731 (E.D. Cal. Apr. 20, 2006) ............................................................................ 8

*hiQ Labs, Inc. v. LinkedIn Corporation*,
   938 F.3d 985 (2019) .......................................................................................................... *passim*

*Intel Corp. v. Hamidi*,
   30 Cal. 4th 1342, 71 P.3d 296 (2003) ...................................................................................... 14

*International News Service v. Associated Press*,
   248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211 (1918) .................................................................... 13

*Kelly v. Quarterman*,
   296 F. App'x 381 (5th Cir. 2008) ............................................................................................... 8

*Musacchio v. United States*,
   136 S.Ct. 709, 193 L.Ed.2d 639 (2016) ................................................................................. 3, 7

*National Basketball Assoc. v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ..................................................................................................... 13

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018),
   *rev'd in part*, 139 S. Ct. 873, 203 L. Ed. 2d 180 (2019) .................................................. 2, 9, 10

*Sandvig v. Barr*,
   451 F. Supp. 3d 73 (D.D.C. 2020) ............................................................................................. 2

*SunPower Corp. v. SolarCity Corp.*,
   2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ......................................................................... 14

*Thrifty-Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) ................................................................................................... 14

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2016) ................................................................................................. 9, 10

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) ...................................................................................................... 7

*United States v. Nosal,*
   844 F.3d 1024 (9th Cir. 2016) .................................................................................................... 6

*Van Buren v. United States*,
   No. 19-783 (filed Dec. 18, 2019) ........................................................................................... 8, 9

*Vance v. Google LLC*,
2021 WL 534363 (N.D. Cal. Feb. 12, 2021) ........ 9

**STATUTORY AUTHORITIES**

18 U.S.C. § 3599(e) ........ 8

Cal. Penal Code 502 ........ 10

Cal. Penal Code 502(c)(1) & (c)(2) ........ 9

# INTRODUCTION

LinkedIn's Opposition to hiQ's Motion to Dismiss posits that "much has changed" since this Court granted hiQ a preliminary injunction against LinkedIn's efforts to eliminate the start-up. LinkedIn's Opposition to hiQ's Motion to Dismiss, ECF No. 189 (hereinafter "Opp."), at 1. Primary among the relevant developments is the Ninth Circuit's decision affirming this Court's Order, which held that the CFAA's "prohibition on unauthorized access is properly understood to apply only to private information—information delineated as private through use of a permission requirement of some sort." *hiQ Labs, Inc. v. LinkedIn Corporation*, 938 F.3d 985, 1001 (2019) (hereinafter "*hiQ Labs*").

Instead of actually addressing that controlling decision, however, LinkedIn attempts to conjure a "dystopian" future that it alleges will inexorably follow from the dismissal of its counterclaims—a future in which hiQ "leave[s] everyone exposed to an ever-increasing set of risks of data manipulation." Opp. at 1. But hiQ is not Cambridge Analytica, Clearview AI, or any of the other companies cited by LinkedIn in an attempt to obfuscate the weakness of LinkedIn's own claims in *this* case. LinkedIn's claims against hiQ fail under the Ninth Circuit's decisions in *hiQ Labs* and other cases, and references to other companies or appeals to an imagined future parade of horribles cannot change that fact.

Moreover, LinkedIn proclaims that it is engaged in "nothing less than an effort to vindicate its right to protect its technical infrastructure and the right of its members to give limited consent to the use of their data." Opp. at 1. If this argument sounds familiar, that is because it is: LinkedIn made that very argument to this Court when it opposed hiQ's motion for a preliminary injunction, and it made it again on appeal before the Ninth Circuit. *See* ECF Nos. 31, 49; *hiQ Labs*, 938 F.3d at 1005. In both instances, it was rightfully rejected. As the Ninth Circuit held, "[w]e agree with the district court that giving companies like LinkedIn free rein to decide, on any basis, who can collect and use data—data that the companies do not own, that they otherwise make publicly available to viewers, and that the companies themselves collect and use—risks the possible creation of information monopolies that would disserve the public interest." *hiQ Labs*, 938 F.3d at 1005. Other courts have agreed, noting that since the CFAA is both a criminal and civil statute, adopting

LinkedIn's position "risks turning each website into its own criminal jurisdiction and each webmaster into his own legislature. Such an arrangement, wherein each website's terms of service 'is a law unto itself,' would raise serious problems." *Sandvig v. Barr*, 451 F. Supp. 3d 73, 88 (D.D.C. 2020) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 890, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)). Far from simply protecting the rights of its members, LinkedIn's arguments would allow it to contrive an arbitrary and autonomous exclusion zone on the public Internet, wherein LinkedIn can restrict certain individuals' access to otherwise publicly available content upon penalty of criminal sanction.

