# EXHIBIT A

2021 WL 1147149
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

MOTOGOLF.COM, LLC, Plaintiff
v.
TOP SHELF GOLF, LLC, et al., Defendants

Case No.: 2:20-cv-00674-APG-EJY
|
Filed 03/25/2021

### Order Granting Motion to Dismiss in Part

ANDREW P. GORDON UNITED STATES DISTRICT JUDGE

 *1  Plaintiff Motogolf.com, LLC used online advertisements that were governed by a pay-per-click contract wherein ads would stop appearing to others if they were clicked on a certain number of times in a given period. Motogolf contends that defendants Top Shelf Golf, LLC, Top Shelf IT Solutions, Inc., Ivan Sokolovich, and Inna Sokolovich [1] sought out Motogolf's ads and repeatedly clicked on them, causing Motogolf's ads to disappear quicker. Motogolf also alleges that Top Shelf and Ivan Sokolovich interfered with Motogolf's vendor relationships by telling those vendors that Motogolf had disrupted Top Shelf's online advertisements in that fashion. Motogolf sues the defendants for violations of the Computer Fraud and Abuse Act (CFAA), the Nevada Computer Crimes Law (NCCL), the Lanham Act, the Nevada Deceptive Trade Protection Act (NDTPA), and Nevada's Racketeer Influence and Corrupt Organizations (RICO) law, and for intentional interference with contractual relations and intentional interference with prospective economic advantage. Motogolf further alleges that the defendants engaged in a conspiracy and aided and abetted violations of these laws.

[1]  These are the remaining defendants in this action. Defendants Patrick Murphy (erroneously named Kevin P. Murphy), Kevin E. Murphy, and Aliaksandr Shavialevich have already been dismissed. ECF Nos. 47, 51.

The defendants move to dismiss all the claims, arguing that Motogolf failed to meet the heightened pleading standard under Federal Rule of Civil Procedure Rule 9(b) and did not allege various elements. Motogolf does not appear to contest applying a heightened pleading standard but argues that the alleged clicking activity satisfies the pleading requirements.

I grant the defendants' motion to dismiss in part. I dismiss the CFAA and NCCL claim because Motogolf has not plausibly alleged the defendants accessed Motogolf's website "without authorization." I dismiss the intentional interference with a contractual relationship claim because Motogolf has not identified any vendor (and therefore any contractual relationship) that the defendants allegedly interfered with. I dismiss the NDTPA and Lanham Act claims because Motogolf did not plausibly allege it relied on or was likely to be deceived by the defendants' clicking on Motogolf's ads. I dismiss the Nevada RICO claim because Motogolf has not plausibly alleged that the defendants' conduct involved taking property. I dismiss all the conspiracy and aiding and abetting claims that are based on the underlying claims I dismiss in this order. I deny the motion to dismiss in all other respects.

### I. BACKGROUND [2]

[2]  This section is based on the facts alleged in Motogolf's complaint.

Motogolf sells golf equipment through an online store. ECF No. 1 at 4. The cost of its online ads is based on the number of times online users click on the ads, called "pay-per-click" (PPC) ads. *Id.* at 5. Motogolf contracts with online advertising platforms like Google for a certain number of ad clicks each day for a certain amount of money. *Id.* Viewers who click on the ads are directed to Motogolf's website, which displays its online merchandise. *Id.* When a viewer clicks on the ad, Motogolf receives "valuable, requested demographic and other data" about that prospective customer. *Id.* Once the PPC ads have been clicked the contracted-for number of times, the PPC ads disappear for other online viewers (called PPC exhaustion) and Motogolf must pay higher rates for future PPC ads. *Id.*

 *2  Top Shelf is a direct competitor of Motogolf in online golf equipment and is based in Maine. *Id.* at 4-5. Top Shelf IT is a corporation in Maine. *Id.* at 4. Ivan Sokolovich is the president, and sole shareholder of Top Shelf IT and his wife, Inna, is the art director. *Id.* In 2019, Motogolf became aware that Top Shelf was selling its golf equipment at prices lower than the minimum prices set by the equipment vendors to gain a competitive position in the online golf equipment market. *Id.* at 9. Motogolf reported this activity to those vendors. *Id.*

Motogolf alleges, that in response, the defendants conspired to harm Motogolf. *Id.* The defendants, aware of how PPC ads work, used one or more electronic devices in various locations in or near Maine to find Motogolf's PPC ads and click on them repeatedly. *Id.* at 9, 13. This was done with the intent of maxing out the number of clicks Motogolf contracted for so that the ads would disappear for other viewers and Motogolf's future ad costs would increase. *Id.* at 9. Motogolf alleges that the defendants engaged in this conduct to intentionally gain an economic advantage over Motogolf. *Id.* at 6-8, 10.

