ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
SARAH K. MULLINS (SBN 324558)
sarahmullins@orrick.com
MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>LinkedIn Corporation,<br><br>　　　　Defendant.<br><br>LinkedIn Corporation<br><br>　　　　Counterclaimant,<br>　vs.<br><br>hiQ Labs, Inc.<br><br>　　　　Counterdefendant. | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISSOLVE PRELIMINARY INJUNCTION AND REQUEST FOR INDICATIVE RULING PURSUANT TO FED. R. CIV. P. 62.1**<br><br>Date:　　　　Oct. 21, 2021<br>Time:　　　　1:30 p.m.<br>Courtroom:　5 – 17th Floor<br>Judge:　　　Hon. Edward M. Chen<br><br>Complaint Filed:　June 7, 2017<br>Trial Date:　　　February 27, 2023 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.  HIQ'S OPPOSITION CONFIRMS THAT THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED. ............................................................ 2

    A.  hiQ Admits The Material Change In Circumstances That Eliminates The Threat Of Likely Irreparable Harm. ............................................... 2

    B.  The Supposed Harm hiQ Now Identifies Cannot Justify The Extraordinary Remedy Of Preliminary Injunctive Relief. ................................ 3

    C.  The Balance Of Harms And Public Interest Do Not Favor An Injunction That Serves No Purpose. ........................................................................ 6

II. LINKEDIN'S REQUEST FOR AN INDICATIVE RULING IS TIMELY AND PROCEDURALLY PROPER. ........................................................................ 8

    A.  LinkedIn Timely Pursued Relief Once It Had Sufficient Evidence To Merit Dissolution Of The Injunction. ............................................................ 9

    B.  LinkedIn Properly Presented Its Requests For Dissolution And An Indicative Ruling To This Court. ............................................................... 11

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
   284 F.3d 1091 (9th Cir. 2002) ............................................................................................... 9

*Ahlman v. Barnes*,
   No. 20-55568, 2020 WL 3547960 (9th Cir. June 17, 2020) ................................................ 12

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ................................................................................................ 2

*Amylin Pharms., Inc. v. Eli Lilly & Co.*,
   456 Fed. App'x 676 (9th Cir. 2011) .................................................................................. 3, 6

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) .................................................................................................. 3

*Chevron Corp. v. Donziger*,
   37 F. Supp. 3d 650 (S.D.N.Y. 2014) ................................................................................... 11

*ConocoPhillips Co. v. Gonzalez*,
   No. 5:12–cv–00576–LHK, 2012 WL 538266 (N.D. Cal. Feb. 17, 2012) ...................... 2, 5, 6

*Credit Suisse First Bos. Corp. v. Grunwald*,
   400 F.3d 1119 (9th Cir. 2005) ................................................................................................ 9

*Dozier v. Maispace*,
   No. C-05-1761 PVT, 2007 WL 518622 (N.D. Cal. Feb. 13, 2007) ..................................... 10

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................................. 7

*Fed. Trade Comm'n v. Noland*,
   854 F. App'x 898 (9th Cir. 2021) ........................................................................................ 12

*Fox Broad. Co. v. Dish Network, L.C.C.*,
   905 F. Supp. 2d 1088 (C.D. Cal. 2012) ............................................................................. 5, 6

*GSI Tech., Inc. v. United Memories, Inc.*,
   No. C 13-1081 PSG, 2013 WL 12172990 (N.D. Cal. Aug. 21, 2013) ................................... 4

*hiQ Labs v. LinkedIn Corp.*,
   938 F.3d 985, 1005 (9th Cir. 2019) ........................................................................................ 8

*Innospan Corp. v. Intuit, Inc.*,
   No. C 10–04422 WHA, 2010 WL 5157157 (N.D. Cal. Dec. 3, 2010) .................................... 4

*Int'l Snowmobile Mfrs. Ass'n v. Norton*,
   304 F. Supp. 2d 1278 (D. Wyo. 2004) ................................................................................ 4

*Kajberouni v. Bear Valley Cmty. Servs. Dist.*,
   No. 1:19-cv-01703-DAD-JLT, 2021 WL 1907606 (E.D. Cal. May 12, 2021) ....................... 9

*Lowry v. Barnhart*,
   329 F.3d 1019 (9th Cir. 2003) ............................................................................................ 12

*Mirina Corp. v. Marina Biotech*,
   770 F. Supp. 2d 1153 (W.D. Wash. 2011) .......................................................................... 6

