February 23, 2022

*Via E-Filing*

The Honorable Judge Edward M. Chen
San Francisco Courthouse
Courtroom 5 - 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    <u>hiQ Labs, Inc. v. LinkedIn Corporation</u>, Case No. 17-cv-03301-EMC

Dear Judge Chen:

Pursuant to the Court's Standing Order for Civil Discovery, the parties jointly submit this letter brief outlining a dispute regarding the production of certain of hiQ's computer programs in source code form. As set forth herein, LinkedIn seeks to compel additional production of source code from hiQ, and hiQ objects to such further production.

The parties met and conferred via Zoom on January 19, 2022, and reached impasse after further correspondence on January 19 and 25.

  Respectfully submitted:

| | |
|---|---|
| **ORRICK, HERRINGTON & SUTCLIFFE LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By:   /s/ *Annette L. Hurst*<br>       ANNETTE L. HURST | By:   /s/ *Hope Skibitsky*<br>       HOPE SKIBITSKY |

The Honorable Judge Edward M. Chen
February 23, 2022
Page 1

## 3-PAGE SUMMARY OF POSITIONS

### LinkedIn's Position

LinkedIn seeks to compel production of additional source code of (1) programs used by hiQ to obtain data from LinkedIn, and (2) programs used by hiQ to process and analyze that data for use in hiQ's products.  *See* Exhibit A RFPs 2, 65.  hiQ agreed to produce source code, and LinkedIn conducted six days of inspections in December using retained consultants who reviewed the code in accordance with the Protective Order.  During the inspections, LinkedIn's consultants determined that key elements of source code were missing.  hiQ refused to produce them.

The means by which hiQ obtained, and then later used, member profile data from LinkedIn are central issues—highly relevant to both parties' claims and defenses.  This relevance strongly outweighs any claimed burden.  As hiQ acknowledged when producing some of its source code, the material is readily accessible.  Producing the requested code would not interfere with hiQ's operation even if hiQ were operational, which it is not.  *See* ECF 219-2 at 2–3.  The special provisions of the Protective Order (ECF 213) provide more than adequate protection for any trade secret status that might inhere in code that has not been improved for at least two years.  As for cost, if hiQ prefers not to incur expense associated with a supervised inspection, it can always produce the code directly to LinkedIn's experts who will maintain it securely.  In short, there is no burden, let alone one sufficient to outweigh the high degree of relevance.

***Code Used to Obtain LinkedIn Data.***  LinkedIn requested source code for hiQ's scraping programs in its first set of document requests served in June of 2021.  hiQ initially limited its response (*see* Exhibit A), but in subsequent correspondence dated November 10, 2021, agreed "to produce such code" without limitation.  LinkedIn's source-code consultants then inspected the code that was produced.  They found scraping code in two directories called "scrapus" and "scrapus2," as well as some material pertaining to data collection by "Mechanical Turkers."  In performing their inspection, the consultants determined that the two "scrapus" directories descended from an earlier directory called "science."  The "science" directory was not included, and even now hiQ does not explain what it contains.

The "scrapus" directories reveal that hiQ engaged in aggressive technical circumvention tactics to obtain LinkedIn member profiles.  hiQ used multiple proxy services, both internal and external, to obscure IP addresses in order to circumvent LinkedIn's technical defenses.  The proxy services used by hiQ anonymized hiQ's IP addresses by cycling through various addresses obtained from other sources, including cell phone networks.  Some versions of hiQ's software invoked and relied upon third-party vendors who employed tactics similar to the malware that powers "botnets."  The hiQ code showed development of these technical means of circumvention over time.  The produced code did not show when and how hiQ first began employing such tactics or how they developed from start to finish.

