

April 13, 2022

*Via E-Filing*

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700
**orrick.com**

**Russell P. Cohen**

E  rcohen@orrick.com
D  +1 415 773 4210
F  +1 415 773 5759

The Honorable Judge Sallie Kim
San Francisco Courthouse
Courtroom C - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *hiQ Labs, Inc. v. LinkedIn Corporation*, Case No. 17-cv-03301-EMC

Dear Judge Kim:

Pursuant to the Court's Standing Order for Civil Discovery, the parties jointly submit this letter brief outlining a dispute regarding hiQ's discovery requests regarding (i) LinkedIn's actual or planned acquisitions of other companies; and (ii) LinkedIn's evaluation of and conduct towards third-party scrapers other than hiQ.  As set forth herein, LinkedIn seeks a protective order precluding this discovery.

The parties reached an impasse after meeting and conferring regarding these issues via Zoom on March 2, March 11, March 15, and March 17.  Prior to and after those meetings, the parties exchanged multiple rounds of correspondence without resolving the issues.  The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct prior to filing this letter.

The document discovery cutoff in this matter is April 7, 2022 and the cutoff for fact deposition discovery is May 20, 2022.  A pretrial conference is set for January 31, 2023, and trial is scheduled to begin on February 27, 2023.

Respectfully submitted:

**ORRICK, HERRINGTON &**　　　　**QUINN EMANUEL URQUHART &**
**SUTCLIFFE LLP**　　　　　　　　　**SULLIVAN, LLP**

By: _____*/s/ Russell P. Cohen*_____　　　By: _____*/s/ Elisabeth B. Miller*_____
　　　　RUSSELL P. COHEN　　　　　　　　ELISABETH B. MILLER

**LinkedIn's Position**

LinkedIn seeks a protective order barring hiQ's eleventh-hour effort to dramatically expand the scope of the case to encompass LinkedIn's actual or planned acquisitions of other companies and LinkedIn's evaluation of and conduct towards scrapers other than hiQ.[1]

*Legal Standard.*  Pursuant to Rule 26(b)(1), the proper scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Because discovery is limited by relevance and proportionality, "Rule 26(b)(2)(C)(iii) requires courts to disallow discovery outside the scope of Rule 26(b)(1)."  *In re German Auto. Manufacturers Antitrust Litig.*, 335 F.R.D. 407, 408 (N.D. Cal. 2020).  hiQ cannot establish that discovery into LinkedIn's corporate acquisitions and treatment of other scrapers is relevant to any "claim or defense."  Separately, Rule 26's proportionality standard cannot be met given the significant burden of such discovery as weighed against its at-most-tangential relevance.

*Lack of Relevance of Requested Discovery.*  LinkedIn's corporate acquisitions and treatment of other scrapers are not part of this case.  hiQ's theory of relevance of these topics is "LinkedIn's efforts to leverage its market power to suppress competition by targeting nascent competitors."  hiQ's March 23, 2022 Ltr. at 2.  In other words, hiQ is seeking discovery on a Sherman Act Section 2 monopolization or attempted monopolization claim.  This is confirmed because many of hiQ's proposed search terms and strings (Ex. E), are plainly targeted to antitrust

---

[1]The discovery concerning corporate acquisitions and treatment of other scrapers for which LinkedIn seeks a Protective Order includes: hiQ's First Set of Requests for Production Nos. 17, 19, 20-22 (to the extent these Requests are asserted as the basis for search terms pertaining to LinkedIn's acquisitions and treatment of other scrapers) (Ex. A); hiQ's Second Set of Requests for Production Nos. 33-34, 38-40, 43-44 (Ex. B); hiQ's Second Set of Interrogatories Nos. 14-18 (Ex. C);  hiQ's 30(b)(6) Notice of Subpoena Topic Nos.  14-15, 18-19, 30 (to the extent hiQ's antitrust theories regarding acquisitions and treatment of other scrapers are asserted as the basis for this topic), 32-33, 37 (Ex. D).  (Exhibits A–D excerpted to include only the disputed requests).

issues, including, for example, "Antitrust /25 (compet* OR acqui* OR threat* OR risk)"; "Glint /25 (compet* OR "lang grab" OR moat OR "market share)"; "anticompet* /25 (coop* OR agree* OR acqui* OR threat* or target*)."  The problem is that there is no such claim in the case.

