# EXHIBIT C

**(Relevant Excerpts)**

Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Renita Sharma (*pro hac vice*)
renitasharma@quinnemanuel.com
Hope Skibitsky (*pro hac vice*)
hopeskibitsky@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6331

Attorneys for Plaintiff hiQ Labs, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| hiQ Labs, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> LinkedIn Corp., <br><br> Defendant. | Case No. 3:17-cv-03301-EMC <br><br> **PLAINTIFF HIQ LABS, INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT LINKEDIN CORP.** |

**PROPOUNDING PARTY:**     PLAINTIFF HIQ LABS, INC.

**RESPONDING PARTY:**     DEFENDANT LINKEDIN CORP.

**SET NUMBER:**     TWO

## DEFINITIONS

1. The term "All Documents" shall be construed as any and all documents that might reasonably be located through a search of all locations reasonably likely to contain documents called for by these Interrogatories.

2. "Communication" or "Communications" shall mean any oral, written or otherwise non-verbal, or electronic expression of information, opinion, words or data and evidence thereof, no matter how those pieces of information, opinion, words or data or evidence thereof is stored, memorialized, or fixed. For the avoidance of doubt, such terms refer to, but are not limited to, conversations in person, telephone conversations, notes or memoranda of any conversations or meetings, diaries, daily calendars, faxes, electronic mail, messaging apps, electronic messaging systems, letters, reports, memoranda, formal statements, press releases, media publications, posts and comments to any social media accounts, including LinkedIn, or other records of exchanges between people or entities. These terms further include, without limitation, any summaries, reviews, reports, notes, logs, records, journals, minutes, or outlines concerning or memorializing the transmittal of information, opinion, words, or data.

3. The term "data" means any compilation of information or computer code that is stored electronically in the normal course of business.

4. The term "Document" is used in its broadest sense and is meant to include all items encompassed by Rule 34 of the Federal Rules of Civil Procedure, including all Electronically Stored Information and electronic or computerized compilations, no matter how such documents are stored. For the avoidance of doubt, these terms include, but are not limited to, all writings, drawings, graphs, charts, photographs, recordings, electronic mail, text messages, iMessages,

SMS, voicemails, notes, computer code, data, and any other compilation from which information can be obtained, or translated, if necessary, through detection into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

5. "Each" shall mean each and every and "every" means each and every.

6. "Electronically Stored Information" means information that is stored in electronic media, regardless of the media or whether it is in the original format in which it is created, and that is retrievable in perceivable form and includes metadata, system data, deleted data, and fragmented data.

7. The term "Elevate conference(s)" refers to the series of conferences referenced in hiQ's Amended Complaint and in the Declaration of Mark Weidick, *see* ECF No. 131 ¶ 37; ECF No. 23-4 ¶¶ 11-13.

8. The term "hiQ" means hiQ Labs, Inc., its employees or representatives, and any predecessor of hiQ, including OrgStars Inc.

9. The term "person" or "persons" refers to any natural person, proprietorship, public or private corporation, legal entity, organization, group, association, business organization (regardless of the corporate form), joint venture, trust, pension fund, association, government or governmental entity and any subdivisions, agencies, departments, or units thereof.

10. "Including" shall mean including, but not limited to.

11. The terms "Refer or Relate/Relating to" any given subject matter shall mean, without limitation, any document or communication that, in whole or in part, constitutes, comprises, contains, reflects, identifies, evidences, concerns, discusses, refers to, or is in any other way relevant to the particular subject matter identified.

12. The terms "You," "Your," or "LinkedIn" means LinkedIn Corporation and shall include any past and present divisions, parents, subsidiaries, associated organizations, affiliates, joint ventures, predecessor or successor companies—including Microsoft Corp.—and its past and present officers, directors, employees, trustees, authorized agents, sales representatives, distributors, consultants, dealers, or other representatives, including counsel and patent agents, in

any country, and any persons or entities from which they have the right or ability to obtain all or part of the discovery requested.

13. The terms "People Analytics" or "HR Analytics" refers to the application of data science, machine learning or other advanced statistical tools to data sets for the purpose of informing business decisions, including to generate predictive insights about employee or prospective employee attitudes and behavior and to provide insights and recommendations relating to workforce management.

14. "Recruiter" means the LinkedIn Recruiter product (*see, e.g.*, https://www.linkedin.com/help/recruiter/answer/a417020/personal-account-vs-recruiter?lang=en).

15. The term "White List" means the set of service providers, search engines, and other platforms You permit to query and index Your website.

16. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

17. The use of the singular form of any word includes the plural and vice versa.

18. Each paragraph herein shall be construed independently and not by reference to any other paragraph for the purpose of limitation.

**INTERROGATORY NO. 14:**

Describe Your processes, methods, and/or tactics for identifying companies in the People Analytics and/or HR analytics space for potential acquisition by LinkedIn ("Targets"), including Your criteria for starting discussions or beginning negotiations with these Targets, and the information that You require or required from these Targets for Your evaluation.

**INTERROGATORY NO. 15:**

Describe in detail the process by which LinkedIn decided whether to allow Sunrise (an affiliate of Microsoft) to scrape, crawl, or otherwise access, by automated means, LinkedIn's computer, website, or servers, including the outcome of that decision and the rationale behind that decision.

**INTERROGATORY NO. 16**

Describe in detail the process by which LinkedIn decided whether to allow Zlemma to scrape, crawl, or otherwise access, by automated means, LinkedIn's computer, website, or servers, including the outcome of that decision and the rationale behind that decision.

**INTERROGATORY NO. 17:**

Describe in detail all partnerships, business relationship, and/or agreements between LinkedIn and any third-party wherein any third-party agreed to stop scraping, crawling, or otherwise accessing, via automated means, LinkedIn's computer, website, or servers in exchange for a partnership or business relationship with LinkedIn.

**INTERROGATORY NO. 18:**

Describe in detail all instances when LinkedIn decided to forego sending a cease-and-desist letter or taking any legal action against any third-party that was scraping, crawling, or otherwise accessing, via automated means, LinkedIn's computer, website, or servers, where LinkedIn perceived that third-party to be a potential Target, business partner, or business relationship, and explain why LinkedIn decided not to pursue any action against such third-parties.