

April 13, 2022

*Via E-Filing*

The Honorable Judge Sallie Kim
San Francisco Courthouse
Courtroom C - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700
**orrick.com**

**Russell P. Cohen**

E  rcohen@orrick.com
D  +1 415 773 4210
F  +1 415 773 5759

Re:   *hiQ Labs, Inc. v. LinkedIn Corporation*, Case No. 17-cv-03301-EMC

Dear Judge Kim:

Pursuant to Defendant and Counterclaim Plaintiff LinkedIn Corporation's letter dated April 11, 2022 (ECF No. 251), LinkedIn respectfully submits the following response to hiQ's discovery letter motion (ECF No. 250).

Respectfully submitted:

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By:   */s/ Russell P. Cohen*
         RUSSELL P. COHEN

**LinkedIn's Response To hiQ's Motion To Compel (ECF No. 250)**

hiQ's motion to compel should be denied because it is based on antitrust theories and anticompetitive conduct that were not even part of what hiQ originally tried, unsuccessfully, to plead.  *See* ECF 252 (Mot. Prot. Ord.).  And the motion should also be denied because hiQ makes no showing that the requested discovery is allowed by Rule 26's relevance and proportionality standards. hiQ shows no need for ESI from LinkedIn's former CEO and current Executive Chairman, Jeff Weiner, and fails to show that expansion of the parties' agreed ESI protocol is (1) targeted toward *relevant* information, (2) proportional to the needs of the case, or (3) justified in the expense and time it will take to search broadly for documents of little to no relevance.

***hiQ Fails To Meet Its Burden Of Showing Relevance & Proportionality.***  hiQ, as "the party seeking to compel discovery … has the obligation to 'detail the basis for [its] contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.'"  *Somers v. Digital Realty Trust Inc.*, 2017 WL 2954909, at *8 (N.D. Cal. July 11, 2017) (quoting L.R. 37-2 and denying motion to compel for failure to meet L.R. 37-2's burden).  hiQ's motion falls short in every respect.  hiQ is not seeking to compel LinkedIn to respond to specific requests for production, nor has it identified specific objections LinkedIn raised that hiQ contends are improper.  As a result, hiQ has failed to meet its burden to explain "why [LinkedIn's] objections are not justified." *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *1 (N.D. Cal. Oct. 4, 2016).  Indeed, hiQ has not even presented the Court with the specific search terms it seeks to have LinkedIn apply, much less made the showing that its proposed terms are tailored so the results are reasonably within the scope of appropriate discovery in light of the ESI production LinkedIn has already made.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 833681, at *2–3 (N.D. Cal. Feb. 24,

2015) (search terms must be tailored so results are reasonably within Rule 26's scope of discovery). A search term, divorced from a document request and the matters at issue in the case, is not a barometer of responsiveness or proportionality. *Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) (a document is not discoverable "simply because it contains a search term whether or not it is responsive to the discovery request, or … whether or not it is relevant and proportional"). Indeed, hiQ's motion makes no effort to justify the expanded discovery it seeks under Rule 26's proportionality standard in any way, let alone on the custodian-by-custodian basis required for motions like these. *BlackBerry Ltd. v. Facebook, Inc.*, 2019 WL 4544425, at *7 (C.D. Cal. Aug. 19, 2019) ("[P]roportionality must be assessed by considering the specific context of the custodian and/or repository against which the search terms will be applied.").

*hiQ's Requested Discovery Is Burdensome And Disproportionate To The Needs Of The Case.* hiQ suggests that its recent ESI proposal is a "narrowed" version of what was in the parties' agreed ESI protocol from last fall. Mot. at 6–7. That is false, as hiQ seeks to add *new terms* and *new custodians* to the already sweeping agreed protocol. The agreed ESI protocol included 82 search terms run against a number of custodians who by virtue of their roles at LinkedIn were likely to have documents relevant to hiQ's UCL and tortious interference claims. A second set of custodians were identified by hiQ as relevant only due to attendance at one or more hiQ conferences, and the parties agreed to run a smaller set of terms likely to locate documents specifically related to hiQ. Applying this protocol, LinkedIn conducted an extensive search, reviewed over 220,000 documents from 22 custodians (including two custodians hiQ requested just before the close of fact discovery) and produced responsive custodial documents. That review revealed that the search terms LinkedIn used under the parties' agreed ESI protocol were vastly

