Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Renita Sharma (*pro hac vice*)
renitasharma@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6331

*Attorneys for Plaintiff and Counterclaim Defendant hiQ Labs, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>　　　*Plaintiff and Counterclaim Defendant*,<br><br>　　vs.<br><br>LinkedIn Corp.,<br><br>　　　*Defendant and Counterclaim Plaintiff.* | Case No. 3:17-cv-03301-EMC<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge:　　Hon. Edward M. Chen<br>Ctrm:　　5-17th Floor |

# NOTICE OF MOTION AND MOTION FOR RELIEF

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff hiQ Labs, Inc. ("hiQ"), pursuant to Federal Rule of Evidence 72(a) and this Court's Civil Local Rule 72-2, respectfully submits objections to the Order on Discovery Dispute ("Order", ECF 256), entered on April 26, 2022 by United States Magistrate Judge Sallie Kim, denying hiQ's motion to compel documents ("hiQ's Motion", ECF 250) and granting Defendant LinkedIn Corporation's ("LinkedIn") motion for a protective order ("LinkedIn's Motion", ECF 252).  hiQ respectfully requests that the Court reverse the Order, thereby (i) granting hiQ's Motion; and (ii) denying LinkedIn's Motion.  hiQ makes this request because the Order is based on erroneous findings and rulings that are contrary to law.

Pursuant to Local Rule 72-2, hiQ is not noticing this Motion for a hearing, but is available for oral argument at the Court's convenience.

**INTRODUCTION**

hiQ seeks relief from the Magistrate Judge's Order (ECF 256) that permits LinkedIn's ongoing obstruction of discoverable information that is highly relevant to hiQ's claims and defenses, including its claims for tortious interference and unfair competition and its unclean hands defense. hiQ respectfully requests that the Court reverse the Order, grant hiQ's Motion, and deny LinkedIn's Motion, because the Order is contrary to settled law and is based on clearly erroneous findings.

hiQ's First Amended Complaint ("FAC") alleges that LinkedIn deliberately destroyed hiQ's business by "prevent[ing] hiQ and *other people analytics providers*" from access to public data, and by pretextually threatening legal action against perceived competitors. ECF 131 at 4–6 (emphasis added). hiQ based its anticompetition claims, including its claim for unfair competition under California Business & Professional Code § 17200, *et seq*. ("UCL"), in part on the fact that LinkedIn "[f]or years… knew about and sanctioned hiQ's services" but took an "about-face" one month before its CEO, Jeff Weiner, announced LinkedIn's launch of a product that would compete directly with hiQ. *Id.* at 3–4, 19. LinkedIn's productions to date tell an incomplete story, and hiQ believes that the documents LinkedIn refuses to produce include critical evidence of LinkedIn's anticompetitive strategies and misconduct toward third party competitors including hiQ.

On April 26, Magistrate Judge Kim granted LinkedIn's Motion and denied hiQ's Motion as moot. ECF 256 (the "Order"). Crucially, the Order erroneously applied a heightened "direct relevance" standard for hiQ's requests and wrongly interpreted hiQ's pleaded UCL claims as an attempt to relitigate identical "dismissed antitrust claims." *Id.* at 3. The Court also erred by failing to address facts pled by hiQ—specifically, that LinkedIn's anticompetitive conduct targeted "hiQ and other people analytics providers" (FAC at 4-6)—and by disregarding hiQ's arguments countering LinkedIn's claims of burden. This Court should therefore vacate the Order and grant hiQ's attached proposed order.

**ARGUMENT**

A party may serve and file objections to a non-dispositive order issued by a magistrate judge, and the district judge must modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed. R. Civ. P 72(a). "[T]he magistrate's legal conclusions are reviewed de novo

to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

In denying essential discovery regarding hiQ's core allegations, the Order is contrary to law. *See Grimes v. City & Cty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991); *United States v. Cathcart*, 2009 U.S. Dist. LEXIS 57526, at *4 (N.D. Cal. June 18, 2009) ("A decision may be contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure."). The Order misinterprets the law on hiQ's UCL claims and clearly errs by applying an elevated "direct[] relevance" standard to the sought discovery and failing to consider hiQ's arguments with respect to burden and proportionality.

