ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>          Plaintiff,<br><br>     vs.<br><br>LinkedIn Corporation,<br><br>          Defendant.<br><br>─────────────────────<br><br>LinkedIn Corporation<br><br>          Counterclaimant,<br>     vs.<br><br>hiQ Labs, Inc.<br><br>          Counterdefendants, | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S STATUS REPORT REGARDING LINKEDIN'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION**<br><br>Complaint Filed:   June 7, 2017<br>Trial Date:           February 27, 2023 |

Pursuant to ECF No. 263, Defendant and Counterclaimant LinkedIn Corporation ("LinkedIn") provides the following status report regarding LinkedIn's Motion to Dissolve Preliminary Injunction ("Motion"), ECF No. 217. Specifically, LinkedIn renews its request to vacate the preliminary injunction, and makes an offer of proof as set forth herein. LinkedIn requests that that parties supplement their papers by June 1, and that the Court conduct a hearing on the motion on June 16.

## I. THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED.

LinkedIn sought to dissolve the preliminary injunction due to a material change in circumstances that eliminated any likelihood of ongoing irreparable harm to hiQ—namely, hiQ went out of business despite having privileged access to LinkedIn member profiles through the allowlist ("whitelist") mechanism. *See* ECF Nos. 216, 217 and 222.[1] Discovery taken since the filing of the motion has strengthened the grounds for the motion to vacate. At present, the parties are in the middle of completing their deposition discovery, and all party depositions will be completed by May 31. In the meantime, LinkedIn proffers that the evidence obtained during discovery will show as follows: hiQ destroyed or let lapse nearly all of the tools it would need to actually conduct business (Part A, *infra*); (2) hiQ misused the access this Court ordered LinkedIn to provide by ▮▮▮▮▮▮▮▮▮ that had nothing to do with its Keeper or Skill Mapper products. Part B, *infra*.

### A. hiQ Completely Dismantled its Business.

At the time LinkedIn brought the motion to dissolve, the parties had just begun discovery. ECF No. 222 at 2-8. The evidence provided since then belies any threat of ongoing irreparable harm to hiQ. That evidence will show:

After it filed this lawsuit, hiQ decommissioned or destroyed numerous computers and sources of data used to run its business. hiQ decommissioned and destroyed the MongoDB database used to support the operations of its two Products, Keeper and Skill Mapper, archiving

---

[1] Nothing in the Ninth Circuit's opinion addresses the propriety of the injunction in light of hiQ's changed circumstances. In a footnote, the Ninth Circuit noted the motion to vacate but took no view on it. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1185 n.2 (9th Cir. 2022).

only a portion of that database and none of the parsed data necessary to run its products.  hiQ allowed AWS to decommission the ███████████████████████████████████████████████████████████████████████, and also the S3 buckets used to store its data.  hiQ sent its scraping logs ████████████████████████████████████████████.  hiQ currently has none of the machines up and running that previously supported its products.  As for its other scraping operations, hiQ was running those ████████████████ and its former CTO could not ████████████████████████████.

hiQ no longer has the other operational infrastructure in place to support its business.  hiQ's Salesforce Customer Relationship Management system has been destroyed, as its Salesforce subscription was discontinued and hiQ did not archive any of the contents.  ECF No. 216 at 9-12.  hiQ archived its source code development system JIRA and that archive ████████████████.  hiQ took down its Confluence-based company Wiki that contained product documentation.  hiQ no longer has operational financial software.

hiQ's decommissioning and destruction of these ESI sources is highly problematic from the perspective of hiQ's obligations to preserve evidence as the plaintiff in this litigation (a subject that LinkedIn will address at the appropriate time in motion practice),[2] but it demonstrates beyond any doubt that hiQ is no longer an operational company.  In early 2020, hiQ ████████████████████████████████████████████████████████████████.  It is simply false to assert that hiQ is only one commercial opportunity away from continuing its business.  The evidence obtained in discovery will show that hiQ currently has no way to run the business that it described to the Court

---

[2] hiQ claims that it ran out of money and could not pay for the maintenance of its data.  There are so many problems with this assertion it is hard to know where to begin.  First, hiQ received litigation funding specifically for the purpose of pursuing this lawsuit and could have dedicated a portion of that funding to retain evidence as it was obligated to do.  hiQ has had multiple law firms representing it in this lawsuit, and multiple billionaire investors who are funding the company in order to pursue this lawsuit.  Second, hiQ could have disclosed to the Court and LinkedIn that it was in jeopardy of evidentiary destruction so that LinkedIn could serve subpoenas on third-party providers to preserve the evidence.  Third, hiQ could have made thorough archives itself, or approached the Court and LinkedIn to develop a process for mutually assuring the preservation of evidence through an agreed-upon archival process.  There are myriad variations on these options that hiQ could have pursued.  Instead, it simply stopped paying and concealed from the Court and LinkedIn the fact that its evidence was being systematically destroyed.

at the time the preliminary injunction was granted.

B. **hiQ Misused the Injunction to** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Rather, the evidence shows that the only way hiQ was "one opportunity" away from pursuing its business last September was if that opportunity was a kind this Court never contemplated that hiQ would use this Court's order to pursue: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. hiQ obtained an injunction on the theory that LinkedIn had engaged in unfair competition with respect to its Keeper and Skill Mapper products. Unbeknownst to LinkedIn, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

After hiQ's business failed despite having all of the access it needed to run its Keeper and Skill Mapper products, hiQ began using its privileged access to LinkedIn profile servers for an entirely different purpose. Namely, hiQ began ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. After scraping ▮▮▮▮▮▮▮▮▮▮, hiQ allowed AWS to delete the S3 buckets that contained all of the evidence of what it had done and it did not otherwise preserve that evidence.

It also appears that that hiQ has not maintained operational security with respect to the allowlisted IP addresses. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. After requesting and receiving privileged access for several *additional* IP addresses, hiQ appears to have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. At least some employees appear to have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These employees are no longer working for hiQ. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As previously described in the Declaration of Paul Rockwell, having those IP addresses fall into the wrong hands could seriously harm LinkedIn. ECF 216.13 at 7-8.

hiQ's misuse of the access this Court granted through its injunction further confirms that the balance of the hardships and public interest do not favor granting privileged access to a defunct

company that has no motivation to act in the best interests of LinkedIn or its members.[3]  For these reasons, and all the reasons in LinkedIn's original papers, this Court should dissolve the injunction.

## II. LINKEDIN REQUESTS FURTHER BRIEFING AND A HEARING ON ITS MOTION

LinkedIn requests that the parties be permitted to supplement their earlier filings on the motion by June 1, and that a hearing on its Motion be set for June 16.

Dated: May 17, 2022                           Orrick, Herrington & Sutcliffe LLP


                                              By:      /s/  *Annette L. Hurst*
                                                    ANNETTE L. HURST
                                                    Attorneys for Defendant
                                                    LinkedIn Corporation

---

[3] As detailed in LinkedIn's original moving papers, because there is no longer any risk of irreparable harm, the Court does not need to consider the hardship and public interest factors in dissolving the injunction. *See* ECF No. 222 at 6 (citing cases). Nonetheless, hiQ's misuse of the injunction further tips those factors in favor of dissolution were the Court to reach them.