Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Renita Sharma (*pro hac vice*)
renitasharma@quinnemanuel.com
Elisabeth B. Miller (*pro hac vice*)
elisabethmiller@quinnemanuel.com
Hope Skibitsky (*pro hac vice*)
hopeskibitsky@quinnemanuel.com
Daily Guerrero (*pro hac vice*)
Dailyguerrero@quinnemanuel.com
Zane Muller (*pro hac vice*)
zanemuller@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
QUINN EMANUEL URQUHART AND SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6331

*Attorneys for Plaintiff and Counterclaim Defendant hiQ Labs, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| hiQ Labs, Inc., <br><br> *Plaintiff and Counterclaim Defendant*, <br><br> vs. <br><br> LinkedIn Corp., <br><br> *Defendant and Counterclaim Plaintiff.* | Case No. 3:17-cv-03301-EMC <br><br> **PLAINTIFF AND COUNTERCLAIM DEFENDANT HIQ LABS, INC.'S RENEWED MOTION TO DISMISS DEFENDANT AND COUNTERCLAIM PLAINTIFF LINKEDIN CORP.'S FIRST AND SECOND COUNTERCLAIMS** <br><br> Judge: The Hon. Edward M. Chen <br> Hearing Date: June 28, 2022 <br> Time:       1:30 P.M. <br> Location:    Courtroom 5, 17th Floor <br>             450 Golden Gate Ave. <br>             San Francisco, CA 94102 |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND & PROCEDURAL HISTORY ..........................................................................2

LEGAL STANDARD .....................................................................................................................6

ARGUMENT ..................................................................................................................................7

I.    LINKEDIN HAS NOT PLED A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT OR CALIFORNIA PENAL CODE § 502 ...................................................7

      A.    hiQ Did Not Act Without Authorization And Did Not Access Non-Public Information ..............................................................................................................7

      B.    hiQ Did Not Exceed Any Authorization Simply Because It Accessed Public Information After Receiving LinkedIn's May 23, 2017 Cease-and-Desist Letter ......................................................................................................................11

      C.    hiQ Has Not Violated California Penal Code § 502 ................................................12

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................. 6

*Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois*,
    983 F.3d 435 (2020) .................................................................................................................. 2

*Bittman v. Fox*,
    107 F. Supp. 3d 896 (N.D. Ill. 2015) ...................................................................................... 11

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................... 2, 3, 4, 7, 9

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313 (2017) ..................................... 9, 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ("*hiQ II*") ................................................. 1, 6, 7, 8, 9, 10, 11, 12, 14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    938 F.3d 985 (9th Cir. 2019) ("*hiQ I*") ............................................................ 1, 4, 5, 6, 7, 8, 9, 10

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004) ................................................................................................................ 10, 11

*LinkedIn Corp. v. hiQ Labs, Inc.*,
    141 S. Ct. 2752, 210 L. Ed. 2d 902 (2021) ............................................................................... 6

*Miller v. 4Internet, LLC*,
    471 F. Supp. 3d 1085 (N.D. Cal. 2020) ............................................................................ 7, 9, 11

*Musacchio v. United States*,
    136 S. Ct. 709 (2016) ................................................................................................................ 7

*United States v. Nosal (Nosal I)*,
    676 F.3d 854 (9th Cir. 2012) ................................................................................................ 9, 10

*Sandvig v. Barr*,
    451 F. Supp. 3d 73 (D.D.C. 2020) ..................................................................................... 10, 11

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..................................................................................................... 6

*Van Buren v. United States*,
    141 S. Ct. 1648, 210 L. Ed. 2d 26 (2021) ....................................................................... 1, 5, 6, 9

**Statutory Authorities**

18 U.S.C. § 1030 .............................................................................................................................. 1
18 U.S.C. § 1030(a)(2)(C) ...................................................................................................... 7, 8, 11
18 U.S.C. § 1030(e)(6) ................................................................................................................... 11
Cal. Penal Code § 502 ......................................................................................................... 7, 12, 14

