ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>       Plaintiff,<br><br>   vs.<br><br>LinkedIn Corporation,<br><br>       Defendant. | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S OPPOSITION TO HIQ LABS, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Courtroom:    5 – 17th Floor<br>Judge:      Hon. Edward M. Chen |
| LinkedIn Corporation<br><br>       Counterclaimant,<br>   vs.<br><br>hiQ Labs, Inc.<br><br>       Counterdefendant, | |

1

**INTRODUCTION**

2      hiQ asks this Court to overturn Magistrate Judge Kim's rejection of its request for

3  onerous, eleventh-hour discovery into LinkedIn's alleged acquisition targets and conduct

4  concerning other third-party scrapers.  *See* ECF No. 262 ("Mot.") at 1.  But Judge Kim's careful

5  ruling is subject to a highly deferential standard of review that hiQ does not come close to

6  satisfying.

7      Rule 26(b)(1) limits the scope of discovery to matters that are "relevant … *and*

8  proportional to the needs of the case."  After failing even to attempt to carry its burden on the

9  proportionality requirement before Judge Kim, hiQ again largely ignores it here.  hiQ never

10  explained to Judge Kim the scope of its requested discovery, let alone justified its burdens in light

11  of the extensive discovery LinkedIn has already produced.  As Judge Kim found, hiQ "d[id] not

12  dispute" that its demands "would require hundreds of thousands of dollars and hundreds of hours

13  to process and result in hundreds of thousands of documents for review."  ECF No. 256 (Order on

14  Disc. Dispute (hereinafter "Order")) 4.  hiQ still does not dispute this significant burden.  hiQ's

15  failure to meaningfully contest Judge Kim's proportionality finding is alone sufficient reason to

16  deny its motion.  Part A, *infra*.

17      hiQ instead contends that Judge Kim erred in assessing the relevance of its discovery

18  requests.  Those arguments are meritless.  As Judge Kim well understood, evidence of LinkedIn's

19  alleged acquisition targets or conduct towards third parties carries at best tangential relevance to

20  LinkedIn's intent with respect to hiQ.  Order 3-4.  hiQ now argues that this evidence regarding

21  third parties is also relevant to some vague—and unpled—theory of anticompetitive conduct hiQ

22  says is cognizable under California Business & Professions Code § 17200 (UCL).  But this Court,

23  in its order granting LinkedIn's motion to dismiss hiQ's antitrust claims, systematically addressed

24  and found each implausible, including some just as vague as this new theory.  The antitrust

25  theories hiQ *did* try to plead are thus gone from the case.  Neither those dismissed theories nor

26  theories hiQ *never* pled are proper subjects of discovery.  Part B, *infra*.

27      Judge Kim correctly ruled that hiQ's discovery demands are too tenuous, too burdensome,

28  and too late.  hiQ's motion should be denied.

REPLY ISO MOT. TO DISSOLVE
AND INDIC. RULING
17-cv-03301-EMC

1

## <u>ARGUMENT</u>

2    Rule 26(b) permits discovery only as to matters that are "relevant to any party's claim or

3 defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).  As with

4 all nondispositive matters, a magistrate's ruling that requested discovery falls outside of Rule

5 26(b)'s scope "'is entitled to great deference by the district court.'"  *Warsavsky v. Jaguar Land*

6 *Rover N. Am., LLC*, No. CV 20-11159 PA (JPRx), 2021 WL 5994533, at *3 (C.D. Cal. Sept. 17,

7 2021) (quoting *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001)).  Reversal is

8 appropriate only if the magistrate's decision is "clearly erroneous or contrary to law."  Fed. R.

9 Civ. P. 72(a).

10    Under this standard, "purely legal determinations"—like whether the magistrate applied

11 the proper legal standard—are reviewed de novo and reversed if "contrary to law."  *Warsavsky*,

12 2021 WL 5994533, at *3.  Factual determinations and those that require the magistrate to exercise

13 judgment in applying legal standards to the record are reviewed only for "clear error."  *Id.*  On

14 clear-error review, "[t]he reviewing court may not simply substitute its judgment for that of the

15 deciding court," *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991), and will

16 reverse only upon "a definite and firm conviction that a mistake has been committed,"

17 *Warsavsky*, 2021 WL 5994533, at *3.

