1  Corey Worcester (*pro hac vice*)
   coreyworcester@quinnemanuel.com
2  Renita Sharma (*pro hac vice*)
   renitasharma@quinnemanuel.com
3  QUINN EMANUEL URQUHART AND SULLIVAN, LLP
4  51 Madison Avenue, 22nd Floor
   New York, NY 10010
5  Telephone:     (212) 849-7000

6  Terry L. Wit (SBN 233473)
   terrywit@quinnemanuel.com
7  QUINN EMANUEL URQUHART AND SULLIVAN, LLP
8  50 California Street, 22nd Floor
   San Francisco, CA 94111
9  Telephone:     (415) 875-6331

10 *Attorneys for Plaintiff and
   Counterclaim Defendant
11 hiQ Labs, Inc.*

12

13                        UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15

| hiQ Labs, Inc., | Case No. 3:17-cv-03301-EMC |
|---|---|
| *Plaintiff and Counterclaim Defendant*, | **REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
| vs. | |
| LinkedIn Corp., | Judge:    Hon. Edward M. Chen<br>Ctrm:    5-17th Floor |
| *Defendant and Counterclaim Plaintiff.* | |

**INTRODUCTION**

LinkedIn's Opposition brief (ECF 278, "Opp.") misrepresents hiQ's discovery requests as "eleventh-hour" to argue that the timing of such discovery (which even LinkedIn concedes was within the discovery period) far outweighs hiQ's need for it. (Opp. at 1-2.) Not only does LinkedIn obscure the actual timeline and substance of the parties' months long negotiations—which were defined by LinkedIn's slow-walking and shifting positions dating back to at least December 2021—but crucially, LinkedIn offers *no* response to the **LinkedIn-produced** documentary evidence of LinkedIn's misconduct toward third parties highlighted in hiQ's Motion. (ECF 262, "Mot.").

The reason for the omission is clear: LinkedIn's anticompetitive misconduct toward third parties—as confirmed by LinkedIn's own deposition witnesses[1]—is plainly relevant to hiQ's claims. Attempting to ignore the elephant in the room, LinkedIn instead devotes its Opposition to doubling down on the erroneous finding that because hiQ's Sherman Act claims were dismissed, hiQ's claims under Cal. Bus. Prof. Code § 17200 *et seq*. ("UCL")—which are very much alive—cannot be the basis for discovery. But as hiQ's motion demonstrates, anticompetitive conduct by LinkedIn towards other similarly situated startup competitors is highly relevant to hiQ's UCL claims, and holding otherwise was clear error.

hiQ respectfully submits that Judge Kim's Order (ECF 256, "Order") should be reversed. *First*, in finding that the burden of the discovery far outweighed hiQ's need for it, the court wrongly adopted LinkedIn's misapplication of the law by effectively extending the dismissal of hiQ's federal antitrust claims to hiQ's UCL claims, and wrongly accepted LinkedIn's purported burden assertions in a vacuum, with no inquiry into the scope of the parties' already propounded discovery (extensive) or into LinkedIn's dealings with hiQ on the at-issue requests (obstructionist). In sum, the Order was wrong as to both relevance and burden, and thus its Rule 26 analysis was fatally flawed. *Second*,

---

[1] [redacted]

Judge Kim wrongly applied a heightened "direct relevance" standard to hiQ's discovery requests where there is no such standard. LinkedIn's regurgitation of old tropes—in essence, that hiQ asks for too much, too late—does nothing to address these errors and should be rejected as the attempt to avoid harmful discovery that it has been all along.

## ARGUMENT

### A.     The Order's Proportionality and Relevance Findings Are Clearly Erroneous

The Order's finding (at 4) that "the burden of production at this late stage of litigation far outweighs the needs of the case" is clearly erroneous because it is "based on an unreasonable and incorrect interpretation of the discovery requests." *Hall v. Marriott Int'l, Inc.*, 3:19-cv-01715-JLS-AHG, 22, 2021 WL 1906464, at *11 (S.D. Cal. May. 12, 2021). Any burden resulting from "production at this late stage" (Order at 4) lies at the feet of LinkedIn. hiQ first sought discovery related to LinkedIn's anticompetitive strategy in its first document requests, served in June 2021. Documents produced in response to these requests confirmed hiQ's belief that LinkedIn engaged in a pattern of targeting startup competitors, as it did with hiQ, with its pretextual threats of legal action or its "acquire and kill" approach. As the parties negotiated document requests in Fall 2021, LinkedIn failed to designate as document custodians the individuals at LinkedIn who spearheaded this campaign of suppression, meaning that hiQ was deprived of highly relevant documents. Nevertheless, in the documents that LinkedIn did produce, LinkedIn's pattern of misconduct was unmistakable:



*See* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ hiQ had no way of knowing which custodians were relevant until they received documents from LinkedIn and could not have filed this motion sooner.

