# EXHIBIT 10

Videotaped Deposition of

# Mark Weidick

30(b)(6)

March 18, 2022

Volume I

hiQ Labs, Inc.

vs.

LinkedIn Corp.



**Page 1**

```
 1           UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
 3
 4   hiQ Labs, Inc.,            )
              Plaintiff,        )
 5                              )
         vs.                    ) Case No.
 6                              ) 17-cv-03301-EMC
     LinkedIn Corporation,      )
 7          Defendant.          )
     _____)
 8                              )
     LinkedIn Corporation,      )
 9        Counterclaimant,      )
                                )
10       vs.                    )
                                )
11   hiQ Labs, Inc.,            )
          Counter-defendant.)
12                              )
     _____)
13
14        REMOTE VIDEO-RECORDED 30(b)(6)
15          DEPOSITION OF MARK WEIDICK
16             Los Gatos, California
17               March 18, 2022
18                 Volume I
19   REPORTED BY:
20   JOHNNA PIPER
21   CSR 11268
22   Job No. 10097379
23
24   Pages 1 through 122
25
```

**Page 2**

```
 1           UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
 3
 4   hiQ Labs, Inc.,            )
              Plaintiff,        )
 5                              )
         vs.                    ) Case No.
 6                              ) 17-cv-03301-EMC
     LinkedIn Corporation,      )
 7          Defendant.          )
     _____)
 8                              )
     LinkedIn Corporation,      )
 9        Counterclaimant,      )
                                )
10       vs.                    )
                                )
11   hiQ Labs, Inc.,            )
          Counter-defendant.)
12                              )
     _____)
13
14
15       Remote video-recorded 30(b)(6) deposition
16  of MARK WEIDICK, Volume I, taken on behalf of
17  Defendant, Los Gatos, California, beginning at 10:04
18  a.m. and ending at 2:13 p.m. on Friday, March 18,
19  2022, before JOHNNA PIPER, Certified Shorthand
20  Reporter No. 11268.
21
22
23
24
25
```

**Page 3**

```
 1  APPEARANCES:
 2
 3  For the Plaintiff and Counter-defendant:
 4       Quinn Emanuel Urquhart & Sullivan LLP
 5       51 Madison Avenue, 22nd Floor
 6       New York, New York 10010
 7       (212) 849-7000
 8       hopeskibitsky@quinnemanuel.com
 9       renitasharma@quinnemanuel.com
10       By:  Hope Skibitsky, Esq.
11            Renita Sharma, Esq.
12
13
14  For the Defendant and Counterclaimant:
15       Orrick, Herrington & Sutcliffe LLP
16       405 Howard Street
17       San Francisco, California 94105-2669
18       (415) 773-5700
19       clui@orrick.com
20       By:  Catherine Y. Lui, Esq.
21            Isaac Behnawa, Esq.
22
23
24  Also Present:  Erin James, LinkedIn; Marisa Ramos,
25  video technician
```

**Page 4**

```
 1                I N D E X
 2  WITNESS                              EXAMINATION
 3  Mark Weidick
          By Ms. Lui                           7
 4
          By Ms. Skibitsky                   117
 5
 6
 7              EXHIBITS
 8  DEFENDANT'S                               PAGE
 9  Exhibit 1   LinkedIn's Amended Rule 30(b)(6)   8
             Notice of Data Preservation
10           Deposition to hiQ
11  Exhibit 2   Declaration of Mark Weidick in   107
             Opposition to Linkedin's Motion
12           to Dissolve the Preliminary
             Injunction and for an Indicative
13           Ruling
14
15       ATTORNEY'S EYES ONLY
16
         Starts                              111
17
         Ends                                113
18
19
20          ***
21
22
23
24
25
```

Volume I  Case 3:17-cv-03301-EMC   Document 291-11   Filed 06/02/22   Page 4 of 5
Mark Weidick                                                              hiQ Labs, Inc. vs.
                                                                          LinkedIn Corp.

