ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
SARAH K. MULLINS (SBN 324558)
sarahmullins@orrick.com
MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>        Plaintiff,<br><br>   vs.<br><br>LinkedIn Corporation,<br><br>        Defendant.<br><br>LinkedIn Corporation<br><br>        Counterclaimant,<br>   vs.<br><br>hiQ Labs, Inc.<br><br>        Counterdefendant. | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISSOLVE PRELIMINARY INJUNCTION**<br><br>Date:        July 7, 2022<br>Time:       1:30 p.m.<br>Courtroom:  5 (Remote via Zoom)<br>Judge:      Hon. Edward M. Chen<br><br>Complaint Filed:  June 7, 2017<br>Trial Date:        February 27, 2023 |

# INTRODUCTION

Plaintiff hiQ Labs, Inc. is not an operational business and has not been for quite some time. In a word used by its CEO, Mark Weidick, when hiQ shut down its Amazon Web Services ("AWS") servers, data storage, and the database used to operate its products in early 2020, those products "decisively" were no longer available. hiQ has no present prospects of pursuing any legitimate "commercial opportunity," to use the suggestion offered by Mr. Weidick in his declaration. ▮

▮ hiQ has thus misused the offices of this Court by taking the protection afforded it by a preliminary injunction awarded on a theory of unfair competition, and instead of pursuing that purported competition has engaged in the kind of conduct this Court and the Ninth Circuit said LinkedIn had a legitimate interest in trying to prevent. ▮

hiQ is steps away from insolvency, ▮

▮ It would be worse than speculation to claim hiQ could sell its products at this point, it is simply untrue. Part I.A., *infra*.

hiQ is defunct despite the fact that LinkedIn fully complied with this Court's order, giving hiQ nearly unfettered access to publicly viewable member profile data. This outcome belies any causal link between LinkedIn's assertion of rights and hiQ's failure. ▮

▮ LinkedIn's assertion

of rights in a cease and desist letter had nothing to do with any of that. Because there is no causal relationship between the alleged threat of harm and LinkedIn's alleged wrongful conduct, hiQ cannot maintain the preliminary injunction. Part I.B., *infra*.

Finally, hiQ's conduct ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ threatens significant harm to LinkedIn and to the public. While hiQ has no cognizable threat of ongoing irreparable harm, LinkedIn and its members face meaningful threats from hiQ's ability to remove data from the platform without any meaningful oversight. The balance of hardships tips decisively against continuing an injunction. Part II, *infra*.

## ARGUMENT

### I.  DISCOVERY HAS CONFIRMED THAT THERE IS NO ONGOING THREAT OF LIKELY IRREPARABLE HARM TO HIQ.

It is undisputed that a likelihood of irreparable harm is required to maintain an injunction. *Compare* Mot. (ECF 216-3) at 13 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) *with* Opp. (ECF 219) at 12–13 (citing *All. for the Wild Rockies*, 632 F.3d at 1131 and not disputing that irreparable harm is required). The other *Winter* factors need not even be considered when the irreparable harm standard is unmet. *See Turo Inc. v. City of Los Angeles*, 847 F. App'x 442, 444 (9th Cir. 2021) ("Having determined that the City has not made an adequate showing of the likelihood of irreparable harm on this record, we need not address the parties' arguments regarding the remaining elements of the preliminary injunction test."); *ConocoPhillips Co. v. Gonzalez*, No. 5:12–cv–00576–LHK, 2012 WL 538266, at *3 (N.D. Cal. Feb. 17, 2012).

Circumstances have changed significantly since the Court entered its preliminary injunction, and hiQ is no longer (assuming *arguendo* it ever was) at risk of threatened irreparable harm from LinkedIn. Even though it had the protection of the injunction, hiQ admitted in the first round of briefing of this Motion that it is out of business. It has "no funds, employees, or customers[,] . . . could not afford to keep the lights on, and was forced to shut down the majority

1  of its systems and archive its core IP." Opp. at 13.  hiQ can "no longer solicit new clients or
2  renew client contracts." *Id.* at 5.





hiQ also archived its source code ticketing and management system JIRA, and that archive cannot be restored to use.  Supp. Hurst Decl. ¶¶ 47-48.

Not only did hiQ shut down its operations, it also purged a substantial quantity of evidence regarding its scraping operations in the process.

