ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
SARAH K. MULLINS (SBN 324558)
sarahmullins@orrick.com
MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>LinkedIn Corporation,<br><br>    Defendant.<br><br>LinkedIn Corporation<br><br>    Counterclaimant,<br>vs.<br><br>hiQ Labs, Inc.<br><br>    Counterdefendant. | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S MOTION FOR LEAVE TO AMEND COUNTERCLAIMS (AND TO THE EXTENT NECESSARY, TO AMEND THE SCHEDULING ORDER)**<br><br>Date:             July 14, 2022<br>Time:           1:30 p.m.<br>Courtroom:  5 (Remote via Zoom)<br>Judge:         Hon. Edward M. Chen<br><br>Complaint Filed:  June 7, 2017<br>Trial Date:         February 27, 2023 |

**NOTICE OF MOTIONS AND MOTIONS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2022 at 1:30 p.m. or as soon thereafter as the matter may be heard, Defendant and Counterclaimant LinkedIn Corporation ("LinkedIn") will, and hereby does, move for an order for leave to amend its Counterclaims to include additional allegations regarding Counterdefendant hiQ Labs, Inc.'s ("hiQ") unlawful activity based on evidence uncovered during discovery in this matter, and to the extent necessary, to amend the Scheduling Order (ECF 211) to permit amendment of the counterclaims.

The Motion is made pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure. Under Rule 15(a)(1)(B), LinkedIn is entitled to amend as of right in response to hiQ's recently renewed motion to dismiss, and if necessary with leave of Court pursuant to Rule 15(a)(2). If Rule 16 applies, good cause exists for permitting an amendment past the deadline. The deadline for amending the pleadings was September 3, 2021, and the relevant evidence was not uncovered until discovery was conducted from February-May 2022. Moreover, the facts revealed in discovery and now alleged were actively concealed by hiQ in its pleadings and filings in support of its motion for preliminary injunction. Justice requires that the new allegations be considered in connection with hiQ's renewed motion to dismiss LinkedIn's counterclaims for violation of the Computer Fraud and Abuse Act and California Penal Code Section 502. There has been no undue delay, and there will be no cognizable prejudice to hiQ from adding these allegations.

The Motion is based on this Notice, the following Memorandum of Points and Authorities, LinkedIn's Answer and [Proposed] Amended Counterclaims (attached as Exhibit A to the Declaration of Annette Hurst), the Declaration of Annette Hurst and accompanying exhibits, the [Proposed] Order Granting Motion for Leave to Amend, and any further papers, facts and evidence to be submitted in connection with the motion, including the matters presented at the hearing of the Motion.

**INTRODUCTION**

When hiQ first addressed this Court and the Ninth Circuit regarding LinkedIn's potential claims under the CFAA, LinkedIn had not yet even pled those claims.  Throughout the first few years of this litigation, hiQ was in complete and exclusive control of the evidentiary presentation regarding its conduct.  hiQ's story was that its technology never involved logging in to LinkedIn's computers, and its mantra before this Court and the Ninth Circuit relied very heavily on the notion that everything it did was "public."  hiQ's story was also that LinkedIn's cease and desist letter insisting that it stop scraping interfered with its operations and threatened its existence by forcing it to stop scraping.  hiQ obtained injunctive relief from this Court requiring LinkedIn to grant hiQ privileged access to LinkedIn's profile servers on the basis that everything hiQ did was "public" and that LinkedIn's cease and desist letter threatened it great harm.  The Ninth Circuit also relied on these two central points of hiQ's story when it affirmed the preliminary injunction.

What LinkedIn has now uncovered is that hiQ's story was false.  It was false because hiQ's system was in fact dependent upon logging in to LinkedIn's computers to obtain URL data for its scraping operations—a practice that it continued to engage in on the side even after it obtained from LinkedIn the special IP addresses ordered by the Court.  It was also false because unbeknownst to LinkedIn (and undisclosed to the Court), LinkedIn's general anti-abuse self-help technical defenses directed against all unauthorized scrapers had already shut down hiQ's scraping before LinkedIn ever sent its cease and desist letter.

LinkedIn did not know these facts.  During the appeal of the preliminary injunction it did not discover them because the proceedings in this Court were stayed by stipulation and order.  Both parties agreed to focus on one thing at a time.  When LinkedIn eventually filed its Answer and Counterclaims in November of 2020 (ECF 170), it still had only its original investigation of hiQ's conduct to go on – LinkedIn had good reason to believe that hiQ was a scraper, hiQ had since admitted it, but LinkedIn had no insight into the black box of hiQ's system.  While LinkedIn was suspicious of hiQ's story about its conduct, and pled in its Counterclaim that the

true facts were as yet unknown, LinkedIn had no evidence that it was otherwise.

