UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIQ LABS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LINKEDIN CORPORATION,<br><br>　　　　Defendant. | Case No. 17-cv-03301-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION**<br><br>Docket No. 217 |

　　　　LinkedIn Corporation ("LinkedIn") filed this motion to dissolve the preliminary injunction issued in 2017 that enjoined it from blocking hiQ Labs, Inc.'s ("hiQ") access to public profiles on LinkedIn's website. For the reasons below, the Court **GRANTS** LinkedIn's motion.

## I.　　BACKGROUND

A.　　The Parties

　　　　LinkedIn is a professional network, with over 750 million members worldwide. (Docket No. 216-14 at ¶ 3.) Members create and manage their profiles on the platform to network with other professionals. (Docket No. 320 (LinkedIn's Amended Counterclaims ("Countercl.")) at ¶ 2.) Some profiles are only visible to users who have signed into LinkedIn accounts; others are wholly public, accessible to everyone regardless of the log-in status. (Docket No. 131 (First Amended Complaint ("FAC")) at ¶ 8; *see also* Countercl. at ¶¶ 31-34.)

　　　　hiQ, now dormant, was a "people analytics" company that provided information to businesses about their workforces based on statistical analysis of LinkedIn members' wholly public profiles. (FAC at ¶¶ 8-9, 34.) hiQ scraped such profiles from LinkedIn's platform using automated "bots." (Countercl. at ¶ 8.) It offered two products: "Keeper," which told employers

which of their employees were at the greatest flight risk; and "Skill Mapper," which provided a summary of the skills possessed by individual workers. (FAC at ¶ 33.) It primarily relied on LinkedIn for its data source. (*Id.* at ¶ 34.)

B. <u>Pre-Litigation History and the Preliminary Injunction</u>

In May of 2017, LinkedIn asked hiQ to stop scraping its site in a cease-and-desist letter. (FAC at ¶ 39.) It threatened action under the Computer Fraud and Abuse Act ("CFAA"), the Digital Millennium Copyright Act ("DMCA"), California Penal Code § 502(c), and the California common law of trespass. (*Id.*) It also implemented targeted IP address blocks against hiQ. (Countercl. at ¶ 11; Docket No. 216 ("Opening Br.") at 8 n.1.) According to hiQ, LinkedIn sent the cease-and-desist letter to "clear the field before the release of its own product, Talent Insights, that it considered to be in direct competition with hiQ's Skill Mapper." (Docket No. 306 ("Suppl. Opp.") at 2.)

hiQ sued LinkedIn in response, seeking injunctive relief based on California law and a declaratory judgment that LinkedIn could not lawfully invoke the CFAA, the DMCA, California Penal Code § 502(c), or the common law of trespass against it. (Docket No. 1.) hiQ also filed a request for a temporary restraining order that the parties later agreed to convert into a motion for a preliminary injunction. (Docket No. 23.)

In August of 2017, this Court granted hiQ's motion for a preliminary injunction. (Docket No. 63 ("PI Order").) It found that hiQ showed a likelihood of irreparable harm, crediting hiQ's assertion that the survival of its business was threatened absent a preliminary injunction. (*Id.* at 5.) It determined that the balance of hardships tipped sharply in hiQ's favor because LinkedIn's interest in preventing hiQ from scraping the public profiles of LinkedIn's members did not outweigh hiQ's interest in continuing its business, an interest threatened by LinkedIn's actions and legal threats. (*Id.* at 7–8.) The Court held that hiQ raised at least serious questions going to the merits of its California Unfair Competition Law ("UCL") claim and the applicability of the CFAA, based in part on the alleged anti-competitive conduct designed to suppress hiQ's competitive products. (*Id.* at 16, 23.) Finally, the Court determined that the public interest favored hiQ because giving companies like LinkedIn free rein to decide who could collect and use

data could pose a threat to the free flow of information. (*Id.* at 24.) The Court ordered LinkedIn to withdraw its cease-and-desist letter, to remove any existing technical barriers to hiQ's access to LinkedIn members' public profiles, and to refrain from erecting any legal or technical barriers that block hiQ's access to those profiles. (*Id.* at 25.)

