DocuSign Envelope ID: 2BBD4574-950E-4A14-A6D5-F4A421CE81B5

ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (Pro Hac Vice)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>            Plaintiff,<br><br>     vs.<br><br>LinkedIn Corporation,<br><br>            Defendant. | Case No. 17-cv-03301-EMC<br><br>**DECLARATION OF PAUL ROCKWELL IN SUPPORT OF LINKEDIN CORPORATION'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Complaint Filed:  June 7, 2017<br>Trial Date:           February 27, 2023 |
| LinkedIn Corporation<br><br>            Counterclaimant,<br>     vs.<br><br>hiQ Labs, Inc.<br><br>            Counterdefendant. | |

4154-0626-3100.6

ROCKWELL DECL. ISO LINKEDIN'S
ADMIN. MOTION TO FUS
17-CV-03301-EMC

I, Paul Rockwell, declare as follows:

1. I am the Vice President and Head of the Trust & Safety organization at LinkedIn Corporation. ("LinkedIn"). I have worked at LinkedIn since April 23, 2012, when I joined to lead Risk Operations. LinkedIn is a social network whose "vision is to create economic opportunity for every member of the global workforce."[1] That opportunity comes from connections among LinkedIn's 850 million (and counting) members.

2. I renamed Risk Operations to "Trust & Safety" in November 2012, and have worked within that organization at LinkedIn since then. The Trust & Safety organization currently sits within Trust Engineering and is charged with addressing operational, product, and security risks. Trust Engineering, along with partner teams, are responsible for developing mechanisms for detection and mitigation of scraping and for investigating significant and high-scale abuse incidents. A primary goal of our teams is to ensure that the data LinkedIn's members entrust to LinkedIn remains secure, and to prevent unauthorized access to the platform—including automated access by bots, crawlers, or scrapers that attempt to scrape data from LinkedIn servers. Through my experience, I am familiar with LinkedIn's policies, anti-scraping defenses, and business practices, including what information LinkedIn considers confidential and does not disclose to the public. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

3. I have reviewed the under-seal portions of LinkedIn's Compendium of Evidence ("CE") Filed in Support of LinkedIn's August 5, 20022 Motions (collectively "Confidential Materials"). The Confidential Materials reflect confidential internal communications and deposition testimony regarding (i) LinkedIn business strategies and plans, including evaluation of and strategic decisions concerning data scrapers and competitors; (ii) internal financial metrics regarding LinkedIn's own products and (iii) technical defenses against data scraping. Each of these categories of information is not disclosed publicly and LinkedIn restricts knowledge of this information within LinkedIn to a subset of persons who need this information for their business

---

[1] Microsoft Corp. 2022 SEC Form 10-K, https://microsoft.gcs-web.com/node/30786/html.

- 1 -

ROCKWELL DECL. ISO LINKEDIN'S
ADMIN. MOTION TO FUS
17-CV-03301-EMC

4154-0626-3100.6

operations.

4. **LinkedIn's Business Strategies and Plans**. CE0957-987 (Internal 3rd party scraping presentation) reflects LinkedIn's confidential business strategies. Specifically, this exhibit includes discussion on how LinkedIn analyzes and treats third party data scrapers and how these companies impact LinkedIn's business. This exhibit further explains our internal strategy regarding third party scraping from both business and technical perspectives. This exhibit also includes LinkedIn's competitive intelligence that it has gathered on competitors and how they are impacting LinkedIn's revenue. Disclosure of this information to the public and to LinkedIn's competitors would harm LinkedIn. This harm will include, among other things, an adverse impact on LinkedIn's ability to defend against third party scrapers as they would be privy to confidential strategies for how LinkedIn treats and deals with third party scrapers. LinkedIn would also be harmed as its competitors would have an unfair advantage in knowing how LinkedIn perceives them and how to better compete against LinkedIn.

5. **Internal Financial Information**. The information in the Confidential Materials also includes internal accounting information, which would show how LinkedIn allocates its resources to various departments. Specifically, portions of CE0800-882 (Murphy Expert Report) and CE0437-542 (Malackowski Expert Report) reveal key financial metrics about (i) LinkedIn's investments in technical infrastructure including costs invested in anti-scraping initiatives and (ii) revenue based on its lines of business that are confidential and should not be made public. This type of information, if publicly revealed, would allow competitors unfair insight and advantage by allowing them to gain confidential intelligence about LinkedIn's investments and revenues and how to best compete against LinkedIn. In addition, the Murphy Export Report also provides metrics about account closings that occur after certain scraping events, which are not publicly revealed. CE800-882 (Murphy Expert Report). The public disclosure of such information would threaten LinkedIn's platforms as third parties may try to target LinkedIn for data scraping in an effort to harm or gain a competitive advantage over LinkedIn.

6. **Internal Information Regarding Technical Defenses Against Scraping.** The

1   mechanisms by which scraping traffic is blocked from accessing LinkedIn's servers are detailed in
2   portions of CE0957-987 (Internal 3rd party scraping presentation) and CE001298-1302 (Wu Depo.
3   Tr.) at 136:18-140:21.  In particular, data scrapers would obtain a granular level of detail regarding
4   circumvention of LinkedIn's technical defenses, allowing scrapers to access LinkedIn's servers
5   more readily, creating the potential for site disruption and placing a significant burden on
6   LinkedIn's servers.  LinkedIn has invested a great deal of money and personnel in its anti-scraping
7   defenses, and this level of detail with respect to those defenses is not publicly disclosed.  Building
8   out such defenses is adversarial by nature, as scrapers develop increasingly sophisticated and
9   surreptitious scraping measures in the face of more advanced defenses.  Details regarding
10  LinkedIn's technical defenses would result in significant harm by providing these scrapers with all
11  the tools necessary to circumvent LinkedIn's defenses and scrape member data.

12       I declare under penalty of perjury under the laws of the United States of America that the
13  foregoing is true and correct to the best of my knowledge.

14       Executed this 5th day of August, 2022, at Los Gatos, California.

                                            _____
                                            PAUL ROCKWELL

4154-0626-3100.6