ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (*pro hac vice*)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>LinkedIn Corporation,<br><br>　　　　Defendant. | Case No. 17-cv-03301-EMC<br><br>**DECLARATION OF ABHISHEK BAJORIA IN SUPPORT OF LINKEDIN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　Sept. 29, 2022<br>Time:　　　　1:30 p.m.<br>Courtroom:　5 – 17th Floor (Zoom)<br>Judge:　　　Hon. Edward M. Chen<br><br>Complaint Filed:　June 7, 2017<br>Trial Date:　　　February 27, 2023 |
| LinkedIn Corporation<br><br>　　　　Counterclaimant,<br>　vs.<br><br>hiQ Labs, Inc.<br><br>　　　　Counterdefendants, | |

DECL. OF ABHISHEK BAJORIA ISO
LINKEDIN'S MOT. FOR SUMMARY
JUDGMENT
No. 17-CV-03301-EMC

I, Abhishek Bajoria, hereby declare as follows:

1. I am an attorney admitted to practice in the State of California since March 2008. I have a BS in Mathematical and Computational Science from Stanford, an MS in Computer Science from Stanford, and a JD from the University of Michigan. I clerked for Judge Marilyn Hall Patel in the Northern District of California and for Judge Margaret McKeown on the Ninth Circuit Court of Appeals, and worked for several years as an associate at the San Francisco litigation firm of Keker & Van Nest. In 2015 I joined LinkedIn as a Senior Litigation Counsel, and since then have been promoted twice and changed teams, and I now serve as Director of Cybersecurity Policy for LinkedIn within the Legal Department. From 2015-2017 as a Senior Litigation Counsel and Senior Lead Litigation Counsel at LinkedIn, I focused on litigation and enforcement matters with an emphasis on intellectual property litigation.

2. I have personal knowledge of the facts stated in this declaration or I know them as a result of my direction of and collaboration with personnel within the scope of our respective job duties, and if called upon as a witness, would and could competently testify hereto. I submit this declaration in support of LinkedIn's motion for summary judgment.

3. In the Spring of 2017 I was asked by my senior colleague Sarah Wight, then Director of Litigation and Enforcement who was responsible for leading our legal anti-abuse enforcement efforts, to evaluate sending a cease-and-desist letter to a potential scraper called hiQ Labs. I was familiar with the legal issues involved in scraping both from my time in private practice and my time at LinkedIn. With an advanced degree in computer science, I was also generally familiar with the technology issues involved in scraping. I approached the assignment well aware of my legal and ethical obligations as a litigation attorney, and also with the understanding that my judgment as a lawyer (subject to supervision by other experienced litigation attorneys) would be the final determinant as to whether LinkedIn believed it was appropriate to pursue legal enforcement action against hiQ.

4. As I commenced my work regarding hiQ, I became aware of certain information presented by hiQ at a recent conference attended by several LinkedIn employees. I also directed

- 1 -

DECL. OF ABHISHEK BAJORIA ISO
LINKEDIN'S MOT. FOR SUMMARY
JUDGMENT
No. 17-cv-03301-EMC

and collaborated on an initial investigation into hiQ's scraping activities. I estimate that involved more than three hours of work by LinkedIn's technical anti-scraping team, consisting of Sahil Honda, Yoav Podemsky, Prachi Agarwal, and Shreyas Nangalia; four to five hours by the investigations team, consisting of Assaf Kipnis and Sean McCue; and eight to ten hours by the legal team, including myself and Ms. Wight, to direct and collaborate on the investigation, analyze the information, and draft a letter addressing hiQ's conduct. (This is a description of the amount of work done up until the point we sent the letter, and is not exhaustive of all of the work that we continued to do thereafter.)

5. When analyzing whether it was appropriate to send a cease-and-desist letter to hiQ, I considered all of the information described above and applied my legal knowledge and independent judgment. Based on the information available to me, I determined that there appeared to be a sufficient factual and legal basis to send a cease-and-desist letter to hiQ insisting that it cease scraping LinkedIn's website in violation of the LinkedIn User Agreement and other laws. I used as a starting point for the letter our standard template for use in such situations that we had developed consistent with industry practice adopted by platforms in the wake of the *Facebook v. Power Ventures* case decided in the Ninth Circuit in 2016. I believed the assertions of that letter were both factually and legally justified. I also discussed and confirmed with Ms. Wight, and she reviewed the letter and confirmed it should be sent prior to me sending it. A true and correct copy of my May 23, 2017 letter is attached hereto as Exhibit A. As I understand it, hiQ has since admitted in litigation that it was in fact scraping LinkedIn's member profiles so the fundamental factual assertions of the letter were correct.

I hereby declare that this declaration was executed under penalty of perjury under the laws of the United States on August 3, 2022 at Mountain View, California.

