ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (*Pro Hac Vice*)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

*Attorneys for Defendant/Counterclaimant
LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>           Plaintiff,<br><br>    vs.<br><br>LinkedIn Corporation,<br><br>           Defendant.<br><br>LinkedIn Corporation<br><br>           Counterclaimant,<br>    vs.<br><br>hiQ Labs, Inc.<br><br>           Counterdefendant, | Case No. 17-cv-03301-EMC<br><br>**[PROPOSED] ORDER GRANTING LINKEDIN'S MOTION FOR SPOLIATION SANCTIONS** |

LinkedIn Corporation's ("LinkedIn") Motion for Spoliation Sanctions ("Motion") duly came on for hearing on September 29, 2022. The Court, having considered the motion and the papers filed in connection therewith, including the responses and replies, as well as the argument of counsel, hereby **GRANTS** LinkedIn's Motion.

The Court finds that hiQ intentionally spoliated two categories of electronically stored information that were significant for this lawsuit: (1) records of hiQ's scraping activity stored on cloud storage servers with Amazon Web Services and Splunk; and (2) hiQ's entire Salesforce.com customer relationship management database.

hiQ had a duty to preserve the scraping activity records and the customer relationship management database as early as May 23, 2017, the date LinkedIn sent hiQ its cease-and-desist letter, but no later than June 20, 2017, the date hiQ filed this lawsuit. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, – F. Supp. 3d. –, 2022 WL 1990225, at *6 (N.D. Cal. May 27, 2022) (holding that the duty to preserve evidence arises "no later than when [a party] filed its first complaint"). The relevance of the evidence is not seriously in question, as even hiQ's own legal hold instructed its employees to retain similar evidence. And the evidence was in hiQ's possession, custody, or control during the relevant time period. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009) (holding that the duty to preserve extends to all evidence in a party's "possession, custody, or control").

Despite that duty, hiQ did not take reasonable steps to preserve the evidence in question. It made no attempt to keep its cloud storage accounts active, nor did it notify LinkedIn or the Court of the impending destruction of this evidence. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591–92 (4th Cir. 2001) ("If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.").

Due to hiQ's failure to preserve the data, the data is lost and irreplaceable. The data is unquestionably gone forever, and hiQ can point to no adequate substitute for it.

In failing to take reasonable steps to preserve the lost data, hiQ acted with the intent to

deprive LinkedIn of its use in litigation.  hiQ's failure here—allowing the permanent destruction of evidence despite months, if not years, of warnings by the cloud storage companies—is "so stunningly derelict as to evince intentionality." *Moody v. CSX Transport., Inc.*, 271 F. Supp.3d 410, 432 (W.D.N.Y. 2017); *see also Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at 10 (N.D. Cal. Dec. 15, 2021) ("A party's deletion of information qualifies as intentional 'if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).  There is also evidence that hiQ saved evidence that was helpful to its business and to its arguments in this litigation (the "raw scraped" LinkedIn member profile data), while allowing evidence that was harmful to its arguments (the scraping activity records) to be deleted from the same location.  *See Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 670–71 (S.D.N.Y. 2017) (finding that a party that got a new phone and "manag[ed] to back-up pictures but, somehow, not text messages . . . evince[s] the kind of deliberate behavior that sanctions are intended to prevent and weigh in favor of an adverse inference") *rev'd in part on other grounds by Ronnie Van Zant, Inc. v. Cleopatra Records, Inc.*, 906 F.3d 253 (2d Cir. 2018).  The Court thus finds that hiQ acted intentionally under Rule 37(e)(2).

The Court finds that the prejudice to LinkedIn is extreme.  hiQ's competition-related claims all center on an allegation that LinkedIn interfered with hiQ's customer relationships when it sent hiQ the May 27, 2017, cease-and-desist letter.  hiQ is attempting to prove that allegation with testimony from its upper management about those customer relationships.  But hiQ destroyed the only contemporaneous record of what caused those relationships to fail.  To allow hiQ's claims to proceed on this record would be to allow hiQ to benefit from its own bad act.  Without the scraping activity records, LinkedIn is deprived of evidence showing the total load that hiQ's scraping placed on LinkedIn's servers, a crucial issue in several of LinkedIn's claims that hinge on the harm or potential harm to LinkedIn.

The Court issues the following sanctions against hiQ:

1. The Court will presume for the purposes of LinkedIn's summary judgment motion that LinkedIn's expert analysis performed by Xiaofeng Wu is correct, and that hiQ's scrapers

1   made at least fifty billion requests on LinkedIn's servers.  Should the case proceed to trial, the
2   Court will instruct the jury that hiQ failed to preserve crucial data relating to hiQ's scraping
3   activity, and that because of that, the jury must accept Xaiofeng Wu's analysis and presume that
4   the data would have shown that hiQ's scrapers made at least fifty billion requests on LinkedIn's
5   web servers.  hiQ is precluded from offering any evidence to the contrary or otherwise disputing
6   Xiaofeng Wu's analysis in connection with summary judgment, Rule 702 motions, and trial.

7       2.    The Court will presume for the purposes of LinkedIn's summary judgment motion
8   that LinkedIn's general technical defenses had prevented hiQ from collecting data to such a
9   degree that hiQ could no longer effectively scrape LinkedIn profiles prior to the time LinkedIn
10  sent its May 23, 2017, cease-and-desist letter.  Should the case proceed to trial, the Court will
11  instruct the jury that hiQ failed to preserve crucial data relating to hiQ's scraping activity, and that
12  because of that, the jury must presume that the data would have shown that LinkedIn's technical
13  defenses had prevented hiQ from collecting data to such a degree that hiQ could no longer
14  effectively scrape LinkedIn profiles prior to the time LinkedIn sent its May 23, 2017, cease-and-
15  desist letter.  hiQ is precluded from offering any evidence to the contrary or otherwise disputing
16  that fact in connection with summary judgment, Rule 702 motions, and trial.

17      3.    The following claims in hiQ's Amended Complaint are **DISMISSED WITH**
18  **PREJUDICE**:

19      a.    Count Five: Intentional Interference with Contract
20      b.    Count Six: Intentional Interference with Prospective Economic Advantage;
21      c.    Count Seven: Unfair Competition in violation of Cal. Bus. Prof. Code
22      § 17200, *et seq.*
23      d.    Count Eight: Unlawful Competition in Violation of Cal. Bus. Prof. Code
24      § 17200, *et seq.*
25      e.    Count Nine: Fraudulent Competition in Violation of Cal. Bus. Prof. Code
26      § 17200, *et seq.*

27      4.    hiQ shall be liable to LinkedIn for the attorneys' fees and costs associated with
28  LinkedIn's bringing its Motion for Spoliation Sanctions.  hiQ shall further be liable to LinkedIn

for the costs associated with analysis directed by Mr. Wu at LinkedIn, including the costs associated with the work performed by LinkedIn's expert Douglas Schmidt in assisting with Mr. Wu's analysis.  LinkedIn shall file a declaration setting forth those amounts within thirty (30) days of the issuance of this Order.  hiQ shall have fifteen (15) days thereafter to respond only to the issue of those amounts.  LinkedIn shall have seven (7) days after hiQ's response to file a reply.

**IT IS SO ORDERED**.

Dated: _____

_____
HON. EDWARD M. CHEN
UNITED STATES DISTRICT JUDGE