ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (Pro Hac Vice)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>          Plaintiff,<br><br>     vs.<br><br>LinkedIn Corporation,<br><br>          Defendant. | Case No. 17-cv-03301-EMC<br><br>**DECLARATION OF PAUL ROCKWELL IN SUPPORT OF LINKEDIN CORPORATION'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Complaint Filed:  June 7, 2017<br>Trial Date:           February 27, 2023 |
| LinkedIn Corporation<br><br>          Counterclaimant,<br>     vs.<br><br>hiQ Labs, Inc.<br><br>          Counterdefendant. | |

ROCKWELL DECL. ISO LINKEDIN'S
ADMIN. MOTION TO FUS
17-CV-03301-EMC

I, Paul Rockwell, declare as follows:

1. I am the Vice President and Head of the Trust & Safety organization at LinkedIn Corporation ("LinkedIn"). I have worked at LinkedIn since April 23, 2012, when I joined to lead Risk Operations. LinkedIn is a social network whose "vision is to create economic opportunity for every member of the global workforce."[1] That opportunity comes from connections among LinkedIn's 850 million (and counting) members.

2. I renamed Risk Operations to "Trust & Safety" in November 2012, and have worked within that organization at LinkedIn since then. The Trust & Safety organization currently sits within Trust Engineering and is charged with addressing operational, product, and security risks. Trust Engineering, along with partner teams, are responsible for developing mechanisms for detection and mitigation of scraping and for investigating significant and high-scale abuse incidents. A primary goal of our teams is to ensure that the data LinkedIn's members entrust to LinkedIn remains secure, and to prevent unauthorized access to the platform—including automated access by bots, crawlers, or scrapers that attempt to scrape data from LinkedIn servers. Through my experience, I am familiar with LinkedIn's policies, anti-scraping defenses, and business practices, including what information LinkedIn considers confidential and does not disclose to the public. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

3. I have reviewed the under-seal portions of LinkedIn's Opposition to hiQ's Motion for Summary Judgment and evidence in support thereof (collectively "Confidential Materials"). The Confidential Materials reflect confidential internal information regarding LinkedIn's technical defenses against data scraping. This information is not disclosed publicly and LinkedIn restricts knowledge of this information within LinkedIn to a subset of persons who need this information for their business operations.

4. The mechanisms by which scraping traffic is blocked from accessing LinkedIn's servers are detailed in the Confidential Materials. If data scrapers had access to the Confidential

---

[1] Microsoft Corp. 2022 SEC Form 10-K, https://microsoft.gcs-web.com/node/30786/html.

1  Materials, they could more easily and readily circumvent LinkedIn's generally applicable
2  technical defenses. In particular, data scrapers could use the Confidential Materials to better
3  design methods to circumvent LinkedIn's general technical defenses, access LinkedIn's servers
4  more readily at very high volumes of traffic, and create the potential for site disruption. Such
5  efforts and traffic would place a significant burden on LinkedIn's servers. LinkedIn has invested
6  a great deal of money and personnel in its anti-scraping defenses, and this level of detail with
7  respect to those defenses is not publicly disclosed. Building out such defenses is adversarial by
8  nature, as scrapers develop increasingly sophisticated and surreptitious scraping measures in the
9  face of more advanced defenses. As a result, providing scrapers with any significant detail about
10 LinkedIn's defenses such as the Confidential Materials would effectively give them "keys" to
11 LinkedIn's defenses, undermine the efficacy of LinkedIn's defenses, and harm LinkedIn's
12 investment in anti-scraping technical measures.

13       I declare under penalty of perjury under the laws of the United States of America that the
14 foregoing is true and correct.

15       Executed this 30th day of August, 2022, at Los Gatos, California.

                                                              PAUL ROCKWELL