# EXHIBIT K



September 8, 2021

***Via E-Mail***

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

**orrick.com**

**Nathan Shaffer**

**E** nshaffer@orrick.com
**D** +1 415 773 5440
**F** +1 415 773 5759

Renita N. Sharma
Hope D. Skibitsky
Quinn Emanuel Urqhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
renitasharma@quinnemanuel.com
hopeskibitsky@quinnemanuel.com

Dear Renita & Hope:

This letter is intended to memorialize our discussions on September 2 and 7, 2021, regarding hiQ's responses to LinkedIn's requests for production. Please respond to this letter if anything below is inaccurate or requires further clarification. Additionally, we are raising an issue with hiQ's response to LinkedIn's interrogatory number three below.

<u>LinkedIn's Requests for Production ("RFP")</u>

- **Objections Based On Time Period.** hiQ objected to a number of LinkedIn's requests based on the time period covered by the request. *E.g.*, Resps. to RFPs 3, 21–24, and 46. LinkedIn explained that the reasonable time period for production from hiQ is 2012–present, unless otherwise specified for a number of non-exclusive reasons. The litigation was filed in 2017, meaning that the period preceding the filing date is only five years. hiQ's damages theory, which seeks the entire enterprise value of hiQ's business as if it had become a successful company, requires discovery to the company's founding in 2012. hiQ sought to distinguish between the pre- and post-2014 time periods based on hiQ's corporate name change, but did not explain why a single entity electing to change its name provided a cognizable cutoff date for discovery. The pre-2014 period is certainly relevant and in scope because that is the period when hiQ developed its business plan and likely made a conscious decision to take the risk of basing its business on method of access to LinkedIn's website that violated LinkedIn's User Agreement. hiQ said that it would consider LinkedIn's position as to the relevant time period for LinkedIn's discovery requests. Please let us know if hiQ will withdraw its objections to LinkedIn's requests insofar as based on time period.

- **RFP No. 2.** hiQ objected to this request to the extent that it calls for the production of software in "executable" form. During our call, hiQ explained that it will not withhold software from production on the basis of this objection, but the objection reflects the reality that most, if not all, of hiQ's software was written in JavaScript, which does not have an "executable" form. However, hiQ agreed that if software in executable form or non-executable form were located, such software will be produced.






- **RFP No. 3.** hiQ objected to this request on burden grounds, but has since determined that there are not likely to be logs or records of hiQ's access or attempted access to LinkedIn's website, servers, or computers. In light of this information, hiQ confirmed that if any such logs are located, they will be produced.

- **RFP No. 6.** hiQ agreed to withdraw its "vague and ambiguous" objection to this request and will produce responsive documents, subject to privilege.

- **RFP No. 14.** hiQ objected to this request on the ground that 1) it included individuals acting on hiQ's behalf within its scope, 2) it is "vague and ambiguous because the term 'agreements' is undefined," and 3) the request may suggest that there were legally binding agreement between hiQ and LinkedIn. hiQ agreed to withdraw objections under grounds 2 and 3. With respect to the first ground, LinkedIn explained that individual accounts are relevant and discoverable because it is through individual user accounts that any company action that required logging in occurred, and as such there is no basis to exclude individual account activity reflected in hiQ's repositories from discovery. hiQ agreed to search for and produce documents concerning some activity on behalf of hiQ, such as creating the hiQ company page and agreements specific to hiQ, but stood on its objection with respect to individual user accounts. Please let us know if hiQ is willing to reconsider its position given central relevance of individual user activity on LinkedIn's platform to this litigation.

- **RFP 16.** This request seeks documents and communications regarding hiQ's methodology for analyzing data from LinkedIn's website for use in hiQ's products. hiQ objected to this request on relevance grounds and due to the confidential nature of the requested information. On the former, LinkedIn explained that the requested information is relevant to hiQ's damages claims, particularly since hiQ claims it was conduct of LinkedIn that caused hiQ's busines to fail. LinkedIn is entitled to test the strength of hiQ's claim that it had an otherwise viable and valuable offering to the people analytics market, among other things. On the latter objection, LinkedIn explained that it is obviated by the Court's entry of a three-tier protective order. hiQ said that it would reconsider its position in light of our discussion. Please let us know if hiQ is willing to reconsider its position and produce documents responsive to this request.

- **RFP 21**. This request seeks documents and communications concerning any customer decision to terminate their business relationship with hiQ. hiQ asserted a relevance objection to this request. hiQ explained that it intends to limit its response based on a corporate name change that occurred around 2014, and only produce document after that date. LinkedIn explained that the information sought goes to a central issue in the case, i.e., whether hiQ's customers terminated business with hiQ because of LinkedIn, as alleged, or for some other reason. LinkedIn also explained that a corporate name change has no bearing on relevance because





there is only one legal entity at issue regardless of name. LinkedIn further explained that although hiQ maintained a Salesforce CRM database that may have contained this information in one central and easily produced location, that database has since been lost meaning that any burden issue associated with searching for responsive information is due to hiQ's own actions. hiQ said that it would reconsider its position in light of our discussion. Please let us know if hiQ is willing to reconsider its position and produce documents responsive to this request.

