# EXHIBIT M

1  Corey Worcester (*pro hac vice*)
   coreyworcester@quinnemanuel.com
2  Renita Sharma (*pro hac vice*)
   renitasharma@quinnemanuel.com
3  Hope Skibitsky (*pro hac vice*)
   hopeskibitsky@quinnemanuel.com
4  QUINN EMANUEL URQUHART AND SULLIVAN LLP
   51 Madison Avenue, 22nd Floor
5  New York, NY 10010
   Telephone:     (212) 849-7000
6
   Terry L. Wit (SBN 233473)
7  terrywit@quinnemanuel.com
   QUINN EMANUEL URQUHART AND SULLIVAN LLP
8  50 California Street, 22nd Floor
   San Francisco, CA 94111
9  Telephone:     (415) 875-6331

10
   Attorneys for Plaintiff hiQ Labs, Inc.
11

12                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| 14  hiQ LABS, INC., | Case No.: 17-CV-03301-EMC |
| 15                         Plaintiff, | **PLAINTIFF HIQ LABS, INC.'S SECOND SUPPLEMENTAL RESPONSES TO LINKEDIN CORPORATION'S SECOND SET OF INTERROGATORIES** |
|        vs. | |
| 16  LINKEDIN CORPORATION, | |
| 17                         Defendant. | Judge:  Hon. Edward M. Chen |

18
19
20
21
22
23
24
25
26
27
28

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and this Court's Local Civil Rules, Plaintiff hiQ Labs, Inc. ("hiQ"), by and through its undersigned counsel, hereby provides the following objections and supplemental responses to Defendant LinkedIn Corporation's ("LinkedIn's) Second Set of Interrogatories dated March 1, 2022.

hiQ makes the responses herein solely for the purposes of this Action. By responding to each Interrogatory, hiQ does not waive objections to the admission of these responses into evidence on the grounds of relevance, materiality, or any other proper grounds for objection. hiQ reserves all objections to the use of these responses to Interrogatories. hiQ may impose all such objections at the time of trial or as otherwise required by the applicable rules or order of the Court. hiQ objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privileges.

hiQ's responses and objections set forth herein are based upon information presently known to hiQ. hiQ reserves the right to amend, supplement, or withdraw its responses and objections to each Interrogatory, including to take into account additional information that comes to light during discovery.

Each person or company marked with an asterisk ("*") must be protected as Confidential in accordance with the Court's Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (Dkt. 213). Each person or company marked with two asterisks ("**") must be protected as Highly Confidential – Attorneys' Eyes Only in accordance with the same.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 16:

For any request for production served by LinkedIn for which you are unable to comply because one or more documents that once existed are no longer available to you, identify the request for which you are unable to comply, describe the documents you are unable to produce, and describe the circumstances through which the documents became unavailable to you.

CONFIDENTIAL

**RESPONSE TO INTERROGATORY NO. 16:**

hiQ objects to this Interrogatory as unduly burdensome and disproportionate as it seeks the same information already provided in response to Topics 39, 40, and 41 from LinkedIn's Notice of Deposition Pursuant to Rule 30(b)(6). hiQ also objects to this Interrogatory as overbroad and unduly burdensome insofar as it seeks identification of every document responsive to "any request for production served by LinkedIn", which is "no longer available to hiQ," and then asks hiQ to "describe" both the "unavailable" documents and the "circumstances" under which these "unavailable" documents became so. hiQ further objects to this Interrogatory on the ground that it contains compound, conjunctive, or disjunctive questions. hiQ further objects to the premise of this Interrogatory that hiQ is aware of all documents that once existed but no longer exist.

hiQ further objects to this Interrogatory to the extent that hiQ does not know, without reviewing any no-longer existing material, whether such material would necessarily be responsive to any request for production. hiQ further objects to this request insofar as it implies that hiQ would have any obligation to search any data repositories for responsive information in light of the parties' agreement regarding searches and search parameters.

Subject to the foregoing objections, hiQ responds that it is currently aware of the following materials that may be responsive to LinkedIn's requests for production to which hiQ agreed to produce but that are no longer within hiQ's possession, custody, or control:

As hiQ advised LinkedIn during the parties' first discovery meet and confer on August 6, 2021, hiQ had a paid Salesforce instance that contained information relating to the Company's communications with clients and prospective clients. The Salesforce instance had an associated Pardot account, which is a marketing automation tool. (*See* 8/25/21 LinkedIn Ltr.) While the entirety of the contents of that Salesforce instance have not been archived, information stored in that Salesforce instance is otherwise available and has been produced. (*See* Weidick Mar. 18, 2022 Tr. 32:17-23.) In particular, hiQ routinely generated reports from Salesforce that were used to operate its business,

CONFIDENTIAL

including reports provided to hiQ's Board.  (Weidick Mar. 18, 2022 Tr. 33:10-23.)  Such reports and other information generated from Salesforce remain available through emails and in hiQ's Box account (where much of hiQ's financials were stored) which have been preserved and searched during discovery in this matter.  hiQ understands that Salesforce deleted the raw data from hiQ's Salesforce instance at some point in or around January 2020 after hiQ had been unable to pay its Salesforce bills on account of LinkedIn's calculated and malicious interference with hiQ's business.  (*See, e.g.*, hiQ_00404912).  hiQ's Salesforce instance may have contained material responsive to requests for production 12 and 13.

