# EXHIBIT R

Page 1

```
** H I G H L Y   C O N F I D E N T I A L **
** ATTORNEYS' EYES ONLY **
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
Case No. 17-cv-03301-EMC
----------------------------------x
HIQ LABS, INC.,

          Plaintiff,


     - against -



LINKEDIN CORPORATION,

          Defendant.
----------------------------------x
              July 25, 2022
              12:00 p.m.

     Videotaped Deposition of XIAOFENG
WU, taken by Plaintiff, pursuant to Notice,
held via Zoom videoconference, before Todd
DeSimone, a Registered Professional
Reporter and Notary Public of the State of
New York.
```

```
 1         WU - HIGHLY CONFIDENTIAL
 2              MR. SHAFFER:  Objection to
 3    form.
 4       A.      What do you mean by like other
 5    docs?  I did actually in my day-to-day
 6    operation work, I actually see a lot of
 7    documentation to give me the knowledge of
 8    the anti-scraping or anti-automation
 9    system.  I think part of my knowledge come
10    from there.  But it is not specifically for
11    this deposition.  But the docs that I have
12    seen is mostly here, is all here.
13       Q.      Did you sign an engagement
14    letter to serve as an expert witness in
15    this matter?
16              MR. SHAFFER:  Objection.  You
17    can answer, sorry.
18       A.      Engagement letter?  I don't
19    remember.  I did remember I signed the
20    letter of, there was some paperwork I need
21    to do.  I don't really know is that exactly
22    an engagement letter or not.  If you have
23    that doc -- I think I did sign, but I don't
24    really remember exact doc.
25       Q.      We do not -- that has not been
```

Page 36

1           WU - HIGHLY CONFIDENTIAL
2    produced by your counsel.  But did you sign
3    a document specifying the scope of your
4    work in this matter for this litigation?
5           A.    I think that will actually come
6    from the counsel, if that's the paper I
7    signed.  I interact with counsel.  I don't
8    remember -- I signed many doc, but I'm not
9    really sure that's the engagement doc or
10   not.  But I'm sure I did sign the doc
11   before.  I think that's called engagement,
12   but I don't really remember the exact term.
13          Q.    Are you being paid above your
14   salary to provide your expert work in this
15   matter?
16          A.    No.
17          Q.    So you're not receiving any
18   extra remuneration for your expert
19   testimony in this matter from LinkedIn?
20          A.    No.
21          Q.    And when I say remuneration, I
22   mean also anything in the form of stocks,
23   equity, anything like that.
24          A.    No.
25          Q.    Beyond your counsel, did you

Page 37

1        WU - HIGHLY CONFIDENTIAL
2   speak to anyone at LinkedIn about your
3   disclosure or the testimony that you are
4   going to provide today?
5          A.    No.
6          Q.    When did you first learn about
7   the hiQ versus LinkedIn litigation?
8          A.    That I don't really recall.  I
9   did -- I did heard the term of hiQ, but I
10  didn't really heard anything about too much
11  details until I got early this year we
12  talked about this whole potential
13  deposition I need to do.  I had previously
14  didn't really ask, kind of know.
15              But I was actually working on
16  this system for three years, I actually did
17  hear people was actually -- I kind of
18  remember there was a decision because of
19  previous procedure of the lawsuit, we were
20  asked to allow lists of some IP addresses
21  from hiQ.  I think that's maybe the case
22  why I heard about this company name before
23  but didn't never really understand what
24  exactly was going on until later on for the
25  deposition.