DocuSign Envelope ID: 14AE99A2-9A4F-4669-B125-6B0B9CD073B5

ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (Pro Hac Vice)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

*Attorneys for LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>        Plaintiff,<br><br>    vs.<br><br>LinkedIn Corporation,<br><br>        Defendant. | Case No. 17-cv-03301-EMC<br><br>**L.R. 79-5(f)(3) DECLARATION OF LEE WOMER**<br><br>Complaint Filed:    June 7, 2017<br>Trial Date:           February 27, 2023 |
| LinkedIn Corporation<br><br>        Counterclaimant,<br>    vs.<br><br>hiQ Labs, Inc.<br><br>        Counterdefendant, | |

I, Lee Womer, declare as follows:

1. I am the Vice President of Business Development at LinkedIn Corporation. ("LinkedIn"). My responsibilities focus on business development, including structuring and creating partnerships that extend value to LinkedIn's members and customers; understanding the business environments in which LinkedIn operates; and making decisions as to partnership strategy and activities. I am familiar with LinkedIn's policies and business practices, including what information LinkedIn considers confidential and does not disclose to the public. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

2. I have reviewed the under seal portions of certain exhibits described below, which were submitted in support of hiQ's Opposition to LinkedIn's Motion for Summary Judgment (EFF No. 366 and accompanying exhibits). As further discussed below, certain exhibits reveal LinkedIn's confidential internal business strategies that would likely harm LinkedIn if publicly disclosed.

3. ECF No. 366.24, which is Exhibit 42 to hiQ's Compendium of Exhibits in Opposition to LinkedIn's August 5, 2022 Motions (ECF No. 364-1) ("Exhibit 42") reflects LinkedIn's internal strategy on its API program. Companies may apply to access LinkedIn's platform via our API developer program, which allows third parties to develop certain apps that will connect to the LinkedIn platform. Exhibit 42 reflects the foundation of our current partner and API strategy. In particular, the slides found at Link_HIQ_000072013, Link_HIQ_000072015-16, Link_HIQ_000072019-23, Link_HIQ_000072028-39, and Link_HIQ_000072041-45 of Exhibit 42 reveal LinkedIn's confidential internal business strategy for how we partner with third parties for our API strategy. These slides explain how LinkedIn assesses risks for working with third parties and how to best mitigate that risk. The slides also reflect LinkedIn's competitive intelligence in how we compare to other platforms with similar API programs. Further, these slides also detail LinkedIn's confidential framework for how to evaluate its API partnerships and financial figures regarding its top customers and API usage. ECF Nos. 366.25 and 366.26, which are Exhibits 43 and 44 to hiQ's Compendium of Exhibits in

1  Opposition to LinkedIn's August 5, 2022 Motions (ECF No. 364-1) ("Exhibits 43 and 44") also
2  reflect the foundation of our current partner and API strategy, similar to Exhibit 42. Exhibit 43
3  reveals LinkedIn's internal strategy regarding third party social media aggregators with regards to
4  the platform and Exhibit 44 reveals the top companies using LinkedIn's API program and the
5  framework by which LinkedIn evaluates its API access privileges. Exhibits 42 through 44
6  contain information that is not released publicly and is also kept confidential within LinkedIn to
7  those who need to know the information for their job duties. If the information is released
8  publicly, competitors would obtain an unfair advantage of understanding LinkedIn's API strategy
9  and try to recreate the same. In addition, the competitive intelligence included in these Exhibits,
10 if released publicly would allow competitors to unfairly compete against LinkedIn with
11 LinkedIn's own confidential information and free ride on LinkedIn's research. Further, Exhibit
12 42 includes information comparing LinkedIn against certain competitors and releasing such
13 information may also damage LinkedIn's relationships with actual and potential customers.

14      4.    ECF No. 366.07, which is Exhibit 23 to hiQ's Compendium of Exhibits in
15 Opposition to LinkedIn's August 5, 2022 Motions (ECF No. 364-1) ("Exhibit 23") reveals
16 LinkedIn's internal strategy regarding how we approach companies for our API program and how
17 we evaluate whether companies would be acquisition targets. Exhibit 23 essentially provides a
18 roadmap for how LinkedIn engages with select companies both at the time of the Exhibit and
19 presently. ECF No. 366.03, which is Exhibit 19 to hiQ's Compendium of Exhibits in Opposition
20 to LinkedIn's August 5, 2022 Motions (ECF No. 364-1) ("Exhibit 19") reveals confidential
21 information regarding how LinkedIn evaluates third parties who use the API program and why
22 LinkedIn would terminate their API access. Both Exhibits 23 and 19 reflect internal strategy
23 information that is not broadly disclosed either outside or internally at LinkedIn. Disclosure of
24 this information publicly would likely have an adverse impact on LinkedIn. Third parties trying
25 to access the API program could use this information to circumvent LinkedIn's API program by
26 misrepresenting their purpose and how they interact with LinkedIn's platform. In addition,
27 LinkedIn's ability to negotiate future deals and acquisitions would likely be adversely impacted
28 because other companies may use such information as leverage against LinkedIn during

1  negotiations and increase LinkedIn's transactions costs.

2      5.    Furthermore, Exhibits 42, 43, 44, 19, and 23 all include third party information
3  and how the third parties interact with LinkedIn, which LinkedIn does not release publicly and
4  does not have permission to do so.

5      I declare under penalty of perjury under the laws of the United States of America that the
6  foregoing is true and correct to the best of my knowledge.

7      Executed this 7th day of September, 2022, at Rancho Palos Verdes, California.

*Lee Womer*
LEE WOMER

- 3 -

WOMER DECL.
17-CV-03301-EMC