ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (*Pro Hac Vice*)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

*Attorneys for Defendant/Counterclaimant
LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>            Plaintiff,<br><br>    vs.<br><br>LinkedIn Corporation,<br><br>            Defendant. | Case No. 17-cv-03301-EMC<br><br>**LINKEDIN CORPORATION'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION PURSUANT TO FRE 403, 702 TO EXCLUDE EXPERT TESTIMONY OF STEPHEN MCELFRESH** |
| LinkedIn Corporation<br><br>            Counterclaimant,<br><br>    vs.<br><br>hiQ Labs, Inc.<br><br>            Counterdefendant. | Date:           September 29, 2022<br>Time:           1:30 p.m.<br>Courtroom:  5 – 17th Floor (Zoom)<br>Judge:          Hon. Edward M. Chen<br><br>Complaint Filed:   June 7, 2017<br>Trial Date:   February 27, 2023 |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION .................................................................................................................... 1
ARGUMENT ............................................................................................................................ 2
I.    LINKEDIN SEEKS TO EXCLUDE MCELFRESH'S ECONOMIC, NOT HR, OPINIONS. ................................................................................................................... 2
II.   MCELFRESH'S MARKET-RELATED OPINIONS ARE INADMISSIBLE UNDER RULES 702 AND 403. ..................................................................................... 4
    A.   McElfresh Is Offering Opinions On Competition Issues. ...................................... 4
    B.   McElfresh's Market-Related Opinions Are Unsupported and Unreliable. ............ 5
III.  RULE 702 NECESSITATES THE EXCLUSION OF MCELFRESH'S OPINIONS CONCERNING THE VALUE AND FUNCTIONALITY OF HIQ'S PRODUCTS. ............................................................................................................. 6
IV.  LINKEDIN'S OBJECTIONS GO TO THE ADMISSIBILITY, NOT WEIGHT OF MCELFRESH'S OPINIONS. ................................................................................... 8
V.   MCELFRESH'S ECONOMIC OPINIONS ARE NOT ADMISSIBLE LAY OPINIONS. ................................................................................................................... 9
CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFMS LLC v. United Parcel Serv. Co.*,
   No. CV 10-5830 JGB, 2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) .................................... 9

*Boecken v. Gallo Glass Co.*,
   No. 05-cv-00090-OWW-DLB, 2008 WL 4470867 (E.D. Cal. Sept. 30, 2008) ...................... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................................. 2, 8, 9, 10

*Exeltis USA Inc. v. First Databank, Inc.*,
   2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) ..................................................................... 5

*Gianfrancisco v. Excelsior Youth Ctrs., Inc.*,
   No. 10-cv-00991-PAB-KMT, 2012 WL 2890916 (D. Colo. July 16, 2012) ........................... 3

*Hernandez v. City of Vancouver*,
   No. C04-5539 FDB, 2009 WL 279038 (W.D. Wash. Feb. 5, 2009) ...................................... 3

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
   No. 20-cv-05381-HSG, 2022 WL 1817415 (N.D. Cal. June 2, 2022) .................................... 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................ 9

*Lucido v. Nestle Purina Petcare Co.*,
   217 F. Supp. 3d 1098 (N.D. Cal. 2016) ............................................................................... 9

*Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ............................................................................................ 5, 6

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   375 F. Supp. 3d 1058 (N.D. Cal. 2019) ............................................................................... 7

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) .............................................................................. 8, 9

*Rodriguez v. Gen. Dynamics Armament & Tech. Prods.*,
   510 F. App'x 675 (9th Cir. 2013) ........................................................................................ 6

*Sitter v. Ascent Healthcare Sols., Inc.*,
   No. C-09-5682 EMC, 2011 WL 2682976 (N.D. Cal. July 8, 2011) ...................................... 2

*United States v. Gadson*,
   763 F.3d 1189 (9th Cir. 2014) ...................................................................................... 2, 10

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .................................................................................... 2, 7, 8

*United States v. Rodriguez-Salazar*,
    130 F. App'x 138 (9th Cir. 2005) ...................................................................................... 6, 8

**Statutes**

Fed. R. Evid. 403 ................................................................................................... 2, 4, 9, 10

Fed. R. Evid. 701 ................................................................................................................ 10

Fed. R. Evid. 702 ........................................................................................................ *passim*

