ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
RUSSELL P. COHEN (SBN 213105)
rcohen@orrick.com
PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
CATHERINE Y. LUI (SBN 239648)
clui@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
DANIEL JUSTICE (SBN 291907)
djustice@orrick.com
EMILY RENZELLI (*pro hac vice*)
erenzelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

*Attorneys for Defendant/Counterclaimant
LinkedIn Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| hiQ Labs, Inc.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>LinkedIn Corporation,<br><br>　　　　Defendant.<br><br>LinkedIn Corporation<br><br>　　　　Counterclaimant,<br>　　vs.<br><br>hiQ Labs, Inc.<br><br>　　　　Counterdefendant. | Case No. 17-cv-03301-EMC<br><br>**DECLARATION OF DANIEL JUSTICE IN SUPPORT OF LINKEDIN CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SPOLIATION SANCTIONS**<br><br>Date:　　　September 29, 2022<br>Time:　　　1:30 p.m.<br>Courtroom: 5 – 17th Floor (Zoom)<br>Judge:　　　Hon. Edward M. Chen<br><br>Complaint Filed:　June 7, 2017<br>Trial Date:　　　February 27, 2023 |

I, Daniel Justice, hereby declare as follows:

1. I am an attorney at the law firm of Orrick, Herrington & Sutcliffe LLP, counsel of record for LinkedIn Corporation in this action. I am a member of the California State Bar and am admitted to practice before this Court. I have personal knowledge of the facts stated in this declaration, and if called as a witness I could and would testify competently thereto.

2. Attached hereto as **Exhibit 101** is a true and correct copy of a document produced by hiQ from its files, initial page Bates Number hiQ_00722748.

3. Attached hereto as **Exhibit 102** is a true and correct copy of correspondence sent by Renita Sharma of Quinn Emanuel Urquhart & Sullivan, LLP to Annette Hurst and Nathan Shaffer of Orrick, Herrington & Sutcliffe LLP on October 6, 2021.

4. Attached hereto as **Exhibit 103** is a true and correct copy of excerpts of the transcript of the deposition of Mark Weidick taken on March 18, 2022.

5. Attached hereto as **Exhibit 104** is a true and correct copy of excerpts of the transcript of the deposition of Darin Medieros taken on May 20, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 15, 2022, at San Francisco, California.

_____
Daniel Justice

# EXHIBIT 101
# FILED UNDER SEAL

# EXHIBIT 102

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7413**

WRITER'S EMAIL ADDRESS
**renitasharma@quinnemanuel.com**

October 6, 2021

**VIA E-MAIL**
Annette Hurt
Nathan Shaffer
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

Re:     LinkedIn's Requests for Production

Annette and Nathan:

I write in response to your September 8, 2021 letter regarding the parties' September 2 and 7 discussions surrounding hiQ's responses to LinkedIn's Requests for Production ("requests" or "RFPs"). Unless otherwise noted below, we agree with your memorialization of hiQ's responses to the requests.

- **Objections Based on Time Period.** hiQ agrees to withdraw its objections to LinkedIn's requests insofar as based on time period.

- **RFP No. 2.** hiQ agrees that it does not believe any of its software exists in "executable" form, but disagrees that hiQ ever represented that "most, if not all, of hiQ's software was written in JavaScript." hiQ's software was also written in Python (which likewise does not have an "executable" form). hiQ is considering whether it will produce source code responsive to this Request.

- **RFP No. 14.** hiQ maintains its position that documents and communications related to individual user accounts are not relevant to the issues in this case, given that hiQ employees were not logged in to their individual LinkedIn profiles when accessing LinkedIn on behalf of hiQ. Nevertheless, in the interest of compromise, hiQ agrees to produce documents responsive to this request.

- **RFP No. 16.** hiQ is considering whether it will produce material relating to hiQ's methodology for analyzing data responsive to this request.

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

- **RFP No. 21.** As mentioned above, hiQ agrees to withdraw its objections to this request to the extent based on time period. hiQ understands LinkedIn's position to be that material responsive to this request will constitute a partial replacement for the lost Salesforce data.

- **RFP No. 22.** hiQ agrees to produce documents and communications responsive to this request.