This dispute over LinkedIn's invocation of fictional dystopias, however, serves only to demonstrate why its complaints about Cambridge Analytica, Clearview AI, and the "volume of scraping attempts" it receives (Opp. at 1) are inappropriate considerations on hiQ's motion to dismiss. This Court should instead apply the Ninth Circuit's decision in *hiQ Labs*, which compels the dismissal of LinkedIn's counterclaims for the following reasons.

*First*, LinkedIn fails to state a claim under the Computer Fraud and Abuse Act because "accessing publicly available data" does not "constitute access without authorization under the CFAA." *hiQ Labs*, 953 F.3d at 1003. As LinkedIn cannot allege that the data accessed by hiQ was not accessible to the general public, LinkedIn's claim must be dismissed.

*Second*, LinkedIn fails to state a claim under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") because "taking data using a *method* prohibited by the applicable terms of use, when the taking itself generally is permitted, does not violate the CDAFA." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018) (emphasis in original). As such, any use of automated means to access LinkedIn's publicly available data does not state a claim under CDAFA.

*Third*, while LinkedIn feigns shock at hiQ's continued access to public LinkedIn user data (which was, of course, the right that was preserved by this Court's preliminary injunction motion and the Ninth Circuit), hiQ is not bound by LinkedIn's User Agreement. As such, LinkedIn's claim that hiQ "continues to" breach the User Agreement by its access should be dismissed, and any claim

for injunctive relief or for relief accrued past the date of termination of the User Agreement should be struck.

*Fourth*, LinkedIn fails to state a claim for misappropriation of "data from the LinkedIn site," because LinkedIn has not and cannot allege that it owns the data at issue—only the infrastructure on which that data is hosted. In addition, to the extent LinkedIn alleges that hiQ misappropriated data that is non-public or would not be public but for LinkedIn's efforts, LinkedIn's claim is preempted by the California Uniform Trade Secret Act.

*Fifth and finally*, LinkedIn fails to state a claim for trespass to chattels because LinkedIn does not allege demonstrable, compensable harm.

For each of the foregoing reasons, LinkedIn has failed to state a counterclaim against hiQ and hiQ respectfully requests that the Court grant its motion to dismiss LinkedIn's counterclaims and its motion to strike with prejudice.

**ARGUMENT**

**I.   LINKEDIN'S CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT SHOULD BE DISMISSED**

hiQ moves to dismiss LinkedIn's claim under the Computer Fraud and Abuse Act because the data that hiQ accessed was accessible to the general public. Therefore, neither LinkedIn's purported technical barriers nor LinkedIn's cease and desist letters alter the conclusion mandated by the Ninth Circuit's holding in this case: that "accessing publicly available data" does not "constitute access without authorization under the CFAA." *hiQ Labs*, 938 F.3d at 1003.

In response, LinkedIn alleges that it has stated a claim under both prongs of the CFAA: that hiQ "(1) obtain[ed] access [to a protected computer] without authorization; and (2) obtain[ed] access with authorization but then us[ed] that access improperly." *Musacchio v. United States*, 136 S.Ct. 709, 713, 193 L.Ed.2d 639 (2016); *see also* Opp. at 13. LinkedIn claims that hiQ's conduct violates the CFAA because, *first*, "LinkedIn's allegations about security measures it uses to block access to its servers give rise to a plausible inference that information at issue in this case is 'information for which authorization or access permission, such as password authentication, is generally required.'" *Id*. *Second*, LinkedIn claims that, to the extent hiQ did have authorization, "any authorization" was "revoked . . . when [LinkedIn] sent the May 23, 2017 cease-and-desist letter." ECF No. 170 at 45,

¶ 91; Opp. at 14.  *Third and finally*, LinkedIn argues that because the Supreme Court is currently considering a question of statutory interpretation under the CFAA, "it is a bad time to reach definitive rulings" and the Court should deny hiQ's motion.  Opp. at 12.

LinkedIn's allegations cannot support a claim for violation of the CFAA under either theory, because LinkedIn is simply re-airing claims that were previously considered and rejected by the Ninth Circuit.  Moreover, a pending Supreme Court opinion in a separate case provides no basis for this Court to decline to apply that clear Ninth Circuit precedent.