Around March 7, 2019, Motogolf sent a cease-and-desist letter to Ivan Sokolovich informing him that the defendants were no longer authorized to click on Motogolf's PPC ads under any circumstances. *Id.* at 19. Motogolf sent a similar letter on August 13. *Id.* at 20. The defendants continued to click on the ads after receiving these letters. *Id.* at 20-21. Since the defendants began the click activity, they have exhausted Motogolf's PPC ads on at least a weekly basis. *Id.* at 14. This has prevented prospective customers from seeing the PPC ads and has increased the cost for Motogolf to purchase PPC ads. *Id.* at 15. It has also deprived Motogolf of the benefits from its PPC ads, such as useful demographic data. *Id.* at 23. As a result, Motogolf's share in the online golf equipment market diminished and Top Shelf's share increased. *Id.* at 17-19.

Motogolf also alleges that Top Shelf and Ivan Sokolovich contacted Motogolf's vendors and told them that Motogolf had been the one "inappropriately" clicking on Top Shelf's PPC ads. *Id.* While Motogolf had clicked on Top Shelf's PPC ads, it did so only to the extent necessary to "forensically correlate" the PPC clicking activity with the defendants. *Id.* at 22. As a result of the defendants' representations, at least one of Motogolf's vendors withdrew Motogolf's authorization to provide commercial premium merchandise from that vendor. *Id.*

Motogolf sues the defendants for accessing Motogolf's computers without authorization, interfering with its contractual relationships and prospective economic relationships, making false or misleading representations that they were Motogolf's legitimate potential customers, and taking property through activity that amounts to unlawful racketeering. Motogolf also alleges that the defendants conspired to engage in these unlawful activities and that they aided and abetted each other. The defendants move to dismiss all the claims.

II. **ANALYSIS**

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." For a motion to dismiss, I apply a two-step process to determine whether a party has stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). First, I must accept as true all the complaint's allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions and "mere conclusory statements" are not entitled to that same assumption of truth. *Id.* at 678-79. Second, I must determine whether the complaint's factual allegations put forward a plausible claim for relief. *Id.* at 679. This is a context-specific determination that requires drawing on my judicial experience and common sense. *Id.* at 679.

**\*3** In addition to Rule 8's pleading requirements, Motogolf's claims are subject Rule 9(b)'s heightened pleading standard because they sound in fraud.³ Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." A plaintiff must provide the "who, what, when, where, and how" of the fraudulent misconduct. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This requires "more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (emphasis omitted). The standard can be relaxed when the facts of fraud are in the defendant's exclusive control, but the plaintiff must still state the "factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

3   Motogolf does not appear to dispute Rule 9(b)'s application to its claims. ECF No. 20 at 2 ("Plaintiff's allegations clearly meet the requirements of FRCP 9(b)."). Although not all Motogolf's claims require fraud as an element, Rule 9(b) applies to claims that are based on a "unified course of fraudulent conduct." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003). Motogolf bases its claims on the defendants allegedly making misleading representations that they are legitimate Motogolf customers by clicking the PPC ads. *See, e.g.*, ECF No. 1 at 24, 37, 40.

**A. Pleading with Specificity the Role of Each Defendant**

In the context of an alleged fraudulent scheme, Rule 9(b) does not require Motogolf to lay out every detail of each defendant's participation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). It does, however, require Motogolf to "identify the role of each defendant in the alleged fraudulent scheme" rather than "merely lump[ing] all the defendants together." *Id.* at 764-65 (holding that general allegations that "defendants" were acting in "concert" with other conspirators and were "active participants" is not sufficient).

The defendants argue that Motogolf failed to meet this standard because the complaint consists of identical factual allegations repeated with each of the defendants' names. The defendants contend that, to satisfy Rule 9(b), Motogolf must differentiate the role of each defendant in the conspiracy and that identical allegations fail to do that. Motogolf responds that it is not required to allege separate roles if each defendant engaged in the same activity.