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   422 F.3d 782, 799-800 (9th Cir. 2005) ............................................................................... 12

*Nevada v. United States*,
   364 F. Supp. 3d 1146 (D. Nev. 2019) .................................................................................. 7

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ................................................................................................ 5

*Prosterman v. Am. Airlines, Inc.*,
   747 F. App'x 458 (9th Cir. 2018) ......................................................................................... 9

*Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*,
   297 F.R.D. 218 (S.D.N.Y. 2013) ........................................................................................ 13

*Rubin ex rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.*,
   80 F. Supp. 3d 1058 (C.D. Cal. 2015) ................................................................................. 3

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
   316 F.2d 804 (9th Cir. 1963) ................................................................................................ 9

*Tee Turtle, LLC v. Kellytoy Worldwide, Inc.*,
   522 F. Supp. 3d 695 (C.D. Cal. 2021) ................................................................................ 4

*Turo Inc. v. City of Los Angeles*,
   847 F. App'x 442 (9th Cir. 2021) ......................................................................................... 2

*Univ. of Hawai'i Prof'l Assembly v. Cayetano*,
   183 F.3d 1096 (9th Cir. 1999) ........................................................................................ 6, 7

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................................... 2, 3, 6

**Other Authorities**

Fed. R. App. P. 8(a) ................................................................................................................... 11

Fed. R. App. P. 8(a)(1)(C) ......................................................................................................... 11

Fed. R. App. P. 12.1(b) ........................................................................................................ 12, 13

Fed. R. App. P. 59(e) ................................................................................................................... 9

Fed. R. App. P. 60(b)(2) .............................................................................................................. 9

Fed. R. Civ. P. 62.1 .............................................................................................................. 11, 12

Fed. R. Civ. P. 62.1(a) ................................................................................................................. 9

**INTRODUCTION**

hiQ's Opposition confirms that the circumstances this Court relied upon in issuing its preliminary injunction have materially changed. The Court issued the injunction to prevent hiQ from losing customers, employees, funding, and from shuttering its business. Yet, despite the imposition of injunctive relief hiQ claimed would allow its business to operate, "[t]here is no dispute that hiQ is no longer fully operational." Opp. at 13. Notwithstanding privileged access to LinkedIn's website, hiQ has no more customers, has no more employees, lost its funding, and "close[d] its proverbial doors." *Id*. Without business operations to protect, hiQ can no longer show any ongoing prospect of irreparable harm. hiQ speculates that it may have unspecified future business opportunities and argues that those justify maintenance of an ongoing restraint on LinkedIn. Such speculative opportunities do not meet the standard of likely irreparable harm. Nor does hiQ explain how it could possibly generate business from any such opportunity given that it has no more employees and archived (or destroyed) all the tools it would theoretically use to perform a contract. Likely and imminent irreparable harm is essential to the maintenance of a preliminary injunction, and hiQ can no longer show that harm.

Unable to substantiate any reason the injunction should be maintained, hiQ instead suggests the Court should ignore the changed circumstances because the injunction is currently before the Ninth Circuit. hiQ's arguments on this point ignore the applicable rules. The motion to dissolve is timely and so is the request for indicative relief. The indicative relief LinkedIn seeks is precisely the mechanism the Federal Rules provide in circumstances such as this. hiQ offers no reason to believe an appellate ruling applying a new legal standard to a four-year-old incomplete factual record concerning a preliminary injunction that no longer performs any useful function would materially advance resolution of the case. In any event, hiQ is protesting to the wrong court. Whether the Ninth Circuit should remand for further proceedings is a question left entirely to the appellate court—the task before this Court is to decide whether there exists a substantial issue concerning the propriety of maintaining the injunction. The complete cessation of hiQ's business destroys the basis for the injunction and there is no reason for this Court to withhold an indicative ruling to that effect.

# ARGUMENT

## I. HIQ'S OPPOSITION CONFIRMS THAT THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED.

### A. hiQ Admits The Material Change In Circumstances That Eliminates The Threat Of Likely Irreparable Harm.

There can be no dispute that post-*Winter* a likelihood of irreparable harm is required to obtain, or maintain, an injunction. *See* Mot. at 13 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); Opp. at 12–13 (citing *All. for the Wild Rockies*, 632 F.3d at 1131 and not disputing that irreparable harm is required). The sliding scale cannot be used to eliminate the requirement of likely irreparable harm; to the contrary, the other *Winter* factors need not even be considered when the irreparable harm standard is unmet. *See Turo Inc. v. City of Los Angeles*, 847 F. App'x 442, 444 (9th Cir. 2021) ("Having determined that the City has not made an adequate showing of the likelihood of irreparable harm on this record, we need not address the parties' arguments regarding the remaining elements of the preliminary injunction test."); *ConocoPhillips Co. v. Gonzalez*, No. 5:12–cv–00576–LHK, 2012 WL 538266, at *3 (N.D. Cal. Feb. 17, 2012) ("Given that Plaintiff fails to clearly show that it is likely to suffer immediate and irreparable harm absent a TRO, the Court need not address the remaining *Winter* factors." (original alterations and quotation marks omitted)).