The source code also revealed hiQ's reliance on certain third party data collectors (the "Mechanical Turkers").  Other documents produced by hiQ (hiQ_00019673–19676) show that

The Honorable Judge Edward M. Chen
February 23, 2022
Page 2

hiQ instructed these Turkers to use "fake accounts" to log in to LinkedIn when obtaining member profile data.  hiQ has refused to produce all of its code used with these "Mechanical Turkers."  Both the "science" repository and the system supplied to the "Mechanical Turkers" are evidence highly relevant to proving that hiQ "knowingly" or "intentionally" accessed LinkedIn's servers without authorization or permission (*see* 18 U.S.C. § 1030(a)(2), Cal. Penal Code § 502), as well as proving the effectiveness of LinkedIn's technical defenses.

***Processing & Analysis Code.***  LinkedIn also requested the code used by hiQ to "process or analyze data from LinkedIn's website, servers, or computers."  Exhibit A RFP No. 65.  LinkedIn later specified "all source code necessary to understand what pre-processing steps were applied for each model that was produced [by hiQ]" and "code showing how the models were trained using LinkedIn data."  hiQ refused to produce on relevance grounds.

LinkedIn's counterclaims assert a violation of § 502, breach of contract, and misappropriation through *use* by hiQ of member profile data.  Detailing *how* hiQ "without permission[,] . . . makes use of" that data is directly relevant to these counterclaims.  *See* Cal. Penal Code § 502(c)(2).  hiQ's use of the data also supports LinkedIn's business justification defense to hiQ's claims, which rests on protection of members from unauthorized use of their personal data, and to rebutting hiQ's claims for damages.  The data-training code is an important aspect of hiQ's business value (or lack thereof) inherent in its threatened astronomical damages claim based on the allegation that LinkedIn "forc[ed] hiQ out of business entirely."  ECF 131 ¶¶ 81, 87, 95, 106.  LinkedIn must be given all the tools necessary to evaluate and rebut hiQ's damages claim.  *See Flack v. Nutribullet, L.L.C.*, 333 F.R.D. 508, 516 (C.D. Cal. 2019).

### hiQ's Position

LinkedIn has not justified its request for all of hiQ's source code—including hiQ's highly confidential proprietary algorithms—nor explained how that source code "is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b).  hiQ has already produced the source code used to retrieve public profile data from LinkedIn's website, including all code used to make requests to LinkedIn's servers.  Any source code beyond that already provided is simply not relevant to any claims or defenses.

LinkedIn wrongly contends that there is no burden to hiQ in producing all of the requested source code.  Production of the additional code demanded by LinkedIn would further burden hiQ with the expense and distraction of addressing various questions and disputes that will arise out of LinkedIn's review.  From the outset of the case, hiQ has acknowledged that it scraped public profile data.  Because the specific features of hiQ's source code are not at issue (as they might be in a patent or theft of trade secret case), the production and review of source code in this case flies in the face of this District's ESI Guidelines stating that "the discovery of ESI should be handled by the parties … 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'"  Guideline 1.01 (quoting Fed. R. Civ. P. 1).

The Honorable Judge Edward M. Chen
February 23, 2022
Page 3

***Code Used to Obtain LinkedIn Data.*** LinkedIn's RFP 2 seeks "source code … used by hiQ to search for or retrieve data for use in its products." Interpreting that request broadly, hiQ produced responsive source code from five separate repositories.[1] Among those five repositories were "scrapus" and "scrapus2". Setting aside LinkedIn's incorrect assertion that scrapus and scrapus2 "descended from" the science repository, LinkedIn has already received source code sufficient to understand what data hiQ accessed from LinkedIn's website and how it accessed that data. Any source code beyond that used to perform the scraping that animates LinkedIn's claims is simply not relevant.

Separately, hiQ has already produced the source code repository relating to "turkers"—namely, the "webturk" repository. Thus, it is unclear what LinkedIn seeks here. LinkedIn also mischaracterizes the "turkers'" role as "obtaining member data." Generally, turkers provided hiQ with (1) the turkers' own assessment as to whether hiQ's systems correctly identified the public URL for certain of hiQ's clients' employees; (2) whether there existed a public-facing URL relating to the correct employee; (3) where the turker was able to identify an accurate public LinkedIn URL, a link to that URL; (4) and a quality assurance check regarding what the code used to retrieve data was reporting to hiQ.