In fact, hiQ's antitrust claims were *dismissed*.  ECF No. 158.  The Court determined that hiQ had not met the required pleading standards, *id.* at 21, and hiQ thereafter elected not to try to amend its Complaint.[2]  hiQ thus conceded that it could not overcome the failings of its market definition and conduct allegations, and the September 3, 2021 deadline to seek to amend pleadings further has long since passed.  In effect, hiQ now seeks discovery on claims *it could not plead*. Discovery into previously dismissed antitrust claims is plainly precluded.  *In re German Auto. Manufacturers Antitrust Litig.*, 335 F.R.D. at 408 (denying request for discovery into claims dismissed in Plaintiffs' First Amended Complaint, explaining both "Supreme Court and Ninth Circuit precedent bar discovery based on previously dismissed claims.").

Worse, the new theories were not even part of what hiQ originally *tried* to plead.  Nowhere in any of hiQ's claims (including the dismissed antitrust claims) were there allegations regarding LinkedIn's acquisitions or treatment of other scrapers.  Rather, hiQ's Sherman Act Section 1 claim seemed to be some kind of tying or boycott claim.  ECF No. 131 at ¶¶ 158-68 (LinkedIn "conditioned the provision of its professional social networking platform [to its members] on the boycotting of competing people analytics service providers and the use of LinkedIn's people analytics services.").  hiQ's Section 2 claims focused on allegations of "leveraging, lock-in, raising rivals' costs, tying, unilateral refusal to deal, denial of essential facilities, and vertically-arranged

---

[2] The Court granted hiQ leave to amend its antitrust claims only "to the extent they are based on the theories of unilateral refusal to deal and the essential facilities doctrine.  The other theories  are futile."  ECF No. 158 at 21.  It is of course long past the time to amend the complaint, and hiQ's newly raised antitrust theories regarding LinkedIn acquisitions and treatment of other scrapers do not fit within those categories.

boycotts." *Id.* at ¶¶ 109-57.  Nowhere did hiQ allege "efforts [by LinkedIn] to leverage its market

power to suppress competition by targeting nascent competitors."  hiQ's March 23, 2022 Ltr. at 2.

This lack of pertinent allegations is also the reason why hiQ's attempt to shoehorn antitrust

discovery into its claims for violation of California's Unfair Competition Law ("UCL") and

Intentional Interference with Prospective Economic Advantage ("IIPEA") fails[3]—the allegations

do not reference acquisitions or other scrapers.  Rather, each of these claims focuses on LinkedIn's

actions *towards hiQ*—a topic about which LinkedIn has already engaged in extensive discovery.

*See* ECF No. 131 ¶ 85 ("LinkedIn intentionally interfered with hiQ's contracts"); *id.* ¶ 92

("LinkedIn's access denial [of hiQ] violates the policy and spirit of antitrust law[.]"); *id.* ¶ 93 ("The

impact of LinkedIn's actions on hiQ is obvious and devastating[.]"); *id.* ¶ 99 ("LinkedIn's tortious

interference with hiQ's current and prospective contractual and business relationships give rise to

a claim under the "unlawful" business practices prong of the UCL."); *id.* ¶ 105 ("hiQ reasonably

relied to its detriment on LinkedIn's promises of public access and LinkedIn's participation at hiQ

conferences in building its business around those public profiles.").

If hiQ intended its statutory and tort claims[4] to encompass LinkedIn's acquisitions or

treatment of other scrapers, it was required to plead those allegations.  *See Levitt v. Yelp! Inc.,* 765

F.3d 1123, 1135 (9th Cir. 2014) (claims must allege facts and not just legal conclusions).  Not only

did it not do so, but the antitrust claim it did try to plead could not pass muster because its market

definition allegations were inadequate.  These newly raised and *unpled* Sherman Act antitrust

---

[3] As the Court noted in its Preliminary Injunction Order, the "analysis of the tortious interference claim simply overlaps with the analysis of the unfair competition claim."  ECF No. 63 at 23 n.14. Accordingly, it adds nothing additional beyond the UCL claims.

[4] Contary to hiQ, IIPEA claims require not a showing of *motive*, but rather interefence arising from conduct  that is itself "independently actionable."  *Korea Supply Co. v. Lockheed Martin Corp.*, 9 Cal. 4th 1134, 1158 (2003).  .

theories cannot be a basis for discovery.  Nor would they pass muster had they been alleged, as they are based on the *dismissed* market definition.  Moreover, hiQ's failure to sufficiently plead a relevant product market forecloses UCL liability.  *See, e.g.*, *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 2354751, at *15-16 (N.D. Cal. June 9, 2021) (dismissing UCL unfair competition claim, in part, for failure to adequately identify a relevant product market); *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 666–67 (2005).  So hiQ is now seeking discovery on unpled *and* defective claims.  hiQ's "fishing expedition" for discovery into such claims should not be condoned by the Court.  *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