overbroad, as only a small proportion of "hits" on LinkedIn documents were responsive to hiQ's requests or relevant to the case. *See Lithium*, 2015 WL 833681 at *3 ("[A] problem with keywords is that they often are overinclusive, that is, they find responsive documents but also large numbers of irrelevant documents" and search terms should be narrowed for "elimination of false positives." (quotation marks omitted)). The effort cost hundreds of thousands of dollars. hiQ's motion suggests that this protocol was inadequate, but never explains why.[1] hiQ's requests for more search terms and custodians generated **696,558** hits, a number that is likely to *double* LinkedIn's already substantial document review and production burden and cost hundreds of thousands of dollars more.[2] There is no claim that documents were omitted from the agreed protocol or any indication that *relevant* documents were somehow "missed," meaning this substantial effort is unlikely to lead to any significant production of *relevant* discovery. hiQ's motion offers no explanation for why any of this work is necessary or proportional.

Instead of addressing proportionality, hiQ focuses on dubious relevance arguments. On the UCL claim, hiQ posits that "LinkedIn stifled competition by systematically targeting third party competitors to LinkedIn's Talent Solutions business." Mot. at 7. This theory was *never pled in the first place* and if it were, it was *dismissed*. ECF 252 at 4–5 (citing *In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 408 (N.D. Cal. 2020)). The authority hiQ cites does not cure the dearth of relevant allegations in the pleading. *Sun Microsystems*, 87 F. Supp. 2d at 999, recognizes that theories of liability under the antitrust laws are concurrently congnizable under the UCL as an

---

[1] hiQ's claim that LinkedIn "unilaterally narrowed" search terms is belied by the fact that hiQ agreed to LinkedIn's proposal without raising an objection for months and is only seeking relief *after* the discovery cutoff. That the terms LinkedIn applied were appropriate is underscored by hiQ's failure to cite *any evidence* or make *any argument* that the hiQ-specific search terms were inadequate *in any way*. *See* Mot. at 6–7.

[2] Due to the short amount of time requested for a response on hitcounts, LinkedIn ran search terms natively for a subset of custodians, meaning that the results were both an undercount as email attachments were not reflected and an overcount because documents were not deduplicated against the files of existing custodians. In past experience, hitcounts of this type result in a document population that is 30–40% of the hitcount total.

abstract statement of law—but even so, *Sun* does not permit discovery into antitrust theories that were either (1) dismissed from the case or (2) never pled in the first place. *See* ECF 252 at 5–6. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117–18 (C.D. Cal. 2001), held that an "unfair" competitor claim must be based on theories *in the pleadings* showing conduct that "threaten[s] or harm[s] competition" (quotation marks omitted). Neither case exempts hiQ from tying discovery to allegations in the operative pleadings. Furthermore, neither case absolves hiQ from its failure to sufficiently plead a relevant product market, a prerequisite to establishing a UCL claim. *See, e.g.*, *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 2354751, at *15-16 (N.D. Cal. June 9, 2021) (dismissing UCL unfair competition claim, in part, for failure to adequately identify a relevant product market).

*hiQ Is Not Entitled To ESI From LinkedIn's Executive Chairman and Former CEO.* In order to obtain document discovery of Mr. Weiner, hiQ must show that he has "unique or personal knowledge of the subject matter that warrants [his electronic] information." *BlackBerry*, 2019 WL 4544425 at *6; *Harris v. Union Pacific Railroad Co.*, 2018 WL 2729131, at *1 (D. Neb. June 6, 2018) (denying motion to compel production of CEO's ESI absent showing of necessity). hiQ did not make that showing here. The supposed "needs" it identifies are either (1) irrelevant and not pled, in the case of antitrust theories, or (2) purely speculative, in the case of hiQ's claim that Mr. Weiner had something to do with LinkedIn sending a C&D to hiQ. *He did not* and hiQ has no evidence to the contrary. hiQ cites to and quotes no document showing that Mr. Weiner had anything to do with actions LinkedIn took toward hiQ such that ESI discovery of his files is justified. Moreover, the LinkedIn documents hiQ cites in its motion show that if Mr. Weiner was involved in relevant conduct, he was in communication with custodians whose documents have already been produced in discovery, making Mr. Weiner's ESI unnecesary.