### A. The Order Misinterprets hiQ's UCL Claims

The Order wrongly interpreted the law under which hiQ brought its UCL claims, concluding that "hiQ argues that it can litigate all of its dismissed antitrust claims under California's unfair competition law." ECF 256 at 3. Not so. hiQ's UCL claims embrace conduct that "*threatens an incipient violation of* an antitrust law, or violates the *policy or spirit* of one of those laws because its effects are *comparable* to or the same as a violation of the law, *or otherwise significantly threatens or harms competition*." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (emphasis added); *see also* ECF 63 at 21 ("Significantly, however, "unfair" practices under the UCL are not limited to actual antitrust violations…"). The State of California recently explained that "A UCL Plaintiff Need Not Establish a Concurrent Violation of Antitrust Law."[1] That is because the California legislature deliberately drafted the UCL to be *broader* than federal antitrust law to address the innumerable "new schemes which the fertility of man's invention would contrive." *Am. Philatelic Soc'y v. Claibourne*, 3 Cal. 2d 689, 698 (1935); *accord, e.g.*, *Cel-Tech*, 20 Cal. 4th at 181. Indeed, the strategy and course of conduct that hiQ's requests target have

---

[1] *See* BRIEF OF THE STATE OF CALIFORNIA AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY, *Epic Games Inc. v. Apple, Inc.*, Case No. 21-16506, Dkt. No.118, at 12–16 (N.D. Cal. Mar. 31, 2022).

been specifically identified by the U.S. House of Representatives Committee on the Judiciary as a growing problem that violates the policy and spirit of antitrust law.[2]

Both this Court and the Ninth Circuit have found that hiQ "has raised serious questions about whether LinkedIn's actions to ban hiQ's bots were taken in furtherance of LinkedIn's own plans to introduce a competing professional data analytics tool." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022); *accord* ECF 63 at 21.  Nonetheless, the Magistrate Judge failed to correctly interpret hiQ's UCL claims, and the Order is therefore "erroneous because it did not expressly take into account all aspects of relevance asserted." *Staley v. Gilead Scis., Inc.*, 2021 WL 4318404, at *4 (N.D. Cal. July 19, 2021) (Chen, J.).  hiQ's requests are squarely targeted to "what some courts have referred to as a course of conduct or monopoly broth theory of antitrust liability." *New York v. Facebook, Inc.*, 2021 WL 2643724, at *46 (D.D.C. June 28, 2021) (internal quotations omitted). The Ninth Circuit has endorsed this approach.  *See City of Anaheim v. Southern California Edison Co.*, 955 F.2d 1373, 1376, 1378 (1992) (holding that "it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect."). hiQ has pled (FAC at 4-6), and preliminary discovery has revealed, that LinkedIn's actions towards hiQ were part of a broader course of misconduct against smaller competitors intended to suppress competition.  The Court erred in failing to consider these dimensions of hiQ's UCL claim and ignoring their presence in the FAC.

**B.      The Order Errs in Applying A Heightened Relevance Standard to the Requested Discovery**

Discovery may be sought into "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Relevance is a very low bar—'any tendency' to make a consequential fact more or less likely", *Van v. Language Line Services, Inc.*, No. 14-cv-03791-LHK (HRL), at *6 (N.D. Cal. Mar. 2, 2016), and "[l]ess direct evidence can also be persuasive."