Cal. Penal Code § 502(c) .................................................................................................. 1
Cal. Penal Code § 502(c)(1) ................................................................................. 12, 13, 14
Cal. Penal Code § 502(c)(2) ................................................................................. 12, 13, 14
Cal. Penal Code 502(c)(7) ............................................................................................... 12
CFAA §1030(a)(2) ....................................................................................................... 4, 9

**PRELIMINARY STATEMENT**

In its April 19, 2021 ruling on hiQ's motion to dismiss LinkedIn's counterclaims, this Court deferred ruling on LinkedIn's counterclaim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA") and the Comprehensive Computer Data and Access Fraud Act, Cal. Penal Code § 502(c) (the "CDAFA"), with permission for hiQ to "renew[] its motion to dismiss the CFAA and § 502 counterclaims once the Supreme Court issues its decision in *Van Buren* and/or this case." (ECF 199 at 17.) On April 18, 2022, the Ninth Circuit affirmed its earlier decision upholding this Court's grant of a preliminary injunction on the basis that *Van Buren* "reinforces our conclusion that the concept of 'without authorization' does not apply to public websites." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022) ("*hiQ II*"). As such, hiQ hereby renews its motion to dismiss LinkedIn's CFAA and section 502 counterclaims and respectfully requests that the Court grant that motion.

LinkedIn's counterclaims are a transparent attempt by LinkedIn to pose as a defender of user privacy by characterizing hiQ as a malicious actor. But as the Ninth Circuit has now twice stated, "LinkedIn's own actions undercut its argument[s]" regarding user privacy. *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 994–95 (9th Cir. 2019) ("*hiQ I*"); *accord hiQ II*, 31 F.4th at 1190. Far from crusading for justice, LinkedIn is campaigning for its own bottom line and improperly attempting to use its counterclaims to shut down fair competition. LinkedIn's counterclaims fail to state a claim against hiQ and must be dismissed.

*First*, LinkedIn fails to state a claim under the CFAA because, as the Ninth Circuit has held, "accessing . . . publicly available data" does not "constitute access without authorization under the CFAA." *hiQ I*, 938 F.3d at 1003; *accord hiQ II*, 31 F.4th at 1201 ("It is likely that when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA."). Because LinkedIn cannot allege that the data accessed by hiQ was not accessible to the general public, LinkedIn's claim must be dismissed.

*Second*, LinkedIn fails to state a claim under the CDAFA because such claims "rise or fall" with claims under the CFAA. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020). Therefore LinkedIn's CDAFA claim must also be dismissed.

For each of the foregoing reasons, hiQ respectfully renews, and requests that the Court grant, its motion to dismiss LinkedIn's first and second counterclaims with prejudice.

## BACKGROUND & PROCEDURAL HISTORY

hiQ was formed in July 2012 to serve previously-unmet needs among employers (particularly large employers, such as Fortune 500 companies) to assist in employee development and retention by analyzing the full scope of current and potential employees' skills and identifying those employees that were at the highest risk of leaving the respective employer. (ECF No. 131 at 2–3, 11–12.) hiQ did so by researching and utilizing wholly public information that individuals chose to share via their professional social networking profiles on LinkedIn, a site focused on business and professional networking that currently has over 810 million users. (*Id.* at 3.) LinkedIn permits users to upload a wide variety of professional content to its service and to choose their preferred level of privacy protection for that information. LinkedIn users may choose to keep their profiles (or portions of their profiles) entirely private, or to make them viewable by: (1) their direct connections on the site; (2) a broader network of indirect connections; (3) all of LinkedIn's users; or (4) the entire public. (ECF No. 131 at 8.) In all cases, and according to LinkedIn's User Agreement, LinkedIn *users* own the content and information that they post to LinkedIn, not LinkedIn itself. *See* User Agreement[1], § 3.1.

---

[1] LinkedIn's User Agreement is an exhibit to, and incorporated in, hiQ's First Amended Complaint. (ECF No. 131, ¶ 20; ECF No. 131-1 (User Agreement).) The User Agreement is also referenced numerous times in LinkedIn's counterclaims (*see, e.g.*, ACC at 29 (¶ 7), 31 (¶ 13), 35–36 (¶¶ 36, 37, 38, 41, 43), 37 (¶¶ 51, 52, 53) and is cited therein via internet hyperlink (*id*. at 35 (¶ 36 n.10) (citing User Agreement available at https://www.linkedin.com/legal/user-agreement)). As such, the User Agreement may be considered by this Court on a motion to dismiss. *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois*, 983 F.3d 435, 439 (2020) (on a motion to dismiss, courts may "consider materials that are submitted with and attached to the complaint; judicial notice of matters of public record; and unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.") (internal quotations and citation omitted).