18
### A.    <u>hiQ Has Not Demonstrated That Judge Kim's Proportionality Finding Is Clearly Erroneous Or Contrary To Law.</u>
19

20    Although hiQ's motion focuses principally on the purported relevance of its discovery

21 requests to its UCL claim, Judge Kim explicitly found that "even if the evidence has some

22 relevance to hiQ's theory, the burden of production at this late stage of litigation *far outweighs*

23 the needs of the case."  Order 3-4 (emphasis added).  That finding is an independent basis for

24 Judge Kim's ruling that hiQ fails to meaningfully contest.  And that finding is not clearly

25 erroneous—it is clearly correct.

26    "[T]he party seeking to compel discovery … has the obligation to 'detail the basis for [its]

27 contention that it is entitled to the requested discovery and must show how the proportionality and

28 other requirements of [Rule] 26(b)(2) are satisfied."  *Somers v. Digital Realty Trust, Inc.*, No. 14-

OPPOSITION TO MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER
17-cv-03301-EMC

cv-05180-EMC (KAW), 2017 WL 2954909, at *8 (N.D. Cal. July 11, 2017).  hiQ made no attempt to carry this burden before Judge Kim.  As LinkedIn established, ECF No. 253 at 2-3, LinkedIn has already produced extensive discovery pursuant to agreed-upon ESI protocols from Fall 2021.  Applying the stipulated search terms to identified custodians required review of 220,000 documents from 22 custodians, including two custodians added just before the close of fact discovery.  Many other documents from noncustodial sources were also produced.  This discovery effort cost hundreds of thousands of dollars.  LinkedIn also explained that the requests at issue in the present motion generated 696,558 hits, a volume that—once de-duplicated and reviewed—would likely double LinkedIn's production burden and cost hundreds of thousands more.  So to carry its burden of establishing proportionality, hiQ had to show that its onerous requests would lead to significant production of relevant evidence beyond LinkedIn's already extensive productions.  Judge Kim recognized that hiQ had made no such showing, and indeed did not even "dispute [LinkedIn's] characterization of the burden."  Order 4.

hiQ's only response to this finding is to accuse Judge Kim of "ignor[ing] hiQ's arguments on burden and proportionality."  Mot. 5.  But there is nothing in the order suggesting Judge Kim ignored anything.  And the "arguments" hiQ claims were ignored are a series of conclusory sound bites that are demonstrably incorrect.

hiQ claimed that "LinkedIn has refused to even provide hit counts" of documents.  Mot. 5.  But LinkedIn provided a thorough hit count report on March 18, 2022.  hiQ contends that it then "twice narrowed" the "disputed terms" and "detailed its good-faith efforts to reach compromise with LinkedIn."  Mot. 5.  But as LinkedIn explained, hiQ added a host of objectionable new terms and custodians, proposed nothing to address the overall number of terms and custodians in an already overbroad protocol, and could offer nothing justifying the lateness of its demands.  ECF No. 252 at 3-4; ECF No. 252-5.  So hiQ's purported narrowing could never have established proportionality, nor would it undermine LinkedIn's uncontested explanation of the burdens of hiQ's demands.  Judge Kim's rejection of hiQ's approach was fully justified.

hiQ also claimed that LinkedIn "has not shown any specific 'harm or prejudice.'"  Mot. 5.  But LinkedIn detailed the scope and high cost of the requested production, the prior productions

OPPOSITION TO MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER
17-cv-03301-EMC

1   and their costs, and the disruption associated with the imminent end of fact discovery, significant

2   deposition schedule, and upcoming expert deadlines.  Judge Kim adopted these factual showings,

3   noting the "burden of production at this late stage of litigation" as well as the upcoming

4   deadlines.  Order 4.