A key theory of hiQ's case, as thoroughly detailed in its pleadings, is that LinkedIn became aware of hiQ's people analytics technology, knew that it relied on public LinkedIn data, and, after eventually identifying hiQ as a competitive threat, moved to shut hiQ down.[2]  hiQ has since learned that this was LinkedIn's tried-and-true anticompetitive playbook across the entire industry.  Indeed, hiQ was just one of many people analytics startups that came within LinkedIn's crosshairs.  Evidence that LinkedIn engaged in similar misconduct towards other startups is directly probative of hiQ's unfair competition claims, which bear on a defendant's anticompetitive strategies and their broader impact.  *See, e.g., V5 Techs. v. Switch, Ltd.,* 2:17-cv-02349-KJD-VCF, 2021 WL 5310582 at *2 (D. Nev. Nov. 12, 2021) (finding evidence of anticompetitive conduct towards third parties "relevant and admissible to show evidence of [defendant's] sustained anticompetitive course of conduct and to show [defendant's] alleged intent to exclude its competitors from the market"); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305 (9th Cir. 1983) ("It is well-settled that a plaintiff may introduce background evidence to establish a continuing course of conduct or to

---

[2] As with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

cast light on the character of an existing conspiracy."). This evidence also reveals LinkedIn's reflexive approach towards competing people analytics startups, which helps to explain its actions toward hiQ. While LinkedIn spills much ink emphasizing this Court's dismissal of hiQ's Sherman Act claims (Opp. at 5-6), it cannot get around the fact that hiQ's claims under California's UCL in the First Amended Complaint , which "incorporate[] by reference the allegations of the preceding paragraphs as though fully set forth [t]herein" (ECF 131, "FAC" at 27-29), remain pending in the case.[3] As such, the Order erred in not appreciating the relevance of the requested discovery.

The Order also erred in crediting LinkedIn's misrepresentations of its burden in responding to hiQ's discovery requests ("RFP"). Having confirmed LinkedIn's anticompetitive *modus operandi*, hiQ propounded a second set of discovery requests on December 17, 2021—months before the end of discovery—targeting, *inter alia*, "LinkedIn's assessment of any and all competitive threats to its Talent Solutions business" (RFP No. 39) and documents "concerning efforts by LinkedIn to gain market share in the market for People Analytics or HR analytics products and services, including through acquisitions of other companies" (RFP No. 40.) After a series of meet-and-confers, hiQ presented LinkedIn with an updated list of custodians and search terms targeted to both LinkedIn's development of Talent Insights, the competing product to hiQ's SkillMapper, and addressing startups similarly situated to hiQ and that hiQ believed were also targeted by LinkedIn. hiQ presented these demands in a February 11, 2022 letter, well in advance of the March 31 discovery cutoff.

---

[3] LinkedIn is also wrong that "hiQ simply did not plead the [UCL] claim it is now asserting" (Opp. at 5), as evidenced by its insinuation that there is only a "single reference in the First Amended Complaint" (*Id.* at 6) to LinkedIn's anticompetitive conduct towards third parties. Not so: hiQ alleged that "the same phenomenon happened with the other people analytics companies LinkedIn cut off, which has led to significantly decreased demand for their services as well" (FAC at 14 n.3); "LinkedIn cut off hiQ and other people analytics providers because it now viewed them as bona fide competitors" (*Id.* at 19); and that "People analytics providers similarly cannot compete too hard, or else risk having LinkedIn shut them out of the market entirely, as it did with hiQ and the other people analytics companies that were thriving until LinkedIn's about-face in 2017" (*Id.* at 21). LinkedIn's euphemism of "acquisition targets and other conduct" (Opp. at 5) is a transparent attempt to whitewash its strategy to eliminate competition by the means identified in hiQ's complaint.