Page 97

1  from the GitHub?
2     A. Yes.
3     Q. I believe you mentioned Slack earlier.
4  Does hiQ still have access to its Slack channel?
5     A. Yes.
6     Q. hiQ is still paying bills to keep the Slack
7  channels active?
8        MS. SKIBITSKY: Objection. Assumes facts
9  not in evidence.
10       THE WITNESS: Yes, we are.
11 BY MS. LUI:
12    Q. Has any archiving been done of the Slack
13 channels to preserve the information?
14    A. We did an export which constitutes a form
15 of archiving.
16    Q. When was that export conducted?
17    A. Within the last few months.
18    Q. Did the export include every Slack channel
19 available at hiQ?
20    A. Yes.
21    Q. Did hiQ use Dropbox?
22    A. No.
23    Q. Did Mr. Kaplan have a -- a Dropbox account
24 that he used in -- conducting business for hiQ?
25    A. Darren definitely has a -- had a Dropbox

Page 98

1  account. I don't recall how much he would have used
2  it for running -- for doing business.
3     Q. Do you know if his Dropbox account was
4  archived or preserved in any way?
5     A. It still exists, so I don't know if it was
6  archived.
7     Q. Do you have access to that Dropbox account?
8     A. Well, as a Dropbox user, I can access files
9  that have been shared with me from other Dropbox,
10 users so I presume I would.
11    Q. Does hiQ have access to Mr. Kaplan's
12 Dropbox account?
13    A. When you say do we have access, it's his
14 Dropbox account so the answer is no, but for
15 anything that he makes available to us or anybody.
16    Q. Does I -- hiQ still have access to its
17 QuickBooks accounts?
18    A. You're conflating two things. It was a
19 QuickBooks account for the business.
20    Q. Right. Okay. So does hiQ still have
21 access to that QuickBooks account?
22    A. All of the data that we managed in
23 QuickBooks has been read off to file and is
24 available elsewhere. Again, we couldn't pay for
25 a -- a subscription to QuickBooks, so we let that

Page 99

1  expire in a very proactive way. It was not
2  necessary for the level of business accounting we
3  were doing when the business was nonoperational, but
4  all the data from QuickBooks is available,
5  preserved, and archived.
6     Q. So the data that was available in the
7  QuickBooks account was exported at some point?
8     A. I don't know what function we would have
9  clicked on to get it, but, yes, it is in hand.
10    Q. Okay. Is that on Mr. Miller's hard drive
11 or somewhere else?
12    A. That's in the Box account, so I don't know
13 if it's on the archive. I doubt it -- or on the
14 hard drive from Dan Miller.
15    Q. Okay. Let's turn to Salesforce,
16 Mr. Weidick. You -- you testified earlier that the
17 Salesforce accounts had lapsed. Was that because
18 there was no payment by hiQ to maintain the
19 Salesforce accounts?
20    A. Salesforce turned -- turned us off for
21 nonpayment of the account.
22    Q. When did Salesforce turn hiQ off for
23 nonpayment?
24    A. Approximately end of 2018.
25    Q. How many months had Salesforce not --

Page 100

1     A. Wait. I've got to think about that. Might
2  have been a little bit later than that. There was a
3  point in time where we reduced the number of
4  subscriptions in 2017 to save money. I'm going
5  to -- I'm going to stick with my original answer.
6  It's around September -- around September of 2018.
7     Q. Prior to September 2018, how many months
8  behind had hiQ been for nonpayment?
9     A. I don't remember.
10       (Indiscernible crosstalk.)
11       MS. SKIBITSKY: Mark, don't -- don't
12 speculate. If you don't know, you don't know.
13       THE WITNESS: Yeah.
14       MS. SKIBITSKY: But don't speculate.
15 BY MS. LUI:
16    Q. Several months?
17    A. The main point was they turned us off. I
18 didn't spend time thinking about how far behind I
19 was because I couldn't pay the bill irrespective of
20 how far behind I was.
21    Q. When Salesforce turned off the account, did
22 they send notification to hiQ?
23    A. Likely yes, but not directly to me. I'm
24 assuming that a notice would have gone to perhaps an
25 unmonitored email address such as -- such as