1  ███████████████████████████████████████████████████████████████████
2  ███████████████████████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████████████████
4  ██████████████████████████████████████████████████████

   hiQ's decommissioning and destruction of its systems and data demonstrates decisively that hiQ is no longer an operational company.[1]  As such, there is no longer any ongoing threat of likely irreparable harm to hiQ.

   **A.   The Court Should Not Credit Any Prospect Of Future Commercial Relationships In Ruling On The Motion.**

   Lacking any business to operate, hiQ rests its assertion of ongoing likely irreparable harm on the remote possibility it might lose unspecified "future commercial relationships that could leverage [hiQ's] expertise, experience, and access to LinkedIn's servers."  Opp. at 14 (claiming further irreparable harm without citing evidence); see ECF No. 219-2 (Weidick Decl.) ¶ 14 (identifying future "commercial inquiry" as a possible harm).  The Court should not credit such an assertion in measuring any ongoing likelihood of irreparable harm, because hiQ itself has either misused or rejected such opportunities.

   *Misuse.*  As hiQ is currently not capable of providing its original products without completely starting over, the Court should view with skepticism any claim that it is just one

---

[1] hiQ claims that it ran out of money and could not pay for the maintenance of its systems and data.  And, hiQ surely has insolvency problems that would plainly prevent it from resuming operations. 

1  "commercial inquiry" away from further harm.





Such inquiries may well involve misuse of the Court's power for a purpose never contemplated at the time it granted the preliminary injunction.

1  █████████████████████████████████

2  █████████████████████████████████

3  █████████████████████████████████

4  █████████████████████████████████

5  █████████████████████████████████

6  █████████████████████████████████

7  █████████████████████████████████

8  █

9  "Establishing a threat of irreparable harm in the indefinite future is not enough." *Amylin*

10 *Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. App'x 676, 679 (9th Cir. 2011). ████████████

11 █████████████████████████████████

12 █████████████████████████████████

13 █████████████████████████████████

14 ████████████████████████████  hiQ doesn't have the funds to re-

15 commence operations.  Speculative injury does not warrant a preliminary injunction. *Caribbean*

16 *Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

17      **B.    There Was No Causal Relationship Between hiQ's Inability To Conduct Its
18             Operations and LinkedIn's C&D Letter.**

19      As discussed in LinkedIn's Motion, the fact that hiQ failed despite the presence of the

20 preliminary injunction belies any notion that LinkedIn was the *cause* of any threatened irreparable

21 harm.  Mot. at 13-17.  The law requires a causal relationship between the threatened irreparable

22 harm and the conduct sought to be enjoined. *Id.* at 15; *see, e.g., Smithfield Packaged Meat Sales*

23 *Corp. v. Dietz & Watson, Inc*. No. 1:20-cv-00005-RGE-CFG, 2021 WL 2627454, at *2 (S.D.

24 Iowa April 23, 2021) (dissolving preliminary injunction prohibiting solicitation of customers

25 because those specific customers stopped doing business with plaintiff and therefore the

26 purported irreparable harm on which the injunction was based no longer existed).

27 █████████████████████████████████

28

1. ██████████████████████████████████████████
2. ██████████████████████████████████████████
3. ██████████████████████████████████████████
4. ██████████████████████████████████████████
5. ██████████████████████████████████████████
6. ██████████████████████████████████████████
7. ██████████████████████████████████████████
8. ██████████████████████████████████████████
9. ██████████████████████████████████████████
10. ██████████████████████████████████████████
11. ██████████████████████████████████████████
12. ██████████████████████████████████████████
13. ██████████████████████████████████████████
14. ██████████████████████████████████████████
15. ██████████████████████████████████████████
16. ██████████████████████████████████████████
17. ██████████████████████████████████████████
18. ██████████████████████████████████████████
19. ██████████████████████████████████████████
20. ████
21.     ██████████████████████████████████████
22. ██████████████████████████████████████████
23. ██████████████████████████████████████████
24. ██████████████████████████████████████████
25. ██████████████████████████████████████████
26. ████████████████████████████████ As this Court and
27. the Ninth Circuit have previously acknowledged in this case (let alone other cases like *Facebook*
28.