After the discovery stay expired in the summer of 2021, the parties exchanged initial disclosures, initial sets of written discovery, and negotiated for several months regarding an ESI Protocol. They collected and reviewed significant quantities of documents. LinkedIn eventually received significant productions of documents from hiQ in the first quarter of 2022, and took depositions of hiQ in May of 2022, finishing on June 1. From March to June 1, 2022, as LinkedIn reviewed the evidence, it pieced together the truth about hiQ's systems and their failure prior to May 23, 2017. Meanwhile, hiQ again sought to dispose of LinkedIn's Counterclaims for violation of the Computer Fraud and Abuse Act and California Penal Code Section 502 with its renewed motion to dismiss.

The Court now has an opportunity for the first time to consider something closer to the whole story. LinkedIn's [Proposed] Amended Counterclaims add allegations that will begin to rectify hiQ's false narrative. The Court should grant LinkedIn's Motion for Leave to Amend pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

As is now well-trodden territory in this case, on May 23, 2017, LinkedIn sent a cease and desist letter to hiQ asking hiQ to stop its use of LinkedIn's computers in violation of LinkedIn's User Agreement, federal and state statutory and common laws. Declaration of Annette L. Hurst in Support of Motion for Leave to Amend Counterclaims ("Hurst Decl.") Ex. A (LinkedIn Corp's Answer and [Proposed] Amended Counterclaims) ("ACC") ¶10-12 at 31-32.[1] ███████████ ███████████████████████████████████████ ██████████████████████████ In its Complaint filed in this action, hiQ alleged that it "only accesses profiles that LinkedIn members have made available to the general public."

---

[1] In Exhibit A to the Hurst Declaration, LinkedIn supplied to the Court a redline of its new proposed pleading against its original Counterclaims showing its proposed new allegations. If granted leave to file its new pleading, LinkedIn will file a clean signed version of the document.

1  ECF 1 ¶5 at 10-11.  In its Motion for Preliminary Injunction, hiQ represented that "hiQ does not
2  access the private sections of LinkedIn."  ECF 4 at 4:25.
3       In the declaration of its CEO, Mark Weidick, filed in support of its Motion for Preliminary
4  Injunction, hiQ testified that it "uses a variety of software and manual means to gather the raw
5  data it needs to provide Keeper and Skill Mapper for its clients.  All of these means access only
6  the public profiles section of the LinkedIn website.  None of these means access any private
7  sections of LinkedIn."  ECF 6 ¶8.  At oral argument on the Motion for Preliminary Injunction,
8  hiQ repeatedly argued that everything it did was "public," repeating the word dozens of times.
9  Attorney Gupta argued that hiQ "built a product on public information."  ECF 59 at 9:8-9.
10 "Public means public" was hiQ's mantra.  *Id.* at 26:20-21.  Attorney Tribe argued that Ninth
11 Circuit precedents were distinguishable because "Those cases involved using false pretenses or
12 inducing people to let you pass a password," a concern he argued was not present in this case.  *Id.*
13 at 92:15-20.
14      What hiQ did not disclose to LinkedIn and the Court until discovery these past few
15 months is that in fact, far from being exclusively "public," hiQ's system depended on its ability to
16 covertly log in to LinkedIn's servers. [redacted]
17 [redacted]
18 [redacted]
19 [redacted]
20 [redacted]
21 [redacted]
22 [redacted]
23 [redacted]
24 [redacted]
25 [redacted]
26 [redacted]
27 [redacted]
28





Discovery has likewise confirmed that hiQ understood full well that it was not authorized to conduct scraping of LinkedIn, and that hiQ went to extraordinary lengths to circumvent LinkedIn's efforts to enforce its prohibition on scrapers using the site for commercial purposes.



Case 3:17-cv-03301-EMC   Document 303   Filed 06/09/22   Page 9 of 12

1   █████████████████████████████████████████████
2  ████████████████████████████████████████████
3  ██████████████████████████████████████████████
4  ██████████████████████████████████████████████
5  █████████████████████████████████████████████
6  █████████████████████████████████████████████
7  ███████████████████████████████████████████████
8  █████████████████████████████████████████████
9  █████████████████████████████████████
10    ████████████████████████████████████████████
11 █████████████████████████████████████████████
12 █████████████████████████████████████████████
13 ████████████████████████████████████████████
14 ███████████████████████████████████████████████
15 ██████████████████████████████████████████████
16 ██████████████████████████████████████████████
17 ██████████████████████████████████████████████
18 █████████████████████████████████████████████
19 ████████████████████████████████████████████
20 ███████████████████████████████████████████████
21 ████████████████████████████████████████████
22 ████████████████████