C. hiQ's Business Post-Injunction

After the preliminary injunction issued, hiQ's business diminished significantly. (Docket No. 219-2 (Weidick Decl.) at ¶ 4.) hiQ lost out on funding from investors, all of its employees left, and it could no longer solicit new clients or renew current client contracts. (*Id.*)

hiQ wound down its operations in 2018, though its servers continued running into 2019 to deliver on client contracts. (*Id.* at ¶ 6.) It stopped paying bills to Amazon Web Services (AWS) that it was using to run all operations and to store all of its necessary data. (Docket No. 295 ("Suppl. Br.") at 3.) hiQ also decommissioned the MongoDB database necessary to support the operations of Keeper and Skill Mapper. (*Id.* at 4.) It let lapse its Salesforce subscription, archived its source code management system, took down the system containing product documentation, and lost its operational financial software. (*Id.* at 4, 7.) But hiQ "preserved its key technology assets, including source code that it used to scrape and analyze data, as well as much of the raw, scraped data that it had previously collected." (Suppl. Opp. at 5.)

Since hiQ's dormancy, several prospective business partners have approached hiQ, but none has come to fruition. (Weidick Decl. at ¶ 9; Docket No. 309 (Weidick Suppl. Decl.) at ¶¶ 4-9.) hiQ is engaging in active discussions for two projects. One is a potential partnership with Neudata (the "Neudata Project"). (Weidick Suppl. Decl. at ¶ 10.) The other is a request to use hiQ's data to research "who comprise the social entrepreneurial community" by a physician from the Philippines in collaboration with Harvard University (the "Research Project"). (*Id.* at ¶ 11.) The evidence before the Court does not establish that either project would involve the use of hiQ's analytics or their application to the scraped LinkedIn data.

D. Procedural History

LinkedIn appealed this Court's preliminary injunction order in September 2017. The Ninth Circuit upheld this Court's order in September 2019. *HiQ Labs, Inc. v. LinkedIn Corp.*, 938

F.3d 985, 1004 (9th Cir. 2019) ("*hiQ I*"). The United States Supreme Court granted LinkedIn's petition for writ of certiorari, vacated the Ninth Circuit judgment, and remanded the case for further consideration in light of *Van Buren v. United States*, 141 S. Ct. 1648 (2021). *See LinkedIn Corp. v. hiQ Labs, Inc.*, 141 S. Ct. 2752 (2021). The Ninth Circuit again affirmed the preliminary injunction. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ("*hiQ II*"). It concluded that *Van Buren* reinforced its determination that hiQ has raised serious questions about whether LinkedIn may invoke the CFAA to preempt hiQ's possibly meritorious UCL claim. *Id.* at 1180.

On September 10, 2021, shortly before the Ninth Circuit's hearing on *hiQ II*, LinkedIn filed this motion to dissolve the preliminary injunction. (Docket No. 216.) Because of the pending appeals, it requested an indicative ruling under Fed. R. Civ. P. 62.1. After briefing, the Court deferred ruling on the motion pending the Ninth Circuit's decision. (Docket No. 224 at 3.) Since the Ninth Circuit issued its opinion, the parties have supplemented their briefs. This Court has jurisdiction to rule on this motion.

## II. LEGAL STANDARD

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). The inquiry on a motion to dissolve a preliminary injunction has two parts: (1) "whether the party seeking dissolution of the injunction has established a significant change in facts or law," and if yes, (2) "whether this change warrants dissolution of the injunction." *Id.* (quotation marks and alterations omitted) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). "This latter inquiry should be guided by the same criteria that govern the issuance of a preliminary injunction." *Id.* "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

4

## III.  ANALYSIS

A.  LinkedIn Has Established A Significant Change in Facts—That hiQ No Longer Has An Ongoing Business

LinkedIn has carried its burden to establish a significant change in fact. The Court granted preliminary injunction based on hiQ's UCL claim. (PI Order at 23.) Absent the injunction, the Court found, hiQ "w[ould] likely be driven out of business" and thus suffer irreparable harm. (*Id.* at 7.) hiQ "w[ould] have to breach its agreements with its customers, stop discussions with its long list of prospective customers, lay off most if not all its employees, and shutter its operations." (*Id.* at 4.) Regardless of hiQ's reason for going out of business, the original irreparable harm supporting the preliminary injunction ceased to exist: hiQ no longer offers the competing products that underpinned its UCL claim; it does not have agreements with customers to breach; its employees are gone; its operations are dormant for the indefinite future.