By: _____
Abhishek Bajoria

- - 2 - -

DECL. OF ABHISHEK BAJORIA ISO
LINKEDIN'S MOT. FOR SUMMARY
JUDGMENT
No. 17-CV-03301-EMC

DocuSign Envelope ID: B15ED0BB-74A9-43BC-855C-2F1222F5B2CE

# EXHIBIT A



Abhishek Bajoria<br>
Senior Litigation Counsel<br>
LinkedIn Corporation<br>
1000 W. Maude Avenue<br>
Sunnyvale, CA 94085<br>
abajoria@linkedin.com

May 23, 2017

*Via Email* to sales@hiqlabs.com

Mark Weidick
hiQ Labs, Inc.
575 Market Street, #850
San Francisco, CA 94105

**RE**: **Demand to Immediately Cease and Desist Unauthorized Data Scraping and other Violations of LinkedIn's User Agreement**

Mr. Weidick:

    I write on behalf of LinkedIn Corporation ("LinkedIn"). It has come to LinkedIn's attention that hiQ Labs, Inc. ("hiQ") has used and is using processes to improperly, and without authorization, access and copy data from LinkedIn's website, www.linkedin.com. This is not acceptable.

    hiQ's software offered at www.hiqlabs.com is impermissibly and illegally accessing and scraping data from LinkedIn. Indeed, hiQ's website explains how its product improperly incorporates skills data from LinkedIn's website:

- Explore the skills that your employees are self-curating on the web and augment/update your company's database of employee competencies.
- Because Skill Mapper is based on publicly available data, you can explore the full scope of your workforce's skills, including skills from previous and current roles.

*See* https://www.hiqlabs.com/solutions. Moreover, hiQ has stated during marketing presentations that its Skill Mapper product is built on profile data from LinkedIn, and that this data is "refreshed" every two weeks. There can thus be no doubt that hiQ's product copies and scrapes data from LinkedIn, including "skills" information from the LinkedIn profiles of LinkedIn members.

    LinkedIn has earned its members' trust by acting vigilantly to keep their data secure. hiQ's actions and products violate this trust, as well as several provisions of LinkedIn's User Agreement (found at https://www.linkedin.com/legal/user-agreement). In particular, among other things, LinkedIn's User Agreement prohibits the following:

May 23, 2017
Page 2 of 3

- Scrape or copy profiles and information of others through any means (including crawlers, browser plugins and add-ons, and any other technology or manual work);
- Copy or use the information, content or data of others available on the Services (except as expressly authorized);
- Rent, lease, loan, trade, sell/re-sell access to the Services or any related information or data;
- Share or disclose information of others without their express consent; and
- Use manual or automated software, devices, scripts robots, other means or processes to access, "scrape," "crawl" or "spider" the Services or any related data or information.

As demonstrated above, hiQ is violating each of these provisions.

To be clear, hiQ's prior and present access of LinkedIn's website and/or servers violates LinkedIn's User Agreement and the law. hiQ's company page on LinkedIn has been restricted. Any future access of any kind by hiQ is without permission and without authorization from LinkedIn. Further, LinkedIn has implemented technical measures to prevent hiQ from accessing, and assisting others to access, LinkedIn's site, through systems that detect, monitor, and block scraping activity. Circumventing these technical measures and accessing LinkedIn's website without LinkedIn's authorization constitute violations of multiple state and federal laws, including but not limited to:

- California Penal Code Section 502(c);
- Federal Computer Fraud and Abuse Act (18 U.S.C. §§1030);
- State common law of trespass; and
- the Digital Millennium Copyright Act (17 U.S.C. §§512, 1201).

*See, e.g., Craigslist Inc. v. 3Taps Inc. et al* (N.D. Cal., Aug. 16, 2013) (ignoring revocation of permissions to access, and circumventing IP blocking measures, constitutes a violation of the CFAA); *Facebook, Inc. v. Power Ventures, Inc.,* No. 13-17102, 2016 WL 3741956, at *8 (9th Cir. July 12, 2016) (defendant who "disregarded the cease and desist letter . . . accessed Facebook's computers 'without authorization' within the meaning of the CFAA and is liable under that statute").

Accordingly, LinkedIn demands that hiQ immediately:

1. Cease and desist accessing or attempting to access or use LinkedIn's website, computers, computer systems, computer network, computer programs, and data stored therein (whether directly or through third parties);

2. Destroy all data, documents, and other items, electronic or otherwise, in their possession, custody, or control, that were copied, extracted or otherwise derived from LinkedIn's website (whether directly, indirectly, via members, or from other third parties); and

Confidential

LINK_HIQ_000002225

May 23, 2017
Page 3 of 3

3. Cease and forever desist from any conduct inducing members to violating LinkedIn's User Agreement and Privacy Policy, including but not limited to offering software or services the use of which by members violates LinkedIn's User Agreement and Privacy Policy.

LinkedIn would prefer to resolve this matter amicably, and I look forward to your response by May 31. This letter is not a recitation of all of the facts pertaining to this matter or all of LinkedIn's possible claims. Accordingly, LinkedIn is not waiving any of its rights and remedies, all of which LinkedIn expressly reserves. If hiQ does not comply with the requests set forth in this letter, LinkedIn reserves all of its rights and remedies, including legal action.

Regards,

Abhishek Bajoria
Senior Litigation Counsel
LinkedIn Corporation