- **RFP 22**. This request seeks documents and communications between hiQ and any third party discussing LinkedIn data. hiQ asserted a relevance objection to this request. LinkedIn explained that the information sought goes to a central issue in the case, i.e., the use of and importance of LinkedIn data to hiQ and its customers and other third parties, including without limitation vendors hiQ may have used to scrape LinkedIn data. hiQ said that it would reconsider its position in light of our discussion. Please let us know if hiQ is willing to reconsider its position and produce documents responsive to this request.

- **RFP 23.** This request seeks hiQ's promotional and marketing materials. hiQ objected that the request is vague as to the term "information," but hiQ withdrew that objection upon explanation that the request seeks information sent or used by hiQ in a promotional context and agreed to produce non-privileged document responsive to this request, as clarified.

- **RFP 24.** This request seeks hiQ's promotional materials made available to investors or prospective investors. hiQ objected that the request is vague as to the term "investor relations materials," but hiQ withdrew that objection upon explanation that the request seeks information sent or used by hiQ in order to promote itself to investors or prospective investors and agreed to produce non-privileged document responsive to this request, as clarified.

- **RFP 25.** hiQ withdrew its objections to this request and agreed to produce responsive materials, subject to privilege.

- **RFP 29.** This request seeks production of reviews or complaints regarding hiQ's data collection, use of LinkedIn profiles or data, or hiQ's products. hiQ said that it did not object to producing documents responsive to this request in principle, but did not know if there was a ticketing system that might contain customer complaints or similar information. hiQ agreed to look into the available information and let us know if it was willing to reconsider its objections to this request.

- **RFP 36.** This request seeks documents and communications regarding hiQ's finances. hiQ agreed to produce all financial records responsive to the request, but suggested that all communications about finances was too broad. LinkedIn will agree to address this issue by





applying agreed search terms consistent with the parties' forthcoming ESI stipulation. Let us know if hiQ agrees.

- **RFP 41.** This request seeks documents and communications concerning hiQ's policies, procedures, or practices concerning its use of and handling of data from LinkedIn's website, servers, or computers. hiQ agreed that it would produce all documents reflecting such policies, but hiQ objected that producing responsive communications was unduly burdensome. LinkedIn will agree to address the communications portion of this request by applying agreed search terms consistent with the parties' forthcoming ESI stipulation. Let us know if hiQ agrees.

- **RFP 44.** This request seeks documents and communications concerning the departure or termination of (a) hiQ's former CEO or (b) of any employee from January 1, 2017, through the present. hiQ agreed to withdraw its objections to this request if projection is subject to the parties' search term protocol. LinkedIn agrees that hiQ can respond to this request using the agreed search terms consistent with the parties' forthcoming ESI stipulation.

- **RFP 47.** This request seeks production of documents and communications concerning any LinkedIn account created by hiQ. Similar to RFP No. 14, hiQ contends that this request should exclude individual accounts. As discussed above, that restriction is unacceptable because virtually all logged-in conduct on the LinkedIn website occurs through individual user accounts, meaning that hiQ's interactions with LinkedIn's website occurred through employees' acting on hiQ's behalf. hiQ agreed to consider LinkedIn's position. Please let us know if hiQ will withdraw its objection and agree to produce documents responsive to this request.

- **RFP 49.** This request seeks production of communications requesting that hiQ cease and desist any of its activities. hiQ agreed to withdraw its vague and ambiguous objection and produce responsive documents, subject to privilege, based on LinkedIn's clarification that "cease and desist" means any request that hiQ stop what it is doing.

- **RFP 58.** This request seeks documents and communications reflecting consideration, analysis, or comparison of data collected through disclosed consensual means from employees of hiQ's customers. hiQ objected that the request is vague and ambiguous, and LinkedIn clarified that the request seeks production of documents regarding means of acquiring data other than scraping. With that clarification, hiQ agreed to withdraw its objection and produce responsive documents, subject to privilege.





<u>hiQ's Response to LinkedIn's Interrogatory No. 3</u>

We received hiQ's unredacted response to Interrogatory No. 3, which identifies two vendors hired by hiQ to scrape LinkedIn's website. However, the vendors are not identified with particularity and each may have multiple corporate entities associated with the disclosed name. Please provide the legal name of any entity or entities with which hiQ directly contracted in order to scrape or acquire data from LinkedIn.

* * *

I look forward to our next discussion. In the meantime, please let me know if there is anything in this letter that is inaccurate or needs to be clarified.

Sincerely,

Nathan Shaffer