As hiQ explained repeatedly during the parties' meet and confer process, including during our meet and confers on August 6 and 20, 2021, hiQ's technical infrastructure was hosted on Amazon Web Services ("AWS"), a cloud service.  (*See* 8/25/21 LinkedIn Ltr. at 1.)  AWS housed the software applications for hiQ's Keeper and Skill Mapper offerings from which reports were provided to customers.  AWS also housed MongoDB which stored raw and parsed data scraped from LinkedIn.

Given LinkedIn's malicious and intentional interference with hiQ's business, hiQ was forced to wind down its active operations and stopped receiving sufficient income to pay its bills.  As a result, AWS ultimately terminated hiQ's account and AWS deleted the data that was stored on that account in or around September 2020.  (*See* Weidick Mar. 18, 2022 Tr. 82:12-15; *see also* hiQ_00403885).  Prior to the AWS account being shut down, hiQ archived the raw data scraped from LinkedIn as it was sitting in the MongoDB as of April 25, 2018, and has produced that raw data to LinkedIn in response to Request for Production 6.  Any data scraped after April 25, 2018 would have been stored on AWS and would have been lost as a result of AWS deleting hiQ's data for non-payment.  As hiQ has explained to LinkedIn during the parties' early discovery meet-and-confers, hiQ did not archive the "parsed" version of raw data, which was simply a sub-set of the raw data that hiQ did archive.  (*See* Weidick Mar. 18, 2022 Tr. 87:19-88:9.)  Similarly, hiQ did not archive the databases referenced in

Request for Production no. 71, which were, like the parsed data, simply subsets of the raw data that hiQ archived in April 2018.

hiQ also had a Splunk instance while it was actively operational. Splunk offers a logging service that helps consolidate logs emitted from different services. hiQ's Splunk logs were not archived and, while hiQ has been able to obtain and produce a subset of those logs, hiQ has not been able to obtain all of those logs.

hiQ also had a Chorus account during the period from January 2017 through December 2017 that stored audio recordings of some sales calls and meetings. That account was not renewed at the end of 2017, and Chorus deleted any data from that account in early 2018.

Members of hiQ's sales team, including its CEOs Mark Weidick and Darren Kaplan, had join.me login credentials during a period of time while hiQ was fully operational. Join.me stored audio recordings of some sales calls, sales trainings, and meetings. hiQ has reviewed and produced responsive recordings from the join.me accounts of its two CEOs (Darren Kaplan and Mark Weidick), as well as its long-time Head of Sales (Darin Medeiros). hiQ has been unable to access data that may have existed from any other join.me accounts associated with hiQ's agreed-upon custodians and hiQ is therefore unable to confirm whether any other accounts in fact stored any recordings. Other hiQ custodians who were members of hiQ's sales team were Jeanne McFadden, Ryan Hammond, and Xander Oltmann, none of whom recalls whether they recorded any calls or meetings using join.me.

Dated: August 3, 2022                QUINN EMANUEL URQUHART &
                                     SULLIVAN LLP


                                By:  /s/ Hope Skibitsky
                                     Hope Skibitsky
                                     hopeskibitsky@quinnemanuel.com
                                     QUINN EMANUEL URQUHART
                                     & SULLIVAN, LLP
                                     51 Madison Avenue, 22nd Floor
                                     New York, NY 10010
                                     Telephone: (212) 849-7000
                                     Facsimile: (212) 849-7100

**VERIFICATION OF HIQ LABS, INC.'S RESPONSES AND OBJECTIONS TO LINKEDIN CORPORATION'S SECOND SET OF INTERROGATORIES AND SUPPLEMENTAL RESPONSE AND OBJECTIONS TO LINKEDIN CORPORATION'S INTERROGATORY 16**

I, Mark Weidick, hereby verify that the information provided in hiQ Labs, Inc.'s Responses and Objections to LinkedIn Corporation's Second Set of Interrogatories and hiQ Labs, Inc.'s Second Amended Supplemental Response and Objections to LinkedIn Corporation's Interrogatory No. 16 is true and correct to the best of my knowledge, information, and belief.

Date: 8/3/22

Mark Weidick