## INTRODUCTION

LinkedIn's targeted motion seeks to exclude only certain opinions of Dr. Stephen McElfresh, a Human Resources professional, that relate to matters outside of his expertise and for which he undertook no analysis using any accepted methodology. The opinions LinkedIn seeks to exclude relate to the market for hiQ's products, the value and functionality of hiQ's products, and the unique value of LinkedIn as a resource. McElfresh's impermissible opinions are seemingly relevant only to hiQ's unfair competition claims (something hiQ conspicuously fails to address), necessarily implicate concepts of antitrust economics, and typically require economic analysis using accepted methodologies for defining markets and assessing harm to competition. There is no dispute that McElfresh lacks such expertise and never undertook that work. As hiQ itself acknowledges, "McElfresh is not, and has never purported to be, an expert in either economics or antitrust." Opp'n at 2.

hiQ's answer to LinkedIn's narrow motion is misdirection. hiQ protests that LinkedIn seeks to exclude McElfresh "for the sin of not being an economist," and that his expertise instead "stems from his lengthy career in HR." *Id.* The issue, of course, is not that McElfresh lacks HR expertise, but that hiQ is purporting to use an HR professional to offer opinions that an HR professional is not qualified to give. To be clear, LinkedIn does not seek to exclude McElfresh's opinions relating to HR matters. Specifically, LinkedIn does not challenge McElfresh's opinions that voluntary turnover is costly for organizations and that there are tools that exist to help reduce turnover—matters arguably within McElfresh's expertise as an HR professional. *See* Mot. at 4. But McElfresh's subjective and unsupported opinions about a product market for people analytics products like hiQ's and hiQ's position in it, and LinkedIn as a "unique" resource, go beyond anything he is qualified to address as an HR professional, especially without any analysis or methodology whatsoever. McElfresh's opinions concerning the market for and value of hiQ's products, as well as LinkedIn as a unique resource, are also inadmissible for the independent reason that they are completely devoid of any support. McElfresh does not employ any methodology, point to any data, or undertake any analysis to support these opinions, despite the fact that such methods are available.

Because certain of McElfresh's opinions are unsupported and unreliable, LinkedIn's objections go directly to their admissibility, not their weight. Fed. R. Evid. 702; Mot. at 14-15 (quoting *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)). Moreover, because there is a significant risk of prejudice resulting from likely juror confusion over hiQ's impermissible effort to use McElfresh's expertise in one area (HR) to offer opinions in another (markets, value, etc.) where he has no such expertise, Rule 403 provides an additional basis for exclusion. Mot. at 19 (quoting *United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014)).[1]

**ARGUMENT**

**I.   LINKEDIN SEEKS TO EXCLUDE MCELFRESH'S ECONOMIC, NOT HR, OPINIONS.**

LinkedIn does not dispute McElfresh's qualifications as an HR professional, and its motion does not seek to exclude McElfresh's HR opinions. LinkedIn is instead focused on McElfresh, an HR professional, offering wholly unsupported economic opinions that unquestionably fall outside his expertise. But you wouldn't know that from hiQ's Opposition.

hiQ devotes the majority of its brief discussing topics and testimony to which LinkedIn does not object. hiQ spends pages detailing McElfresh's qualifications to serve as an **HR** expert, (Opp'n at 3, 7), discussing caselaw related to the ability of **HR** professionals to opine on **HR-related** topics, (*id.* at 6),[2] and supporting a number of **HR-related** opinions to which LinkedIn

---

[1]   hiQ's footnote Motion to Strike on the basis that LinkedIn somehow violated page limitations for this *Daubert* Motion lacks merit. LinkedIn noticed this *Daubert* Motion pursuant to L.R. 7-1 following the specifications in L.R. 7-2 and on the Rule 16 deadline for *Daubert* motions. Order Re Case Schedule at 4, ECF No. 236 (setting separate deadlines for *Dauberts* and Motions *in Limine*). The pretrial instructions cited by hiQ, Opp'n at 1 n.1, apply to the Motions *in Limine* due "twenty-one (21) days prior to the final pretrial conference," not motions due on the much earlier and separately set *Daubert* / Dispositive Motion deadline. Further, the pretrial instructions prohibit replies for motions filed 21-days before trial, but the case schedule in this matter specifically permits replies in support of *Daubert* motions consistent with L.R. 7. Order Re Case Schedule at 4, ECF No. 236. LinkedIn's Motion was properly noticed under L.R. 7-1 and complied with the page limit in L.R. 7-2.