- **RFP 29.** Regarding complaints about hiQ's products, hiQ had a Jira and related Confluence instance, and the Jira instance may have information responsive to this Request. Data from the Jira instance has been archived, and hiQ is willing to produce that archived data.

- **RFPs Nos. 36, 41 and 44.** hiQ agrees to LinkedIn's plan of addressing hiQ's objections to these requests by applying agreed-upon search terms consistent with the parties' forthcoming ESI stipulation.

- **RFP No. 47.** hiQ maintains its position that documents and communications related to individual user accounts are not relevant to the issues in this case, given that hiQ employees were not logged in to their individual LinkedIn profiles when accessing LinkedIn on behalf of hiQ. Nevertheless, in the interest of compromise, hiQ agrees to produce documents responsive to this request.

Finally, you asked for the "legal name of any entity or entities with which hiQ directly contracted in order to scrape or acquire data from LinkedIn." The legal entity with whom hiQ contracted in connection with its relationship with OxyLabs is "Datasync Pty." We will advise you with respect to the other contract when we have that information.

Sincerely,

*/s/ Renita Sharma*

Renita Sharma

# EXHIBIT 103

Case 3:17-cv-03301-EMC   Document 388   Filed 09/15/22   Page 8 of 18

Volume I                                                    hiQ Labs, Inc. vs.
Mark Weidick                                                   LinkedIn Corp.

```
 1              UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
 3

 4   hiQ Labs, Inc.,              )
             Plaintiff,           )
 5                                )
             vs.                  )  Case No.
 6                                )  17-cv-03301-EMC
     LinkedIn Corporation,        )
 7           Defendant.           )
     _____)
 8                                )
     LinkedIn Corporation,        )
 9           Counterclaimant,     )
                                  )
10           vs.                  )
                                  )
11   hiQ Labs, Inc.,              )
             Counter-defendant.   )
12                                )
     _____)
13

14          REMOTE VIDEO-RECORDED 30(b)(6)

15             DEPOSITION OF MARK WEIDICK

16                Los Gatos, California

17                   March 18, 2022

18                      Volume I

19   REPORTED BY:

20   JOHNNA PIPER

21   CSR 11268

22   Job No. 10097379

23

24   Pages 1 through 122

25
```

1  Q. That'd be great. Thank you. If you can do
2  that at a break and provide a date.
3  A. Sure.
4  Q. Thank you. Okay. So did you ever speak
5  with Mr. Kaplan in preparation for your deposition
6  today?
7  A. I don't think I have, no.
8  Q. Okay. You also said a Mr. -- I believe --
9  is it Madras?
10  A. Medeiros.
11  Q. Medeiros. Sorry. I can't read my
12  handwriting. Medeiros.
13      When did you speak with Mr. Medeiros in
14  preparation for your deposition?
15  A. A few months back. Again, I'm terrible
16  with dates, so end of 2021.
17  Q. And what did you speak with Mr. Medeiros
18  about?
19  A. Conversations -- those discussions were
20  largely about our Salesforce dataset and reports
21  that we housed as part of the archiving process, in
22  our board minutes, and a bunch of other places, but
23  the availability of the raw data from Salesforce.
24  Q. And what did Mr. Medeiros --
25  A. He did not have it.

Case 3:17-cv-03301-EMC   Document 388   Filed 09/15/22   Page 10 of 18

Volume I                                                hiQ Labs, Inc. vs.
Mark Weidick                                            LinkedIn Corp.

```
 1       Q.   -- explain to you?
 2       A.   He did not have it.
 3       Q.   Okay.  He did not have the data --
 4            (Reporter requests clarification.)
 5  BY MS. LUI:
 6       Q.   As to what?
 7       A.   He didn't have the raw Salesforce data.
 8       Q.   And when you say "raw Salesforce data,"
 9  what are you referring to?
10       A.   Salesforce is a -- an organized repository
11  of information about customers and prospects, their
12  names, their phone numbers, many times an
13  appendment -- an amendment or an append --
14  appendage, email or proposal that we would have sent
15  to them that gets all housed in one place.  So that
16  would be the raw data.
17            The other part of it that was critical to
18  our business was the reports that we derived from
19  that which we used to operate the business as part
20  of our board meetings, our planning and forecasting.
21  Those reports are available, but Darin did not have
22  the raw data that those reports would have been
23  derived from.
24       Q.   And why was it that the raw data was
25  unavailable?
```