### A.  hiQ Did Not Act Without Authorization And Did Not Access Non-Public Information

LinkedIn's argument in support of its claim under the first prong of the CFAA does not even attempt to address the Ninth Circuit's existing precedent.  Instead, LinkedIn reargues positions that were considered and rejected by the Ninth Circuit in its decision affirming this Court.

*First*, LinkedIn does not contest—nor can it—that all the data hiQ accessed was accessible to the general public.  Nonetheless, LinkedIn claims that hiQ violated the CFAA's first prong because it is merely "hiQ's view" that "the CFAA only applies to password-protected websites."  Opp. at 18.  LinkedIn is wrong:  the Ninth Circuit concluded that hiQ had not acted "without authorization" under the CFAA because a "user's accessing . . . publicly available data will not constitute access without authorization under the CFAA."  *hiQ Labs*, 938 F.3d at 1003.  While LinkedIn claims that "the text of the CFAA does not support a distinction between computers hosting password-protected websites and computers hosting public websites" (Opp. at 15), that argument willfully ignores the plain language of the Ninth Circuit's opinion, which is controlling and constitutes the law of this case (*see infra*).  LinkedIn cannot overrule that precedent simply by ignoring it.

*Second*, LinkedIn argues that its "website and servers are not *unconditionally* open to the general public," because LinkedIn maintains technical countermeasures that limit certain types of access.  Opp. at 13 (emphasis added).  For example, LinkedIn states that "[p]eriodically, LinkedIn will prevent 'logged-out' users from viewing more than a certain number of pages before being asked to enter a user name and password to see more."  Opp. at 13.  LinkedIn further alleges that

"certain types of accounts" may be forcibly logged out if high levels of activity are detected. *Id.* Finally, LinkedIn alleges that once it blocked hiQ's IP addresses from accessing the site, that future access was "without authorization" because hiQ "must [have] circumvent[ed] the IP block." *Id.*

Each of these arguments fails for the reason identified by the Ninth Circuit: because the CFAA does not apply "where, as here, prior authorization is not generally required, but a particular person—or bot—is refused access." *hiQ Labs*, 938 F.3d at 1000. Each of LinkedIn's purported *ad hoc* restrictions applies to only *certain* users. "'Logged-out' users [] viewing more than a certain number of pages" and "certain types of accounts" with high levels of activity must log in to continue to access data. LinkedIn also selects certain individuals or competitors to block entirely. None of these actions, however, "suggests a *baseline* in which access is not generally available." *hiQ Labs*, 938 F.3d at 1000 (emphasis added). Instead, the "baseline" is just the opposite: access is available, *unless LinkedIn decrees otherwise in an individual circumstance.*

As the Ninth Circuit has already held, LinkedIn's decision to selectively eliminate the access of certain individuals or companies does not transform that access into a CFAA violation. Because LinkedIn does not—and cannot—allege that its website was not "publicly available," it has failed to state a claim that hiQ accessed data "without authorization." *See hiQ Labs*, 938 F.3d at 1001–02 (holding that "Public LinkedIn profiles, available to anyone with an Internet connection" are considered "information for which access is open to the general public and permission is not required"); *see id.*, 938 F.3d at 1001 ("[A]uthorization is only required [by the CFAA] for password-protected sites or sites that otherwise prevent the general public from viewing the information.").

*Third,* LinkedIn relies upon cases that have already been considered and distinguished by this Court and the Ninth Circuit. For example, in *Facebook Inc. v. Power Ventures*, 844 F.3d 1058, 1062–64 (9th Cir. 2016), defendant Power Ventures ignored a cease-and-desist letter from Facebook and continued to cause messages and emails to be sent by password-protected member profiles. The Ninth Circuit distinguished Power Ventures' conduct from hiQ's, because Power Ventures accessed Facebook data that was protected by a "username and authentication system" and to which Power Ventures could only gain access with the permission of Facebook's users—critical facts not present here. *hiQ Labs*, 938 F.3d at 1002; *Power Ventures,* 844 F. Supp. 2d at 1028. Here, LinkedIn has

made no allegation—nor could it—that hiQ gathered data that was, as a "baseline," subject to password-protected authorization.