Motogolf has sufficiently pleaded the role of each defendant in its complaint. Motogolf has not lumped the defendants together without factual support for each conspirator like in *Swartz*. It has simply alleged that each defendant engaged in the same conduct. [4] This makes sense for the alleged click scheme because it involves multiple people repeatedly clicking ads such that together, it exhausts the number of Motogolf's contracted-for clicks. I therefore deny the motion to dismiss the complaint on this basis. [5]

[4] The defendants contend that Motogolf did not meet Rule 9(b) because its exhibit of unexplained IP addresses does not apparently link the addresses to any particular defendant. However, Motogolf alleges that the exhibit shows the defendants' IP addresses, and I must take as true the complaint's allegations. ECF No. 1 at 23-25. A California district court in a similar "click fraud scheme" case determined that Rule 9(b) was satisfied by IP addresses that were tied to the defendants. *Satmodo, LLC v. Whenever Commc'ns, LLC*, No. 17-CV-0192-AJB NLS, 2017 WL 6327132 at *2 (S.D. Cal. Dec. 8, 2017).

[5] The defendants also argue throughout their briefs that Motogolf has failed to state any of its claims because Motogolf's factual allegations appear in the "general allegations" section while the specific claims contain mostly recitals of claim elements. This argument is unavailing. Neither Rule 8 nor Rule 9 requires pleading in such a way so long as the factual allegations are in the complaint.

### B. CFAA and the NCLL

**\*4** The CFAA is a federal computer fraud law that was designed "primarily to address the growing problem of computer hacking." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (citing S. Rep. No. 99–432, at 9 (1986)). The CFAA's subdivisions prohibit various kinds of conduct. 18 U.S.C. § 1030. Motogolf's complaint does not specify which subdivisions the defendants allegedly violated, but the pleading suggests it is most likely §§ 1030(a)(4) and 1030(a)(5)(B)-(C). ECF No. 1 at 24-27. To state a claim under § 1030(a)(4), Motogolf must allege that the defendants:

> (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value," causing (5) a loss to [Motogolf] during any one-year period aggregating at least $5,000 in value.

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Sections 1030(a)(5)(B) and (C) also both require someone to intentionally access a computer without authorization. That access violates subsection (B) when it "recklessly causes damage" and violates subsection (C) when it "causes damage and loss." 18 U.S.C. §§ 1030(a)(5)(B)-(C).

The NCLL is Nevada's computer crime law and is similar to the CFAA. A person who "knowingly, willfully and without authorization" "[t]akes;" "[c]onceals" or "[o]btains or attempts to obtain access to, permits access to or causes to be accessed," "data, a program or any supporting documents which exist inside or outside a computer, system or network" is guilty of a misdemeanor. Nev. Rev. Stat. (NRS) §§ 205.4765(1)(g), (h), (k). The statute also prohibits the same conduct done to a "computer, system or network." NRS § 205.4765(3). The statute allows any victim of a misdemeanor to sue the perpetrator. NRS § 205.511(1).

The defendants argue that the CFAA claim should be dismissed because Motogolf's website is public, and access is not "without authorization" if it is for publicly available content. They argue that even if the cease-and-desist letters could revoke access to a public website, the letters did not revoke all access and that Motogolf has not alleged loss, damages, or that the defendants gained anything of value. Motogolf does not respond to the public access argument generally, but it argues that the cease-and-desist letters affirmatively revoked the defendants' access. It also argues that was damaged because it lost valuable demographic data of prospective customers and that the defendants gained a market advantage. The parties make similar arguments for the NCLL claim.

The Ninth Circuit has interpreted the CFAA's "without authorization" language to not encompass access to publicly available websites. *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985 (9th Cir. 2019), *petition for cert. filed* (Mar. 9, 2020) (No. 19-1116). In *HiQ*, the court reviewed whether a company could scrape data from public LinkedIn user profiles to create analytics for business clients. *Id.* at 991. LinkedIn sent a cease-and-desist letter to the company, demanding it stop accessing LinkedIn's servers in violation of the CFAA. *Id.* at 992. In response, the company sued LinkedIn for declaratory and injunctive relief contending that the CFAA could not block the company from accessing public data. *Id.* The court interpreted whether a person is without authorization by looking to "whether the conduct at issue is analogous to 'breaking and entering.' " *Id.* at 1001 (citing H.R. Rep. No. 98-894, at 20). Using this analogy, the court determined that information open to the public is not the kind of access that the CFAA was designed to prevent and that a computer or website would need access permissions like a password for the CFAA to apply. *Id.* at 1003. The court concluded that the company was likely to succeed on the merits for its injunction because the website was publicly accessible. *Id.*