hiQ concedes that it has suffered the fate it claimed it needed an injunction to prevent. Before the injunction was entered, hiQ claimed preliminary injunctive relief was necessary to prevent it from breaching *active* agreements with customers, firing *current* employees, and losing its access to financing. *See* Mot. at 7-8 (citing hiQ filings). The circumstances giving rise to injunctive relief have now indisputably changed. Even though the injunction was in place, hiQ admits it now has "no funds, employees, or customers[,] . . . could not afford to keep the lights on, and was forced to shut down the majority of its systems and archive its core IP." Opp. at 13. hiQ further admits it can "no longer solicit new clients or renew client contracts." *Id.* at 5. And hiQ admits, consistent with the records LinkedIn compiled in connection with seeking this relief, that it has not even attempted to access LinkedIn's website in the past year-and-a-half. *Id.*

These admissions are sufficient to establish the lack of likely irreparable harm. A defunct

business with no funds, no employees, no customers, no systems, and no operations has no ongoing need for privileged access to LinkedIn's website. If the injunction is dissolved, hiQ's condition will not materially change—it will continue to be a shuttered entity with no active business. The injunction was meant to preserve a status quo that no longer exists despite the Court's intervention. Continuing to impose the injunction will not resurrect hiQ's business.

### B. The Supposed Harm hiQ Now Identifies Cannot Justify The Extraordinary Remedy Of Preliminary Injunctive Relief.

In the wake of hiQ's cessation of business since the injunction issued, hiQ now rests its assertion of likely irreparable harm entirely on the remote possibility it might lose unspecified "future commercial relationships that could leverage [hiQ's] expertise, experience, and access to LinkedIn's servers." Opp. at 14 (claiming further irreparable harm without citing evidence); *see* ECF No. 219-2 (Weidick Decl.) ¶ 14 (identifying future "commercial inquiry" as a possible harm). This harm is speculative; not imminent; not causally related to the enjoined activity; and not irreparable. It thus cannot justify maintenance of the injunction.

**1.** *hiQ's claimed harm is purely speculative, not likely or imminent.* "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). *Winter* overruled Ninth Circuit precedent allowing an injunction on the mere "possibility of irreparable harm" because such a lenient standard was "inconsistent with [the Supreme Court's] characterization of injunctive relief as an *extraordinary remedy* that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). Moreover, to "warrant injunctive relief, it is not enough that the claimed harm be irreparable; it must be imminent as well." *Rubin ex rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1100 (C.D. Cal. 2015). "Establishing a threat of irreparable harm in the indefinite future is not enough." *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. App'x 676, 679 (9th Cir. 2011).

hiQ's assertion that some unidentifiable future business prospect will choose not to do business with it once the injunction is dissolved is speculative on its face and does not show

likely, imminent harm. hiQ does not identify a single prospective customer, much less offer evidence that hiQ's access to LinkedIn's website will matter to future commercial inquiries. *See* ECF No. 219-2 (Weidick Decl.) ¶¶ 12–14. There is no evidence that any potential customer has requested that type of service from hiQ since hiQ shut down its servers years ago. *See* ECF No. 219-2 (Weidick Decl.) ¶¶ 12–13 (describing inquiries, but failing to establish that the inquiries *required* privileged access to LinkedIn's website). To the contrary, according to hiQ's own evidence, hiQ stopped attracting new customers in fall 2018 and failed to generate any new business in the ensuing three years, even with unfettered access to LinkedIn's website.