***Processing & Analysis Code.*** LinkedIn also seeks the code used by hiQ to "process or analyze data from LinkedIn's website, servers, or computers"—in other words, hiQ's proprietary machine learning algorithms. There is no dispute that hiQ used member profile data; hiQ has repeatedly stated as much. *See, e.g.*, ECF No. 131 (Am. Compl.) ¶ 3 ("By collecting and analyzing public profile information on LinkedIn, hiQ provided its clients … with insights and other data analytics about their employees."), ¶ 34 (similar). Thus, LinkedIn does not need—and should not be permitted to review—proprietary source code to prove what it already knows.

LinkedIn also claims it requires source code to evaluate hiQ's damages analysis, which is nonsensical on its face. hiQ is not aware of any cases—nor has LinkedIn cited any—where a party was compelled to produce source code to aid the opposing party in conducting a damages valuation. hiQ produced all responsive financial materials from a central file on December 30, 2021, and LinkedIn is not entitled to more.

---

[1] The five repositories are: scrapus, scrapus2, webturk, data-pipeline, and mifi.

The Honorable Judge Edward M. Chen
February 23, 2022
Page 4

## EXHIBIT A – REQUESTS AND RESPONSES

*July 29, 2021 [hiQ] Responses to LinkedIn's First Set of RFPs:*

"**REQUEST FOR PRODUCTION NO. 2:**
Computer programs, in source code and executable form, used by hiQ to search for or retrieve data for use in its products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
hiQ objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities. hiQ further objects to the Request for computer programs in "executable form" to the extent no "executable form" of the computer programs exist or ever existed.
Subject to and notwithstanding the foregoing objections, and after entry of an adequate protective order, hiQ will produce non-privileged documents within its possession, custody, or control that are responsive to this Request, can be located through a reasonable search conducted in accordance with the parties' agreements regarding search parameters, and can be produced without undue burden."

*November 10, 2021 [hiQ] Correspondence Regarding hiQ Discovery Responses:*

"**Source Code.**   LinkedIn's RFP No. 2 seeks "Computer programs, in source code and executable form, used by hiQ to search for or retrieve data for use in its products."  hiQ has agreed to produce such code.

*December 17, 2021 [hiQ] Responses to LinkedIn's Second Set of RFPs:*

"**REQUEST FOR PRODUCTION NO. 65:**
Computer programs, in source code and executable form, used by hiQ to process or analyze data from LinkedIn's website, servers, or computers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**
hiQ objects to this Request as seeking highly confidential and proprietary source code that is not relevant to any claims or defenses in this Action. To the extent LinkedIn could articulate any relevance that the requested source code has to the claims and defenses in this matter, this Request for all source code "used by hiQ to process or analyze data from LinkedIn[]" is not proportional to the needs of this case as required by Rule 26(b)(1). This Request also flies in the face of Guidelines 1.01 and 1.03 of the Northern District of California's Guidelines for the Discovery of Electronically Stored Information. hiQ further objects to the Request for computer programs in "executable form" to the extent no "executable form" of the computer programs exist or ever existed.
In light of the foregoing objections, hiQ will not produce material responsive to this Request beyond what it has already produced in response to Request No. 2."

The Honorable Judge Edward M. Chen
February 23, 2022
Page 5

*Attestation of Concurrence*

*I, Annette L. Hurst, attest pursuant to Local Rule 5-1(i)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.*

Dated: February 23, 2022 　　　　　　　　　　　　　/s/　　　　*Annette L. Hurst*
　　　　　　　　　　　　　　　　　　　　　　　　　　　ANNETTE L. HURST