   ***Lack of Proportionality to Needs of the Case.***  Moreover, the burden of providing the requested discovery would be substantial.  The hit count report provided to hiQ showed that the proposed search terms pertaining to LinkedIn's acquisitions and treatment of other scrapers would likely add several hundred thousand documents for review and would require hundreds of thousands of dollars and hundreds of hours of time to process.  LinkedIn would also have to invest significant additional time in interviewing new witnesses and preparing answers on multiple topics for interrogatories and 30(b)(6) depositions focused on these unpled and demonstrably defective allegations.  Given the lack of relevance, there is no justification for this additional burden on top of the nearly quarter million documents LinkedIn has reviewed under the parties' ESI protocol and the thousands of documents it has already produced.  *E.g.*, *Circle Click Media LLC v. Regus Mgmt. Group LLC*, No. 12–cv–04000–SC (JSC), 2014 WL 1340674, at *2 (N.D. Cal. Apr. 3, 2014) (denying discovery where the "burden and expense … far outweighs the relevance").

   LinkedIn was willing to add a reasonable number of search terms and custodians where the subject matter is specific to hiQ.  hiQ refused, apparently because it is trying to resuscitate an antitrust claim the Court already barred.  The Court should grant a protective order.

**hiQ's Position**

LinkedIn's efforts to suppress competition for its Talent Solutions products by acquiring or shutting down nascent competitors, including hiQ, are plainly relevant to hiQ's UCL claims, which embrace conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). This information is also relevant to hiQ's intentional interference claims, as it shows LinkedIn's "motive, opportunity, intent… plan… or lack of accident" in destroying hiQ's business. FRE 404(b)(2). The Court should deny LinkedIn's request for a protective order, and instead order the production of information responsive to hiQ's written discovery (which LinkedIn seeks to improperly suppress) in accordance with Fed. R. Civ. P. 26(c)(2).[5]

***hiQ's Requests Are Highly Relevant To Its Pleaded Claims.*** hiQ claims damages resulting from LinkedIn "using its dominant presence as the world's largest professional social networking platform… to suppress competition and violate the core principles and spirit of the antitrust laws." Dkt. 131 (First Amended Complaint) at ¶ 27. LinkedIn's conduct towards hiQ and other similarly-situated HR analytics startups is relevant as evidence of LinkedIn's anticompetitive plan, motive, and course of conduct to suppress competition for its HR analytics services. LinkedIn "errs by compartmentalizing each alleged anticompetitive act and analyzing it in a vacuum instead of considering the cumulative impact of those acts… [because a] pattern of

---

[5]   These include hiQ's First Set of Requests for Production Nos. 17, 19, 20-22 (Ex. A); hiQ's Second Set of Requests for Production Nos. 33-34, 38-40, 43-44 (Ex. B); hiQ's Second Set of Interrogatories Nos. 14-18 (Ex. C); hiQ's 30(b)(6) Notice of Subpoena Topic Nos. 14-15, 18-19, 30, 32-33, and 37 (Ex. D). The search terms and custodians which are the subject of hiQ's Motion to Compel (Dkt. 250) overlap in part with these and other Requests for Production.

anticompetitive acts can also be evidence of intent." *Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1068791, at *1 (D. Or. May 7, 2004); *see also Sharp Elecs. Corp. v. Hitachi, Ltd.* (*In re Cathode Ray Tube (CRT) Antitrust Litig.*), 2014 WL 1091095, at *6 (N.D. Cal. Mar. 13, 2014) ("In complex antitrust litigation, motive and intent play leading roles, and the proof is largely in the alleged conspirators' hands.").  hiQ also pled intentional interference with contract and intentional interference with prospective economic advantage (together, "Intentional Interference Claims"), both of which require a showing of intentional acts "designed to disrupt" contracts or economic relationships. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).  The information sought by the disputed discovery requests is relevant to both of these claims.[6]

LinkedIn is mistaken that the dismissal of hiQ's federal antitrust claims bars the discovery of these themes as part of hiQ's remaining UCL claims.  In fact, the State of California recently submitted an *amicus curiae* brief in a similar UCL case explaining that "A UCL Plaintiff Need Not Establish a Concurrent Violation of Antitrust Law."[7]  That is because **the California legislature deliberately drafted the UCL to be broader than federal antitrust law** to address the innumerable "new schemes which the fertility of man's invention would contrive." *Am. Philatelic Soc'y v. Claibourne*, 3 Cal. 2d 689, 698 (1935); *accord, e.g.*, *Cel-Tech*, 20 Cal. 4th at 181.