---

[2]  *See generally* SUBCOMMITTEE ON ANTITRUST, COMMERCIAL AND ADMINISTRATIVE LAW OF THE HOUSE COMMITTEE ON THE JUDICIARY, 116TH CONG., INVESTIGATION OF COMPETITION IN DIGITAL MARKETS (2020) (finding widespread evidence of "killer acquisitions" by incumbent tech platforms tending to harm competition and violate various policies and principles underpinning antitrust law), *available at* https://judiciary.house.gov/uploadedfiles/competition _in_digital_markets.pdf?utm_campaign=4493-519.

*Transamerica Computer Co. v. International Business Machines Corp.,* 481 F. Supp. 965, 977 (N.D. Cal. 1979) (finding "[m]arket history, in terms of entry and growth of new firms . . . and whether concentration is increasing or decreasing" relevant to allegations of anticompetitive conduct.). The Order erroneously held hiQ's requests to a higher standard, precluding discovery on the basis that "denying access to other scrapers and . . . acquiring competitors is not *directly* relevant to LinkedIn's motive or intent with regard to hiQ." ECF 256 at 3 (emphasis added). The application of a "direct relevance" standard has no basis in the Federal Rules and is clearly erroneous. And even if "direct relevance" were the standard (it is not), LinkedIn's strategy for suppressing competition with its newly-launched Talent Insights product—in the crosshairs of which hiQ was caught—*is* directly relevant to hiQ's UCL claims (*see* Section A).

In response to hiQ's First Set of Requests for Production, LinkedIn produced documents revealing LinkedIn's anticompetitive strategy, *e.g.*, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

"In complex antitrust litigation, motive and intent play leading roles, and the proof is largely in the alleged conspirators' hands." *Sharp Elecs. Corp. v. Hitachi, Ltd.*, 2014 WL 1091095, at *6 (N.D. Cal. Mar. 13, 2014). LinkedIn's refusal to produce these documents exploited the information asymmetry available to a large, complex organization litigating against a small startup. Yet after hiQ identified these gaps—which LinkedIn should have identified in the first place—hiQ understandably sought further discovery from LinkedIn into these issues, which LinkedIn refused.

### C. The Order Ignores hiQ's Arguments On Burden And Proportionality

Finally, the Order inexplicably finds that "hiQ does not dispute [LinkedIn's] characterization of the burden." In reality, hiQ argued that "LinkedIn has not established that collection of Mr. Weiner's documents is disproportionate or overly burdensome—indeed, LinkedIn has refused to even provide hit counts of his documents" (ECF 250 at 6); that "LinkedIn has not established any burden from the Modified terms (*e.g.*, with hit counts)" (ECF 250 at 7); that LinkedIn "has not shown any specific 'harm or prejudice' resulting from hiQ's requests for relevant discovery" (ECF 252 at 9); and noting that the disputed terms "were *twice* narrowed by hiQ in an effort to balance LinkedIn's purported burden with the needs of the case" (ECF 252 at 10). hiQ also detailed its good-faith efforts to reach compromise with LinkedIn (ECF 252 at 9-10), yet, without the benefit of any actual showing of burden by LinkedIn (*e.g.*, hit counts), the Court credited LinkedIn's unsupported assertion that responding would "require hundreds of thousands of dollars and hundreds of hours..." ECF 256 at 4. Even if true, this is a large-scale litigation where both sides have propounded three sets of discovery requests totaling one hundred and forty-two requests[3], requiring extensive document reviews and productions. Review time and expense does not alone excuse a party's obligation to produce responsive material. *Campo v. American Corrective Counseling Services*, Case No.: C 01-21151 JW (PVT), at *4 (N.D. Cal. Aug. 1, 2008) ("[A] mere statement that production would be burdensome is not enough to avoid discovery obligations.").

In light the foregoing, hiQ respectfully requests that this Court vacate the Order (ECF 256), deny LinkedIn's Motion (ECF 252), and grant hiQ's Motion (ECF 250).

---

[3] LinkedIn has served 89 Requests for Production, compared to hiQ's 53.

Dated: May 9, 2022

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/ Corey Worcester*
   Corey Worcester

*Attorneys for Plaintiff hiQ Labs, Inc.*