The automated technology powering hiQ's offerings does not access the private sections of LinkedIn, such as profile information that is only visible to signed-in users, or users' non-public data that is visible only to other users with whom they are "connected." (ECF No. 131 at 3.) Rather, hiQ uses software to access and analyze wholly public information visible to anyone on the internet without logging into the service.

For years, LinkedIn knew about and sanctioned hiQ's services and activities, including by attending hiQ's own conferences. (*Id.* at 15.) As hiQ grew, however, LinkedIn apparently decided that it wanted to profit from providing the same type of innovative and revolutionary analytics hiQ pioneered, and it developed its own competing version of that analytics service. In conjunction with that development, in May 2017, LinkedIn abruptly denied hiQ's access to the portion of the LinkedIn website containing wholly public user profiles. (*Id.* at 4.) And on May 23, 2017, LinkedIn sent hiQ a cease-and-desist letter ordering hiQ to stop accessing LinkedIn and asserting that hiQ's continued access to the website violated the CFAA, the Digital Millennium Copyright Act ("DMCA"), and the CDAFA. (*See* ECF No. 23-1 Ex. J.)

Deprived of access to the data that provides the foundation of its analytics, hiQ filed a complaint against LinkedIn on June 7, 2017, seeking a declaration that hiQ had not violated and would not violate federal or state law, including the CFAA, DMCA, and CDAFA, by accessing and copying wholly public information from LinkedIn's website. (ECF No. 1 at 1.) hiQ also moved for injunctive relief to prohibit LinkedIn from preventing hiQ's access, copying, or use of public profiles on LinkedIn's website. (ECF No. 3; *see also* ECF No. 23 (hiQ's Renewed Motion for Temporary Restraining Order).)

On August 14, 2017, this Court granted hiQ's request for a preliminary injunction. (ECF No. 63.) This Court determined that the "key question" presented by hiQ's motion was "whether visiting and collecting information from a publicly available website may be deemed 'access' to a computer 'without authorization' within the meaning of the CFAA where the owner of the web site has selectively revoked permission." (*Id.* at 10.) The Court held that it was not.

Following an extensive analysis, the Court concluded that the CFAA, which was enacted as an anti-hacking statute, "was not intended to police traffic to publicly available websites on the

1  Internet." (*Id.* at 10.) As such, the Court had "serious doubt[s] whether LinkedIn's revocation of
2  permission to access the public portions of its site render[ed] hiQ's access 'without authorization'
3  within the meaning of the CFAA." (*Id.* at 15.) The Court was similarly skeptical of LinkedIn's
4  claim that the CFAA should at least be read to limit hiQ's automatic scraping of data, finding that
5  "'authorization,' as used in CFAA § 1030(a)(2), is most naturally read in reference to the *identity*
6  of the person accessing the computer or website, not *how* access occurs." (*Id.* (emphases in
7  original).) As such, a "user does not 'access' a computer 'without authorization' by using bots, even
8  in the face of technical countermeasures, when the data it accesses is otherwise open to the public."
9  (*Id.* at 16.) Therefore, the Court concluded that hiQ had raised serious questions as to the merits of
10 its claims for declaratory relief under the CFAA.

11    The Court also concluded that hiQ had raised serious questions going to the merits of its
12 affirmative claim under the California Unfair Competition Law, that public interest favored a
13 preliminary injunction, that hiQ had established irreparable harm absent an injunction, and that the
14 balance of hardships tipped "sharply in hiQ's favor." (*Id.* at 8, 21, 25.) This Court ordered LinkedIn
15 to withdraw its cease-and-desist letters, and enjoined LinkedIn from preventing or blocking hiQ's
16 access, copying, or use of public profiles on LinkedIn's website. (*Id.* at 25.)