5         Judge Kim's conclusion that hiQ failed to establish proportionality is not clearly

6   erroneous.  *Sanchez v. Cnty. of Sacramento*, No. 19-cv-01545-MCE-AC, 2022 WL 866057, at *6

7   (E.D. Cal. Mar. 23, 2022) (assessing MJ's findings of relevance and proportionality for clear

8   error).  And because a lack of proportionality is an independently sufficient basis for denying a

9   motion to compel under Rule 26(b)(1), hiQ's motion before this Court should be denied.

10        **B.**    **hiQ Has Not Established That Judge Kim's Assessment Of The Relevance Of**

11  **hiQ's Demands Is Clearly Erroneous Or Contrary To Law.**

12        hiQ's relevance-based arguments are also baseless.  Judge Kim did not clearly err in

13  ruling that hiQ's requested discovery concerning third parties is at most elliptically relevant to

14  LinkedIn's actions towards hiQ.  And Judge Kim correctly rejected hiQ's attempts to seek

15  discovery on theories of anticompetitive conduct that have either been dismissed from the case or

16  were never pled in the first place.

17        ***The Order Does Not Apply A "Heightened Relevance Standard."***  hiQ's only asserted

18  legal error is the dubious contention that Judge Kim applied an elevated "'direct relevance'

19  standard" that "has no basis in the Federal Rules and is clearly erroneous."  Mot. 4; *see* Mot. 1.

20  Judge Kim did no such thing.  Rule 26(b)(1) necessarily entails an evaluation of the nature and

21  degree of relevance of the discovery sought to the issues in the case.  Fed. R. Civ. P. 26(b)(1)

22  (contemplating evaluation of "importance of the discovery in resolving the issues" and whether

23  "the burden or expense of the proposed discovery outweighs its likely benefit").  In conducting

24  that evaluation, Judge Kim found that hiQ's contention "that LinkedIn allegedly considered

25  taking similar action in denying access to other scrapers and that LinkedIn allegedly considered

26  acquiring competitors is not directly relevant to LinkedIn's motive or intent with regard to hiQ."

27  Order 3.  Judge Kim then went on to "balance[] the relevance" of hiQ's discovery demands "with

28  the needs of the case," "find[ing] that the scale tips towards LinkedIn."  Order 4.

OPPOSITION TO MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER
17-cv-03301-EMC

Judge Kim's application of Rule 26(b)(1) was plainly proper.  By using the words "not directly relevant," Judge Kim was not "erroneously h[olding] hiQ's requests to a higher standard," Mot. 4.  She was correctly holding—based on careful consideration of hiQ's own pleadings—that hiQ's discovery demands regarding third parties would provide at most tangential evidence of LinkedIn's intentions towards hiQ.

***Judge Kim's relevance assessment is not clearly erroneous***.  The remainder of hiQ's motion contests Judge Kim's relevance findings.  Mot. 2-5.  Attempting to avoid the clear error standard, hiQ argues that Judge Kim "wrongly interpreted *the law* under which hiQ brought its UCL claims."  Mot. 2 (emphasis added).  But hiQ is misrepresenting the ruling, which turned not on interpretation of the UCL, but on what hiQ did and did not plead in its First Amended Complaint.  Order 3-4.  Judge Kim correctly recognized that the First Amended Complaint does not plead a theory of liability—whether under the Sherman Act or the UCL—based on the vague cumulation of acquisition targets and other conduct towards third-party scrapers that hiQ now suggests necessitates discovery.