1    Perhaps sensing the scope of its potential liability, LinkedIn strenuously sought to obstruct hiQ's requests, alternatively protesting that such requests were ambiguous, vague and overbroad, on the one hand, or that the new requests were unnecessarily duplicative of what hiQ had already obtained, on the other.  While disagreeing with these assertions, hiQ served a third set of requests on March 1, 2021, which expressly targeted the third-party competitors cropping up in LinkedIn's document productions in order to eliminate any purported "ambiguity".  LinkedIn responded on March 3 with a "compromise" offer to run a small subset of the original search terms on a handful of additional custodians, but continued to stonewall on hiQ's sought-after updated search terms.  Faced with LinkedIn's intransigence, hiQ presented LinkedIn with its half of the discovery letter that would ultimately form the basis of the present Motion on March 9, 2022.  LinkedIn again changed its tune, requesting another opportunity to negotiate over hiQ's requests.

The parties then engaged in another series of fruitless meet-and-confers, and LinkedIn delayed until **March 18** (13 days before close of document discovery) to finally provide hit counts to search terms that hiQ proposed on **February 11**.  (Opp. at 3).  While hiQ was concerned by these delay tactics, to promote cooperation and the prompt production of its requested discovery, hiQ sent a narrowed, compromise proposal on March 23.  LinkedIn never responded to this proposal, and apparently disregards it now to arrive at the more impressive, but outdated, hit count of 696,558 cited in its Opposition's attempt to sustain its burden argument.  (*Id.*)  Moreover, six weeks into the parties' meet-and-confer process, and after LinkedIn outright refused to provide its half of the joint motion sent by hiQ on March 9, LinkedIn abruptly ended the negotiations by presenting hiQ with its *own* half of a discovery letter, seeking a previously-undiscussed protective order that now forms the basis of the Order before the Court.

In sum, it is apparent that after agreeing in principle to conduct additional review into discovery propounded by hiQ, LinkedIn engaged in sham negotiations designed to run out the clock on discovery and to inflate the perceived burden of hiQ's timely and targeted requests.  And LinkedIn's statement that hiQ "proposed nothing to address the overall number of terms and custodians" (Opp. at 3) is simply—and demonstrably—false.  Notably, LinkedIn ***did not even run hit counts on hiQ's March 23 compromise proposal***—let alone de-duplicate the documents to give

an accurate representation of its burden—as it represents to the Court.[4]  *See* ECF 252-5 (identifying ***Prior*** Hit Counts in the second column, but listing hiQ's ***Revised*** Search Term Proposals).

Judge Kim thus clearly erred in assessing the burden of the sought discovery by crediting LinkedIn's misleading presentation.  *See* ECF 253 at 2-3 (claiming that hiQ's requests are "likely to *double* LinkedIn's already substantial document review and production burden").  LinkedIn should not now be rewarded for its gamesmanship and the incomplete facts underlying its burden assertions.

### B. LinkedIn's Arguments On Legal Error Are Unavailing

LinkedIn also fails to meaningfully address hiQ's argument that Judge Kim erroneously applied a heightened "direct relevance" standard, except to rehash its proportionality argument, protesting that "the burden or expense of the proposed discovery outweighs its likely benefit" (Opp. at 4).  To argue that the Order does ***not*** apply a "direct relevance" standard, LinkedIn confusingly quotes the Order where it says that LinkedIn's anticompetitive actions were "not ***directly*** relevant to LinkedIn's motive or intent with regard to hiQ." (*Id.*; Order at 3(emphasis added).)  This language from the Order is unambiguous.  And, as hiQ's Motion makes clear, it is also mistaken: relevance need not be immediate or "direct" to satisfy the standard of Rule 26, which is "necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In light of the foregoing, hiQ respectfully requests that this Court vacate the Order (ECF 256), deny LinkedIn's Motion (ECF 252), and grant hiQ's Motion (ECF 250).

---

[4]  LinkedIn claims that de-duplication of documents hitting on hiQ's search terms would reduce by "30-40%" the total number of documents requiring review, based only on "past experience"— *i.e.*, the duplicativeness of different search terms, for different custodians, at other companies, in other cases.  ECF 253 at 3 n.2.

Dated: May 31, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Corey Worcester*
   Corey Worcester

*Attorneys for Plaintiff hiQ Labs, Inc.*