**Page 117**

1  BY MS. SKIBITSKY:
2  Q. Mark, you were asked whether there had been
3  any restrictions placed on Box to ensure that there
4  would be no deletion or autodeletion of materials
5  from Box. Do you remember that question?
6  A. I do.
7  Q. Are you aware of any autodeletion settings
8  on hiQ's Box account at any point in time?
9  A. No, I am not.
10 Q. And are you aware of any materials being
11 removed from hiQ's Box account at any point in time
12 after hiQ received May 2017 cease and desist letter?
13 A. I am not.
14 Q. Did you ever instruct any service provider
15 to turn off hiQ's access to any systems at any point
16 in time after hiQ received the May 2017 cease and
17 desist letter?
18 A. No.
19 Q. You testified earlier today that --
20 A. I take that back. We turned off Join Me.
21 Q. And when was that?
22 A. There -- there were -- there were a series
23 of applications that we subscribed to including Join
24 Me at the point where we could not pay, so many
25 others that I systematically reviewed from our

**Page 118**

1  credit card bill to cancel. The one I remember is
2  Join Me. I believe there were two or three others
3  that we eliminated and proactively canceled.
4  Q. Did Join Me store data?
5  A. No.
6  Q. You testified earlier that you couldn't
7  remember whether Darren Kaplan had participated in a
8  call with several other employees a few months back.
9  Have you had a chance to confirm whether or not
10 Mr. Kaplan did participate in that call?
11 A. I -- I have confirmed that he was invited
12 to the call on the -- on the invitation I have.
13     MS. SKIBITSKY: That's all I have.
14     MS. LUI: No recross.
15     THE COURT REPORTER: Hope, do you want a
16 copy of the transcript?
17     MS. SKIBITSKY: Yes, that would be great.
18 Thank you, Johnna.
19     VIDEO TECHNICIAN: All right. This now --
20     MS. SKIBITSKY: We can go off the record.
21     VIDEO TECHNICIAN: Yes. This now concludes
22 today's deposition. We are off the record. The
23 time is 2:13 p.m.
24     (TIME NOTED: 2:13 p.m.)
25

**Page 119**

1                CERTIFICATE OF REPORTER
2      I, JOHNNA PIPER, a Certified Shorthand
3  Reporter, hereby certify that the witness in the
4  foregoing deposition was by me duly sworn to tell
5  the truth, the whole truth, and nothing but the
6  truth in the within-entitled cause;
7      That said deposition was taken in shorthand
8  by me, a disinterested person, at the time and place
9  therein stated, and that the testimony of the said
10 witness was thereafter reduced to typewriting, by
11 computer, under my direction and supervision;
12     That before completion of the deposition,
13 review of the transcript [ ] was [ X ] was not
14 requested. If requested, any changes made by the
15 deponent (and provided to the reporter) during the
16 period allowed are appended hereto.
17     I further certify that I am not of counsel
18 or attorney for either or any of the parties to the
19 said deposition, nor in any way interested in the
20 event of this cause, and that I am not related to
21 any of the parties thereto.
22 DATED: 03/18/2022
23
24
25               JOHNNA PIPER, CSR NO. 11268

**Page 120**

1         DECLARATION UNDER PENALTY OF PERJURY
2  Case Name: hiQ Labs, Inc. vs. LinkedIn Corp.
3  Date of Deposition: 03/18/2022
4  Job No.: 10097379
5
6           I, MARK WEIDICK, hereby certify
7  under penalty of perjury under the laws of the State of
8  _____ that the foregoing is true and correct.
9           Executed this _____ day of
10 _____, 2022, at _____.
11
12
13                      _____
14                              MARK WEIDICK
15
16 NOTARIZATION (If Required)
17 State of _____
18 County of _____
19 Subscribed and sworn to (or affirmed) before me on
20 this _____ day of _____, 20__,
21 by_____,   proved to me on the
22 basis of satisfactory evidence to be the person
23 who appeared before me.
24 Signature: _____ (Seal)
25