1  *v. Power Ventures*), LinkedIn was and is entitled to maintain such technical defenses.  *See hiQ*
2  *Labs, Inc. v. LinkedIn Corp.* ("*hiQ Labs II*"), 31 F.4th 1180, 1202 (9th Cir. 2022) ("Internet
3  companies and the public do have a substantial interest in thwarting denial-of-service attacks and
4  blocking abusive users, identity thieves, and other ill-intentioned actors.");  *hiQ Labs, Inc. v.*
5  *LinkedIn Corp.* ("*hiQ Labs I*", 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017) ("This is not to say
6  that a website like LinkedIn cannot employ, e.g., anti-bot measures to prevent, e.g., harmful
7  intrusions or attacks on its server. Finding the CFAA inapplicable to hiQ's actions does not
8  remove all arrows from LinkedIn's legal quiver against malicious attacks.").

[Lines 9–27 redacted]

## II. THE BALANCE OF HARDSHIPS FAVORS LINKEDIN.

The law post-*Winter* is clear that an injunction may not be maintained in the absence of likely, imminent irreparable harm, and the Court need go no further in its analysis. *E.g.*, *ConocoPhillips Co.*, 2012 WL 538266 at *3; *Fox Broad. Co.*, 905 F. Supp. 2d at 1111. Should the Court nonetheless wish to consider the balance of harms and public interest, these factors also favor dissolving the preliminary injunction. *See* Mot. at 17-19.

As to the balance of equities, the Court must balance the harm caused by the injunction against the harm that would result if it were dissolved. *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). As discussed above, the only ongoing hardship hiQ identifies is speculative at best and a misuse of the injunction at worst. The lack of any cognizable harm to hiQ tips the balance of the equities "firmly" in LinkedIn's favor. *Nevada v. United States*, 364 F. Supp. 3d 1146, 1157 (D. Nev. 2019).

Moreover, the harms LinkedIn faces if the injunction continues are significant. hiQ has misused the injunction by scraping and selling profile data instead of its products. As this Court and the Ninth Circuit have recognized, LinkedIn has a legitimate interest in enforcing its User Agreement to protect the trust of its members and the safety of its platform from scraping and members' concomitant loss of control over their data. *See hiQ Labs II*, 31 F.4th at 1189 ("As the district court observed, 'the fact that a user has set his profile to public does not imply that he wants any third parties to collect and use that data for all purposes.'"); *hiQ Labs I*, 273 F. Supp. 3d at 1106 ("LinkedIn argues that both it and its users therefore face substantial harm absent an injunction; if hiQ is able to continue its data collection unabated, LinkedIn members' privacy may be compromised, and the company will suffer a corresponding loss of consumer trust and confidence. These considerations are not without merit.").

[redacted]

1 ██████████████████████████████████████████████████████████
2 ██████████████████████████████████████████████████████████
3 ██████████████████████████████████████████████████████████
4 ██████████████████████████████████████████████████████████
5 ██████████████████████████████████████████████████████████
6 ██████████████████████████████████████████████████████████
7 ████████████████████████████████████

As to the public interest, the fact that hiQ scraped and sold profile data outside the context of its products confirms a significant threat to the public interest. LinkedIn members share data subject to the User Agreement and LinkedIn Privacy Policy. Those Agreements entitle members to delete their profiles if they want to, or to change them and have the earlier versions be removed. When hiQ takes data off of the site and passes it to third parties, members are no longer able to exercise control over that data. The threats from unauthorized collection of user information have grown much more substantial with widespread availability of machine-learning tools that can be used to create personalized phishing attacks, rogue facial recognition systems, and other malicious activity. hiQ has sold raw profile data to third parties, exposing LinkedIn members to those risks. *See* Mot. at 18–19 (citing evidence); *see also hiQ Labs II,* 31 F. 4th at 1202 (recognizing "significant public interests" identified by LinkedIn). On the record presently before the Court, the public interests identified by LinkedIn weigh in favor of dissolving the preliminary injunction.

# CONCLUSION

For all of the reasons set forth herein and in the record previously submitted in support of the Motion to Vacate, LinkedIn respectfully requests that the preliminary injunction be dissolved and that it no longer be forced to provide privileged access to hiQ through the use of the allowlisted IP addresses.

Dated: June 1, 2022

Orrick, Herrington & Sutcliffe LLP

By: _____/s/Annette L. Hurst_____
ANNETTE L. HURST
Attorneys for Defendant
LinkedIn Corporation