23    Despite these efforts by hiQ, LinkedIn's guest-request defenses successfully identified and
24 blocked hiQ as one of many anonymous unauthorized scrapers. ████████████████████
25 ██████████████████████████████████████████████
26 ████████████████████████████████████████████
27 ██████████████████████████████████████████████
28

8

LINKEDIN'S MOT. FOR LEAVE
TO AMEND COUNTERCLAIMS
17-CV-03301-EMC

[REDACTED]

### ARGUMENT

Federal Rule of Civil Procedure 15(a)(1)(B) affords LinkedIn the right to amend its pleading once within twenty-one days of service of a motion under Rule 12. hiQ served its Motion to Dismiss via ECF on May 20, 2022, and LinkedIn is providing its Answer and [Proposed] Amended Counterclaims (Hurst Decl. Ex. A) on June 9, 2022, twenty days later.

Rule 15(a)(2) independently requires that leave to amend be granted freely as justice requires. The relevant factors in considering a request under Rule 15(a)(2) are "bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." *In re Korean Airlines Co.*, 642 F.3d 685, 701 (9th Cir. 2011).

The deadline in this action for "close of pleadings" was September 3, 2021. ECF 211 at 2. While the Ninth Circuit has held that the "good cause" standard of Rule 16 must be met for amendment of a scheduling order in order to amend a pleading after a relevant deadline, *see Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1972), it is not clear that the rule is applicable here where the amendment would be as of right. Rule 16 contemplates entry of a scheduling order with such a deadline at a time that is ordinarily well after the period for amendment as of right. *See* Fed. R. 16(b)(2). Neither *Johnson* nor any of its progeny that we have located appear to address whether Rule 16 orders should be interpreted to supersede amendments as of right under Rule 15(a)(1)(B) without explicitly saying so, rather than simply limiting the time for amendment pursuant to Rule 15(a)(2). Nonetheless, LinkedIn clearly meets the good cause standard as well as the Rule 15 standards, as set forth herein.

In particular, good cause exists to permit amendment because LinkedIn has been diligent in conducting discovery, and because LinkedIn has acted to seek amendment in a timely fashion after discovering the evidence that underlies the new allegations. As hiQ agreed in stipulations the parties have filed regarding various discovery deadlines, LinkedIn has pursued discovery "diligently" (ECF 236 at 2:26), and the parties have engaged in "extensive fact discovery in this

matter." ECF 281.  LinkedIn could not have discovered the facts otherwise; indeed, hiQ went to significant lengths to conceal the true facts in its earlier correspondence and filings.  The facts were unknown to LinkedIn on September 3, 2021 when the deadline for amending pleadings passed.  At that time, the parties were engaged in extensive meet and confer as part of the ESI Protocol process, and hiQ did not complete substantial production of the documents it eventually agreed to produce until many months later.  LinkedIn completed the last relevant session of deposition of Mr. Weidick on June 1, and is filing this motion for leave to amend a week later.

      LinkedIn has been diligent and good cause exists to amend the scheduling order (if necessary) to permit amendment.  Having satisfied the good cause standard, LinkedIn is entitled to amendment as a matter of right under Rule 15(a)(1)(B) in light of the recently served renewed Rule 12 motion.  Even were the general Rule 15 standard applicable, however, LinkedIn plainly meets it.  Especially in light of hiQ's earlier misleading presentation and what a central role its story about its own conduct has played in this action, justice requires that the true facts be included as part of the record in any consideration of the legal sufficiency of LinkedIn's counterclaims.  Moreover, there has been no undue delay by LinkedIn in bringing this evidence to the Court's attention.  There is no cognizable prejudice to hiQ—all of the facts about its own conduct were known to it at all times.  LinkedIn's motion does not add new legal theories unknown to the parties, it simply expands the factual allegations pertinent to consideration of the existing legal theories.  Nor is the amendment futile, for the reasons discussed in LinkedIn's accompanying opposition to the motion to dismiss.  Thus, under any potentially applicable Rule 15 standard, LinkedIn is entitled to amend its Counterclaims.

## **CONCLUSION**

    For the foregoing reasons, the Court should grant LinkedIn's Motion for Leave to Amend Counterclaims (and to the extent necessary amend the scheduling order to accommodate such an amendment).

| | | |
|---|---|---|
| 1 | Dated: June 9, 2022 | Orrick, Herrington & Sutcliffe LLP |
| 2 | | |
| 3 | | By: _/s/ Annette L. Hurst_ |
| 4 | | ANNETTE L. HURST<br>Attorneys for Defendant<br>LinkedIn Corporation |