Although hiQ has identified two active prospective projects, both appear to be in the preliminary discussion phase. And hiQ has not provided evidence that either will rely on continued access to LinkedIn profile data or one of its analytics. Specifically, there is no formal business proposal for either project. The Research Project seems to only require hiQ's existing data. (*See* Weidick Suppl. Decl. at Ex. G ("I was wondering if it's possible to have access to the data *you've extracted* from LinkedIn?") (emphasis added).) And it is unclear what the Neudata Project's nature is and whether it requires access to public profiles on LinkedIn's platform.

Because the original irreparable harm the Court found to support the existing preliminary injunction has ceased to exist, LinkedIn has established a significant change in facts. *Cf. Bank Julius Baer & Co. Ltd. V. Wikileaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (dissolving stipulated permanent injunction and denying preliminary injunction where information sought to be kept private had already been made public); *Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc.*, No. 1:20-cv-00005-RGE-CFB, 2021 WL 2627454, at *2 (S.D. Iowa Apr. 23, 2021) (dissolving preliminary injunction where plaintiff's original irreparable harm of potentially losing customers no longer at issue after plaintiff did lose those customers after said injunction).

B. <u>The Changed Facts Warrant Dissolution of the Preliminary Injunction</u>

Whether a significant change in facts warrants dissolution of a preliminary injunction "should be guided by the same criteria that govern the issuance of a preliminary injunction." *Karnoski*, 926 F.3d at 1198. Plaintiffs seeking preliminary relief must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original).

hiQ has not made the threshold showing that it is likely to suffer irreparable harm absent continued injunction. The harm it sought to prevent has already occurred. Its proffered future irreparable harm—that it cannot entertain future discussions with potential business partners—is speculative. hiQ has not been able to secure a client at least since its business wind-down in 2018, even with unfettered access to LinkedIn's public platform under this Court's injunction order. The few business discussions it has engaged have not materialized. And, as discussed above, the two active potential projects appear to be in early discussions. hiQ has not provided evidence that either would require access to LinkedIn profile data. Although it is *possible* that dissolving the injunction will forestall hiQ from reactivating its business, hiQ has not shown it to be *likely* as required under *Winter*.

Absent cognizable irreparable harm, the other *Winter* factors need not be considered. *See Turo Inc. v. City of Los Angeles*, 847 F.App'x 442, 444 (9th Cir. 2021) ("Having determined that the City has not made an adequate showing of the likelihood of irreparable harm on this record, we need not address the parties' arguments regarding the remaining elements of the preliminary injunction test."); *Cf. ConocoPhillips Co. v. Gonzalez*, No. 5:12–cv–00576–LHK, 2012 WL 538266, at *3 (N.D. Cal. Feb. 17, 2012) (denying *ex parte* application for TRO and preliminary injunction based on lack of irreparable harm alone).

## IV. CONCLUSION

The Court **GRANTS** LinkedIn's motion to dissolve preliminary injunction. As this Court has jurisdiction now, LinkedIn's request for indicative ruling under Fed. R. Civ. P. 62.1 is moot. This order does not preclude hiQ from seeking injunctive relief in the future should its business opportunities ripen that would require access to public LinkedIn profiles and would suffer irreparable injury absent injunctive relief.

The parties are to meet and confer and submit proposed redactions to this order one week from the issuance of this order.

This order disposes of Docket No. 217.

**IT IS SO ORDERED**.

Dated: August 1, 2022

_____
EDWARD M. CHEN
United States District Judge