[2]   Each of the cases which hiQ cites in § IA of its Opposition ("Courts Regularly Recognize Human Resources Expertise") pertain to the ability of HR professionals to opine as experts on HR-related issues—a point which LinkedIn does not contest. *See e.g., Sitter v. Ascent Healthcare Sols., Inc.,* No. C-09-5682 EMC, 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011) (concluding

does not seek to exclude, (*id.* at 7-8) (discussing McElfresh's opinions related to issues and practices in the HR field).  LinkedIn has not challenged McElfresh's right to testify as an **HR expert** on **HR-related** topics, including:

- Practices in the HR field, (LI CE 586 ¶¶ 42-45 ("McElfresh Rpt."));
- The importance of retention and costs of employee turnover (*id.* at ¶¶ 26-30, 34-35); and
- The development of People Analytics offerings (*id.* at ¶¶ 14-22, 24).

Instead, LinkedIn's Motion is specifically focused on McElfresh's **economics-related** opinions.  These include McElfresh's opinions on:

- The product market and hiQ's position in it, (*id.* at ¶¶ 11, 13, 23, 25, 31-32, 36, 40-41, 51-52, and 57-58);
- Whether LinkedIn is a unique resource, (*id.* at ¶¶ 12, 46); and
- The value of hiQ's products, (*id.* at ¶¶ 11, 13, 23, 25, 31-33, 36, 38-41, 51, 53, and 57).

These are all topics for which McElfresh (admittedly) lacks an **economics** background, and none of which are supported by the required **economics-based** (or any) methodology.  hiQ's only answer to this is to claim that all of McElfresh's opinions are, in fact, HR opinions.  They are not.  The specific opinions LinkedIn seeks to exclude fall squarely within the realm of economics, and are clearly outside the expertise of an HR professional.  In any case, they are not supported by any methodology whatsoever.  They therefore do not satisfy Rule 702 and are inadmissible.

---

HR professional was entitled to testify as an expert concerning "best or good [human resources] practices and insufficiencies."); *Gianfrancisco v. Excelsior Youth Ctrs., Inc.*, No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *3, (D. Colo. July 16, 2012) (allowing testimony of HR professional concerning issues related to "human resources management"); *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009) (excluding opinions of HR expert on HR management issues as they were improper legal conclusions and unhelpful to the trier of fact).  Importantly, hiQ cites no cases holding that McElfresh, an HR professional, should be able to opine on economic issues wholly outside his area of expertise.

## II. MCELFRESH'S MARKET-RELATED OPINIONS ARE INADMISSIBLE UNDER RULES 702 AND 403.

### A. McElfresh Is Offering Opinions On Competition Issues.

hiQ's contention that McElfresh does "not offer any opinion about competition issues" is false. Opp'n at 8. McElfresh invokes esoteric concepts and terms of art inherently related to markets and competition, and not within the ambit of the HR field. These include claims that hiQ created a new "market" with its "disruptive technology," (*see, e.g.*, McElfresh Rpt. at ¶ 23), that hiQ had an opportunity to be a "dominant player," (*see, e.g., id.* at ¶ 36), that there was harm to the market from hiQ's exit, (*see, e.g., id.* at ¶ 11 ("That hiQ is no longer able to offer its products is detrimental both to employers and employees (whether potential or current) who may have benefited therefrom.")), and that LinkedIn is a "unique resource" of publicly available professional data, (*see, e.g., id.* at ¶ 12). Mot. at 4-6. These market- and competition-related opinions fall squarely within the field of economics and outside the HR field. There are accepted economics methodologies for offering such opinions—which hiQ admits McElfresh did not even attempt to utilize. *Id.* at 7-9 (discussing and citing authorities explaining accepted methodologies for conducting a market analysis and determining a product's value). McElfresh, as an HR professional, does not possess the qualifications necessary to undertake such economic assessments, nor has he utilized any accepted methodologies—or any methodology at all—to do so. *Id.*

hiQ's response is to ignore that McElfresh ever offered these opinions. Opp'n at 1 ("LinkedIn chooses to attack the antitrust and economics opinions of some other, non-existent expert."); *id.* at 8 ("McElfresh, not being an economist, has not and will not offer any opinion about competition issues."). Thus, hiQ quotes from numerous portions of McElfresh's Report, but ignores the problematic opinions—e.g., "new market," "dominant position," "disruptive technology," and "detrimental to employees and employers," (Mot. at 4, 10-14), challenged by LinkedIn. These market-related opinions could only be relevant to hiQ's UCL claims—claims that necessarily implicate concepts inherent to antitrust economics, including markets, monopolies, anticompetitive conduct, and consumer harm. For example, hiQ's purported UCL