Case 3:17-cv-03301-EMC   Document 388   Filed 09/15/22   Page 11 of 18

Volume I                                                                hiQ Labs, Inc. vs.
Mark Weidick                                                            LinkedIn Corp.

```
 1      A.  He accidentally reconfigured the laptop
 2  that he had with that raw data.
 3      Q.  When did he accidentally reconfigure the
 4  laptop that he had with the raw Salesforce data?
 5      A.  I don't know.  He told me in the same time
 6  frame in this conversation I'm describing to you, so
 7  toward the end of 2021.
 8      Q.  So my understanding is Salesforce is a
 9  cloud-based platform.  Is that correct?
10      A.  My understanding as well.
11      Q.  And it sounds like -- is it correct that
12  Mr. Medeiros actually had some type of local copy of
13  the cloud-based Salesforce account for hiQ on his
14  laptop?
15      A.  I expected that he did.
16      Q.  And why do you say expect that he did?
17      A.  Because when I went to verify it with him,
18  his laptop was no longer in a condition to prove
19  that it was there.
20      Q.  And what -- what occurred with the
21  accidental reconfiguration that rendered the
22  Salesforce raw data inaccessible?
23      A.  He reimaged the laptop.
24      Q.  Why did he do that?
25      A.  He wanted to make it available to a family
```

1        CERTIFICATE OF REPORTER

2        I, JOHNNA PIPER, a Certified Shorthand

3 Reporter, hereby certify that the witness in the

4 foregoing deposition was by me duly sworn to tell

5 the truth, the whole truth, and nothing but the

6 truth in the within-entitled cause;

7        That said deposition was taken in shorthand

8 by me, a disinterested person, at the time and place

9 therein stated, and that the testimony of the said

10 witness was thereafter reduced to typewriting, by

11 computer, under my direction and supervision;

12        That before completion of the deposition,

13 review of the transcript [  ] was [ X ] was not

14 requested.  If requested, any changes made by the

15 deponent (and provided to the reporter) during the

16 period allowed are appended hereto.

17        I further certify that I am not of counsel

18 or attorney for either or any of the parties to the

19 said deposition, nor in any way interested in the

20 event of this cause, and that I am not related to

21 any of the parties thereto.

22 DATED: 03/18/2022

23

24

25              JOHNNA PIPER, CSR NO. 11268

# EXHIBIT 104

Highly Confidential - Attorneys' Eyes Only

Darin Medeiros

hiQ Labs, Inc. vs.
LinkedIn Corp.

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
 3

 4   hiQ Labs, Inc.,              )
              Plaintiff,          )
 5                                )
              vs.                 )   Case No.
 6                                )   17-cv-03301-EMC
     LinkedIn Corporation,        )
 7            Defendant.          )
     _____)
 8                                )
     LinkedIn Corporation,        )
 9            Counterclaimant,    )
                                  )
10            vs.                 )
                                  )
11   hiQ Labs, Inc.,              )
              Counter-defendant.  )
12                                )
     _____)
13

14

15      HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

16    REMOTE VIDEO-RECORDED DEPOSITION OF DARIN MEDEIROS

17                Los Angeles, California

18                    May 20, 2022

19

20   REPORTED BY:

21   JOHNNA PIPER

22   CSR 11268

23   Job No. 10100978

24

25   Pages 1 through 209
```

1  connection with your employment?
2     A.  Yes.
3     Q.  Did you have a hiQ laptop?
4     A.  Yes.
5     Q.  Did you return the laptop to hiQ?
6     A.  No.  No.  I don't -- I -- I think I still
7  have it.
8     Q.  Mr. Weidick testified under oath that you
9  reformatted your hiQ laptop after you left hiQ.  Do
10 you know that?
11        MS. SHARMA:  Objection.
12        THE WITNESS:  Yes.
13 BY MR. COHEN:
14    Q.  You understand that he testified to that
15 effect?
16        MS. SHARMA:  Objection.
17        THE WITNESS:  No, I didn't know he said
18 that.
19 BY MR. COHEN:
20    Q.  All right.  Let me ask it to you this way:
21 Did you reformat your hiQ laptop after you left hiQ?
22        MS. SHARMA:  Objection.
23        THE WITNESS:  I -- I don't -- I deleted
24 everything off it because I had to give it to my
25 daughter to use during COVID.

Highly Confidential - Attorneys' Eyes Only

Darin Medeiros

hiQ Labs, Inc. vs.
LinkedIn Corp.