Similarly, LinkedIn relies on *United States v. Nosal (Nosal II)*, 844 F.3d 1024 (9th Cir. 2016), which found that a former employee who used the login credentials of current employees to collect confidential information violated the CFAA. This information—unlike the information that LinkedIn alleges hiQ accessed—was "plainly one which no one could access without authorization." *hiQ Labs*, 938 F.3d at 1002. The Ninth Circuit held that "*Nosal II* is consistent with the conclusion that where access is open to the general public, the CFAA 'without authorization' concept is inapplicable." *Id.* at 1000. As with *Power Ventures*, LinkedIn's efforts to rely on cases that were expressly distinguished by the Ninth Circuit is unavailing.

*Fourth,* LinkedIn's efforts to distinguish recent cases interpreting *hiQ Labs* fare no better. LinkedIn attempts to distinguish *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020), which dismissed common law claims and statutory claims under the CFAA and CDAFA brought by plaintiffs challenging the use of two-factor authentication on Apple devices. LinkedIn first claims that hiQ "miscites *Brodsky* as 'relying' on the Ninth Circuit's *hiQ* decision," in part because "plaintiffs 'abandoned their CFAA claims.'" Opp. at 14. While LinkedIn correctly notes that the *Brodsky* plaintiffs had abandoned their CFAA claims by failing to respond to arguments raised by Apple's motion to dismiss, the *Brodsky* court nonetheless held that Plaintiffs' CFAA claims also failed because, "*beyond Plaintiffs' failure to respond to Apple's argument*, the SAC only challenges how access occurs through 2FA and still permits Apple to access Plaintiffs' login activities through other means." 445 F. Supp. 3d at 129–30 (emphasis added). In support, *Brodsky* cites this Court's holding that the CFAA's use of the term "authorization" "is most naturally read in reference to the identity of the person accessing the computer or website, not how access occurs." *Id.* at 129 (quoting 273 F. Supp. 3d 1099, 1113). LinkedIn's only other point of dispute with *Brodsky* is that the case is "inapposite" because it "did not concern publicly accessible data." Opp. at 14. Yet LinkedIn spends the remainder of its brief strenuously arguing that LinkedIn's own data (really, its users' data) is *not* publicly accessible because it is purportedly protected by technical countermeasures, leading one to think that *Brodsky* would be *more* applicable, not less.

LinkedIn's capacious view of the CFAA—that it is "not limited to computers hosting websites that are password-protected" (Opp. at 14)—"would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).  LinkedIn's efforts to do so have already been rejected by both this Court and the Ninth Circuit, and should be rejected here once again.

### B. hiQ Did Not Exceed Authorization Simply Because LinkedIn Imposed Technical Barriers

Next, LinkedIn argues that it has stated a claim that hiQ violated the CFAA by "obtaining access with authorization but then using that access improperly," *Musacchio v. United States*, 136 S. Ct. at 713, because "hiQ circumvented . . . technical barriers to scrape voluminous records beyond anything LinkedIn ever authorized," Opp. at 18.  LinkedIn speculates that "[i]t is plausible to infer that hiQ circumvented this access control either by masking its IP address, using a different IP address, or logging in to a LinkedIn account to continue viewing pages that it would otherwise not have been able to view." Opp. at 19.  LinkedIn's argument fails because LinkedIn's purported technical barriers are irrelevant and its position now is no different from the May 23, 2017 cease and desist letter it sent hiQ threatening to "revoke" hiQ's permission to use LinkedIn.

The Ninth Circuit determined that "[t]he pivotal CFAA question here is whether once hiQ received LinkedIn's cease-and-desist letter, any further scraping and use of LinkedIn's data was 'without authorization'"—and found that it was not. *hiQ Labs*, 938 F.3d at 999, 1002.  Because "accessing publicly available data" does not require the website operator's authorization, that access obviously therefore cannot "exceed" authorization, irrespective of a cease-and-desist letter claiming otherwise.  See *hiQ Labs*, 938 F.3d at 1003.  Hence, the CFAA is inapplicable.

LinkedIn's argument merely recasts "technical barriers" in the place of a cease-and-desist letter in service of the same argument:  that once 'barriers' were in place, "any further scraping and use of LinkedIn's data was 'without authorization." *See hiQ Labs*, 938 F.3d at 1002; Opp. at 18–19.  However, LinkedIn does not—and cannot—identify any reason why this Court should treat LinkedIn's technical barriers to publicly available information any differently from LinkedIn's threatened legal barrier to publicly available information. *See* Opp. at 18–19.  In either case, because

"access [to data] is open to the general public," an individual's access can neither be without authorization or in excess of authorization. *hiQ Labs,* 938 F.3d at 1000.