**\*5** Although *HiQ* was decided in the context of a preliminary injunction, its reasoning is persuasive for this motion to dismiss. *Miller v. 4Internet, LLC*, 471 F. Supp. 3d 1085, 1089 (D. Nev. 2020) (applying the *HiQ* reasoning in dismissing a CFAA counterclaim based on a law firm's use of an internet bot to crawl the web for copyright infringing images). Motogolf has failed to state a claim under the CFAA because it has not plausibly alleged that the defendants acted "without authorization" by accessing a publicly accessible website. Motogolf's argument that it revoked access to its website through the cease-and-desist letters fails because the letters do not affect the public website analysis just as the letters had no effect in *HiQ*. [6] Motogolf's website and PPC ads are public. I therefore grant the motion to dismiss the CFAA claim. Although it is unlikely, Motogolf may be able to allege another basis for its "without authorization" allegation so it is not clear that amendment would be futile. [7] I grant leave to amend this claim.

[6] Motogolf's opposition on this issue relies on an unpublished district court case that found a CFAA violation in a similar "click fraud scheme." *Satmodo*, 2017 WL 6327132 at \*3. I do not find this case persuasive because it was decided before *HiQ*.

[7] Under Rule 15, leave to amend "shall be freely given when justice so requires." In general, dismissal of a complaint without leave to amend is proper only if amendment would be futile. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

For the same reason, I dismiss the NCLL claim. Like the CFAA, the NCLL prohibits various acts related to accessing a computer or data on a computer "without authorization." NRS §§ 205.4765(1)(g), (h), (k). Case law on the NCLL is limited, so the Ninth Circuit has interpreted the NCLL by relying on the "essentially identical" California Computer Data Access and Fraud Act (CDAFA). *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018), *rev'd in part on other grounds*, 139 S. Ct. 873 (2019); Cal. Penal Code § 502(c)(1)-(14) ("Knowingly and without permission ... "). Courts have determined that CDAFA claims "rise or fall with [a plaintiff's] CFAA claims because the necessary elements of [the CDAFA] do not differ materially from the necessary elements of the CFAA, except in terms of damages." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) (internal quotations and citations omitted). I predict [8] that the Supreme Court of Nevada would interpret "without authorization" under the NCLL to exclude from its definition access to publicly available websites just as the Ninth Circuit has done under the CFAA. I therefore dismiss the NCLL claim. Because it is not clear that amendment would be futile, I grant leave to amend.

8   When a federal court interprets state law, it is bound by the decisions of the state's highest court.

*Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). Where the state's highest court has not decided the issue, a federal court must predict how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co.*, 379 F.3d at 560 (quotation omitted).

**C. Intentional Interference with Contractual Relations**

To state a claim for intentional interference with contractual relations, Motogolf must allege "(1) a valid and existing contract; (2) the defendant[s'] knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989). Motogolf must assert that "the defendant[s] knew of the existing contract, or at the very least, establish facts from which the existence of the contract can reasonably be inferred." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (internal quotations and citations omitted). Motogolf alleges that Top Shelf and Ivan Sokolovich caused at least one vendor to not allow Motogolf to sell certain premium merchandise because they told Motogolf's vendors that it had interfered with Top Shelf's ads. ECF No. 1 at 21-22.

\*6 The defendants argue that Motogolf failed to plead the specific contract or vendor relationships that were interfered with, the dates, or any other specific facts necessary under Rule 9(b). Motogolf responds that it lacks specific knowledge of dates, times, speakers, and the precise contents of the statements. It also explained that it refrained from disclosing the vendors because it was not required to under Nevada law and Motogolf "has serious concerns about Defendants victimizing Plaintiff's vendors as part of Plaintiff's (sic) pattern of engaging in vendetta-type behavior against perceived insults." ECF No. 20 at 11-12.