hiQ accuses LinkedIn of having "eviscerated hiQ's business." Opp. at 13. That conclusory assertion is completely unsupported, but even if hiQ could establish that past business opportunities were lost *due to* LinkedIn's conduct, "past loss combined with speculation about the future may establish that further losses are *possible*, but [do] not satisf[y] the Supreme Court's requirement of showing that such losses are *likely*." *Innospan Corp. v. Intuit, Inc.*, No. C 10–04422 WHA, 2010 WL 5157157, at *3 (N.D. Cal. Dec. 3, 2010); *see also Tee Turtle, LLC v. Kellytoy Worldwide, Inc.*, 522 F. Supp. 3d 695 (C.D. Cal. 2021) ("[C]onclusory statements and theoretical arguments by a [party] are insufficient" to establish irreparable harm). Instead, to warrant a preliminary injunction, a party must "identify a 'specific threat of future irreparable harm.'" *GSI Tech., Inc. v. United Memories, Inc.*, No. C 13-1081 PSG, 2013 WL 12172990, at *10 (N.D. Cal. Aug. 21, 2013). hiQ identifies no specifics at all—there is no single opportunity hiQ claims exists that it will not be able to capitalize upon if the injunction is dissolved.[1]

**2. *The record belies any causal connection between hiQ's access to LinkedIn and business success.*** Even if hiQ could show a likely loss of future business opportunities, which it has not, there is not "a sufficient causal connection between the alleged irreparable harm and the activity to be enjoined, such … that the requested injunction would *forestall* the irreparable

---

[1] hiQ cites *Int'l Snowmobile Mfrs. Ass'n v. Norton*, 304 F. Supp. 2d 1278, 1287 (D. Wyo. 2004), for the unremarkable proposition that an entity that suffers some harm may still suffer more without an injunction. The difference with the *International Snowmobile* case is that the plaintiffs introduced evidence substantiating that specific "economic losses will continue" absent injunctive relief, while hiQ has not. *Id.*

harm." *ConocoPhillips Co.*, 2012 WL 538266 at *3 (emphasis added, original alterations and quotation marks omitted). hiQ argues that without access to LinkedIn, it will lose unspecified future business opportunities. That assertion ignores the fact that hiQ has generated no business for the past three years while having full access to LinkedIn's website. Bare assertions of harm, even if that harm were substantial (which hiQ's is not), cannot justify an injunction where there is no evidence that the "injunction would forestall" that harm. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011). In *Perfect 10*, the plaintiff established that it faced significant financial hardship arising from lost business and declining sales, which is far more than hiQ has done on the current record. *Id.* But even that was not enough where the plaintiff failed to show that the injunction would prevent that hardship from arising. The Ninth Circuit found it significant that the plaintiff could not provide a "statement from even a single former [customer] who ceased paying for [plaintiff's] service *because of*" the conduct sought to be enjoined. *Id.* at 982 (emphasis added).

    hiQ's position here suffers from the same fundamental defect. hiQ has benefited from a preliminary injunction in this case for over four years, but the injunction *did not* "forestall" the claimed irreparable harm and hiQ went out of business anyway. Far from identifying a customer who terminated its contract because of hiQ's lack of access to LinkedIn, hiQ admitted in interrogatory responses that no customer cancelled or reduced their services with hiQ between LinkedIn's first cease and desist letter and the entry of the injunction. ECF No. 216-7 (Hurst Decl.) Ex. 4 at 27. This record shows no causal relationship between hiQ's business troubles and hiQ's ability to have privileged access to LinkedIn's website—the injunction guaranteed that access but hiQ's business still failed. There is thus no basis to maintain the "extraordinary and drastic remedy" of a preliminary injunction. *Perfect 10*, 653 at 980, 981–82 (rejecting contention that a preliminary injunction would keep Perfect 10 in business because it was already not "in sound financial shape").

    **3.** **The type of harm identified by hiQ is compensable through damages.** It is blackletter law that "[e]conomic injury alone will not support a finding of irreparable harm because it can generally be remedied by money damages." *Fox Broad. Co. v. Dish Network, L.C.C.*, 905 F.

Supp. 2d 1088, 1110 (C.D. Cal. 2012) (finding lack of irreparable harm where damages arose from lost licensing fees).  With respect to hiQ's claim that it will lose future business opportunities, such "lost profits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief." *Amylin*, 456 F. App'x at 678 (noting that lost sales or lost customers are not irreparable because they can be "calculated through the use of commonly-used, standard economic analyses"); *Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011) ("[L]ost sales or business opportunities cannot constitute an irreparable harm, because (assuming they exist in this case) even if they were difficult to calculate, they would still constitute monetary, measurable damages.").  If, as hiQ speculates, a potential customer in the future sought to do business with hiQ and declines *specifically because* hiQ did not have privileged, unfettered access to LinkedIn data, then hiQ could seek to recover the lost sale as monetary damages (assuming it could prove some underlying right to relief, which LinkedIn disputes).  But losing future business will not change the current state of affairs at hiQ.  hiQ already is not engaging in any commercial activity; it has not identified how it will suffer *irreparable* harm if it continues to have no customers.