---

[6]  *E.g.,* Ex. A, No. 21 (targeting "policies and practices regarding third-party programmatic access of [LinkedIn's] website"); No. 33 (targeting "strategies for using, monetizing or leveraging LinkedIn's user data, including by exluding third-party access"); No. 39 (targeting "LinkedIn's assessment of any and all competitive threats to its Talent Solutions business"); *see also* Ex. C, No. 18 (targeting "instances where LinkedIn decided to forego sending a cease-and-desist letter [to any scraper]" for commercial reasons.).

[7]  *See* BRIEF OF THE STATE OF CALIFORNIA AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY, *Epic Games Inc. v. Apple, Inc.,* Case No. 21-16506, Dkt. No.118, at 12-16 (N.D. Cal. Mar. 31, 2022).

LinkedIn's anticompetitive practices toward third parties represent a clear example of the "killer acquisitions" by incumbent tech platforms recently investigated by the House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary, which it found harmed competition and violated various policies and principles underpinning antitrust law.[8]

Evidence of LinkedIn's anticompetitive practices, a pattern that included its targeting of hiQ, is also probative of hiQ's Intentional Interference Claims.  LinkedIn does not dispute that these Claims were properly pled, and the "motive, opportunity, intent… plan… or lack of accident" animating that interference is an independent basis for the relevance of hiQ's discovery requests. FRE 404(b)(2); *see also Washington Alder*, at *1; *Korea Supply Co.*, 29 Cal. 4th at 1163 (motive can be relevant to determining defendant's independent unlawful conduct; hiQ pled such unlawful conduct).

***LinkedIn Has Not Shown Good Cause For A Protective Order, And This Motion Is Therefore Improper***.  LinkedIn has failed to demonstrate "good cause" necessary for issuance of a protective order because it has not shown any specific "harm or prejudice" resulting from hiQ's requests for relevant discovery.  Fed. R. Civ. P.  26(c)(1); *see also Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992).  LinkedIn's productions to date show that it plainly is in possession of, and has already reviewed, documents responsive to the discovery requests at issue here.  *See* (hiQ's Motion to Compel Production of Documents) (Dkt. 250).  In resisting hiQ's requests, LinkedIn has argued that this handful of highly relevant documents prove that the prior requests and search terms were sufficient.  3/18 LinkedIn Ltr.  To the contrary, these documents

---

[8]  *See generally* Subcommittee on Antitrust, Commercial and Administrative Law of the House Committee on the Judiciary, 116th Cong., Investigation of Competition in Digital Markets (2020), *available at* https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519.

are likely just the tip of the iceberg.

Since LinkedIn now disputes that anticompetitive motives are relevant to hiQ's claims, it follows that swaths of relevant documents were improperly deemed nonresponsive by LinkedIn and thus not produced.[9]  Notably, LinkedIn failed to raise its present objections when it ran hiQ's search terms *last fall*, many of which were variations of the ***more limited*** terms LinkedIn now claims are out of bounds.  *Compare, e.g.,* "Antitrust*" [first set] *with* "Antitrust /25 (compet* OR acqui* OR threat* OR risk)" [new set]; "Moat" [first set] *with* "Glint /25 (compet* OR "land grab" OR moat OR "market share)" [new set].  The inconsistency of LinkedIn's position is highlighted by its insistence that these more narrow, targeted versions of requests to which it previously agreed are suddenly "disproportionate."

LinkedIn's characterization of hiQ's requests as an "eleventh hour effort to dramatically expand" discovery is simply not credible.  For example, hiQ's Second Set of Requests for Production was served on December 17, 2021.  On February 11, 2022, hiQ renewed its prior objection to LinkedIn's unilateral restriction of negotiated search terms, and identified additional relevant custodians and search terms on the same date.  As LinkedIn notes, hiQ has met and conferred in good faith repeatedly for months regarding the disputed requests.  The search terms about which LinkedIn now complains were ***twice*** narrowed by hiQ in an effort to balance LinkedIn's purported burden with the needs of the case.

hiQ therefore respectfully requests that the Court (i) deny LinkedIn's motion in full; and, (ii) order LinkedIn to provide the requested discovery in accordance with Fed. R. Civ. P. 26(c)(2).

---

[9]  *E.g.,* Ex. A, No. 11 (targeting restrictions on third-party access for commercial purposes); No. 21 (targeting "policies and practices regarding third-party programmatic access of [LinkedIn's] website"); No. 22 (targeting LinkedIn's reasons for sending the C&D letter); and No. 23 (targeting policies and practices for sending C&D letters to scrapers).  LinkedIn agreed to produce documents responsive to each of these requests from hiQ's First Set of Requests for Production.

*Attestation of Concurrence*

**I, Russell P. Cohen, attest pursuant to Local Rule 5-1(i)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.**

Dated: April 13, 2022

_____*/s/  Russell P. Cohen*_____
RUSSELL P. COHEN