17    LinkedIn appealed this Court's preliminary injunction (ECF No. 72), and on September 9,
18 2019, the Ninth Circuit affirmed hiQ's right to access public information individuals chose to share
19 on LinkedIn. *hiQ I*, 938 F.3d 985.

20    In pertinent part for this Motion, the Ninth Circuit affirmed this Court's conclusion that hiQ
21 had raised serious questions going to the merits of LinkedIn's defense based on the CFAA. The
22 Ninth Circuit found—as did this Court—that the "pivotal CFAA question here is whether once hiQ
23 received LinkedIn's cease-and-desist letter, any further scraping and use of LinkedIn's data was
24 'without authorization' within the meaning of the CFAA and thus a violation of the statute." *Id*. at
25 999. The Court found that the "wording of the statute" suggested that it applied where the "baseline
26 [was that] access is not generally available and so permission is ordinarily required." *Id*. at 1000.
27 As such, the Court found that "the prohibition on unauthorized access is properly understood to
28 apply only to private information—information delineated as private through use of a permission

requirement of some sort." *Id*. at 1001.  By contrast, "[i]t is likely that when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA." *Id*. at 1003.  As "[t]he data hiQ seeks to access is not owned by LinkedIn and has not been demarcated by LinkedIn as private using such an authorization system," hiQ had "therefore raised serious questions about whether LinkedIn may invoke the CFAA."  *Id*. at 1003–04.  The Ninth Circuit also found that the balance of hardships posed by an injunction "tip[ped] decidedly" in hiQ's favor and affirmed the issuance of the injunction.  *Id*. at 995.

After the Ninth Circuit remanded the case to this Court, hiQ filed an amended complaint, which reasserted hiQ's claims for declaratory judgment and asserted antitrust claims under the Sherman and Clayton Acts.  (ECF No. 131.)  LinkedIn moved to dismiss hiQ's antitrust claims and all claims for damages, asserting that its conduct was protected by the *Noerr-Pennington* doctrine and California litigation privilege.  (ECF No. 137.)

The Court denied LinkedIn's motion to dismiss on the basis of the *Noerr-Pennington* doctrine or California litigation privilege, but granted LinkedIn's motion to dismiss the antitrust claims on the basis that hiQ had failed to adequately allege a product market or anticompetitive conduct by LinkedIn.  (ECF No. 158 at 21.)  LinkedIn filed its answer and counterclaims on November 11, 2020, asserting five counterclaims against hiQ: under the CFAA and the CDAFA, and for breach of contract, misappropriation, and trespass to chattels.  (ECF No. 170.)

On January 18, 2021, hiQ moved to dismiss LinkedIn's counterclaims.  (ECF No. 182.)  On April 19, 2021, this Court denied hiQ's motion with respect to LinkedIn's claims for breach of contract, misappropriation, and trespass to chattels, and deferred ruling on LinkedIn's claims for breach of the CFAA and CDAFA.  (ECF No. 199.)

LinkedIn appealed the Ninth Circuit's decision in *hiQ I* to the Supreme Court on March 9, 2020.  On June 3, 2021, the Supreme Court issued its ruling in *Van Buren v. United States,* holding that the CFAA did not criminalize the actions of a police officer who obtained license plate information for an improper purpose from a database that he was authorized to access.  141 S. Ct. 1648, 1657, 210 L. Ed. 2d 26 (2021).  On June 14, 2021, the Supreme Court granted certiorari,

vacated *hiQ I*, and remanded LinkedIn's appeal to the Ninth Circuit for further consideration in light of *Van Buren*. *LinkedIn Corp. v. hiQ Labs, Inc.*, 141 S. Ct. 2752, 210 L. Ed. 2d 902 (2021).