This is plain from a review of the First Amended Complaint, ECF No. 131, and this Court's ruling on LinkedIn's motion to dismiss, ECF No. 158.  hiQ simply did not plead the claim it is now asserting.  In the First Amended Complaint, hiQ alleged that LinkedIn "violates the policy and spirit of antitrust law, as discussed herein and in the tenth through twelfth claims for relief below."  ECF No. 131 ¶ 92.  The "tenth through twelfth claims for relief" are hiQ's Sherman Act claims, which are no longer in this case.  hiQ attempted there to plead numerous theories of anticompetitive conduct.  It claimed monopolization and attempted monopolization through conduct "including, but not limited to, leveraging, lock-in, raising rivals' costs, tying, unilateral refusal to deal, denial of essential facilities, and vertically-arranged boycott."  ECF No. 131 ¶¶ 112, 150; *see also id.* ¶¶ 158-68 (appearing to assert tying or boycotting theories).  This Court systematically evaluated all seven theories hiQ attempted to plead and found "each theory of anticompetitive conduct implausible."  ECF No. 158.  And although the Court offered hiQ the chance to amend its complaint to attempt to state a plausible theory of anticompetitive conduct, hiQ declined.  "Supreme Court and Ninth Circuit precedent bar discovery based on previously

dismissed claims." *In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 408-09 (N.D. Cal. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014)).  hiQ cannot seek discovery on the various theories of liability this Court dismissed as implausible and that hiQ has voluntarily elected not to pursue.

Nor does hiQ identify any *other* theory of anticompetitive conduct in its First Amended Complaint that would justify its discovery request.  Certainly its UCL claim contains no such theory.  That claim is based on LinkedIn's "denial of access" to hiQ, *id.* ¶ 92, "the impact of LinkedIn's actions on hiQ," *id.* ¶ 93, and the fact that LinkedIn "repeatedly complained about hiQ's copying of public data," *id.*, despite LinkedIn's purported lack of a legal interest in that data.  There are no allegations about targeted acquisitions or conduct with respect to third parties, let alone a coherent theory that would justify sweeping discovery on those topics.  Indeed, the most hiQ can point to is a single reference in the First Amended Complaint to "preventing hiQ and other people analytics providers" from accessing data, Mot. 1, and a staff report from a committee in the House of Representatives that speaks generally of "killer acquisitions" by tech platforms, Mot. 2 at 3 n.2.  LinkedIn's acquisitions were public facts at the time they occurred, and long before hiQ filed its First Amended Complaint.  If hiQ thought it could plead a claim based on them, there was nothing stopping it from trying.  It did not.

Without factual pleadings to point to, hiQ recites a series of legal propositions.  It notes language in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), that the UCL embraces "incipient violation[s] of antitrust law" or actions that "otherwise significantly threaten or harm[] competition."  Mot. 2.  It also points to an amicus brief from the State of California arguing that "A UCL Plaintiff Need Not Establish A Concurrent Violation of Antitrust Law."  Mot. 2.  And it says its "requests are squarely targeted to 'what some courts have referred to as a course of conduct or monopoly broth theory of antitrust liability'"—an argument it did not even make before Judge Kim.  Mot. 3 (quoting *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 26 (D.D.C. 2021)).  That hiQ must resort to scraping together disparate generalities from other cases, rather than pointing to allegations specific to issues in this case, is telling in itself.  And even if these legal propositions were entirely correct (which LinkedIn does not

OPPOSITION TO MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER
17-cv-03301-EMC

concede), they are entirely irrelevant to Judge Kim's ruling.  Rule 26(b)(1) permits only discovery that is "relevant to any party's *claim*"—that is, to the claims hiQ has actually pled. (emphasis added).  Judge Kim correctly rejected hiQ's attempt to conduct discovery on unpled claims, and certainly did not commit clear error in reaching that conclusion.

Finally, hiQ does not dispute Judge Kim's finding that hiQ's discovery has at best a "weak" connection with LinkedIn's "intent or motive."  Order 3.  hiQ thus leaves uncontested the finding of minimal relevance in connection with the only issue that is actually a part of this case. hiQ has come nowhere near the high bar for reversing Judge Kim's judgment.

## CONCLUSION

For the foregoing reasons, LinkedIn respectfully requests that the Court deny hiQ's motion challenging Judge Kim's denial of hiQ's motion to compel and grant of LinkedIn's motion for a protective order.

Dated: May 23, 2023                              Orrick, Herrington & Sutcliffe LLP

By:      */s/ Annette L. Hurst*
                ANNETTE L. HURST
                Attorneys for Defendant
                LinkedIn Corporation