- 4 -

claims are awash in economic concepts such as "competition-threatening misconduct," "monopoly broth," and "targeting of nascent startups . . . causing harm to competition, competitors, and consumers in digital markets." Opp'n at 17-19. Such concepts are not within the expertise of an HR professional. But hiQ has offered no economic expert opinion supporting these concepts, and the absence of qualified expert opinion testimony increases the risk and likelihood that hiQ will seek to use, improperly, McElfresh's suspect opinions in support of those claims. hiQ's attempt to backdoor McElfresh into an economic expert's role must be rejected, and McElfresh's market-related, economic opinions require exclusion. Mot. at 10-14.

### B. McElfresh's Market-Related Opinions Are Unsupported and Unreliable.

hiQ readily admits that McElfresh does not possess the background or qualifications necessary to serve as an economics- or market-related expert. Opp'n at 2 ("McElfresh is not, and has never purported to be, an expert in either economics or antitrust."). hiQ also does not dispute that opinions rooted in economics or antitrust issues require support through specialized methodology—such as a product market analysis or competitive advantage assessment—which McElfresh has not done (Mot. at 10-14). Opp'n at 1 (acknowledging without disputing the "standard [set forth by LinkedIn] of a professional economist conducting an antitrust analysis"). As McElfresh's market-based opinions are not based on "specialized knowledge," nor are they "the product of reliable principles and methods," they are both unsupported and unreliable, and Rule 702 demands their exclusion.[3] Mot. at 13-14 (quoting *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)); *Boecken v. Gallo Glass Co.,* No. 05-cv-00090-OWW-DLB, 2008 WL 4470867, at *7 (E.D. Cal. Sept. 30, 2008) (excluding industry expert's opinions under Rule 702 due to expert's lack of "scientific, technical, or other specialized knowledge" that would

---

[3]   hiQ cites *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089 (N.D. Cal. Nov. 30, 2020), in support of its assertion that "[t]he Court should evaluate the substance of McElfresh's opinions on their own terms, without allowing LinkedIn to impose strawman standards that are not appropriate for the opinions McElfresh actually offers." Opp'n at 8. *Exeltis*, however, is inapposite. *Exeltis* involved a dispute over what type of survey (qualitative or quantitative) the expert used, and whether he was qualified to use it, in supporting his opinions on matters within his area of expertise. *Exeltis*, 2020 WL 7025089, at *9. Here, the concern is not over what type of methodology McElfresh utilized; the issue is that McElfresh utilized *no* methodology at all on topics wholly outside his area of expertise, *see infra.*

1  assist the trier of fact "to understand the evidence or determine a fact in issue," as well as failing

2  to support those opinions with reliable methodology).

### III. RULE 702 NECESSITATES THE EXCLUSION OF MCELFRESH'S OPINIONS CONCERNING THE VALUE AND FUNCTIONALITY OF HIQ'S PRODUCTS.

McElfresh's opinions concerning the value and functionality of hiQ's products must be excluded because they are not supported by specialized knowledge or any methodology at all. Mot. at 17-20. hiQ does not dispute that Rule 702 demands that expert opinions be "the product of reliable principles and methodology." *Id.* at 9-10 (quoting *Lust*, 89 F.3d at 598). But hiQ cannot point to any specialized knowledge or methodology employed by McElfresh, who never actually used hiQ's products himself[4] and could not even say whether they were useful to any customers. *Id.* at 16-20.

hiQ's attempts to overcome these glaring shortfalls by contending that McElfresh, "in evaluating the usefulness of hiQ's Keeper product," "describes the costs of employee turnover, industry research regarding employee turnover, and standard methods of reducing turnover." Opp'n at 9. But this is not a "methodology" for assessing the value and functionality of hiQ's products, nor does it require any "specialized knowledge" of its products. hiQ also claims that McElfresh provides an "explanation of 'push' versus 'pull' factors leading to employee turnover and the significance of Keeper's predictive algorithms enabled by the use of public data." *Id.* at. 10. Again, hiQ cannot point to any specialized knowledge[5] or reliable methodology utilized by

---

[4] hiQ is incorrect to assert that LinkedIn's discussion of McElfresh never having used hiQ's products is an objection to McElfresh's lack of "particularized expertise." Opp'n at 7. It is more than that. McElfresh both lacked experience with hiQ's products but also employed no methodology for ascertaining their value to anyone. This is very different from the situation in *United States v. Rodriguez-Salazar*, 130 F. App'x 138, 139 (9th Cir. 2005) (cited in Opp'n at 7), where the witness was found to have relevant expertise in the automobile industry directly related to his testimony concerning bonding agents (*see infra* § IV).