```
 1  BY MR. COHEN:
 2      Q.  And so when would you have done that?
 3          MS. SHARMA:  Objection.
 4          THE WITNESS:  March of two years ago.
 5  BY MR. COHEN:
 6      Q.  March of 2020?
 7      A.  Yeah.
 8      Q.  The start of the pandemic?
 9      A.  Yep.
10      Q.  And at the time that you deleted everything
11  off of the laptop, did you keep a backup of any of
12  that information?
13          MS. SHARMA:  Objection.
14          THE WITNESS:  No.  The only information
15  that I -- yeah.  I didn't -- I didn't take anything
16  off the hard drive, but everything I have with hiQ
17  is in a hiQ Google Drive.
18  BY MR. COHEN:
19      Q.  The information is still on the hard drive?
20  Is that -- if I understand your testimony, you said
21  you didn't take anything off the hard drive.  Is
22  that what you said?
23      A.  No.  I deleted it and then deleted -- I
24  emptied the trash, so -- I don't know if you have
25  kids, but they can find anything, and so I wanted to
```

Page 200

Case 3:17-cv-03301-EMC   Document 388   Filed 09/15/22   Page 17 of 18

| Darin Medeiros | Highly Confidential - Attorneys' Eyes Only | hiQ Labs, Inc. vs. LinkedIn Corp. |

1  make sure that she couldn't go in and like, I don't
2  know, look at past proposals, so I deleted
3  everything off the drive and then I emptied the
4  trash so there's no access to it.
5      Q.  So what information was on your laptop when
6  you deleted it all in March of 2020 that related to
7  your work at hiQ?
8      A.  Like whatever I did that I saved to the
9  desktop mostly or -- yeah, it was mostly on the
10 desktop.  Everything else we did was in the cloud.
11     Q.  Would it have included proposals to
12 customers?
13         MS. SHARMA:  Objection.
14         THE WITNESS:  No.  No.  Those -- because I
15 didn't -- I didn't create the proposals.  Like I
16 would look at them, but I wouldn't save them.  Like
17 I just viewed them in email, so they would be in my
18 email.
19 BY MR. COHEN:
20     Q.  What information that related to your work
21 at hiQ would have been saved on the hard drive?
22         MS. SHARMA:  Objection.  Asked and
23 answered.
24         You can answer, Darin, to the extent you
25 understand the question.

| | | |
|---|---|---|
| Darin Medeiros | Highly Confidential - Attorneys' Eyes Only | hiQ Labs, Inc. vs.<br>LinkedIn Corp. |

1              CERTIFICATE OF REPORTER

2         I, JOHNNA PIPER, a Certified Shorthand

3  Reporter, hereby certify that the witness in the

4  foregoing deposition was by me duly sworn to tell

5  the truth, the whole truth, and nothing but the

6  truth in the within-entitled cause;

7         That said deposition was taken in shorthand

8  by me, a disinterested person, at the time and place

9  therein stated, and that the testimony of the said

10 witness was thereafter reduced to typewriting, by

11 computer, under my direction and supervision;

12        That before completion of the deposition,

13 review of the transcript [ X ] was [  ] was not

14 requested.  If requested, any changes made by the

15 deponent (and provided to the reporter) during the

16 period allowed are appended hereto.

17        I further certify that I am not of counsel

18 or attorney for either or any of the parties to the

19 said deposition, nor in any way interested in the

20 event of this cause, and that I am not related to

21 any of the parties thereto.

22 DATED: 05/24/2022.

23

24

25              JOHNNA PIPER, CSR NO. 11268