### C. LinkedIn's Petition For Certiorari Does Not Warrant Denial of hiQ's Motion to Dismiss

Finally, LinkedIn argues that—regardless of the lack of merit of its claims under the Ninth Circuit's controlling precedent—this Court should decline to dismiss LinkedIn's claim under the CFAA because the Supreme Court has not yet ruled on LinkedIn's petition for certiorari. Opp. at 12. Instead, this Court should "address these matters on summary judgment." *Id*. According to LinkedIn, the pending petition means "it is a bad time to reach definitive rulings." *Id*.

That LinkedIn has filed a petition for certiorari is no reason to deny hiQ's motion to dismiss. Indeed, it would not be appropriate to deny hiQ's motion to dismiss even if LinkedIn's petition *had been granted*. Courts have repeatedly decided cases on the merits despite the Supreme Court's grant of certiorari on an "identical question at issue." *See*, *e.g.*, *Kelly v. Quarterman*, 296 F. App'x 381, 382 (5th Cir. 2008) (affirming the district court's holding that 18 U.S.C. § 3599(e) does not apply to state clemency proceedings, even though the Supreme Court granted certiorari "in another case" on that same issue); *Fed. Trade Comm'n v. SPM Thermo-shield, Inc*., 2020 WL 6545975, at *3 (M.D. Fla. Nov. 6, 2020) (declining to stay motion to dismiss decision because "[a] grant of certiorari does not change the law and cannot be a basis to grant a stay"). This is even more true where, as here, the petition for certiorari is merely pending, not granted.

Nor is the Supreme Court's anticipated ruling in *Van Buren v. United States*, No. 19-783 (filed Dec. 18, 2019), any reason to delay resolution of this motion. The mere anticipation of a ruling does not change the law. *See Gradine v. Biomet, Inc*., 2006 WL 1049731, at *6 (E.D. Cal. Apr. 20, 2006) (declining to stay an action even though "a ruling from the Supreme Court in [a separate case] would certainly bear directly upon the parties' controversy").[1]

---

[1] LinkedIn contends without support that "the Supreme Court continues to hold LinkedIn's certiorari petition pending resolution of *van Buren*." Opp. at 12. The Supreme Court does not announce it is holding a petition, nor—if it is holding a petition—does it announce the reason why. *See* Timothy S. Bishop, *Opposing Certiorari in the U.S. Supreme Court*, ABA LITIGATION MANUAL

However, if this Court believes that it would benefit from the Supreme Court's decision in *Van Buren* before deciding this issue, the correct remedy is not—as LinkedIn claims—to deny hiQ's motion to dismiss and "address these matters on summary judgment." Opp. at 12. Instead, the Court should grant hiQ's motion and dismiss LinkedIn's claims with leave to amend if the Supreme Court's decision in *Van Buren* warrants. Alternatively, the Court may stay a decision on the motion to dismiss pending a resolution of the matters pending before the Supreme Court.[2] *See also Vance v. Google LLC*, 2021 WL 534363, at *3 (N.D. Cal. Feb. 12, 2021) ("Courts in this district have routinely granted stays where there are overlapping issues of fact or law with a case before different district courts or on appeal.").

## II. LINKEDIN'S CLAIM UNDER CALIFORNIA PENAL CODE § 502 SHOULD BE DISMISSED

LinkedIn argues that even if hiQ has not violated the CFAA (which it has not), LinkedIn has stated a claim for violation of the California Computer Data Access and Fraud Act (California Penal Code §§ 502(c)(1) & (c)(2)), which does not require that a defendant's access be "unauthorized." In support, LinkedIn relies on *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2016), for the proposition that the CFAA and CDAFA "are different." Opp. at 9 (citing 828 F.3d at 789).

*First,* LinkedIn's argument fails because it would read out of the statute the requirement that a defendant alter or take data "without permission," and because it fails to consider subsequent Ninth Circuit authority. The Ninth Circuit has held, based on the "without permission" requirement, that "taking data using a *method* prohibited by the applicable terms of use, when the taking itself generally is permitted, does not violate the CDAFA." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d

---

(3d ed.), https://www.mayerbrown.com/en/perspectives-events/publications/1999/01/opposing-certiorari-in-the-us-supreme-court (last visited March 25, 2021). As such, LinkedIn's request that this Court deny hiQ's motion to dismiss based on the pending petition for certiorari not only lacks legal basis (*see, supra*), it rests on mere supposition regarding the Supreme Court's reasoning.