Motogolf has not satisfied its pleading requirements. To satisfy even Rule 8 pleading, Motogolf must allege the vendor relationships the defendants interfered with to plausibly allege the existence of a valid contract and the defendants' knowledge of it. *Sutherland*, 772 at 1290. Motogolf's concern over the defendants' vendetta-type behavior if it identifies its vendors does not justify insufficient pleading. Further, Motogolf cannot evade Rule 9(b)'s requirements simply by stating it lacks specific knowledge. The only exception is when the alleged information is in the defendants' "exclusive control." *Neubronner*, 6 F.3d at 672. Given that the vendors were part of these conversations and Motogolf apparently knows of at least one vendor that terminated its relationship with Motogolf, Motogolf has not shown how the information is in the defendants' exclusive control. I thus grant the motion to dismiss this claim but I grant leave to amend.

**D. Intentional Interference with Prospective Economic Advantage**

The tort of intentional interference with a prospective economic advantage is like the tort of intentional interference with contractual relations, but instead of a contract Motogolf must allege a prospective contractual relationship between it and a third party. *Wichinsky v. Mosa*, 847 P.2d 727, 729–30 (Nev. 1993). The defendants contend that Motogolf failed to state a claim because it did not identify the particular prospective customers they interfered with. Motogolf responds that the claim does not require naming specific individuals and that prospective clients have not learned of Motogolf's existence because the defendants exhausted the PPC click allowance.

The Supreme Court of Nevada has not set out the level of detail a plaintiff must allege about a prospective contractual relationship. At least one district court case in Nevada has interpreted the tort to require a plaintiff to identify "particular individual[s]," but it did so by relying on a California district court case interpreting California law. *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 4227939, at \*9 (D. Nev. Sept. 22, 2017) (citing *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at \*10 (N.D. Cal. May 8, 2013)). The Supreme Court of Nevada has seemingly allowed a plaintiff to allege generally about unspecified customers. *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (determining the plaintiff stated a claim by alleging it had "customers who would have rented self-storage units in [its] U-Haul facilities" but for the defendants' interference).

I predict the Supreme Court of Nevada would find alleging a certain class of prospective customers without identifying them specifically is sufficient to state a claim for intentional interference with prospective economic advantage. Motogolf has alleged that it has prospective contractual relationships

with Motogolf customers who would click on its ads. I deny the defendants' motion to dismiss this claim.

### E. NDTPA and Lanham Act

**\*7** Under the NDTPA, a person engages in a deceptive trade practice if, as relevant here, he or she "[k]nowingly makes any [ ] false representation in a transaction." NRS § 598.0915(15). [9] Deceptive trade practices can form the basis for a "consumer fraud" private action. NRS §§ 41.600(1), (2)(e). To state a claim under the NDTPA, Motogolf must allege "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). To meet the causation element, Motogolf must allege that it relied on the misrepresentation which caused the harm. *Id.*: *see also Guerra v. Dematic Corp*, No. 3:18-CV-0376-LRH-CLB, 2020 WL 5995496, at \*2-3 (D. Nev. Oct. 8, 2020) (holding that a person cannot be a victim of misrepresentation if they did not rely on the misrepresentation in incurring the harm); *Bank of N.Y. Mellon v. Sunrise Ridge Master Homeowners Ass'n*, No. 2:17-cv-00233-JAD-DJA, 2020 WL 2064065, at \*6 (D. Nev. Apr. 28, 2020) (identifying reliance as an element for NRS § 598.0915(15)).

[9] Although Motogolf's complaint does not state which subsection it relies on, it refers to "false representations in transactions," which aligns with subsection 15. ECF No. 1 at 43. Motogolf's opposition brief confirms that this is the basis for its claim. ECF No. 20 at 12.

The Lanham Act is a federal statute that governs trademarks and unfair competition. 15 U.S.C. § 1051 *et seq.* A defendant is liable under that act if they, "in connection with any goods or services, ... use[ ] in commerce any ... false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125(1)(A).

The defendants argue that Motogolf has not stated a claim under the NDTPA because there is no "transaction" in clicking on ads to exhaust an advertising budget, the clicking is not a misrepresentation, and Motogolf has not alleged it relied on the alleged misrepresentation. Motogolf responds that clicking on a pay-per-click advertisement is a transaction and that there is no case law holding such a situation cannot be a misrepresentation. It does not respond to the reliance argument. The parties make similar arguments for the Lanham Act claim.