### C. The Balance Of Harms And Public Interest Do Not Favor An Injunction That Serves No Purpose.

The law post-*Winter* is clear that an injunction may not be maintained in the absence of likely, imminent irreparable harm.  *E.g.*, *ConocoPhillips Co.*, 2012 WL 538266 at *3 (holding that analysis of the remaining *Winter* factors is unnecessary where there is no adequate showing of irreparable harm); *Fox Broad. Co.*, 905 F. Supp. 2d at 1111 ("Having determined that Fox has failed to establish that it is likely to suffer irreparable harm in the absence of an injunction, the Court need not determine whether the balance of hardships tips in Fox's favor or whether an injunction is in the public interest.").  Should the Court nonetheless wish to consider the balance of harms and public interest, these factors also favor dissolving the preliminary injunction, as LinkedIn's opening brief established.  *See* Mot. at 17-19.

First, as to the balance of equities, the court must balance the harm caused by the injunction against the harm that would result if it were dissolved.  *Univ. of Hawai'i Prof'l*

*Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).  As discussed above, the only hardship hiQ identifies is speculative, remote, and not causally connected to the substance of the preliminary injunction at issue.  The lack of any cognizable harm to hiQ tips the balance of the equities "firmly" in LinkedIn's favor.  *Nevada v. United States*, 364 F. Supp. 3d 1146, 1157 (D. Nev. 2019).  Thus, while hiQ's opposition seeks to minimize—without citing any evidence—the harms LinkedIn faces if the injunction continues (Opp. at 15–16), even minimal harm to LinkedIn tips the balance in LinkedIn's favor because there is no harm to hiQ to counterbalance it.

In any event, hiQ cannot simply wave away the hardships the injunction imposes on LinkedIn.  hiQ's statement that the Court was "unmoved by" LinkedIn's concerns for its members privacy is inaccurate.  *Compare* Opp. at 15 *with* ECF No. 63 (8/14/17 PI Order) at 6 ("[LinkedIn's] considerations are not without merit.").  And LinkedIn presented *new* evidence of harm arising from the injunction.  Emboldened third-party scrapers—at least some of which hiQ hired—are now collectively scraping LinkedIn to the point where LinkedIn's defenses *reject* more requests to access the site than they *allow*, to the tune of millions of dollars in annual costs to LinkedIn.  Mot. at 17–18; ECF No. 217-4 (New Rockwell Decl.) ¶¶ 12–13; *see eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (holding that aggregated impact of third-party web scrapers encouraged by defendants' scraping was harm that weighed in website owner's favor on balance of hardships analysis).  These same third parties—who have no competitive rationale of the type relied upon by this Court in issuing its injunction—publicly use this Court's order as justification for their ongoing conduct.  *See* Mot. at 18.

hiQ offered no evidence to dispute LinkedIn's testimony that a court-ordered hole in its defenses makes LinkedIn's website and the member information it hosts more difficult to defend.  To the contrary, hiQ's evidence showed additional threats the injunction poses to LinkedIn because hiQ has been a poor steward of the extraordinary access it enjoys to LinkedIn's website.  Per Mr. Weidick, at some point after April 2020, hiQ declined to renew its AWS subscriptions and therefore lost control of its allowlisted Amazon AWS IP addresses.  ECF No. 219-2 (New Weidick Decl.) ¶ 13.  hiQ did not inform LinkedIn until 2021 and in the interim, any third party who happened to lease those addresses from Amazon could have accessed LinkedIn's website for

any purpose whatsoever.  Letting a defunct entity maintain privileged access to LinkedIn members' profile data increases the risk that privilege will be misused for improper purposes.