On April 18, 2022, the Ninth Circuit reaffirmed its holding in *hiQ I*, finding that "*Van Buren's* 'gates-up-or-down inquiry' is consistent with our interpretation of the CFAA . . . ." *hiQ II*, 31 F.4th at 1198. Once again, the Court determined that "when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA." *Id.* at 1201.

hiQ now respectfully renews it motion to dismiss LinkedIn's counterclaims under the CFAA and CDAFA.[2]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility requires pleading facts, as opposed to conclusory allegations," *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013), and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

---

[2] In a footnote in its ACC, LinkedIn states that the "question of whether the CFAA applies to unauthorized access to webpages that are not behind a password wall is raised in the petition for a writ of certiorari that LinkedIn filed with the Supreme Court of the United States," and that LinkedIn "pleads this cause of action to preserve it." (ACC at 44 n.15.) It appears that, by this footnote, LinkedIn intends to concede that, as hiQ argues, the Ninth Circuit's holding requires that LinkedIn's CFAA claim be dismissed.

# ARGUMENT

## I. LINKEDIN HAS NOT PLED A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT OR CALIFORNIA PENAL CODE § 502

The CFAA was enacted as a prohibition on computer network hacking and creates civil and criminal liability for any person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). As the Supreme Court has explained, the statute "provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Musacchio v. United States*, 136 S. Ct. 709, 713 (2016).

LinkedIn claims that hiQ's conduct violates the CFAA because, *first*, LinkedIn's "website and servers are not unconditionally open to the general public" as "they require authorization or permission from LinkedIn to access," which hiQ did not have. (ACC at 44–45, ¶ 90.) *Second*, LinkedIn claims that, to the extent hiQ did have authorization, "any authorization" was "revoked . . . when [LinkedIn] sent the May 23, 2017 cease-and-desist letter." (*Id.* at 45, ¶ 91.)

LinkedIn has failed to state a claim against hiQ for violations of the CFAA because—as LinkedIn does not contest—the data that hiQ scraped was accessible to the general public. Therefore, neither the purported technical barriers nor LinkedIn's May 23, 2017 letter change the conclusion mandated by the Ninth Circuit's holding in this case: that "accessing publicly available data" does not "constitute access without authorization under the CFAA." *hiQ I*, 938 F.3d at 1003; *accord hiQ II*, 31 F.4th at 1201. While the Ninth Circuit's Opinion was "in the context of a motion for injunctive relief," courts within the Ninth Circuit have "f[ound] that its reasoning is persuasive in determining . . . [a] dismissal motion." *Miller v. 4Internet, LLC*, 471 F. Supp. 3d 1085, 1089 (N.D. Cal. 2020); *see also Brodsky*, 445 F. Supp. 3d at 129–30 (relying on *hiQ I* to dismiss claim under the CFAA). This Court should do the same.

### A. hiQ Did Not Act Without Authorization And Did Not Access Non-Public Information

The CFAA provides that "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected

computer . . . shall be punished." 18 U.S.C. § 1030(a)(2)(C). The Ninth Circuit's opinion in *hiQ II* interpreting the CFAA's "without authorization" language and affirming this Court's Preliminary Injunction Order requires the dismissal of LinkedIn's counterclaim under the CFAA. *hiQ II*, 31 F.4th at 1201.

The Ninth Circuit noted that "the wording of the statute, forbidding 'access[ ] . . . without authorization, 18. U.S.C. § 1030(a)(2)(C), suggests a baseline in which access is not generally available and so permission is ordinarily required." *Id.* at 1195. Thus, "[w]here the default is free access without authorization, in ordinary parlance one would characterize selective denial of access as a ban, not as a lock of 'authorization." *Id.* at 1196. The Ninth Circuit also noted that "[t]he legislative history of section 1030 . . . makes clear that the prohibition on unauthorized access is properly understood to apply only to private information—information delineated as private through use of a permission requirement of some sort." *Id.* at 1197. And, "[w]ith regard to websites made freely accessible on the Internet, the 'breaking and entering' analogue invoked so frequently during congressional consideration has no application, and the concept of 'without authorization' is inapt." *Id.* at 1198. As such, the Ninth Circuit held "that hiQ has raised a serious question as to whether the reference to access 'without authorization' limits the scope of the statutory coverage to computer information for which authorization or access permission, such as password authentication, is generally required." *Id.* at 1197.

In an apparent attempt to distinguish the Ninth Circuit's holding in *hiQ I*, LinkedIn alleges that its "website and servers are not unconditionally open to the general public" because "LinkedIn has invested significant technical and human resources to detect, limit, and block data scraping." (ACC at 28 (¶ 6), 45 (¶ 90).) LinkedIn argues that hiQ circumvented these alleged barriers by, *inter alia*, masking its IP addresses, which is prohibited by LinkedIn's User Agreement. (*Id.* at 33, ¶ 27.)