[5] *Rodriguez v. Gen. Dynamics Armament & Tech. Prods.*, 510 F. App'x 675, 676 (9th Cir. 2013) (cited in Opp'n at 9), merely provides—without further analysis—that testimony based upon "specialized knowledge gained as part of a job . . . is governed by the standards of Rule 702." But it does not provide support for McElfresh's opinions concerning the value of hiQ's products based upon any specialized knowledge gained from ***his*** HR job. As LinkedIn has explained, McElfresh never used hiQ's products in his HR roles or otherwise. Mot. at 16-19.

McElfresh in reaching his opinions on the "value" of hiQ's products and the "valuable" insights they provided. Mot. at 17-20. That is because there is none. McElfresh admitted his "opinions are not based on any empirical analysis—or any analysis at all." *Id.* (citing LI CE 558-559 (McElfresh Dep. at 30:9-31:16), LI CE 563-564 (*id.* at 58:13-59:4), LI CE 579-580 (*id.* at 136:25-137:18)). Rather, they are based solely on attendance at a few hiQ Elevate Conferences and some Google searches. *Id.* at 11-12 (citing LI CE 565 (McElfresh Dep. at 71:5-13)).

Indeed, McElfresh performed no analysis to determine whether hiQ's products "fulfilled their intended purposes, whether hiQ's customers found Keeper's insights to be valuable, whether hiQ was able to retain existing customers and attract new customers, or whether public data is a better turnover predictor than internal data as a general manner." Mot. at 17. And, having never used hiQ's products (and failing to convince his boss of their value), nor surveying anyone who had, his opinions on those products appear to be based not on specialized knowledge but on what he heard about them at hiQ's marketing conferences.[6] *Id.* at 16-18.

hiQ's *sole* attempt to argue McElfresh utilized *any* methodology to support his opinions concerning the value of hiQ's products is futile. hiQ contends that "McElfresh cited statistics validating the results of Keeper," (Opp'n at 10), but McElfresh did *nothing* beyond citing those statistics garnered from hiQ, such as assessing how (or whether) they specifically increased value to consumers. Indeed, McElfresh admitted in his deposition he did not opine on, nor did he undertake any analysis to establish, whether Keeper was, in fact, predictive of employee turnover and therefore whether it created any value for customers. Mot. at 7 (citing LI CE 564-565 (McElfresh Dep. at 59:9-60:9)). Accordingly, McElfresh's opinions are entirely devoid of support and lack the reliability demanded by Rule 702. Mot. at 16-19.

---

[6] Whether a firm, such as hiQ, has *value* in a market and whether a customer finds a firm's products, such as Keeper, *valuable*, are typically understood to be opinions an economist would offer using appropriate economic-based methodology. Mot. at 3-4; *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019) (discussing standard "economic analyses" and "economic methods" for "measuring consumer preferences"). As McElfresh lacks the "appropriate qualifications" to offer these opinions, this is an independent basis for their exclusion under 702. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); Mot. at 3-4.

### IV. LINKEDIN'S OBJECTIONS GO TO THE ADMISSIBILITY, NOT WEIGHT OF MCELFRESH'S OPINIONS.

hiQ is incorrect in asserting that LinkedIn's objections go, at most, to weight and not the admissibility of McElfresh's opinions. Opp'n at 7. LinkedIn's motion attacks McElfresh's complete lack of relevant expertise and methodology—threshold questions under Rule 702. Fed. R. Evid. 702 (requiring expert opinions be rooted in "scientific, technical, or other specialized knowledge" and be the "product of reliable principles and methods"). Accordingly, exclusion, not cross-examination, is the appropriate result.