[2] Denying hiQ's motion to dismiss on the basis that LinkedIn's petition remains pending would be particularly inappropriate in this case, where the parties have agreed to stay discovery pending resolution of that petition. Given that the discovery stay remains in place, denying hiQ's motion would not—as LinkedIn claims—allow the parties to "develop a record for the case" while LinkedIn's petition is pending. Opp. at 12.

948, 962 (9th Cir. 2018) (emphasis in original), *rev'd in part,* 139 S. Ct. 873, 203 L. Ed. 2d 180 (2019) (finding that defendant did not violate CDAFA by "using automated tools to take data in direct contravention of [plaintiff's] terms of use"). LinkedIn argues that its claim is distinct from that dismissed in *Oracle* because "hiQ *continued scraping* even after LinkedIn specifically asked it to stop doing so in accord with the User Agreement." Opp. at 12 (emphasis added). But this concedes the point: LinkedIn's dispute is with hiQ's "method" of access.

LinkedIn's response to cases within the Ninth Circuit interpreting *Oracle* fares no better. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020), relied upon *Oracle* in holding that "like a CFAA claim, a CCCL [§ 502] claim cannot be based simply on the method by which a defendant accesses a computer if the defendant otherwise has authorization to access the computer." *Id.* at 131. LinkedIn attempts to dismiss *Brodsky* as "fail[ing] to acknowledge *Christensen*," which ignores that *Oracle*—which the *Brodsky* court cites—both post-dates and itself relies upon *Christenson*.[3]

*Second*, LinkedIn's argument fails insofar as it relies upon LinkedIn's cease and desist letter. LinkedIn claims that, even insofar as hiQ's "first access" may have been authorized, hiQ's access became "without permission" when LinkedIn sent its cease-and-desist letter on May 23, 2017. Opp. at 11–12. This again ignores this Court's Opinion (and the subsequent Ninth Circuit decision) granting hiQ's request for a preliminary injunction. That Opinion specifically directed LinkedIn to "withdraw the cease and desist letters to hiQ dated May 23, 2017 and June 24, 2017," and to "refrain from issuing any further cease and desist letters on the grounds therein stated during the pendency

---

[3] In support of its CDAFA claim, LinkedIn asks this Court to take judicial notice of "the legislative history for California Senate Bill 255 of 1987." ECF No. 190. LinkedIn claims that the legislative history supports the idea that the "California legislature expressly contemplated" "allow[ing] criminal liability to turn on the vagaries of private polices [*sic*] such as the typical corporate policy that computers can be used only for business purposes." Opp. at 10 (citations omitted). However, the Ninth Circuit has already held that CDAFA does not criminalize the mere violation of a "corporate policy," even where it purports to restrict the *method* by which publicly accessible data is accessed. *Oracle*, 879 F.3d at 962. While hiQ does not oppose LinkedIn's request for judicial notice, LinkedIn's reliance on stray comments in the legislative record—in the face of the Ninth Circuit's opinion interpreting CDAFA to preclude any liability for hiQ's conduct on these very facts—merely demonstrates the weakness of LinkedIn's arguments.

of this injunction" (which remains in place).  ECF No. 63 at 25.  LinkedIn cannot now argue that hiQ's permission "was revoked" by a cease-and-desist letter that is not in effect.

### III.  HIQ'S MOTION TO STRIKE LINKEDIN'S BREACH OF CONTRACT CLAIM SHOULD BE GRANTED

LinkedIn makes two arguments in support of its breach of contract claim: *first*, that hiQ claimed "that it no longer uses LinkedIn," and *second*, that "hiQ's ongoing access to and use of LinkedIn's website" "after LinkedIn restricted hiQ's company page in 2017" created a contract between hiQ and LinkedIn, which hiQ violated.  Opp. at 7–8.  Neither contention is true.

*First*, LinkedIn creates a strawman and then celebrates its defeat.  hiQ's motion was not based on the premise "that it no longer uses LinkedIn," as LinkedIn claims.  Opp. at 7.  Any such argument by hiQ would have been puzzling, as hiQ sought and received a preliminary injunction from this Court *permitting it to continue to access LinkedIn*.  ECF No. 63.  Rather, hiQ's motion to dismiss LinkedIn's claim for breach of contract was based on both this Court's and the Ninth Circuit's holdings that "*[h]iQ is no longer bound by the User Agreement*, as LinkedIn has terminated hiQ's user status."  983 F.3d at 991 n. 5 (emphasis added); *see also* ECF No. 63 at 7 n. 4.