Motogolf has not alleged that it relied on the defendants' alleged misrepresentations under the NDTPA and it does not dispute that reliance is a necessary element. Although Motogolf has alleged harm resulting from the click activity, it has not alleged that the harm came from relying on the click's representations. There are no allegations that Motogolf believed the defendants were legitimate customers of Motogolf and that it acted based on that belief. The only harms alleged are the exhaustion of Motogolf's PPC ads and resulting loss of potential customer demographics. But that appears to be an automatic process based on Motogolf's own explanation. Thus, Motogolf has not plausibly alleged reliance or causation for its NDTPA claim. I grant the defendants' motion to dismiss the NDTPA claim. Because it is not clear that amendment would be futile, I grant Motogolf leave to amend.

For a similar reason, Motogolf has not satisfied the "likely to deceive" element for its Lanham Act claim. Motogolf has not alleged any facts to explain how the click activity was likely to deceive or cause confusion. I therefore grant the defendants' motion to dismiss the Lanham Act claim. I grant Motogolf leave to amend this claim as well.

### F. Nevada RICO

Nevada's RICO statute makes it unlawful for a person "[t]hrough racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise." NRS § 207.400(1)(b). "Racketeering activity" is defined as "engaging in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents ...." NRS § 207.390. "[C]rimes related to racketeering," as relevant here, means the commission or conspiracy to commit the crime of "[t]aking property from another under circumstances not amounting to robbery." NRS § 207.360(9). [10]

[10] NRS § 207.360 provides several crimes that can form the basis of a racketeering claim. Again, Motogolf does not specify which subsections it

relies on. However, the complaint quotes the text verbatim from NRS § 207.360(9) and none of the other listed crimes appears relevant to the complaint's allegations. ECF No. 1 at 44.

**\*8** The defendants contend that a RICO claim requires Motogolf to state the specific facts under the portion of the complaint dedicated to the RICO claim. The defendants further argue that Motogolf failed to allege the specific RICO subsections it was relying on or any facts to support that the defendants' conduct amounts to "taking property from another." Motogolf argues that stating the facts under the general allegations is sufficient. It does not respond to the other arguments.

Motogolf has not alleged any facts to show that the defendants took property from Motogolf nor has it offered any argument to support an interpretation that the click activity amounts to taking property. Because that is the basis for its racketeering allegation, I dismiss the Nevada RICO claim. Because it is not clear that amendment would be futile, I grant Motogolf leave to amend.

### G. Aiding and Abetting and Conspiracy

To assert "aiding and abetting," Motogolf must allege that "(1) the primary violator breached a duty that injured [Motogolf], (2) the alleged aider and abettor was aware of its role in promoting [the breach] at the time it provided assistance, and (3) the alleged aider and abettor knowingly and substantially assisted the primary violator in committing the breach." Dow Chem. Co. v. Mahlum, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). To assert a conspiracy, Motogolf must allege "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Sutherland, 772 P.2d at 1290. When the claims for the underlying breach are dismissed, the aiding and abetting and conspiracy claims must also be dismissed because the breach or unlawful objective elements are not met. Goldman v. Clark Cnty. Sch. Dist., 471 P.3d 753 (Nev. 2020); *ParksA Am., Inc. v. Harper*, 132 Nev. 1015 (2016) (unpublished disposition).

Because I am dismissing the underlying claims for the CFAA, NCLL, intentional interference with contractual relations, NDTPA, Lanham Act, and RICO, I dismiss the aiding and abetting and conspiracy claims based on them. I grant leave to amend because I allowed amendment for the underlying claims and it is not clear that amendment would be futile.

As for the aiding and abetting and conspiracy claims based on the intentional interference with a prospective economic advantage claim, I deny the defendants' motion to dismiss. The defendants' only arguments against these claims are that Motogolf failed to establish the underlying claim and that it failed to meet Rule 9(b)'s pleading standard. I have already determined that the intentional interference with a prospective economic advantage claim survives and that the defendants' actions as part of the conspiracy are adequately alleged. Consequently, I deny the defendants' motion to dismiss these claims.

### III. CONCLUSION

I THEREFORE ORDER that defendants Top Shelf Golf, LLC, Top Shelf IT Solutions Inc., Ivan Sokolovich, and Inna Sokolovich's motion to dismiss **(ECF No. 12) is GRANTED IN PART**.

I FURTHER ORDER that plaintiff Motogolf.com, LLC may file an amended complaint by April 16, 2021.

DATED this 25th day of March, 2020.

**All Citations**

Slip Copy, 2021 WL 1147149

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.