As to the public interest, LinkedIn's opening motion established that the public interest in allowing site owners to keep at least some portions of their websites open to the public while permitting them to thwart malicious attacks and fraud arising from scraping supports dissolution of the injunction. Mot. at 19.  The threats from unauthorized collection of user information have grown much more substantial with widespread availability of machine-learning tools that can be used to create personalized phishing attacks, rogue facial recognition systems, and other malicious activity.  hiQ blithely dismisses these concerns, going so far as to characterize "malicious hacking," and consumer fraud facilitated by scraping, including identify theft, as "LinkedIn issue[s]" stemming from LinkedIn's "own shortcomings" for which hiQ accepts no "blame." Opp. at 18.  With its callous disregard for public welfare, hiQ underscores LinkedIn's point that as a free-rider, hiQ seeks only the benefits of data—however theoretical those benefits may be given hiQ's shutdown of commercial operations—without any of the burdens or costs associated with being a good data steward.

hiQ's callous dismissal of legitimate public interests recognized by the Ninth Circuit both mischaracterizes the law and disregards the interests of LinkedIn's 750 million members and the general internet-using public at large. *See* Mot. at 18–19 (citing evidence); *see also hiQ Labs v. LinkedIn Corp.,* 938 F.3d 985, 1005 (9th Cir. 2019) (recognizing "significant public interests" identified by LinkedIn).  On the record presently before the Court, the public interests identified by LinkedIn weigh heavily in favor of dissolving the preliminary injunction.

## II. LINKEDIN'S REQUEST FOR AN INDICATIVE RULING IS TIMELY AND PROCEDURALLY PROPER.

Unable to defend the continued maintenance of the injunction on its merits, hiQ focuses the bulk of its opposition on complaints about the timing and methods by which LinkedIn sought relief from the injunction.  None of those complaints have any legal or factual basis.  Motions to dissolve injunctions are always timely if brought after a significant change in facts, because district courts maintain inherent power to modify an interlocutory injunction.  And by directing its

1  motions to this Court, LinkedIn followed precisely the procedures set forth in the Federal Rules
2  for addressing situations such as this.

   A.  **LinkedIn Timely Pursued Relief Once It Had Sufficient Evidence To Merit Dissolution Of The Injunction.**

5  hiQ suggests without citing any expository authority that LinkedIn's motion is not
6  "timely" within the meaning of Rule 62.1(a).  Opp. at 6–8.  hiQ's argument is incorrect.  Rule
7  62.1(a)'s requirement that a motion for an indicative ruling be "timely" refers to the timeliness of
8  the underlying motion on which an indicative ruling is sought.  For example, where a party seeks
9  an indicative ruling on relief from a final judgment, or a new trial, the timeliness of the indicative
10 motion depends on whether it is brought within the time allowed by the underlying rule.  *See e.g.*,
11 *Kajberouni v. Bear Valley Cmty. Servs. Dist.*, No. 1:19-cv-01703-DAD-JLT, 2021 WL 1907606,
12 at *2 (E.D. Cal. May 12, 2021) (determining the timeliness of a request for an indicative ruling on
13 a Rule 59(e) motion by reference to the time requirements of Rule 59(e)); *Prosterman v. Am.*
14 *Airlines, Inc.*, 747 F. App'x 458, 462–63 (9th Cir. 2018) (timeliness of a request for an indicative
15 ruling on a Rule 60(b)(2) motion determined with reference to time allowed for such motion
16 under Rule 60(b)(2)).
17   hiQ cannot show that LinkedIn's underlying motion to dissolve is untimely because such
18 motions may be brought at any time prior to final judgment.  Simply put, "there is no time limit
19 on a motion to vacate or dissolve a preliminary injunction."  *Credit Suisse First Bos. Corp. v.*
20 *Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).  That is because the court issuing the injunction
21 has "inherent authority to modify a preliminary injunction in consideration of new facts," *A&M*
22 *Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002), and has "power to modify or to
23 overturn an interlocutory order or decision while it remains interlocutory," *Tanner Motor Livery,*
24 *Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963).  hiQ did not cite any authority suggesting an
25 injunction may be maintained even in the absence of irreparable harm merely because the party
26 seeking dissolution did not act quickly enough once the likelihood of irreparable harm
27 disappeared.  hiQ's attempt to impose time limitations that are not present in the applicable rules
28 or case law should be rejected.