The purported distinction drawn by LinkedIn is immaterial under *hiQ I* and *hiQ II*, as well as under the Supreme Court's "gates-up-or-down inquiry" in *Van Buren*. As the Ninth Circuit explained in *hiQ II*,

> *Van Buren*'s distinction between computer users who "can or cannot access a computer system," . . . suggests a baseline in which there are "limitations on access" that prevent some users from accessing the system (i.e., a "gate" exists, and can be

either up or down).  The Court's "gates-up-or-down inquiry" thus applies to the latter two categories of computers we have identified: if authorization is required and has been given, the gates are up; if authorization is required and has *not* been given, the gates are down.  *As we have noted, however, a defining feature of public websites is that their publicly available sections lack limitations on access; instead, those sections are open to anyone with a web browser*.  In other words, applying the "gates" analogy to a computer hosting publicly available webpages, that computer has erected no gates to lift or lower in the first place.  *Van Buren therefore reinforces our conclusion that the concept of "without authorization" does not apply to public websites.*

*hiQ II*, 31 F.4th at 1198–99 (emphases added).

Moreover, as this Court stated in its Preliminary Injunction Order, "'authorization,' as used in CFAA § 1030(a)(2), is most naturally read in reference to the *identity* of the person accessing the computer or website, not *how* access occurs."  (ECF No. 63 at 15); *see also Brodsky*, 445 F. 3d at 129 (same).  As such, "[a] user does not 'access' a computer 'without authorization' by using bots, even in the face of technical countermeasures, when the data it accesses is otherwise open to the public."  (ECF No. 63 at 16.)  Accordingly, the simple fact that hiQ accessed LinkedIn's publicly-accessible websites via automatic web crawler does not bring that access within the ambit of the CFAA.

Other courts have affirmed that accessing publicly-available data, even via efforts to evade technical restrictions, or restrictions imposed by terms of use, do not amount to a CFAA violation. For example, in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313 (2017), the Ninth Circuit stated that a "violation of the terms of use of a website—without more—cannot establish liability under the CFAA."  *Id.* at 1067; *see also United States v. Nosal* (*Nosal I*), 676 F.3d 854, 862 (9th Cir. 2012) ("We remain unpersuaded by the decisions of our sister circuits that interpret the CFAA broadly to cover violations of corporate computer use restrictions or violations of a duty of loyalty.").

In *Miller v. 4Internet, LLC*, the court dismissed a CFAA counterclaim against a service which automatically "crawled the web to search for [and scrape] images." 471 F. Supp. 3d 1085, 1087, 1091 (D. Nev. 2020).  There, counterclaim-plaintiff 4Internet operated an internet search engine.  4Internet alleged that a web crawler used by counterclaim-defendants Andrew Higbee and H&A to scrape 4Internet's site violated the CFAA because it evaded technological barriers,

exceeded 4Internet's terms of use, and imposed significant demands on 4Internet's servers. *Id.* at 1087. The court dismissed the counterclaim with prejudice, finding that under *hiQ I*, the CFAA did not apply because 4Internet "d[id] not allege that the information that Higbee and H&A accessed is the kind for which 'authorization' is required." *Id.* at 1090; *see also Facebook*, 844 F.3d at 1067 ("[A] violation of the terms of use of a website—without more—cannot establish liability under the CFAA.").

Similarly, in *Sandvig v. Barr*, academic researchers brought a pre-enforcement challenge to the imposition of criminal liability under the CFAA. 451 F. Supp. 3d 73 (D.D.C. 2020). The researchers intended to access and "audit test[]" online hiring websites by "creat[ing] profiles for fictitious job seekers," which would violate the target websites' terms of services. *Id.* at 76–77. The researchers argued that application of the CFAA to that conduct would violate their constitutional rights, including under the First Amendment. The court, declining to reach that constitutional question, found that the CFAA would not apply to the researchers' proposal because "violating public websites' terms of service, as Wilson and Mislove propose to do for their research, does not constitute a CFAA violation under the 'exceeds authorized access' provision." *Id.* at 91.