Courts may allow an expert's opinions to be subject to cross-examination rather than exclusion, but the order of operations is that the opinion evidence must first pass muster under Rule 702. *See, e.g., JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, No. 20-cv-05381-HSG, 2022 WL 1817415, at *3, 8 (N.D. Cal. June 2, 2022) (cited in Opp'n at 8) (finding objections to particular portions of expert's cost overrun analysis went to weight, not admissibility, *only after* determining that "his analysis of AECOM's cost overruns, when viewed as a whole, is sufficiently based on his analysis of the billings at issue and his experience in accounting, auditing, and analyzing costs related to construction projects to be admissible under Rule 702"). Indeed, both *Daubert* and Rule 702 require an initial determination of "whether the experience of a particular witness warrants placing that individual's view before the trier of fact." *In re Rezulin Prods. Liab. Litig.,* 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004); *see also Hankey*, 203 F.3d at 1168 (finding expert testimony is inadmissible if the expert lacks "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on [the relevant] subject matter."). McElfresh's opinions regarding the market for and value and functionality of hiQ's products, and LinkedIn as a unique resource, do not pass that initial determination.[7]

---

[7]   This is not in any way similar to the situation in *Rodriguez-Salazar*, 130 F. App'x at 139 (cited in Opp'n at 7), where the Court held that an expert who had "over thirty years . . . work[ing] in the automotive industry in a wide variety of capacities" could properly testify on issues "based on his experience with various bonding materials" notwithstanding objections to his "particularized expertise" in examining automobiles for criminal investigations, which went to weight. *Id.* McElfresh, by contrast, admittedly has neither expertise nor experience in the field of economics, nor with hiQ's particular products. Opp'n at 2, 11. Accordingly, his expertise does

Similarly, *Daubert* and Rule 702 also require a threshold determination of whether opinions are supported by "reliable principles and methods." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). "The objective of that [gatekeeping] requirement is . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *AFMS LLC v. United Parcel Serv. Co.*, No. CV 10-5830 JGB (AJWx), 2014 WL 12515335, at *2 (C.D. Cal. Feb. 5, 2014) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Failure to provide *any* such support, as is the case here, demands exclusion. *Id.* Thus, LinkedIn's objections concerning McElfresh's failure to support his opinions with *any* methodology whatsoever appropriately go to the admissibility of those opinions. *AFMS*, 2014 WL 12515335, at *3.

## V. MCELFRESH'S ECONOMIC OPINIONS ARE NOT ADMISSIBLE LAY OPINIONS.

After insisting that the contested McElfresh opinions are "not lay opinions," (Opp'n at 9-11), hiQ offers a cursory footnote asking that, should the court find that any of McElfresh's opinions constitute lay testimony, they be admissible as such, (*Id.* at 10 n.3). But the contested McElfresh opinions are not admissible lay opinions.[8]

Converting McElfresh's unsupported economic opinions to unsupported lay opinions risks significant confusion and prejudice to LinkedIn, in contravention of Rule 403. Mot. at 19-20. hiQ ignores that this risk is amplified by the fact that McElfresh, who will be "testify[ing] as an

---

not warrant "placing [his] view before the trier of fact." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 559.

[8] Contrary to hiQ's assertion, (Opp'n at 10 n.3), *Lucido* does not suggest that the contested McElfresh opinions should be converted to lay opinions. In *Lucido*, the Court excluded a veterinarian's expert opinions on consumer dog food preferences while allowing the veterinarian to provide narrow lay testimony on what preferences her patients (who were also dog food customers) conveyed to her, which she garnered "by virtue of her position" as veterinarian. *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1103 (N.D. Cal. 2016). Unlike the veterinarian in *Lucido*, McElfresh does not have any relevant knowledge from hiQ's customers to share, nor any garnered "by virtue of [his wholly unrelated HR] position," (*id.*). Mot. at 3.

expert [on appropriate HR topics] may receive 'unmerited credibility' for [his] lay testimony, because expert testimony is 'likely to carry special weight with the jury.'" *Id.* at 19 (quoting *Gadson*, 763 F.3d at 1212).

In the case of McElfresh's opinions concerning the value and functionality of hiQ's products, those fail as lay testimony for the independent reason that those opinions were not formed by "personal knowledge," (Fed. R. Evid. 701), as McElfresh never used hiQ's products nor surveyed anyone who did (Mot. at 6-8). Accordingly, McElfresh should be barred from offering either lay or expert opinions concerning the product market and hiQ's position in it, the value and functionality of hiQ's products, and whether LinkedIn is a unique resource.

## CONCLUSION

For the foregoing reasons, LinkedIn's *Daubert* Motion Pursuant to FRE 403, 702 to Exclude Expert Testimony of Stephen McElfresh should be granted.

Dated: September 12, 2022              Orrick, Herrington & Sutcliffe LLP


                                       By:    /s/ *Annette L. Hurst*
                                              ANNETTE L. HURST
                                              Attorneys for Defendant
                                              LinkedIn Corporation