As with LinkedIn's other arguments, when forced to confront the rulings of this Court and the Ninth Circuit (and not merely its own red herrings), LinkedIn retreats to re-airing its old, rejected arguments.  Thus, LinkedIn claims that hiQ's continued access to LinkedIn with alleged knowledge of LinkedIn's User Agreement created a contract.  But even if LinkedIn could state a claim for *past* breaches of its User Agreement, hiQ is no longer bound by that Agreement and has no potential liability because LinkedIn "terminated hiQ's user status."  ECF No. 63 at 7 n. 4.

*Second,* LinkedIn claims that the rulings of this Court and the Ninth Circuit are not binding because factual findings at the preliminary injunction stage are not the law of the case. Opp. at 8. However, whether hiQ remains bound by a user agreement where its use has been terminated is a question of law, which LinkedIn acknowledges may properly be considered law of the case. *Id.*

In an attempt to transform this question into a factual issue, LinkedIn again feigns surprise at hiQ's "admission that it continues to access LinkedIn's website." Opp. at 8. Contrary to LinkedIn's claim, this is neither an "admission" or a "changed circumstance." *Id*. As LinkedIn

knows, hiQ sought and received a preliminary injunction from this Court *permitting it to continue to access LinkedIn*. ECF No. 63. LinkedIn has appealed the preliminary injunction order to both the Ninth Circuit (which upheld hiQ's right to continue accessing LinkedIn's website) and the Supreme Court. Moreover, hiQ has contacted LinkedIn's counsel repeatedly regarding LinkedIn's whitelist, including on April 3, 2020, when LinkedIn quickly restored hiQ's access upon being reminded that its failure to do so was a violation of that preliminary injunction order. LinkedIn's feeble attempt to manufacture a "changed circumstance" demonstrates the weakness of its argument; since the Ninth Circuit has held as a matter of law that "*[h]iQ is no longer bound by the User Agreement*," hiQ could not have been in future breach of the User Agreement and LinkedIn's claim regarding those alleged breaches should be struck. 983 F.3d at 991 n. 5 (emphasis added).

## IV. LINKEDIN HAS NOT PLED A CLAIM FOR MISAPPROPRIATION

### A. LinkedIn Cannot State A Claim For Misappropriation Of Data Owned By LinkedIn's Members

LinkedIn argues that it has stated a claim for common law misappropriation because it has invested "substantial time, skill or money in developing its property." Opp. at 19. LinkedIn argues that its misappropriation claim protects its "proprietary interest" in its data, which is based on LinkedIn's "invest[ment of] millions of dollars in developing its social network." Opp. at 19–21.

LinkedIn's argument is based on an attempt to elide the distinction between LinkedIn's "investment" and the data it alleges hiQ misappropriated. LinkedIn does not (and cannot) dispute that it does not own the publicly accessible data hiQ accesses. hiQ's Mot. (ECF No. 182) at 14; *hiQ Labs*, 938 F.3d at 1003 ("The data hiQ seeks to access is not owned by LinkedIn"); ECF No. 131-1 (LinkedIn User Agreement) at § 3.1 ("as between [users] and LinkedIn, [users] own the content and information that [users] submit or post to the Services."); *id.* at § 1.1 (defining Services as "LinkedIn.com, LinkedIn-branded apps, LinkedIn Learning and other LinkedIn-related sites, apps, communications and other services that state that they are offered under this Contract"). While it may be true that LinkedIn has invested "time, skill or money" in developing the LinkedIn *platform*, that effort does not grant it an exclusive right to use or possess information that users post to the platform. Indeed, the information at issue, and the description and posting of it—the work histories

and skill profiles of professionals—is the product of those individuals' time, skill, and effort, not of LinkedIn's.

The cases cited by LinkedIn recognize this distinction. *International News Service v. Associated Press*, 248 U.S. 215, 238–39, 248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211 (1918), involved competing newspapers copying "hot" reporting from bulletin boards and republishing the same information as their own reporting, "scooping" the newspaper that had generated the information and gaining an unfair benefit. *Id.* at 231, 239–40. But hiQ is not operating a competing professional social networking site and reproducing user profiles wholesale; hiQ is using information owned and published by LinkedIn's users. As the Court explained, the protection of a misappropriation claim was not for the news itself, but for "the very facilities and processes of publication." *Id.* at 235.