|   |   |
|---|---|
| 1 | In all events, the record shows that LinkedIn brought the present motion at the earliest |
| 2 | opportunity.  hiQ is wrong to suggest that the broad allegations in its Amended Complaint |
| 3 | provided a sufficient basis to dissolve the injunction.  This Court would have rightly excoriated |
| 4 | LinkedIn if it had tried to bring a motion to dissolve based solely on those allegations.  Indeed, |
| 5 | the statements hiQ points to in its pleadings and briefs do not state that hiQ is *completely* out of |
| 6 | business, which only recent discovery confirmed.  Opp. at 7 (citing ECF No. 131 (FAC) and ECF |
| 7 | No. 137 (hiQ's LinkedIn's Mot. to Dismiss the FAC)); *e.g.*, Opp. at 7 ("hiQ … has **largely** been |
| 8 | forced out of business." (quoting ECF No. 131 (FAC))); *see* Mot. at 9–12.  Those statements also |
| 9 | must be considered in the full context of other information hiQ provided at the time, which |
| 10 | suggested hiQ continued to operate.  hiQ repeatedly described its business in the present tense as |
| 11 | a going concern in the same filings hiQ now contends establish that its business in fact was shut |
| 12 | down.  *See* ECF No. 142 (hiQ's Opp. to LinkedIn's MTD) at 4 ("hiQ *offers* different types of |
| 13 | people analytics, includes its 'Keeper' and 'Skill Mapper' services." (emphasis added)); ECF No. |
| 14 | 182 (hiQ's MTD LinkedIn's Counterclaims) at 3 ("hiQ *does not analyze* the private sections of |
| 15 | LinkedIn ….  Rather, hiQ *uses* software to access and analyze wholly public information." |
| 16 | (emphasis added)).  And hiQ's counsel told LinkedIn in correspondence *in January 2021* that hiQ |
| 17 | would use newly identified IP addresses "to access public LinkedIn profiles," giving the |
| 18 | impression hiQ was actively scraping LinkedIn's website for business purposes.  ECF No. 217-3 |
| 19 | (Hurst Decl.) Ex. 9.  Discovery was stayed throughout this period, so there were no formal means |
| 20 | whereby LinkedIn could ascertain hiQ's status.  Indeed, hiQ wanted to maintain that discovery |
| 21 | stay even after it expired earlier this year and LinkedIn declined to agree to continue it. |
| 22 | Intentionally or not, hiQ's statements presented a moving target and it was only once the |
| 23 | discovery stay was lifted that LinkedIn was able to investigate hiQ's status and develop a record |
| 24 | sufficient to bring this motion.  *Id.* ¶¶ 2–18.  The equivocal statements hiQ points to in its |
| 25 | pleadings and briefs are not evidence and could not, on their own, support dissolution of the |
| 26 | injunction.  *See Dozier v. Maispace*, No. C-05-1761 PVT, 2007 WL 518622, at *7 (N.D. Cal. |
| 27 | Feb. 13, 2007) ("Assertions in pleadings are not evidence."). |
| 28 | hiQ points to the IP address access analysis performed specifically for the purposes of this |

1  Motion to argue that LinkedIn should have known all along that it was out of business.  Even if
2  LinkedIn had been constantly monitoring the IP addresses, the data was not conclusive in and of
3  itself, since hiQ had instances of isolated activity even after it shuttered its operations.  *See* ECF
4  No. 217-5 (Zhong Decl.) Exs. 1–2.  Even in its Opposition to this Motion, hiQ still tries to claim
5  that it is not *really* out of business.  hiQ's cessation of operations could only be confirmed and
6  explained in sufficient detail and context, and with sufficient admissible facts, to support a motion
7  once the discovery stay expired this summer.

        **B.**    <u>**LinkedIn Properly Presented Its Requests For Dissolution And An Indicative Ruling To This Court.**</u>

10  hiQ's final attempt to preserve preliminary injunctive relief it no longer warrants is to
11  argue, relying on irrelevant case law, that this motion should have been brought in the Ninth
12  Circuit.  Opp. at 9–12.  hiQ goes so far as to construct the strawman assertion that LinkedIn's
13  motion is predicated on a contention that the appeal between hiQ and LinkedIn is "moot," such
14  that LinkedIn should have alerted the Ninth Circuit and sought dismissal.  *Id*. at 12.  hiQ's
15  arguments are wrong and irrelevant.

16  Seeking indicative relief from this Court, rather than asking the Ninth Circuit to address
17  the changed circumstances, is exactly the procedure the Federal Rules describe.  Per Federal
18  Appellate Rule 8(a)(1)(C), a party "must ordinarily move first in the district court for … an order
19  suspending, modifying, restoring, or granting an injunction while an appeal is pending."
20  Rule 8(a) requires parties to seek relief in the district court because the district court is in the best
21  position to decide fact-specific questions in the first instance as the court that "is familiar with the
22  record."  *See Chevron Corp. v. Donziger*, 37 F. Supp. 3d 650, 651 (S.D.N.Y. 2014).  In
23  accordance with that general policy, Fed. R. Civ. P. 62.1 is regularly used by district courts to
24  address changed circumstances relevant to preliminary injunctions during a pending appeal and is
25  a codification of a longstanding practice of federal district courts in this regard.  *See* Mot. at 19–
26  20 (citing authority); Fed. R. Civ. P. 62.1, 2009 adv. note (noting that the new rule "adopts for
27  any motion that the district court cannot grant because of a pending appeal" a longstanding
28  practice that "most courts follow" when a motion related to a matter on appeal is brought during a

1  pending appeal). hiQ offers no justification for this Court to insist that LinkedIn depart from the
2  procedural route prescribed by Rule 62.1 and its corollary Appellate Rule 12.1.