The *Sandvig* court based its holding on the Ninth Circuit's reasoning in *hiQ I*. *Id.* at 85–87. While *hiQ I* addressed civil liability under the CFAA, the Ninth Circuit had noted that the CFAA's "statutory prohibition on unauthorized access applies both to civil actions and to criminal prosecutions" (*hiQ I*, 938 F.3d at 1003) and that it "'must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context'" (*id.*, quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)). As such, the *Sandvig* court found that the Ninth Circuit's reasoning was applicable to criminal liability under the CFAA. The court stated that the Ninth Circuit's analysis "contemplates a view of the internet as divided into at least two realms—<u>public</u> websites (or portions of websites) where no authorization is required and <u>private</u> websites (or portions of websites) where permission must be granted for access." *Sandvig*, 451 F. Supp. 3d at 85 (emphasis in original).[3]

---

[3] In *hiQ II*, the Ninth Circuit explained that "*Van Buren*'s 'gates-up-or-down inquiry' is consistent with our interpretation of the CFAA as contemplating three categories of computer systems." *hiQ II*, 31 F.4th at 1198.

"Adopting th[is] formulation," the court agreed that the CFAA only applied to private websites protected by "permission requirements." *Id.* at 87. The Court further found that a website's "terms of service do not constitute 'permission requirements' that, if violated, trigger criminal liability" because "[c]riminalizing terms-of-service violations risks turning each website into its own criminal jurisdiction." *Id.* at 87–88; *see also Bittman v. Fox*, 107 F. Supp. 3d 896, 900–01 (N.D. Ill. 2015) (concluding that defendants did not "exceed[ ] authorized access" by creating "a fake social media account in violation of a social media company's terms of service"). The same concern, regarding what the *Sandvig* court called an "unworkable and standardless" system, 451 F. Supp. 3d at 88, would apply if civil liability were imposed based solely on the violation of private terms of service.

The opinions in *4Internet* and *Sandvig* are consistent with the conclusion that *hiQ II* requires: namely that because hiQ scraped only publicly available data, hiQ did not violate the CFAA and LinkedIn's counterclaim must be dismissed.

### B. hiQ Did Not Exceed Any Authorization Simply Because It Accessed Public Information After Receiving LinkedIn's May 23, 2017 Cease-and-Desist Letter

LinkedIn alleges that, even if hiQ had authorization to access its websites, "any authorization" was "revoked . . . when [LinkedIn] sent the May 23, 2017 cease-and-desist letter," rendering future access a violation of the CFAA's prohibition on "exceed[ing] authorized access" to a protected computer. (ACC at 44–45, ¶ 91); *see* 18 U.S.C. § 1030(a)(2)(C).

The CFAA defines the term "exceeds authorized access" as meaning "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). LinkedIn's argument fails because the Ninth Circuit has already determined that "a defining feature of public websites is that their publicly available sections lack limitations on access; instead, those sections are open to anyone with a web browser" such that "applying the 'gates' analogy to a computer hosting publicly available webpages, that computer has erected no gates to lift or lower in the first place." *hiQ II*, 31 F.4th at 1199. Therefore, that access—even after a cease-and-desist letter—also cannot "exceed" authorization.

Moreover, the Ninth Circuit expressly considered the effect of LinkedIn's May 23, 2017 letter when it determined that "[t]he pivotal CFAA question here is whether once hiQ received LinkedIn's cease-and-desist letter, any further scraping and use of LinkedIn's data was 'without authorization.'" *Id.* at 1195. For the reasons discussed *supra*, the Court expressed serious doubts that hiQ's conduct after receipt of the letter could amount to a CFAA violation, finding the authorities cited by LinkedIn as distinguishable. *See id.* at 1199. Accordingly, LinkedIn's threat to "revoke" permission in its May 23, 2017 letter is immaterial to its claim—it has no authority to grant or withdraw "authorization" to access wholly public information. Because LinkedIn concedes that hiQ scraped only publicly available data, hiQ did not violate the CFAA and LinkedIn's counterclaim must be dismissed.