Nor does the data of LinkedIn's members constitute "hot news," which is granted limited protection from misappropriation. Such protection is subject to a five-factor test: (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free-riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened. *See National Basketball Assoc. v. Motorola, Inc.,* 105 F.3d 841, 845 (2d Cir. 1997). LinkedIn does not meet this test because, among other things, hiQ does not "free ride" on LinkedIn, there is no "direct competition" between LinkedIn and hiQ, and hiQ's use of LinkedIn's users' data does not reduce LinkedIn's incentive to invest in its infrastructure.

### B.   LinkedIn's Misappropriation Claim Is Preempted By CUTSA

LinkedIn also claims that hiQ attempts to "have it both ways" by seeking to dismiss LinkedIn's misappropriation claim as preempted by CUTSA. Opp. at 22. In fact, it is LinkedIn that takes inconsistent positions: first claiming that LinkedIn's data "implicate[s] member privacy interests," then claiming that that data is not "confidential." *Id.* at 22–23. LinkedIn also contends that CUSTA supersession applies "where the lead claim is brought under CUTSA, but the plaintiff brings common law claims as backup in case the CUTSA claim fails." Opp. at 23. However, it is

clear that a plaintiff's failure to *plead* a CUTSA claim does not prevent CUTSA supersession; CUTSA "supersedes common-law claims to the extent such claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *4 (N.D. Cal. Dec. 11, 2012) (quotation omitted).

## V. LINKEDIN HAS NOT PLED A CLAIM FOR TRESPASS TO CHATTELS

Finally, LinkedIn has not pled a claim for trespass to chattels. LinkedIn argues, based on *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996), that "the quantum of harm necessary to sustain trespass to chattels involving electronic resources is minimal." Opp. at 24. It further claims that it has been harmed because "hiQ's conduct has been replicated by others since this litigation began." Opp. at 25. *Thrifty-Tel* involved a claim by a telephone company alleging misuse of its systems; the company alleged it was damaged in the amount of a regulatory fine imposed on it and by the "certain number of labor hours [it expended] to track down the invasion of its system." *Id.* at 1569. Far from approving this damages claim, however, the Court of Appeal *reversed* the portion of the judgment awarding damages, holding, *inter alia*, that "[w]e know of no authority—and Thrifty-Tel cites none—suggesting a plaintiff may satisfy this burden merely by producing a formula or figure that in the abstract purports to represent the average damages suffered *as a consequence of similar torts*." *Id.* (emphasis added). LinkedIn attempts exactly this kind of statistical pleading here, claiming that "hiQ's conduct, *if expanded and/or replicated unchecked by others*, will cause harm to LinkedIn." ECF No. 170 at 49, ¶ 139 (emphasis added). As *Thrifty-Tel* noted, "to assess damages based on a statistical average might be unfair." *Thrifty-Tel* at 1569.

LinkedIn further claims that *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 71 P.3d 296 (2003), "recognized that the mere threat of [] follow-on harm" from other individuals who copy defendants in accessing computer systems is sufficient to state a trespass to chattels claim. Opp. at 25. LinkedIn's selective reading of *Hamidi* is unavailing; that Court recognized for any such claim to be made, plaintiff would need to demonstrate that "such use [of its systems] is actionable as a trespass only if it "has proximately caused injury." *Intel Corp.*, 30 Cal. 4th at 1357 (citing *Thrifty-Tel*, *supra*, 46 Cal. App. 4th at p. 1566). Plaintiffs there could not make this showing solely on the basis of accessing a server, because there was no showing of actual injury. *Id.* ("That Hamidi's

messages temporarily used some portion of the Intel computers' processors or storage is, therefore, not enough; Intel must, but does not, demonstrate some measurable loss from the use of its computer system.").

LinkedIn's claim of measurable loss is not based on hiQ's conduct, but the conduct of others if they "expand[] and/or replicate[]" hiQ conduct—and on the conduct of LinkedIn in responding to those individuals. ECF No. 170 ¶ 139.  That is insufficient to state a claim for trespass to chattels.

## CONCLUSION

For the foregoing reasons, hiQ respectfully requests that this Court dismiss LinkedIn's counterclaims with prejudice.

Dated: March 25, 2021

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/ Corey Worcester*
    Corey Worcester

*Attorneys for Plaintiff hiQ Labs, Inc.*