3        In suggesting LinkedIn should have sought relief in the Ninth Circuit, hiQ relies on
4  inapposite case law governing when an entire case or controversy on appeal is "moot," and
5  implies that the Ninth Circuit, rather than this Court, is best situated to assess a change in factual
6  circumstances. This is incorrect. LinkedIn's motion is based on *new evidence* and changed
7  *factual* circumstances underlying a preliminary injunction that has been in place for four years.
8  The Ninth Circuit routinely remands such questions for the district court to decide in the first
9  instance. *E.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 799–800 (9th
10 Cir. 2005) (declining to review evidence submitted in support of modifying a preliminary
11 injunction and remanding because it is "inappropriate for [the Ninth Circuit] to decide those
12 [factual] questions for the first time on appeal"). hiQ's own citations make clear the preference
13 that factual issues are first addressed in the district court. *See, e.g.*, *Lowry v. Barnhart*, 329 F.3d
14 1019, 1024 (9th Cir. 2003) (characterizing the "limitation" that the appeals court "consider only
15 the district court record on appeal" as "fundamental") (cited in Opp. at 12).

16       Nor does this motion end-run the Ninth Circuit. If LinkedIn's motion is granted and this
17 Court indicates it would dissolve the preliminary injunction on remand, the Ninth Circuit *may*,
18 but is not required to, remand for further proceedings. Fed. R. App. P. 12.1(b). With the benefit
19 of an indicative ruling, the Ninth Circuit can decide in the first instance whether the changed
20 factual circumstances warrant remand, or, as hiQ argues, whether certain issues can be addressed
21 on the now out-of-date record that is before the Ninth Circuit. Although remand is discretionary,
22 cases are routinely remanded so that injunctions can be updated in light of new facts and to ensure
23 that the appellate record is up to date. *See, e.g.*, *Fed. Trade Comm'n v. Noland*, 854 F. App'x
24 898, 900 (9th Cir. 2021) ("We leave it to the district court in the first instance to consider whether
25 and to what extent the [Supreme Court's] decision … bears on the preliminary injunction.");
26 *Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *5 (9th Cir. June 17, 2020) (remanding
27 for the district court to "determine in the first instance whether it is appropriate to modify or
28 dissolve the injunction"); *Nat'l Wildlife Fed'n*, 422 F.3d at 799–800. The one case hiQ cites for

the prospect that a district court should decline to issue an indicative ruling in deference to the court of appeals is inapposite because the motion was not based on new facts or changed circumstances; the movant sought reconsideration of an already decided legal issue *after* the notice of appeal was entered.  Opp. at 8 (citing *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*, 297 F.R.D. 218, 222 (S.D.N.Y. 2013)).

Postponing a decision on dissolving the preliminary injunction will not in any way conserve judicial resources, as hiQ suggests.  *See* Opp. at 8.  Issuing an indicative ruling now will assist the Ninth Circuit in making its independent determination under Appellate Rule 12.1(b) as to whether to remand or make a decision on the present record.  The Ninth Circuit may wish to have the benefit of this Court's decision on the indicative motion, given that the evidence presented in support of the Motion is not in the record on appeal.  Thus, rather than "streamlining this litigation," Opp. at 11, declining to issue an indicative ruling on procedural grounds would risk causing a multiplication of proceedings, with the Ninth Circuit ruling on the merits of the preliminary injunction while this Court considers whether grounds remain for the injunction to be in force at all, given the changed factual circumstances.

## CONCLUSION

For the foregoing reasons, LinkedIn respectfully requests that the Court grant LinkedIn's Motion for an Indicative Ruling that the Court would dissolve the Preliminary Injunction or that LinkedIn's motion presents a substantial issue as to whether the Preliminary Injunction should be dissolved.

Dated: October 1, 2021                                    Orrick, Herrington & Sutcliffe LLP


By: _____/s/ Annette L. Hurst_____
ANNETTE L. HURST
Attorneys for Defendant
LinkedIn Corporation