### C. hiQ Has Not Violated California Penal Code § 502

LinkedIn alleges that hiQ violated sections 502(c)(1) and (c)(2) of the CDAFA by "knowingly access[ing] LinkedIn's website and servers, and, without permission t[aking], cop[ying] and m[aking] use of data and files from LinkedIn's computers, computer systems, and/or computer networks, including to wrongfully control and/or obtain such data." (ACC at 46, ¶¶ 100–01.) LinkedIn also alleges that "hiQ knowingly and without permission accessed or caused to be accessed LinkedIn's computers, computer systems, and/or computer networks in violation of Cal. Penal Code 502(c)(7)." (ACC at 46, ¶ 101.) For the reasons discussed below, LinkedIn has failed to plead any violation of the CDAFA.

#### 1. LinkedIn has Not Pled a Violation of Section 502(c)(7)

Section 502(c)(7) prohibits any person from "[k]nowingly and without permission accesses[ing] or caus[ing] to be accessed any computer, computer system, or computer network." As this Court has stated, "Section 502(c)(7) bears similarity to the CFAA, focusing on unauthorized access." (ECF No. 199 at 7.) For the reasons cited above, LinkedIn's CFAA claim fails because the publicly-accessible data accessed by hiQ does not require "authorization." Accordingly, LinkedIn's allegations against hiQ under section 502(c)(7) also fail to state a claim and must be dismissed.

2.  LinkedIn has Not Pled a Violation of Sections 502(c)(1) or (c)(2).

In relevant part, the CDAFA provides that:

[A]ny person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

Cal. Penal Code § 502(c)(1)–(2). LinkedIn summarily pleads that "hiQ wrongfully obtained and used valuable information from LinkedIn's website." (ACC at 46, ¶ 99.) Yet, LinkedIn fails to explain how hiQ's use of publicly-available data to help employers retain talented employees was in any way "wrongful[]."

hiQ only scraped publicly available data. LinkedIn gives its members the option to decide whether their profiles will be viewable to anyone who has access to the internet. Specifically, LinkedIn tells its members that by opting for the "public profile" setting, "[a]nyone can see your public profile in search engines, as well as in apps and other services as described above." (ECF No. 131-3, Off-Linked Visibility at 1.) LinkedIn also tells its members in its User Agreement that "[w]hen you share information on our Services, others can see, copy and *use* that information." (ECF No. 131-1, User Agreement § 2.5 (emphasis added).) LinkedIn also advises its members in its User Agreement that they "can end this license for specific content by deleting such content from the Services, or generally by closing your account, *except (a) to the extent you shared it with others as* part of the Service *and they copied, re-shared it or stored* it." (*Id.* § 3.1(1) (emphases added).) Thus, LinkedIn has failed to plead a claim against hiQ for violation of section 502(c)(1) where hiQ was using publicly-available data in a manner consistent with the expectations and with respect to the privacy settings of LinkedIns' members. That LinkedIn was afraid of hiQ as a competitor does not make hiQ's use of public-facing profile information to better inform employee insights

"wrongful," and LinkedIn certainly cannot use section 502 to turn its competitors into criminal actors.

Finally, while sections 502(c)(1) and (c)(2) focus on unauthorized use of information as opposed to unauthorized access, the public policy principles discussed at length in *hiQ II* militate in favor of dismissing the entirety of LinkedIn's CDAFA claim. For example, like the CFAA, the CDAFA is a criminal and civil statute to which the rule of lenity applies. *See hiQ II*, 31 F.4th at 1200. Moreover, permitting LinkedIn's CDAFA claims to go forward despite the clear inapplicability of the CFAA to those claims would give LinkedIn another statute to weaponize "to decide, on any basis, who can collect and use data . . . that the companies themselves collect and use—[and thus] risk[] the possible creation of information monopolies that would disserve the public interest." *Id.* at 1202. Accordingly, this Court should dismiss LinkedIn's CDAFA claim.

## CONCLUSION

For the foregoing reasons, hiQ respectfully requests that this Court dismiss LinkedIn's first and second counterclaims with prejudice.

Dated: May 20, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:   */s/ Corey Worcester*
      Corey Worcester

*Attorneys for Plaintiff hiQ Labs*
